**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

ARTHUR USHERSON,

        Plaintiff,

RICHARD P. LIEBOWITZ,
LIEBOWITZ LAW FIRM, PLLC,

        Miscellaneous-
        Appellants,

        v.

BANDSHELL ARTIST
MANAGEMENT,

        Defendant-Appellee.

No. 20-2304

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION**
**FOR STAY PENDING APPEAL**

**INTERIM RELIEF REQUESTED NO LATER THAN**
**5 P.M. ON MONDAY, JULY 27, 2020**

MORVILLO ABRAMOWITZ GRAND
  IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iv

PRELIMINARY STATEMENT ............................................................1

FACTUAL AND PROCEDURAL BACKGROUND .............................................1

   A. Mr. Leibowitz and LLF's Practice ...................................1

   B. The Proceedings Below ................................................2

ARGUMENT ..................................................................................9

   I.   Standard of Review...........................................................9

   II.  The Non-Monetary Sanctions Irreparably Will Harm Appellants Because The Sanctions Will Cause Severe Economic And Reputational Damage To Appellants' Law Practice...........................................................10

   III. "Serious Questions" Exist As To Whether The District Court's Factual Findings And Legal Conclusions Were An Abuse Of Discretion. ...............13

      1.  A "serious question" exists as to whether the Court's factual findings were supported by clear and convincing evidence. ............................................14

      2.  A "serious question" exists as to whether the District Court abused its discretion by imposing sanctions beyond what was reasonably necessary for deterrence............................................................16

      3.  A "serious question" exists as to whether the District Court abused its discretion by altering the statutory presumption of validity in copyright cases............................................................19

   IV. A Stay Will Not Harm Defendant Bandshell. ...............................20

V.  A Stay Is In The Public Interest Because It Will Permit Continued Vindication Of The Rights Of Copyright Plaintiffs Who Have Limited Alternatives For Recovery.............................................................................20

CONCLUSION ......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Brenntag Int'l Chem., Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999) ........................................................................ 10, 13

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)........................................................................................ 17

*Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) ...................................................................... 13, 14

*DC Comics v. Pac. Pictures Corp.*,
No. 10-CV-3663, 2013 WL 1389960 (C.D. Cal. Apr. 4, 2013).......................... 20

*Enmon v. Prospect Capital Corp.*,
675 F.3d 138 (2d Cir. 2012)...................................................................... 17, 19

*Hammer v. Amazon.com*,
392 F. Supp. 2d 423 (E.D.N.Y. 2005) .......................................................... 18

*Hirschfeld v. Bd. of Elections in City of N.Y.*,
984 F.2d 35 (2d Cir. 1993) ............................................................................ 9

*In re Hartford Textile Corp.*,
681 F.2d 895 (2d Cir. 1982) .......................................................................... 18

*In re Martin-Trigona*,
592 F. Supp. 1566 (D. Conn. 1984)................................................................ 18

*Krieger v. Alison Lou LLC*,
No. 20-CV-2628, Dkts. 17, 19, 21 (S.D.N.Y. June 30, 2020) .......................... 12

*Koehl v. Bernstein*,
740 F.3d 860 (2d Cir. 2014) ............................................................................ 9

*Manti's Transp. v. Kenner*,
No. 13-CV-6546, 2015 WL 1915004 (E.D.N.Y. Apr. 27, 2015)........................ 19

iv

*Mohammed v. Reno*,
  309 F.3d 95 (2d Cir. 2002) ...................................................... 9

*Mone v. Comm'r*,
  774 F.2d 570 (2d Cir. 1985) ............................................... 16

*Nken v. Holder*,
  556 U.S. 418 (2009) .............................................................. 9

*Polur v. Raffe*,
  912 F.2d 52 (2d Cir. 1990) ................................................. 18

*Shangold v. Walt Disney Co.*,
  275 F. App'x 72 (2d Cir. 2008) .......................................... 17

*Thapa v. Gonzalez*,
  460 F.3d 323 (2d Cir. 2006) ............................................... 9

*United States v. Am. Express Co.*,
  No. 10-CV-4496, 2015 WL 13735045 (E.D.N.Y. May 19, 2015) ...................... 11

