**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

ARTHUR USHERSON,

          Plaintiff,

RICHARD P. LIEBOWITZ,
LIEBOWITZ LAW FIRM, PLLC,

          Miscellaneous-Appellants,

          v.

BANDSHELL ARTIST
MANAGEMENT,

          Defendant-Appellee.

No. 20-2304

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

MORVILLO ABRAMOWITZ GRAND
  IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

ARGUMENT ..........................................................................................................2

    I.    Appellants Face Irreparable Harm From Enforcement Of Sanctions Five And Six. ........................................................................................................2

    II.   Serious Questions As To The Merits Of The District Court's Order Require Meaningful Appellate Review. ......................................................................6

    III.  A Stay Will Not Harm Defendant Bandshell. .................................................11

    IV.  The Public Interest Favors a Stay. ..................................................................11

CONCLUSION .....................................................................................................12

CERTIFICATE OF COMPLIANCE ....................................................................13

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Am. Fin. Servs. Assn. v. Burke*,
 169 F. Supp. 2d 62 (D. Conn. 2001)......................................................................5

*Blackman v. Hustler Magazine, Inc.*,
 800 F.2d 1160 (D.C. Cir. 1986)..............................................................................8

*Brenntag Int'l Chem., Inc. v. Bank of India*,
 175 F.3d 245 (2d Cir. 1999) ............................................................................. 2, 6

*Carol Barnhart Inc. v. Economy Cover Corp.*,
 773 F.2d 411 (2d Cir. 1985) ................................................................................10

*Chicoineau v. Bonnier Corp.*,
 No. 18-CV-3264, 2018 WL 6039387 (S.D.N.Y. Oct. 16, 2018) ..........................8

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
 598 F.3d 30 (2d Cir. 2010) ....................................................................................6

*Goodman v. Univ. Beauty Prods. Inc.*,
 No. 17-CV-1716, 2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018) ...........................8

*Masi v. Moguldom Media Grp. LLC*,
 No. 18-CV-2402, 2019 WL 3287819 (S.D.N.Y. July 22, 2019) ..........................8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn*,
 73 F. Supp. 2d 425 (S.D.N.Y. 1999) .....................................................................3

*Merritt v. United States*,
 960 F.2d 15 (2d Cir. 1992) ....................................................................................9

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
 No. 11-CV-726, 2012 WL 3306600 (E.D.N.Y. June 13, 2012), *adopted by* 2012
  WL 3306575 (E.D.N.Y. Aug. 13, 2012) ...........................................................8

*United States v. Am. Express Co.*,
 No. 10-CV-4496, 2015 WL 13735045 (E.D.N.Y. May 19, 2015) ........................3

*Urbont v. Sony Music Entm't*,
  831 F.3d 80 (2d Cir. 2016) .................................................................................. 8

## **Statutes**

17 U.S.C. § 410(c) ............................................................................................... 7

On July 23, 2020, Appellants Richard Liebowitz and Liebowitz Law Firm ("LLF") (collectively, "Appellants") moved for a stay pending appeal (the "Motion") (Dkt. 16-1–16-3) of sanctions three, four, five, and six imposed by the District Court's Opinion and Order dated June 26, 2020. *See* Declaration of Kevin Grossinger ("Suppl. Decl.") (Dkt. 16-3) Ex. B (the "Opinion"). Appellants also requested an interim stay while that Motion was pending because sanctions three and four required compliance by July 27, 2020. On July 27, 2020, this Court denied Appellants' motion for an interim stay.

Notwithstanding this Court's denial of an interim stay, Appellants still request that this Court stay the District Court's non-monetary sanctions—in particular, sanctions five and six—pending resolution of the merits of Appellants' appeal.[1]

Sanction five requires that Appellants file the District Court's Opinion in new cases for a year, and sanction six requires that Appellants attach a copy of the deposit file from the U.S. Copyright Office to any complaint for a year. As set forth in Appellants' Motion, absent a stay, Appellants' right to appeal these extraordinary, far-reaching, and unprecedented sanctions will lose all practical

---

[1] Although sanctions three and four entered into effect on July 27, 2020, Appellants continue to respectfully request that this Court stay enforcement of those sanctions alongside sanctions five and six, to ensure that no disputes regarding their scope and interpretation arise pending resolution of the merits of Appellants' appeal.