*United States v. Stewart*,
  433 F.3d 273 (2d Cir. 2006) ............................................... 14

*Urbont v. Sony Music Entm't*,
  831 F.3d 80 (2d Cir. 2016) ................................................ 19

*Wolters Kluwer Fin. Servs. v. Scivantage*,
  564 F.3d 110 (2d Cir. 2009) .............................................. 10

## **Statutes**

17 U.S.C. § 410(c) ..................................................................... 19

17 U.S.C. § 411(a) ..................................................................... 20

28 U.S.C. § 1927 ................................................................... 7, 16

v

## **Rules**

Fed. R. of Civ. P. 16(f)................................................................................... 7

## **Other Authorities**

Shyamkrishna Balganesh, *Copyright Infringement Markets*,
   113 COLUMN. L. REV. 2277 (2013)...................................................................... 20

Appellants Richard Liebowitz and Liebowitz Law Firm ("LLF")

(collectively, "Appellants") respectfully request that this Court issue a stay pending

appeal as to the enforcement of sanctions three, four, five, and six imposed by the

District Court in its June 26, 2020 Opinion and Order.  *See* Declaration of Kevin

Grossinger ("Suppl. Decl.") Ex. B (the "Opinion").  Appellants further request an

interim stay pending this Court's determination of Appellants' motion because the

Opinion requires Appellants to comply with certain conditions starting July 27,

2020.

## PRELIMINARY STATEMENT

The District Court imposed an extraordinary set of non-monetary sanctions

upon Appellants that threaten to effectively end their practice of law for a year.

This Court should stay those sanctions pending appeal.  Appellants meet each of

the requirements for a stay: they will suffer irreparable harm absent a stay, "serious

questions" on the merits exist, a stay will not harm Defendant Bandshell, and a

stay is in the public interest.  Absent a stay, Appellants will largely lose the ability

to seek meaningful appellate review of the District Court's extraordinary order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Mr. Leibowitz and LLF's Practice

Mr. Liebowitz was admitted to practice in 2015.  Suppl. Decl. Ex. AB

("Liebowitz Decl.") ¶ 3.  Since then, he has championed small-dollar claims (on a

contingency basis) on behalf of artists whose copyrights otherwise could have gone

unprotected, given the limited nature of their potential recovery and high cost of litigation.  *Id.* ¶¶ 4–5.

Mr. Liebowitz started LLF even though he had no experience or training in running a legal practice.  *Id.* ¶ 4.  Mr. Liebowitz has represented over 1,200 clients in at least 2,500 individual federal lawsuits.  *Id.* ¶¶ 7–8.  One of Appellants' largest sources of business is word of mouth.  *Id.* ¶ 9.  Appellants' cases often settle, as Mr. Liebowitz estimates, in the low thousands of dollars.  *Id.* ¶ 6.  Higher costs, or reduction to the settlement value of Appellants' cases, could make claims they currently pursue impractical.  *Id.* ¶¶ 5, 10–11.  Such harm to Appellants' practice also would harm their clients, with their otherwise unmet needs.  *Id.* ¶¶ 4.

### B.  The Proceedings Below

This action involves a claim for damages stemming from infringement of Plaintiff Arthur Usherson's copyright to a photograph of the musicians Bob Dylan and Leon Redbone (the "Photograph") taken at a 1972 festival.  The Complaint below alleged that the Photograph was registered with the U.S. Copyright Office under registration number VAu 1-080-046 (the "046 Registration"), and that Defendant published the Photograph in violation of the Copyright Act.  Suppl. Decl. Ex. F ¶¶ 9–11.

On July 14, 2019, this District Court referred the case to mediation, and set a pretrial conference for October 10, 2019.  *Id.* Ex. G.  Subsequently, the District

Court adjourned that conference to November 14, 2019, and ordered the parties to "conduct the in-person mediation no later than October 31, 2019." *Id.* Ex. A (Dkt. 13). The mediation went forward that day; Mr. Liebowitz's associate James Freeman appeared, and Mr. Usherson appeared via telephone. *Id.* Ex. B ("Op.") 5; *Id.* Ex. Z, at 105–06.