1

value. These sanctions will cause irreparable harm to Appellants' law practice, serious questions exist on the merits, a stay will not harm any party, and a stay is in the public interest.

On July 23, 2020, Defendant-Appellee Bandshell filed a brief opposing a stay ("Bandshell Br.") (Dkt. 17), but nothing in Bandshell's brief alters the conclusion that Appellants meet the criteria for a stay. Although Bandshell's counsel submitted the brief on behalf of his client, the brief utterly fails to explain how the position it asserts serves Bandshell's interests. Bandshell's brief does not even refer to Bandshell at all outside of the corporate disclosure statement and the ritual invocation in the brief's first sentence. In the absence of any explanation for what Bandshell has at stake here, Bandshell's brief contains little but *ad hominem* attacks on Appellants and quotations from the most pejorative lines of District Court's opinions, with precious little analysis or genuine discussion of the merits of the arguments set out in Appellants' Motion. To the extent this Court considers Bandshell's brief at all, the Court should reject its arguments.

## ARGUMENT

I. **Appellants Face Irreparable Harm From Enforcement Of Sanctions Five And Six.**

Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v.*

2

*Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Enforcement of sanctions five and six will cause irreparable harm to Appellants.

Sanction five requires Appellants, in all actions initiated for the next year, to file a copy of the Opinion within two days of filing a complaint. (Opinion 54.) This sanction perpetuates the severe reputational and economic harm the Opinion inflicts on Appellants: if Appellants are to continue to practice law and defend their clients' rights, they must commit to tainting themselves and their clients in the eyes of every court in which they file during the crucial early stages of a case. *See United States v. Am. Express Co.*, No. 10-CV-4496, 2015 WL 13735045, at *6 (E.D.N.Y. May 19, 2015) (collecting cases in which "loss of market share and goodwill" were evidence of irreparable harm); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn*, 73 F. Supp. 2d 425, 428 (S.D.N.Y. 1999) (finding irreparable harm where conduct increasingly would "threaten the lifeblood of [movant's] business" (citation and quotation marks omitted)).

Bandshell argues that this sanction will not cause irreparable harm because the Opinion is "a public document" and "Appellants do not and cannot deny the sanctions [Opinion] accurately recounts the facts of this case as well as Mr. Liebowitz's troubled history in federal courts around the country." (Bandshell Br. 4.) Bandshell's argument ignores the contents of Appellants' Motion. Appellants explained several examples of "clear error" in Judge Furman's factual findings.

3

(*See* Motion (Dkt. 16-2) at 13–16.)[2] In addition, far from neutrally reciting the "facts of this case" and Mr. Liebowitz's other cases, as Bandshell claims, the District Court's Opinion has a clear slant: For example, on its first page, the Opinion says, approvingly, that Mr. Liebowitz "has been called a copyright *troll*" (Opinion 1 (quotation marks omitted; emphasis added), thereby immediately tarring Mr. Liebowitz with a pejorative word, "troll," with no generally accepted legal meaning, and that is more suitable to a blog post than a judicial opinion.

For another example, the Opinion includes an appendix listing 40 decisions that the District Court describes as examples of cases in which Mr. Liebowitz's conduct led judges "to chastise him, impose sanctions on him, *and* require his clients to post bonds to cover future adverse awards of attorney's fees and costs resulting from his behavior." (Opinion 45 (emphasis added); *id.* at App'x.) Contrary to the District Court's exaggerated description (which uses the conjunctive word "and", suggesting that all listed decisions involved sanctions), the listed decisions did not all involve sanctions and bonds to cover fees. Indeed, in at least two listed decisions, the district court *denied* a sanctions motion. (*Id.* at App'x (listed cases 29 and 30).) It will cause irreparable harm for Appellants to

---

[2] Bandshell also contends that Appellants "completely misstate and ignore the many factual reasons for the [D]istrict [C]ourt's [Opinion]" and "misstate[] the basis for the [Opinion]." (Bandshell Br. 5.) Bandshell fails to specify a single purported "misstatement."

4

have to share this Opinion with clients for a year, and without a stay, Appellants' right to appeal will lose all practical value.