On November 6, 2019, Defendant moved for sanctions against Mr. Usherson and Appellants, primarily on the basis that the failure of Messrs. Usherson and Liebowitz to appear at the mediation in person had violated the District Court's order. *Id.* Exs. H–J. At the November 14, 2019 conference, Defendant raised the additional possibility that the Photograph had been part of a later registration rather than the 046 Registration; Mr. Liebowitz responded that he would "have to see what [his] office did, but this is the correct registration." *Id.* Ex. U, at 3–4.

A day later, the District Court ordered the parties to address Defendant's sanctions motion. *Id.* Ex. K, at 6. On November 18, 2020, Appellants filed a memorandum of law in opposition arguing that Mr. Usherson's telephone appearance substantially complied with the Local Rules and common practice, and that the mediator had granted Mr. Usherson permission to appear remotely and for Mr. Freeman to attend in place of Mr. Liebowitz. *Id.* Ex. L, at 3–4; *id.* Ex. M, ¶¶ 12–13.

After further submissions, on December 17, 2019, the District Court set an evidentiary hearing on sanctions for January 8, 2020 (the "Hearing"). *Id.* Ex. O. On December 18, 2019, the parties settled the case and thereafter filed a stipulation of dismissal, which the District Court so-ordered on December 20, 2019. *Id.* Ex. Q. The District Court further directed that it "retains jurisdiction to adjudicate Defendant's pending motion for sanctions," *id.*, and that the Hearing would proceed as planned, *id.* Ex. P.

During the Hearing, the District Court heard testimony from Mr. Liebowitz, counsel for Defendant, and the mediator. As to the issue of whether Mr. Usherson had the mediator's permission to appear by telephone, Mr. Liebowitz's and the mediator's recollections differed. *Compare Id.* Ex. Z ("Hearing Tr.") 7–8, 21–22, 38 (Mr. Liebowitz's testimony that he had received permission) *with id.* at 100 (mediator's testimony stating he had not).

The testimony at the Hearing, pursuant to the District Court's order, focused solely on the issues of Messrs. Liebowitz's and Usherson's personal appearances at the mediation. Hearing. Tr. 2–3.[1] Nevertheless, in summation, counsel for Defendant advised the District Court of "one last fact," namely, Defendant's

---

[1] Much of the testimony at the Hearing concerned the issue whether Mr. Liebowitz had permission from the mediator to send Mr. Freeman to the mediation in his stead, an issue the District Court later concluded was too "muddled" to make factual findings as to bad faith by clear and convincing evidence. Op. 30 n.3.

allegation—and submission of related evidence—that the Photograph had not been part of the 046 Registration (as alleged in the Complaint). *Id.* at 127–28. Appellants responded that they had not "seen the registration issue" because they relied on "Mr. Usherson's representation that the [P]hotograph" was part of the 046 Registration. *Id.* at 139–41.

Following the Hearing, in accordance with the District Court's order, Suppl. Decl. Ex. R, on January 17, 2020, Appellants filed a letter that acknowledged their mistake, but explained that Mr. Usherson had in fact registered the Photograph, just under a different registration (the "272 Registration") that was "effectuated . . . after this lawsuit was filed." *Id.* Ex. S, at 1. Defendant's response argued that Appellants had long known the Photograph was not contained within the 046 Registration alleged in the Complaint. *Id.* Ex. T, at 1.

Pursuant to a subsequent court order, Suppl. Decl. Ex. V, Messrs. Liebowitz, Freeman, and Usherson filed declarations explaining the circumstances and discovery of their mistake. In his declaration, Mr. Liebowitz stated that—since the Hearing—he had learned that Zachary Cuff, an administrative employee of LLF, had been told in February 2019 by Mr. Usherson that the Photograph was part of the 046 Registration and had erroneously recorded the same in LLF's case-tracking systems. *Id.* Ex. X ¶¶ 4–8. Mr. Liebowitz explained that he had relied on this internal note in drafting the Complaint. *Id.* ¶ 10. Mr. Liebowitz also explained

5

that he played no role in the Photograph's subsequent registration in the 272 Registration, which took place at Mr. Usherson's request, and was handled as a routine matter by LLF's staff. *Id*. ¶¶ 13–14. Mr. Liebowitz also confirmed that he was not aware of this error at the November 14, 2019 conference. *Id*. ¶ 17.