Sanction six—which as originally imposed requires that Appellants attach to any new complaint a deposit copy of the copyrighted work at issue—promises equally great and irreparable harm. Bandshell argues that Appellants "cannot possibly claim irreparable harm" now that the District Court has modified sanction six to allow an alternative sanction in potentially time-barred cases (Bandshell Br. 7), but this argument ignores the central harm that sanction six inflicts.[3] Ordering a deposit copy from the Copyright Office has cost Appellants up to $1,200 in a single case. (Suppl. Decl. Ex. AB (July 20, 2020 Declaration of Richard Liebowitz) ¶ 10.) Given the modest potential recoveries in most actions that Appellants' clients bring, even this moderate upfront cost may cause irreparable harm by causing Appellants and their clients to forgo cases they otherwise could bring. (*Id.* ¶¶ 5–7, 10.) *See Am. Fin. Servs. Assn. v. Burke*, 169 F. Supp. 2d 62, 70–71 (D. Conn. 2001) (finding irreparable harm where enforcement of challenged statute would increase party's litigation costs and cause it to forego new business,

---

[3] In implicit recognition of sanction six's overbreadth, the District Court modified sanction six to enable Appellants, where they have a good-faith belief that waiting for a deposit copy will likely cause their client's claim to become time-barred, to file, on initiating the case, an affidavit attesting that a deposit copy was ordered and will be promptly filed upon receipt. (Suppl. Decl. Ex. E ("Denial Order") 11–12 n.7, 14.) The modification, however, does not absolve Appellants of incurring the upfront cost of ordering a deposit copy for every case.

and where damages were not later reclaimable due to Eleventh Amendment immunity).

Accordingly, because sanctions five and six are causing—and will continue to cause—severe and irreparable harm to Appellants and their clients, at minimum, a "substantial chance" exists that, absent a stay pending appeal, Appellants "cannot be returned to the positions they previously occupied." *Brenntag*, 175 F.3d at 249.

## II. Serious Questions As To The Merits Of The District Court's Order Require Meaningful Appellate Review.

Appellants' Motion laid out several serious questions on the merits warranting a stay. Bandshell's Opposition argues in conclusory fashion that because Appellants did not invoke certain magic words like "success" and "merits" (which words are not required) in their briefing, Appellants cannot demonstrate the existence of a "serious question" on the merits required to obtain a stay. (Bandshell Br. 5.) To the contrary, as the District Court's own grudging modification of sanction six shows, Appellants already have in part demonstrated that the District Court's factual findings and use of its discretion raise "serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the [moving] party." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). These serious questions deserve full briefing and informed appellate review.

6

As to Appellants' position that a serious question exists regarding whether sanction six's deposit copy requirement contravenes congressional intent, Bandshell contends that it does not because "the burden is always on the copyright owner to prove that his work was indeed registered." (Bandshell Br. 6.) This argument mischaracterizes Appellants' position. Appellants recognize that it is the plaintiff's burden to show a copyright was registered. (Motion (Dkt. 16-2) at 19–20.) Appellants contest, however, the District Court's decision to impose on Appellants a higher standard of proof as to that element than Congress itself intended.

A "certificate of registration" of a copyrighted work is not the same as the "deposit copy" of a copyrighted work. Understanding this difference, Congress enacted into law a presumption that the "certificate of registration"—which is more readily available, but does not include a copy of the work registered—"*shall constitute* prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c) (emphasis added). Consistent with this presumption, copyright plaintiffs do not need to obtain or produce a deposit copy of the copyrighted work at issue in order to satisfy their burden of establishing registration.

To the contrary, as this Court has recognized, once a plaintiff puts forward that prima facie evidence of registration, "the party *challenging* the validity of the

7

copyright registration has the burden to prove the contrary." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 89 (2d Cir. 2016) (citation and quotation marks omitted; emphasis added). Pursuant to this allocation of the burden of proof, courts have granted summary judgment in favor of copyright plaintiffs where the plaintiff submitted a registration certificate accompanied by a sworn declaration and the defendant, in contesting the validity of the registration, failed to submit contrary evidence such as a deposit copy. *See Masi v. Moguldom Media Grp. LLC*, No. 18-CV-2402, 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019); *Chicoineau v. Bonnier Corp.*, No. 18-CV-3264, 2018 WL 6039387, at *2 (S.D.N.Y. Oct. 16, 2018); *Goodman v. Univ. Beauty Prods. Inc.*, No. 17-CV-1716, 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018).