Mr. Usherson's declaration corroborated Mr. Liebowitz's account. Mr. Usherson explained that in 2011 he had personally registered, as part of the 046 Registration, a series of photographs he took at a 1972 music festival portraying Bob Dylan and Leon Redbone. Suppl. Decl. Ex. W ¶¶ 3–4. Mr. Usherson also explained that shortly after he retained Appellants in early 2019, he shared with Mr. Cuff several instances of what he believed to be infringements of his copyrights, including a use of the Photograph. *Id*. ¶¶ 5–7. As part of these exchanges, Mr. Cuff asked Mr. Usherson to confirm the Photograph was registered. *Id*. ¶ 8. Mr. Usherson stated that he confirmed to Mr. Cuff that the Photograph was registered under the 046 Registration, and further mailed Mr. Cuff a CD containing all photographs associated with the 046 Registration. *Id*. ¶¶ 8–9.

Months later, Mr. Usherson affirmed, he alerted Mr. Liebowitz and Mr. Cuff to what he believed to be Defendant's infringing use of the Photograph, which at that time Mr. Usherson still believed to be part of the 046 Registration. *Id*. ¶¶ 10–11, 13. This infringement was the basis for the Complaint. *Id.* ¶ 12. Mr. Usherson also explained that, because he understood his photographs of the 1972 festival to

6

be targets for infringement, sometime after filing the Complaint, he asked Mr. Cuff to register an additional 30 photographs of the festival (which included the Photograph).  *Id*. ¶¶ 16–17.  Mr. Usherson affirmed that he had, until shortly before making his declaration, consistently believed the Photograph had been registered in 2011 in the 046 Registration.  *Id*. ¶ 19.  Mr. Usherson attributed this error to the similarities between the Photograph and other photographs that were part of the 046 Registration.  *Id*. ¶ 20; Suppl Decl. Ex. Y.

On June 26, 2020, the District Court issued its Opinion, finding that clear and convincing evidence supported three findings: (1) that Appellants violated multiple court orders; (2) that Mr. Liebowitz misrepresented to the District Court whether the mediator had granted Mr. Usherson permission to appear by phone; and (3) that Appellants falsely alleged copyright registration of the Photograph, and failed to reasonably investigate the registration of that Photograph.  Op. 25. On this basis, the District Court imposed a set of monetary and non-monetary sanctions upon both Appellants, relying upon three sources of legal authority: Rule 16(f) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the District Court's inherent authority.  Op. 22–24, 54.

As part of its non-monetary sanctions, the District Court required: that, within thirty days (July 27, 2020), Appellants serve a copy of the Opinion on all of their clients (Sanction 3), and file a copy of the Opinion in all of their pending

cases (Sanction 4); that, in any action initiated through June 26, 2021, Appellants file a copy of the Opinion within two days of initiating the case (Sanction 5); and that, in any copyright infringement action initiated through June 26, 2021, Appellants file as an exhibit to the complaint a copy of the deposit files maintained by the U.S. Copyright Office reflecting prior registration of the relevant copyrighted work (Sanction 6).  Op. 54.

On July 20, 2020, Appellants filed a timely notice of appeal in this Court and moved in the District Court for a stay pending appeal as well as an interim stay to permit this Court to consider a stay motion (if necessary).  Suppl. Decl. Exs. C–D.  On July 22, 2020, the District Court—before Defendant had even responded—denied the motion for a stay pending appeal.

The District Court also denied Appellants' request for an interim stay so that this Court could consider a stay application.  In so doing, the District Court characterized Appellants' stay motion—filed a full week before the sanctions at issue would take effect—as an "eleventh-hour request," and declined to stay its sanctions for this Court's review because of so-called "dilatory conduct."  Suppl. Decl. Ex. E, at 2–3, 5–6, 14.  But Appellants were not in any way "dilatory."  Over the course of the three weeks after the District Court imposed sanctions—a period that included the July 4 holiday and that took place amidst the Covid-19 pandemic, which has led many courts in this Circuit to show significant flexibility with

respect to deadlines—Appellants sought and retained outside counsel who evaluated the extensive record, prepared a detailed brief, including substantive research on and discussion of the merits on appeal, obtained and reviewed two factual declarations in support of that stay motion, and still filed that motion a full week before the District Court's sanctions would take effect.