These courts did not require—as sanction six does—that the plaintiff submit the deposit copy of the work at issue. By requiring that Appellants file a deposit copy upon initiation of the action, the District Court improperly altered by judicial fiat Congress's allocation of the burden of proof. *See Blackman v. Hustler Magazine, Inc.*, 800 F.2d 1160, 1163 (D.C. Cir. 1986) (stating, in interpreting burden allocation under another part of Copyright Act, that courts "are not free to temper the scheme provided by Congress" and that "Congress allocated the burdens the parties must bear"); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726, 2012 WL 3306600, at *9 n.9 (E.D.N.Y. June 13,

2012) (declining to impose burden-shifting requirement under Digital Millennium Copyright Act ("DMCA") on the ground that "Congress presumably acted intentionally in codifying the burden-shift in the Copyright Act's actual damages provision, and in omitting it from the DMCA's counterpart"), *adopted by* 2012 WL 3306575 (E.D.N.Y. Aug. 13, 2012); *cf. Merritt v. United States*, 960 F.2d 15, 18 (2d Cir. 1992) (stating, in determining allocation of burden of going forward with evidence under Administrative Procedure Act, "where, as here, congressional intent is clear, it must govern our decision").

In denying Appellants' Motion, the District Court stated that the presumption of validity "is not even remotely implicated by the Court's sanction requiring the Movants to verify and confirm that any work at issue in a new lawsuit is actually registered—which, after all, is a statutory condition precedent to even filing a copyright claim." (Denial Order 11.) The District Court's description of its own sanction is imprecise; sanction six does not merely require that Appellants "confirm that any work at issue" is "actually registered," but rather requires that Appellants do so in a particularly time-consuming and expensive way (by obtaining a deposit copy) that contravenes settled law. Neither the District Court nor Bandshell cites any precedent permitting the imposition of a sanction that effectively alters the burden of proof for every single one of an attorney's clients. To the contrary, this Court has stated that Congress enacted the presumption of

9

validity because the "plaintiff should not ordinarily be forced in the first instance to provide all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff." *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985) (quoting legislative history).

Sanction six is particularly unwarranted where a far narrower sanction could have served the goal of requiring that Appellants ensure that works in new lawsuits are "actually registered." For example, in many cases, Appellants themselves (rather than their clients) handle the registration of the work at issue, and therefore have personal knowledge of the registration. *See* Suppl. Decl. Ex. Z, at 139–40. Sanction six could have carved out such "internal" registrations from its scope, requiring only a deposit copy where the registration was handled by a client. Or, at minimum, Sanction 6 could have been narrowly tailored to require only that Appellants file an affirmation confirming that they registered the copyright, rather than requiring Appellants to pay for and obtain deposit files evidencing work that they themselves performed.

A serious question thus exists as to whether the District Court's imposition of sanction six was an abuse of discretion.

**III.     A Stay Will Not Harm Defendant Bandshell.**

As noted, despite submitting an impassioned brief opposing a stay, Bandshell fails entirely to identify any harm it will suffer from a stay (or any interest that it has whatsoever in the outcome of the appeal). Nor could it. Even the District Court acknowledged that a stay would not cause substantial injury to Bandshell. (Denial Order 12 n.8.)

**IV.     The Public Interest Favors a Stay.**

The public interest favors permitting Appellants to seek and obtain meaningful review of the District Court's extraordinary sanctions Opinion. Bandshell argues that "shining a light on the truth must be considered to be in the public interest." (Bandshell Br. 7.) Appellants concur that sharing the "truth" is in the public interest, but Bandshell goes too far in characterizing the Opinion as the absolute "truth" before that Opinion—with its pejorative language, erroneous factual findings, and doubtful legal conclusions—is thoroughly tested on appeal.

11

## **CONCLUSION**

For the reasons set forth above and consistent with the reasons set forth in the Motion, Appellants respectfully request that this Court issue a stay pending appeal as to the enforcement of non-monetary sanctions three, four, five, and six.

Dated:     July 30, 2020
               Westchester, N.Y.

/s/ Brian A. Jacobs

MORVILLO ABRAMOWITZ GRAND IASON
   & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494
bjacobs@maglaw.com

*Counsel for Richard Liebowitz and Liebowitz Law Firm, PLLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C).

1. Exclusive of the exempted portions of the motion, as provided in Fed. R. App. P. 32(f), the reply contains 2,590 words.

2. The reply has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: Westchester, New York
      July 30, 2020

By: /s/ Brian A. Jacobs
     Brian A. Jacobs