## **ARGUMENT**

This Court should grant Appellants a stay pending appeal. Courts consider four factors: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Bd. of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (citations and quotation marks omitted). The irreparable harm and possibility of success factors "are the most critical," *Nken v. Holder*, 556 U.S. 418, 434 (2009), and are treated "somewhat like a sliding scale," *Thapa v. Gonzalez*, 460 F.3d 323, 334 (2d Cir. 2006); that is, "more of one excuses less of the other," *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (citation and quotation marks omitted).

## I.     **Standard of Review**

"A district court's imposition of sanctions for misconduct is reviewed for abuse of discretion." *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014)

(citation omitted).  Because in imposing sanctions "the district court [acts as] accuser, fact finder[,] and sentencing judge all in one, . . . review is more exacting than under the ordinary abuse-of-discretion standard."  *Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009) (citation and quotation marks omitted).

## II.     The Non-Monetary Sanctions Irreparably Will Harm Appellants Because The Sanctions Will Cause Severe Economic And Reputational Damage To Appellants' Law Practice.

Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied."  *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

The District Court's non-monetary sanctions are extraordinarily broad in their scope and severe in their effect.  If the non-monetary sanctions are enforced before this Court considers Appellants' appeal, Appellants will suffer irreparable reputational and economic harm to their law practice that cannot be undone even if the appeal is successful.  Absent a stay pending appeal, therefore, their right to appeal may lose all practical value.

Sanctions 3, 4, and 5 require Appellants to serve a copy of the Opinion— which discusses at length and in detail Appellants' shortcomings in this case and in others—on current and future clients, as well as in current and future actions, on a

10

nationwide basis. These sanctions are likely to have the effect of undermining Appellants' relationships with its current and future clients and, beyond that, chilling Appellants' relationships with courts across the country, also to the prejudice of Appellants and their clients. Liebowitz Decl. ¶ 11; *see United States v. Am. Express Co.*, No. 10-CV-4496, 2015 WL 13735045, at *6 (E.D.N.Y. May 19, 2015) (collecting cases in which "loss of market share and goodwill" were evidence of irreparable harm). Sanctions 3, 4, and 5 amount to a nationwide scarlet letter on Appellants. These sanctions place Mr. Liebowitz in an impossible position: he must either not initiate cases to avoid having to file the Opinion, or continue to initiate cases, file the Opinion in such cases, and thereby risk placing his clients in a negative light by virtue of their association with Mr. Liebowitz.

Further, Sanction 6 will impose significant monetary and time-related burdens on Appellants, as well as their future clients. Ordering a deposit copy of the copyrighted work from the U.S. Copyright Office has cost Mr. Liebowitz between $200 and $1,200, and deposit copies often are not delivered for several months—a time period which has been further lengthened during the current pandemic. Liebowitz Decl. ¶ 10. Given the nature of Appellants' practice, which relies on a high volume of cases to make it economically feasible to provide legal services in cases with small potential recoveries, the deposit-copy requirement

could render the filing of many infringement actions financially untenable. *Id.* ¶¶ 5–7, 10; Suppl. Decl. Ex. AC ("Cotler Decl.") ¶¶ 3–4; Hearing Tr. 139.

Sanction 6 already is affecting Appellants' practice. Liebowitz Decl. ¶ 10. On June 30, 2020, in another action, Magistrate Judge Cave, relying on the District Court's Opinion, directed Mr. Liebowitz to file a deposit copy of the work at issue by July 8, 2020. *Krieger v. Alison Lou LLC*, No. 20-CV-2628, Dkt. 17, at 2–3 (S.D.N.Y. June 30, 2020). Mr. Liebowitz sought modification of the order, explaining that timely compliance would be impossible given the processing time required to obtain a deposit copy. *Id.* at Dkt. 19. Judge Cave denied modification. *Id.* at Dkt. 21.

In denying Appellants' stay application, the District Court yesterday modified Sanction 6 to enable Appellants to file an affidavit making certain representations in lieu of a deposit copy in cases in which the statute of limitations would run if deposit copies did not timely arrive, Denial Or. 11–12 n.7, 14, thereby implicitly acknowledging at least some degree of harm that would have flowed from Sanction 6 as originally imposed, and illustrating the need for more exacting appellate scrutiny.[2]

---

[2] Sanction 6 should, at minimum, be further modified to require that, where LLF (and not its client) files the copyright registration of the work at issue, only an affirmation confirming the same need be filed with the complaint (rather than a deposit copy obtained from the Copyright Office).

12

In otherwise rejecting Appellants' assertions of irreparable harm, the District Court suggested that, due to the negative publicity of Appellants following its Opinion, "[g]ranting a stay would not undo any [reputational] damage." *Id.* But any harm caused by the of-the-moment news coverage is an order of magnitude less than the harm caused by sanctions requiring Appellants deliver the District Court's Opinion to every one of their clients and courts around the country over a full year.

Because there is a "substantial chance" that, absent a stay pending appeal, Appellants "cannot be returned to the positions they previously occupied," *Brenntag*, 175 F.3d at 249, this factor strongly favors a stay.

III.     **"Serious Questions" Exist As To Whether The District Court's Factual Findings And Legal Conclusions Were An Abuse Of Discretion.**

Because Appellants will suffer severe and irreparable harm if a stay pending appeal is not granted, they need only demonstrate that "there are sufficiently serious questions going to the merits to make them a fair ground for litigation" and that the "balance of hardships tip[s] decidedly" in their favor. *Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). "The 'serious questions' standard permits a . . . [stay] in situations where [the Court] cannot determine with certainty that the moving party is more likely than not to prevail on the merits . . . , but where the costs outweigh the benefits of not granting the . . . [stay]." *Id.*

13

**1. A "serious question" exists as to whether the Court's factual findings were supported by clear and convincing evidence.**

The record in this case presents a "serious question," *Citigroup*, 598 F.3d at 35, whether the District Court abused its discretion in its factual findings.

With respect to the second ground for sanctions, the District Court found "by clear and convincing evidence" that Appellants' representations that the mediator granted Mr. Usherson permission to participate in the mediation by phone "were false and made in bad faith." Op. 29–30, 35. But the primary evidence the District Court relied on for this point was the mediator's testimony (by declaration for direct, live for cross) that Mr. Liebowitz did not ask for such permission, which Mr. Liebowitz denied. Op. 30; Hearing Tr. 100–01; Suppl. Decl. Ex. N ¶ 7; *id.* Ex. P. The other evidence the District Court cited to corroborate the mediator's testimony was equivocal at best, and the testimony of a single witness does not support the finding. *Cf. United States v. Stewart*, 433 F.3d 273, 315 (2d Cir. 2006) ("[A] conviction [for perjury] may not be obtained solely on the uncorroborated oath of one witness." (citation and quotation marks omitted)).

The District Court, in its Denial Order, emphasized its sanctions "were based in large part on [its] credibility assessments, following a full-blown evidentiary hearing, of the Mediator's and Mr. Liebowitz's testimony." Op. 7. That "full-blown" hearing, however, did not include testimony from Mr. Usherson (the person whose appearance was in question). Moreover, the District Court's

14

"credibility assessment[]" with respect to the mediator—an assessment the District Court claims is owed "particularly strong deference," Denial Or. 7—was utterly conclusory, limited to one sentence referring to the mediator's "demeanor" and "his lack of any stake in this matter." Op. 30. The District Court's "lack of any stake" conclusion was itself deeply flawed, where the mediator's testimony covered his own past compliance with the relevant rules, Hearing Tr. 90–122, and thus put at "stake" the mediator's future employment by the court.

With respect to the third ground for sanctions—the District Court's conclusion that Mr. Liebowitz acted in bad faith by falsely alleging in the Complaint that the Photograph was registered—a serious question exists whether the District Court abused its discretion. As described above, the record makes clear that Mr. Usherson himself believed that the photograph at issue was part of the 046 Registration until after a deposit copy was obtained. Suppl. Decl. Exs. W–Y; Hearing Tr. 127–28, 140–41.

The District Court found it "hard to believe" that Mr. Liebowitz was unaware that the Photograph had not been timely registered, and "more plausible—indeed likely" that Mr. Liebowitz instead sought to conceal the problem with the Complaint. Op. 41; *see also* Denial Or. 8. But there is no clear and convincing evidence that Mr. Liebowitz in fact initiated this action knowing the Photograph was unregistered, or discovered this error prior to the Hearing. No evidence as to

15

Mr. Liebowitz or other LLF employees' knowledge at the time of filing was presented at the Hearing, which focused on the mediation issue. Mr. Usherson's statement that he did not know that the Photograph was not registered until January 2020, Suppl. Decl. Ex. W ¶¶ 11–15, 19–20, is unrebutted. Given the photographer's own confusion as to whether the Photograph was within the timely 046 Registration, it stands to reason that Appellants also did not know on filing that the Photograph was unregistered. Even if the District Court believed that Appellants "should have known" they might be mistaken after the November 14, 2019 conference, Denial Op. 8, no clear and convincing record evidence established they did know.

### 2. A "serious question" exists as to whether the District Court abused its discretion by imposing sanctions beyond what was reasonably necessary for deterrence.

The non-monetary sanctions imposed by the District Court are extraordinarily broad in their nationwide geographic scope and unusually severe in their substantive impact. This Court has warned that, because the power to sanction "carries with it the potential for abuse," statutes authorizing sanctions "should be construed narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Mone v. Comm'r*, 774 F.2d 570, 574 (2d Cir. 1985) (discussing 28 U.S.C. § 1927) (citation and quotation marks omitted). The Supreme Court has underlined that the inherent

power to sanction "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

The geographic scope and substantive impact of the sanctions present the serious question whether the District Court acted with "restraint and discretion" and went beyond ensuring only "the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43–44. There is likewise a serious question as to whether the sanctions imposed effectively circumvent the Grievance Committee and other formal disciplinary bodies.

Even in cases of egregious conduct, courts have not imposed sanctions of the geographic scale and substantive impact imposed here. For example, in *Enmon v. Prospect Capital Corp.*, a law firm made numerous material misrepresentations and frivolous arguments in connection with several motions and other filings. 675 F.3d 138, 144–47 (2d Cir. 2012). This Court affirmed the aspect of the sanctions directing the law firm to "submit [its] sanctions order . . . with any future *pro hac vice* applications in the Southern District of New York." *Id.* at 148. Other courts have imposed similarly delimited sanctions even when faced with more egregious conduct. *See, e.g.*, *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73–74 (2d Cir. 2008) (affirming sanction limited to dismissal where plaintiffs submitted fraudulent document to support claim and gave false testimony).

In the small number of cases courts have imposed nationwide sanctions, such decisions appear generally to involve parties who either repetitively litigated the specific matter despite contrary authority, or made outrageous and repeated use of the court system to harass apparent personal enemies. *See, e.g.*, *In re Hartford Textile Corp.*, 681 F.2d 895, 896–97 (2d Cir. 1982); *Hammer v. Amazon.com*, 392 F. Supp. 2d 423, 433 (E.D.N.Y. 2005); *In re Martin-Trigona*, 592 F. Supp. 1566, 1569–70 (D. Conn. 1984), *aff'd*, 763 F.2d 140 (2d Cir. 1985). The District Court stated it believes these cases are comparable, and that it "did not go as far as it could have," Denial Or. 10, implying it could properly have required Appellants to seek leave before filing any future action or barred them categorically, but Appellants' practice is not the incessant re-litigation or malicious claims at issue in those cases.

In keeping with the principle of proportionality, courts have modified or vacated sanctions that went beyond the scope of the conduct at issue or impermissibly limited access to the courts. For example, in *Polur v. Raffe*, the district court had prohibited a litigant "from filing further suits in the federal courts against [the defendants] relating to the matters at bar." 912 F.2d 52, 57 (2d Cir. 1990). This Court, reasoning that the "parameters of the injunction [were] not adequately defined," narrowed the sanction to only "enjoin [the litigant] from filing without leave . . . further suits in the federal district courts of New York

18

against [the defendants]," so as to ensure that the litigant was not "den[ied] . . . complete access to the New York federal district courts." *See also Enmon*, 675 F.3d at 148.

The District Court's extraordinarily severe sanctions were not "the least severe sanctions necessary to achieve the goal [of deterrence]." *Manti's Transp. v. Kenner*, No. 13-CV-6546, 2015 WL 1915004, at *14 (E.D.N.Y. Apr. 27, 2015) (citation and quotation marks omitted).

### 3. A "serious question" exists as to whether the District Court abused its discretion by altering the statutory presumption of validity in copyright cases.

A serious question exists as to whether the District Court abused its discretion by imposing Sanction 6, specifically, which alters the statutory presumption of validity in copyright cases. Under federal law, "the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). In keeping with this presumption, "[a]lthough the plaintiff bears the burden of proving copyright ownership, [once registration is shown] the party challenging the validity of the copyright registration has the burden to prove the contrary." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 89 (2d Cir. 2016) (quotation marks and alterations omitted). By requiring Appellants to file a deposit copy in new actions, the District Court improperly overrode this statutory presumption. Appellants do not contest that registration is a "condition

19

precedent" to a copyright claim. Denial Or. 11 (citing 17 U.S.C. § 411(a)). Rather, Appellants challenge the District Court's attempt to gainsay Congress's judgment of the evidence of registration required.

## IV.     A Stay Will Not Harm Defendant Bandshell.

Defendant—which has settled Mr. Usherson's claim—will suffer no harm from a stay. Even the District Court "agree[d] . . . that a stay would not cause substantial injury to" Bandshell. Denial Or. 12 n.8.

## V.     A Stay Is In The Public Interest Because It Will Permit Continued Vindication Of The Rights Of Copyright Plaintiffs Who Have Limited Alternatives For Recovery.

There is a strong public interest in the continuation of Appellants' law practice, and in giving Appellants the opportunity to seek meaningful appellate review before their law practice is severely compromised. Appellants have carved out a successful practice that provides a realistic prospect of recovery to copyright plaintiffs in relatively low-dollar infringement cases that otherwise could go unfiled. Liebowitz Decl. ¶¶ 5–8; Cotler Decl. ¶¶ 3–4; *see, e.g.*, *DC Comics v. Pac. Pictures Corp.,* No. 10-CV-3633, 2013 WL 1389960, at *5 (C.D. Cal. Apr. 4, 2013) (noting "concern that copyright holders will not prosecute infringement actions"); Shyamkrishna Balganesh, *Copyright Infringement Markets*, 113 COLUM. L. REV. 2277, 2288 (2013) ("[C]opyright litigation remains unaffordable to a large number of litigants.").

The District Court found a competing "strong public interest in shining a light" on Appellants, Denial Or. 12, yet simultaneously it asserted that its Opinion imposing sanctions "has already received fairly extensive publicity," *id.* at 4, thus belying the need for its sanctions to take immediate effect. The District Court also criticized as "unsubstantiated" the claim that Mr. Liebowitz is one of few attorneys who represent working artists in small-dollar claims, *id.* at 12–13, yet Appellants have put forward evidence that Mr. Liebowitz successfully serves otherwise unmet needs, Cotler Decl. ¶¶ 3–4.

## CONCLUSION

Appellants respectfully request that this Court issue a stay pending appeal as to the enforcement of non-monetary sanctions three, four, five, and six. Appellants further request an interim stay pending this Court's determination of Appellants' motion.

Dated:  July 23, 2020
    New York, N.Y.

          /s/ Brian A. Jacobs

          MORVILLO ABRAMOWITZ GRAND IASON
           & ANELLO P.C.
          565 Fifth Avenue
          New York, New York 10017
          Tel: (212) 856-9600
          Fax: (212) 856-9494
          bjacobs@maglaw.com

          *Counsel for Richard Liebowitz and*
          *Liebowitz Law Firm, PLLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1. Exclusive of the exempted portions of the motion, as provided in Fed. R. App. P. 32(f), the motion contains 4,952 words.

2. The motion has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: New York, New York
      July 23, 2020

By: _____/s/ Brian A. Jacobs_____
     Brian A. Jacobs