# 20-2304-cv

## United States Court of Appeals

*for the*

## Second Circuit

―――――――――♦―――――――――

ARTHUR USHERSON,

*Plaintiff,*

RICHARD P. LIEBOWITZ, LIEBOWITZ LAW FIRM, PLLC,

*Miscellaneous-Appellants,*

– v. –

BANDSHELL ARTIST MANAGEMENT,

*Defendant-Appellee.*

―――――――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
### Volume 1 of 2 (Pages JA-1 to JA-266)

| | |
|---|---|
| BRAD R. NEWBERG | ROBERT J. ANELLO |
| MCGUIREWOODS LLP | BRIAN A. JACOBS |
| *Attorneys for Defendant-Appellee* | KEVIN GROSSINGER |
| 1750 Tysons Boulevard, Suite 1800 | A. DENNIS DILLON |
| McLean, Virginia 22102 | MORVILLO ABRAMOWITZ GRAND IASON |
| (703) 712-5000 |   & ANELLO P.C. |
| | *Attorneys for Appellants* |
| | 565 Fifth Avenue |
| | New York, New York 10017 |
| | (212) 880-9600 |

i

## TABLE OF CONTENTS

| | Page |
|---|---|
| District Court Docket Entries ..................................... | JA-1 |
| Complaint, dated July 10, 2018 ................................. | JA-13 |
| Exhibit A to Complaint - Photograph............................................... | JA-17 |
| Exhibit B to Complaint - Photograph on Website ........................................ | JA-19 |
| Order Regarding Early Mediation and the Initial Pretrial Conference, dated July 15, 2019............... | JA-22 |
| Mediation Referral Order, dated July 15, 2019 ......... | JA-25 |
| Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint, dated September 25, 2019.. | JA-26 |
| Letter from Richard Liebowitz to the Honorable Jesse M. Furman, dated October 4, 2019............... | JA-32 |
| Notice of Motion for Sanctions, dated November 6, 2019 ................................................ | JA-33 |
| Memorandum of Law in Support of Defendant's Motion for Sanctions, dated November 6, 2019.... | JA-35 |
| Declaration of Brad R. Newberg in Support of Defendant's Motion for Sanctions, dated November 6, 2019 ................................................ | JA-62 |
| Exhibits to Newberg Declaration........................... | JA-73 |
| Management Plan and Scheduling Order, filed November 7, 2019 ................................................ | JA-102 |

ii

**Page**

Exhibit to Management Plan and Scheduling
Order -
Letter from Richard Liebowitz and Brad R.
Newberg to the Honorable Jesse M. Furman,
dated November 7, 2019 ........................................ JA-108

Letter from Richard Liebowitz to the Honorable
Jesse M. Furman, dated November 13, 2019......... JA-111

Management Plan and Scheduling Order, dated
November 14, 2019 ................................................ JA-114

Plaintiff's Memorandum of Law in Opposition to
Sanctions, dated November 18, 2019 .................... JA-120

Declaration of Richard Liebowitz, dated
November 18, 2019 ................................................ JA-130

Exhibit A to Liebowitz Declaration -
Email, dated September 20, 2019 .......................... JA-134

Exhibit B to Liebowitz Declaration -
Procedures of the Mediation Program, dated
June 2, 2017 ........................................................... JA-136

Declaration of James Freeman, dated
November 18, 2019 ................................................ JA-153

Declaration of Rebecca Liebowitz, dated
November 18, 2019 ................................................ JA-157

Defendant's First Amended Answer and Affirmative
Defenses to Plaintiff's Complaint, dated
November 19, 2019 ................................................ JA-160

Letter from Brad R. Newberg to the Honorable
Jesse M. Furman, dated December 4, 2019 ........... JA-168

Memorandum Opinion and Order, dated
December 9, 2019 .................................................. JA-169

iii

**Page**

Reply Memorandum of Law in Support of
Defendant's Motion for Sanctions, dated
November 25, 2019 ................................................ JA-178

Second Declaration of Brad R. Newberg in Support
Defendant's Motion for Sanctions, dated
November 25, 2019 ................................................ JA-193

Exhibit 1 to Newberg Declaration -
Excerpts of Transcript of Court Proceedings,
dated November 14, 2019 ...................................... JA-201

Exhibit 2 to Newberg Declaration -
Email, dated October 30, 2019 .............................. JA-207

Exhibit 3 to Newberg Declaration -
Emails, dated October 30, 2019 ............................. JA-209

Exhibit 4 to Newberg Declaration -
Emails, dated October 30, 2019 ............................. JA-212

Exhibit 5 to Newberg Declaration -
Emails, dated October 30, 2019 ............................. JA-215

Declaration of Mark J. McKenna in Support of
Defendant's Motion for Sanctions, dated
November 22, 2019 ................................................ JA-219

Order, dated December 11, 2019 ............................... JA-226

Letter from Richard Liebowitz to the Honorable
Jesse M. Furman, dated December 16, 2019 ......... JA-229

Order, dated December 17, 2019 ............................... JA-232

Letter from Brad R. Newberg to the Honorable
Jesse M. Furman, dated December 19, 2019 ......... JA-233

Order, dated December 20, 2019 ............................... JA-234

iv

**Page**

Stipulation of Dismissal of Civil Action with
Prejudice, dated December 20, 2019 ..................... JA-235

Transcript of Conference, dated November 14, 2019
(filed on January 6, 2020)...................................... JA-236

Order, dated January 8, 2020 ..................................... JA-266

Letter from Richard Liebowitz to the Honorable
Jesse M. Furman, dated January 13, 2020 ............. JA-267

Letter from Brad R. Newberg to the Honorable
Jesse M. Furman, dated January 15, 2020 ............. JA-271

Letter from Brad R. Newberg to the Honorable
Jesse M. Furman, dated January 17, 2020 ............. JA-274

Exhibit to Newberg Letter -
Summary of Fees and Costs Related to Mediation
and Sanctions ........................................................... JA-276

Letter from Richard Liebowitz to the Honorable
Jesse M. Furman, dated January 17, 2020 ............. JA-279

Exhibit to Liebowitz Letter -
Public Catalog........................................................... JA-282

Letter from Brad R. Newberg to the Honorable
Jesse M. Furman, dated January 18, 2020 ............. JA-285

Exhibit to Newberg Letter -
Excerpts of Transcript of Court Proceedings,
dated November 14, 2019 ...................................... JA-288

Order, dated January 24, 2020 ................................... JA-294

Affidavit of Arthur Usherson, sworn to
February 6, 2020.................................................... JA-298

Exhibit A to Usherson Affidavit -
046 Registration...................................................... JA-306

v

**Page**

Exhibit B to Usherson Affidavit -
Dylan/Redbone Photographs ................................. JA-308

Exhibit C to Usherson Affidavit -
Email, dated February 1, 2019............................. JA-314

Exhibit D to Usherson Affidavit -
Email, dated February 6, 2019............................. JA-316

Exhibit E to Usherson Affidavit -
Emails, dated February 7, 2019 ............................ JA-318

Exhibit F to Usherson Affidavit -
Label for CD1 ........................................................ JA-320

Exhibit G to Usherson Affidavit -
Email, dated June 5, 2019 .................................... JA-322

Exhibit H to Usherson Affidavit -
Label for CD2 ....................................................... JA-324

Exhibit I to Usherson Affidavit -
272 Registration .................................................... JA-326

Declaration of Richard Liebowitz, dated
February 6, 2020 .................................................... JA-329

Exhibit A to Liebowitz Declaration -
Photographs .......................................................... JA-334

Declaration of James Freeman, dated
February 7, 2020 .................................................... JA-336

Letter from Brad R. Newberg to the Honorable
Jesse M. Furman, dated February 10, 2020 ........... JA-342

Transcript of Court Proceedings, dated
January 8, 2020 (filed on February 12, 2020) ....... JA-345

Certificate of Service, dated July 6, 2020 ................. JA-491

vi

**Page**

Notice of Appeal, dated July 20, 2020 ....................... JA-492

Letter from Robert J. Anello to Ruby J. Krajick,
    filed July 20, 2020 ................................. JA-493

Proposed Order to Show Cause ................................. JA-494

Declaration of Richard Liebowitz in Support of
    Motion by Proposed Order to Show Cause for
    Stay Pending Appeal, dated July 20, 2020 ............ JA-496

Declaration of Bruce Cotler in Support of Proposed
    Order to Show Cause, dated July 19, 2020............ JA-501

Declaration of Richard Liebowitz, dated
    July 27, 2020.......................................... JA-503

Declaration of Richard Liebowitz, dated
    September 21, 2020 ................................ JA-505

Declaration of Richard Liebowitz, dated
    September 29, 2020 ................................ JA-507

Order, dated October 2, 2020.................................... JA-509

Exhibit A to Order -
Letter from David E. Hudson to the Honorable
Jesse M. Furman, dated July 28, 2020.................. JA-512

Exhibit B to Order -
Letter from Andrew P. Lycans to the Honorable
Jesse M. Furman, dated July 29, 2020.................. JA-515

Exhibit C to Order -
Emails, dated September 9, 2020 ......................... JA-518

Declaration of Richard Liebowitz, dated
    October 15, 2020 .................................... JA-523

JA-1

CLOSED,APPEAL,ECF,MEDTFR4

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:19−cv−06368−JMF

Usherson v. Bandshell Artist Management
Assigned to: Judge Jesse M. Furman
Cause: 17:101 Copyright Infringement

Date Filed: 07/10/2019
Date Terminated: 12/20/2019
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**Arthur Usherson**                     represented by **Richard Liebowitz**
                                        Liebowitz Law Firm, PLLC
                                        11 Sunrise Plaza, Suite 301
                                        Suite 305
                                        Valleystream, NY 11580
                                        516−233−1660
                                        Email: RL@LiebowitzLawFirm.com
                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bandshell Artist Management**         represented by **Brad Richard Newberg**
*TERMINATED: 12/20/2019*                McGuireWoods LLP
                                        1750 Tysons Blvd., Ste. 1800
                                        Tysons Corner, VA 22102
                                        703−712−5061
                                        Email: bnewberg@mcguirewoods.com
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Richard Liebowitz**                   represented by **Brian A. Jacobs**
                                        Morvillo, Abramowitz, Grand, Iason, &
                                        Anello P.C.
                                        565 5th Avenue
                                        New York, NY 10017
                                        212−856−9600
                                        Fax: 212−856−9494
                                        Email: bjacobs@maglaw.com
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **Robert James Anello**
                                        Morvillo, Abramowitz, Grand, Iason, &
                                        Anello P.C.
                                        565 5th Avenue
                                        New York, NY 10017
                                        212 880 9320
                                        Fax: 212 856 9494
                                        Email: ranello@maglaw.com
                                        *LEAD ATTORNEY*
                                        *ATTORNEY TO BE NOTICED*

                                        **Andrew Dennis Dillon**
                                        Morvillo Abramowitz Grand Iason &
                                        Anello PC
                                        565 Fifth Avenue
                                        New York, NY 10017

JA-2

212−880−9550
Email: ddillon@maglaw.com
*ATTORNEY TO BE NOTICED*

**Kevin Grossinger**
Morvillo Abramowitz Grand Iason &
Anello PC
565 Fifth Avenue
New York, NY 10017
212−856−9600
Email: kgrossinger@maglaw.com
*ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Liebowitz Law Firm, PLLC**    represented by  **Brian A. Jacobs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert James Anello**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Dennis Dillon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin Grossinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2019 | 1 | COMPLAINT against Bandshell Artist Management. (Filing Fee $ 400.00, Receipt Number ANYSDC−17216426)Document filed by Arthur Usherson. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Liebowitz, Richard) (Entered: 07/10/2019) |
| 07/10/2019 | 2 | REQUEST FOR ISSUANCE OF SUMMONS as to Bandshell Artist Management, re: 1 Complaint. Document filed by Arthur Usherson. (Liebowitz, Richard) (Entered: 07/10/2019) |
| 07/11/2019 | | ***NOTICE TO ATTORNEY TO ELECTRONICALLY FILE CIVIL COVER SHEET. Notice to Attorney Richard Liebowitz. Attorney must electronically file the Civil Cover Sheet. Use the event type Civil Cover Sheet found under the event list Other Documents. (jgo) (Entered: 07/11/2019) |
| 07/12/2019 | 3 | CIVIL COVER SHEET filed. (Liebowitz, Richard) (Entered: 07/12/2019) |
| 07/12/2019 | | ***NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Richard Liebowitz. The following case opening statistical information was erroneously selected/entered: Nature of Suit code 720 (Labor: Labor/Mgt. Relations);. The following correction(s) have been made to your case entry: the Nature of Suit code has been modified to 820 (Copyright);. (jgo) (Entered: 07/12/2019) |
| 07/12/2019 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above−entitled action is assigned to Judge Jesse M. Furman. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (jgo) (Entered: 07/12/2019) |

| 07/12/2019 | | Magistrate Judge Debra C. Freeman is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: http://nysd.uscourts.gov/forms.php. (jgo) (Entered: 07/12/2019) |
|---|---|---|
| 07/12/2019 | | Case Designated ECF. (jgo) (Entered: 07/12/2019) |
| 07/12/2019 | 4 | ELECTRONIC SUMMONS ISSUED as to Bandshell Artist Management. (jgo) (Entered: 07/12/2019) |
| 07/15/2019 | 5 | ORDER REGARDING EARLY MEDIATION AND THE INITIAL PRETRIAL CONFERENCE: Initial Conference set for 10/10/2019 at 03:15 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman. (As further set forth in this order) (Signed by Judge Jesse M. Furman on 7/15/2019) (ne) (Entered: 07/15/2019) |
| 07/15/2019 | 6 | MEDIATION REFERRAL ORDER: It is hereby ORDERED that this case, involving claims under the Copyright Act, 17 U.S.C. § 101 et seq., is referred for mediation to the Court−annexed Mediation Program. The parties are hereby notified that Local Rule 83.9 shall govern the mediation and are directed to participate in the mediation in good faith. The mediation should take place at least two weeks prior to the Initial Pretrial Conference, which is currently scheduled (by separate Order to be entered today) for October 10, 2019. The mediation will have no effect upon any scheduling Order issued by this Court without leave of this Court. The Court specifically requests a mediator with expertise in copyright matters be assigned. To facilitate prompt mediation, Plaintiff is hereby ORDERED to file proof of service no more than three days after service has been effected. Plaintiff is further ORDERED to produce to Defendant, by the earlier of 14 days after service of process or three business days in advance of any mediation session, (1) copies of records sufficient to show the royalty paid the last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2) the number of times the work was licensed in the last five years. SO ORDERED. Please reference the following when corresponding with the Mediation Office. E−mail MediationOffice@nysd.uscourts.gov, telephone (212) 805−0643, and facsimile (212) 805−0647. Mediator to be Assigned by 7/25/2019. Mediator Expertise Request due by 7/22/2019. (Signed by Judge Jesse M. Furman on 7/15/2019) (ne) (Entered: 07/15/2019) |
| 07/29/2019 | | Terminate Mediation Case Tracking Deadlines: Mediator Assignment Deadline, Mediator Expertise Request Deadline (mf) (Entered: 07/29/2019) |
| 09/21/2019 | 7 | AFFIDAVIT OF SERVICE. Bandshell Artist Management served on 9/5/2019, answer due 9/26/2019. Document filed by Arthur Usherson. (Liebowitz, Richard) (Entered: 09/21/2019) |
| 09/25/2019 | 8 | NOTICE OF APPEARANCE by Brad Richard Newberg on behalf of Bandshell Artist Management. (Newberg, Brad) (Entered: 09/25/2019) |
| 09/25/2019 | 9 | FIRST RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Bandshell Artist Management.(Newberg, Brad) (Entered: 09/25/2019) |
| 09/25/2019 | 10 | ANSWER to 1 Complaint. Document filed by Bandshell Artist Management.(Newberg, Brad) (Entered: 09/25/2019) |
| 10/03/2019 | 11 | INITIAL REPORT OF PARTIES BEFORE PRETRIAL CONFERENCE. Document filed by Arthur Usherson. (Attachments: # 1 Joint Letter)(Liebowitz, Richard) (Entered: 10/03/2019) |
| 10/04/2019 | 12 | LETTER MOTION to Adjourn Conference addressed to Judge Jesse M. Furman from Richard Liebowitz dated October 4, 2019. Document filed by Arthur Usherson.(Liebowitz, Richard) (Entered: 10/04/2019) |
| 10/07/2019 | 13 | ORDER granting 12 Letter Motion to Adjourn Conference. The Court is, to put it mildly, somewhat perturbed by counsel's statement that "[t]he mediation office did not assign a mediator because for some reason the mediation case track was terminated on July 29, 2019." Given how many cases counsel has had in this District, he knew or should have known that the Mediation Office routinely terminates the case−tracking |

| | | |
|---|---|---|
| | | deadlines in these cases pending the defendant's appearance and that the docket entry to that effect did not mean that the mediation would not be scheduled (let alone relieve counsel of the obligation to comply with the Court's order requiring mediation no later than two weeks before the initial pretrial conference). Further, to the extent it was difficult or impossible to schedule the mediation to take place by the deadline set by the Court, counsel has only himself to blame, as he waited until September 5, 2019 to serve Defendant. See ECF No. 7. Given that, the prudent course would have been been for counsel to timely seek an appropriate extension of the early mediation deadline, an adjournment of the initial pretrial conference, or both. All of that said, the Court continues to believe that early mediation in the normal course (i.e., in person) makes sense. Accordingly, the initial pretrial conference scheduled for October 10, 2019, is ADJOURNED to November 14, 2019, at 4 p.m. The parties shall conduct the in−person mediation no later than October 31, 2019. (HEREBY ORDERED by Judge Jesse M. Furman)(Text Only Order) (Furman, Jesse) (Entered: 10/07/2019) |
| 10/07/2019 | | NOTICE OF MEDIATOR ASSIGNMENT − Notice of assignment of mediator. Mediation is to be held by 10/31/2019.(mf) (Entered: 10/07/2019) |
| 10/10/2019 | | MEDIATION CONFERENCE SCHEDULED First Mediation Conference scheduled for 10/31/2019 at 12:00 PM in Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.(ah) (Entered: 10/10/2019) |
| 11/06/2019 | 14 | MOTION for Sanctions *against Plaint₍i₎f and Plaint₍i₎f's Counsel*. Document filed by Bandshell Artist Management.(Newberg, Brad) (Entered: 11/06/2019) |
| 11/06/2019 | 15 | MEMORANDUM OF LAW in Support re: 14 MOTION for Sanctions *against Plaint₍i₎f and Plaint₍i₎f's Counsel*. . Document filed by Bandshell Artist Management. (Newberg, Brad) (Main Document 15 replaced on 12/10/2019) (ab). (Entered: 11/06/2019) |
| 11/06/2019 | 16 | DECLARATION of Brad R Newberg in Support re: 14 MOTION for Sanctions *against Plaint₍i₎f and Plaint₍i₎f's Counsel*.. Document filed by Bandshell Artist Management. (Attachments: # 1 Exhibit Service and Licensing Discussion, # 2 Exhibit First Mediation Discussions, # 3 Exhibit Mediation Office Emails, # 4 Exhibit Mediation Office Emails, # 5 Exhibit Liebowitz draft letter to Court, # 6 Exhibit Emails Scheduling Mediation, # 7 Exhibit Mediator email, # 8 Exhibit Emails regarding proposal, # 9 Exhibit Early morning Oct 31 email, # 10 Exhibit Liebowitz Twitter Post, # 11 Exhibit Meet and confer email, # 12 Exhibit Receipts)(Newberg, Brad) (Main Document 16 replaced on 12/10/2019) (ab). (Entered: 11/06/2019) |
| 11/06/2019 | 17 | FINAL REPORT OF MEDIATOR #4...Report of Mediator to the Clerk that the court−ordered mediation in this case was held but was unsuccessful in resolving any issue in the case. The Mediation Unit will consider the referral to be completed and close its files at this time but the judge may re−refer parties to mediation at any point. To evaluate the effectiveness of our Mediators/Mediation Program please click on the following link: http://www.nysd.uscourts.gov/mediation_survey. A fillable PDF of the survey can also be found at www.nysd.uscourts.gov/mediation.(ah) (Entered: 11/06/2019) |
| 11/07/2019 | 18 | INITIAL REPORT OF PARTIES BEFORE PRETRIAL CONFERENCE. Document filed by Arthur Usherson. (Attachments: # 1 Joint Letter)(Liebowitz, Richard) (Attachment 1 replaced on 12/10/2019) (ab). (Entered: 11/07/2019) |
| 11/14/2019 | 19 | RESPONSE in Opposition to Motion re: 14 MOTION for Sanctions *against Plaint₍i₎f and Plaint₍i₎f's Counsel*. . Document filed by Arthur Usherson. (Liebowitz, Richard) (Main Document 19 replaced on 10/28/2020) (ab). (Entered: 11/14/2019) |
| 11/14/2019 | | NOTICE: Please be advised that the conference scheduled for today, November 14, 2019, will be held in **Courtroom 905 (note that this is NOT the Court's usual courtroom)** of the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, NY. (ab) (Entered: 11/14/2019) |
| 11/14/2019 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Initial Pretrial Conference held on 11/14/2019. Richard Liebowitz present for the Plaintiff. James Freeman present for Plaintiff's counsel. Brad Newberg present for Defendant. Court reporter present. (ab) (Entered: 11/14/2019) |

| 11/15/2019 | 20 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. Amended Pleadings due by 11/22/2019. Unless otherwise ordered by the Court, depositions of fact witnesses shall be completed by the date set forth in paragraph 8(b). Each side is limited to one (1) deposition (assuming that the person who posted the photograph on defendant's behalf and its corporate designee are one and the same), absent leave of Court. This case is to be tried to a jury. Counsel for the parties have conferred, and the present best estimate of the length of trial is 2−3 days. Motions due by 12/13/2019. Responses due by 12/11/2019. Replies due by 12/18/2019. Fact Discovery due by 1/31/2020. Defendant shall file a motion for/to bond no later than 11/27/2019. Any Pretrial Conference set for 2/6/2020 at 03:30 PM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman. Defendant is granted leave to file an amended answer no later than November 22, 2019. Plaintiff shall file a formal opposition to the motion for sanctions by November 18, 2019; Defendant shall file any reply by November 25, 2019. The parties should address in those submissions whether the Court should hold an evidentiary hearing and, if so, what witnesses should be called and how it should be conducted. SO ORDERED. (Signed by Judge Jesse M. Furman on 11/14/19) (yv) (Entered: 11/15/2019) |
|---|---|---|
| 11/15/2019 | | **\*\*\*DELETED DOCUMENT. Deleted document number 21 ORDER SCHEDULING DEFAULT JUDGMENT BRIEFING AND SHOW CAUSE HEARING. The document was incorrectly filed in this case. (yv)** (Entered: 11/15/2019) |
| 11/18/2019 | 21 | MEMORANDUM OF LAW in Opposition re: 14 MOTION for Sanctions *against Plaint₍₎f and Plaint₍₎f's Counsel.* . Document filed by Arthur Usherson. (Liebowitz, Richard) (Main Document 21 replaced on 12/10/2019) (ab). (Entered: 11/18/2019) |
| 11/18/2019 | 22 | DECLARATION of Richard P. Liebowitz in Opposition re: 14 MOTION for Sanctions *against Plaint₍₎f and Plaint₍₎f's Counsel.*. Document filed by Arthur Usherson. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Liebowitz, Richard) (Main Document 22 replaced on 12/10/2019) (ab). (Entered: 11/18/2019) |
| 11/18/2019 | 23 | DECLARATION of James Freeman in Opposition re: 14 MOTION for Sanctions *against Plaint₍₎f and Plaint₍₎f's Counsel.*. Document filed by Arthur Usherson. (Liebowitz, Richard) (Main Document 23 replaced on 12/10/2019) (ab). (Entered: 11/18/2019) |
| 11/18/2019 | 24 | DECLARATION of Rebecca Liebowitz in Opposition re: 14 MOTION for Sanctions *against Plaint₍₎f and Plaint₍₎f's Counsel.*. Document filed by Arthur Usherson. (Liebowitz, Richard) (Main Document 24 replaced on 12/10/2019) (ab). (Entered: 11/18/2019) |
| 11/19/2019 | 25 | AMENDED ANSWER to 1 Complaint. Document filed by Bandshell Artist Management. (Newberg, Brad) (Entered: 11/19/2019) |
| 11/20/2019 | 26 | ORDER: Given the interest in maintaining the confidentiality of negotiations and discussions conducted as part of the Court−annexed Mediation Program, it is hereby ORDERED that the filings made in connection with Defendant's motion for sanctions, ECF No. 14, shall be temporarily sealed unless and until the Court orders otherwise. Within one week of the filing of Defendant's reply in support of its motion, the parties shall each file a letter brief on ECF stating their views on whether and to what extent the motion filings should remain under seal given the strong presumption in favor of public access to judicial documents. See generally Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119−20 (2d Cir. 2006). The Court will determine whether to keep the documents under seal when deciding the underlying motion. The Clerk of Court is directed to place ECF Nos. 14−16, 18−19, and 21−24 on "Court View Only." Further, Defendant shall follow the Court's Individual Rules and Practices for Civil Cases in submitting its reply papers under seal in the first instance. SO ORDERED. (Signed by Judge Jesse M. Furman on 11/20/2019) (ama) Transmission to Sealed Records Clerk for processing. (Entered: 11/20/2019) |
| 11/26/2019 | | **\*\*\*DELETED DOCUMENT. Deleted document number 27 Transcript. The document was incorrectly filed in this case. (jca)** (Entered: 01/06/2020) |

| 11/26/2019 | | ***DELETED DOCUMENT. Deleted document number 28 Notice of filing of Official Transcript. The document was incorrectly filed in this case. (jca) (Entered: 01/06/2020) |
|---|---|---|
| 11/27/2019 | 29 | MOTION for Bond *to Cover Defendant's Fees and Costs*. Document filed by Bandshell Artist Management.(Newberg, Brad) (Entered: 11/27/2019) |
| 11/27/2019 | 30 | MEMORANDUM OF LAW in Support re: 29 MOTION for Bond *to Cover Defendant's Fees and Costs*. . Document filed by Bandshell Artist Management. (Newberg, Brad) (Entered: 11/27/2019) |
| 11/27/2019 | 31 | DECLARATION of Mark J. McKenna in Support re: 29 MOTION for Bond *to Cover Defendant's Fees and Costs*.. Document filed by Bandshell Artist Management. (Newberg, Brad) (Entered: 11/27/2019) |
| 11/27/2019 | 32 | DECLARATION of Brad R Newberg in Support re: 29 MOTION for Bond *to Cover Defendant's Fees and Costs*.. Document filed by Bandshell Artist Management. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Exhibit Exhibit 6, # 7 Exhibit Exhibit 7)(Newberg, Brad) (Entered: 11/27/2019) |
| 12/04/2019 | 33 | LETTER addressed to Judge Jesse M. Furman from Brad Newberg dated 12/4/2019 re: Sealing of Sanctions Motion. Document filed by Bandshell Artist Management.(Newberg, Brad) (Entered: 12/04/2019) |
| 12/09/2019 | 34 | MEMORANDUM OPINION AND ORDER: The Court has reviewed the parties' motion papers and will file on the public docket versions of their submissions redacted in accordance with the discussion above. The unredacted versions shall be filed and maintained under seal. All future filings in connection with the sanctions motion shall be filed publicly, but, absent further order of the Court, shall (1) be limited to the issues of whether Liebowitz obtained advance permission from the Mediator for an associate to appear at the mediation instead of himself and for Plaintiff to participate in the mediation by telephone; and (2) not include the names of the Mediator or any court employees working in the Mediation Program (or, if need be, shall redact their names). No other filings in connection with the sanctions motion are permitted absent leave of the Court. The Director of the Court−annexed Mediation Program is directed to provide a copy of this Memorandum Opinion and Order to the Mediator, who shall submit a declaration, consistent with the directions above, by December 18, 2019. The Mediator should do so, in the first instance, by e−mail to Furman_NYSDChambers@nysd.uscourts.gov so that the Court can review the declaration and redact it as appropriate. Upon review of the Mediator's declaration, the Court will decide what, if any, further proceedings are necessary to resolve Defendant's motion and further set forth in this Order. (Signed by Judge Jesse M. Furman on 12/9/2019) (rro) (Entered: 12/09/2019) |
| 12/10/2019 | 35 | REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTION: re: 14 MOTION for Sanctions against Plaintiff and Plaintiff's Counsel Document filed by Bandshell Artist Management. (ama) (Entered: 12/10/2019) |
| 12/10/2019 | 36 | SECOND DECLARATION OF BRAD R. NEWBERG IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS: 14 MOTION for Sanctions against Plaintiff and Plaintiff's Counsel. Document filed by Bandshell Artist Management. (ama) (Entered: 12/10/2019) |
| 12/10/2019 | 37 | DECLARATION OF MARK J. MCKENNA IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS: re: 14 MOTION for Sanctions against Plaintiff and Plaintiff's Counsel. Document filed by Bandshell Artist Management. (ama) (Entered: 12/10/2019) |
| 12/10/2019 | 38 | LETTER addressed to Judge Jesse M. Furman from Brad R. Newberg dated 11/25/2019 re: Per this Court's November 20, 2019 Order directing that the paper related to Defendant's Motion for Sanctions be temporarily Sealed. Document filed by Bandshell Artist Management.(ama) (Entered: 12/10/2019) |
| 12/11/2019 | 39 | ORDER: In accordance with the Court's Memorandum Opinion and Order dated December 9, 2019, the Mediator submitted to the Court the attached Declaration, which the Court has redacted to remove references to the Mediator's name. No later |

JA-7

| | | |
|---|---|---|
| | | than noon on December 16, 2019, Mr. Liebowitz shall file a letter on ECF indicating if he believes that an evidentiary hearing is necessary to resolve Defendant's motion. In the absence of such a request, the Court will treat the facts set forth in the Mediators declaration as uncontested. SO ORDERED. (Signed by Judge Jesse M. Furman on 12/11/2019) (jca) (Entered: 12/11/2019) |
| 12/11/2019 | 40 | MEMORANDUM OF LAW in Opposition re: 29 MOTION for Bond *to Cover Defendant's Fees and Costs.* . Document filed by Arthur Usherson. (Liebowitz, Richard) (Entered: 12/11/2019) |
| 12/16/2019 | 41 | RESPONSE re: 39 Order,, . Document filed by Arthur Usherson. (Liebowitz, Richard) (Entered: 12/16/2019) |
| 12/17/2019 | 42 | ORDER, Unless the Court orders otherwise, the evidentiary hearing shall be held on January 8, 2020, at 9:30 a.m. in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. Richard Liebowitz, Brad Newberg, and the Mediator must attend in person. The parties may, but do not have to, attend in person. Any party objecting to the foregoing or believing that a conference should be held to discuss these (or any other) matters shall submit a letter by noon on December 19, 2019. SO ORDERED. (Evidentiary Hearing set for 1/8/2020 at 09:30 AM in Courtroom 1105, 40 Centre Street, New York, NY 10007 before Judge Jesse M. Furman.) (Signed by Judge Jesse M. Furman on 12/17/19) (yv) (Entered: 12/17/2019) |
| 12/17/2019 | 43 | REPLY MEMORANDUM OF LAW in Support re: 29 MOTION for Bond *to Cover Defendant's Fees and Costs.* . Document filed by Bandshell Artist Management. (Newberg, Brad) (Entered: 12/17/2019) |
| 12/17/2019 | 44 | DECLARATION of Brad R Newberg in Support re: 29 MOTION for Bond *to Cover Defendant's Fees and Costs..* Document filed by Bandshell Artist Management. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Exhibit Exhibit 6)(Newberg, Brad) (Entered: 12/17/2019) |
| 12/19/2019 | 45 | **FILING ERROR − DEFICIENT DOCKET ENTRY −** STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above−captioned action is voluntarily dismissed, with prejudice against the defendant(s) Bandshell Artist Management pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Arthur Usherson. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)..**(Liebowitz, Richard) Modified on 12/19/2019 (km). (Entered: 12/19/2019) |
| 12/19/2019 | 46 | LETTER addressed to Judge Jesse M. Furman from Brad Newberg dated 12/19/2019 re: Evidentiary Hearing. Document filed by Bandshell Artist Management.(Newberg, Brad) (Entered: 12/19/2019) |
| 12/19/2019 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT VOLUNTARY DISMISSAL. Notice to Attorney Richard Liebowitz. RE−FILE Document No. 45 Stipulation of Voluntary Dismissal. The filing is deficient for the following reason(s): The docket entry text needs to match the document. Please re−file document and when re−filing do not select that the document is pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (Your document does not state that it is pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Re−file the document using the event type Stipulation of Voluntary Dismissal found under the event list Other Documents. (km)** (Entered: 12/19/2019) |
| 12/20/2019 | 47 | ORDER denying as moot 29 Motion for Bond. Accordingly, the January 8, 2020 hearing will proceed as planned. At that hearing, the Court will hear sworn testimony from three witnesses in the following order: Mr. Liebowitz, Mr. Newberg, and the Mediator. As noted, the Court will treat their previously submitted declarations as their direct testimony and proceed directly to cross−examination limited to the issues of whether Mr. Liebowitz obtained advance permission from the Mediator for an associate to appear at the mediation instead of Mr. Liebowitz and for Plaintiff to participate in the mediation by telephone. See ECF No. 42. In the case of Mr. Liebowitz and Mr. Newberg, the Court will begin with cross−examination by opposing counsel and then proceed to its own questioning. In the case of the Mediator, |

| | | |
|---|---|---|
| | | the Court will engage in its own questioning first and then give counsel for both sides an opportunity to ask follow−up questions. Counsel should be prepared for brief oral argument at the close of the hearing. The Clerk of Court is directed to terminate ECF No. 29. SO ORDERED. (Signed by Judge Jesse M. Furman on 12/20/2019) (va) (Entered: 12/20/2019) |
| 12/20/2019 | 48 | STIPULATION OF DISMISSAL OF CIVIL ACTION WITH PREJUDICE (FRCP 41(a)(1)(A)(ii) : It is hereby stipulated by Plaintiff Arthur Usherson and Defendant Bandshell Artist Management that the case has been settled and that the above case should be dismissed with prejudice with each side to bear its own costs and attorney's fees. SO ORDERED. To be clear, the Court retains jurisdiction to adjudicate Defendant's pending motion for sanctions and any other sanctions−related matters. See, e.g., Rice v. NBCUniversal Media, LLC, No. 19−CV−447 (JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019) (noting, in imposing sanctions on Mr. Liebowitz, that voluntary dismissal does not preclude the district court from considering collateral issues such as sanctions. (quoting U.S. D.I.D. Corp. v. Windstream Commcns, Inc., 775 F.3d 128, 134 (2d Cir. 2014)). The Clerk of Court is directed to close this case but should NOT terminate ECF No. 14., (Bandshell Artist Management terminated.) (Signed by Judge Jesse M. Furman on 12/20/19) (yv) (Entered: 12/20/2019) |
| 12/20/2019 | | Terminate Transcript Deadlines (yv) (Entered: 12/20/2019) |
| 12/20/2019 | 49 | AO 121 FORM COPYRIGHT − CASE TERMINATED− SUBMITTED. In compliance with the provisions of 17 U.S.C. 508, the Register of Copyrights is hereby advised that a final decision was rendered on 12/20/19 in a court action filed on the following copyright(s) in the U.S. District Court Southern District of New York. Form e−mailed to Register of Copyrights. (yv) (Entered: 12/20/2019) |
| 01/06/2020 | 50 | TRANSCRIPT of Proceedings re: CONFERENCE held on 11/14/2019 before Judge Jesse M. Furman. Court Reporter/Transcriber: Jerry Harrison, (212) 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/27/2020. Redacted Transcript Deadline set for 2/6/2020. Release of Transcript Restriction set for 4/6/2020.(McGuirk, Kelly) (Entered: 01/06/2020) |
| 01/06/2020 | 51 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERECE proceeding held on 11/14/19 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 01/06/2020) |
| 01/08/2020 | | Minute Entry for proceedings held before Judge Jesse M. Furman: Evidentiary Hearing held on 1/8/2020. Richard Liebowitz present for the Plaintiff. James Freeman present as Mr. Liebowitz's counsel. Brad Newberg and Stephen Foresta present for Defendant. Court reporter present. −− Witnesses called. Decision reserved. −− See transcript. (ab) (Entered: 01/08/2020) |
| 01/08/2020 | 52 | ORDER: As stated on the record at the close of the evidentiary hearing held on January 8, 2020, Defendant shall serve via overnight courier a copy of the files obtained from the U.S. Copyright Office for the copyright registration by January 9, 2020, and file proof of service within one business day of service. No later than January 17, 2020, Plaintiff shall file a letter on ECF addressing (1) whether Paragraph 9 of the Complaint is accurate; and (2) if not, whether sanctions are warranted on this basis against either Plaintiff's counsel or Plaintiff himself. In addition, by January 13, 2020, Plaintiff shall submit a letter brief not to exceed threepages addressing the effect, if any, of the parties' stipulation of dismissal on Defendant's motion for sanctions and addressing the appropriate sanctions in the event that the Court deems sanctions to be appropriate. Defendant shall submit any reply to Plaintiff's submission, not to exceed three pages, by January 15, 2020. Finally, Defendant shall submit a detailed accounting of the costs and attorney's fees incurred (had counsel not been pro bono) in connection with the October 31, 2019 mediation and the pending motion for sanctions by January 17, 2020. SO ORDERED. (Signed by Judge Jesse M. Furman on 1/8/2020) |

| | | (jca) (Entered: 01/08/2020) |
|---|---|---|
| 01/09/2020 | 53 | RESPONSE to Motion re: 14 MOTION for Sanctions *against Plaintiff and Plaintiff's Counsel*. *Service of Deposit Copy CD*. Document filed by Bandshell Artist Management. (Attachments: # 1 Exhibit Email regarding deposit copy CD)(Newberg, Brad) (Entered: 01/09/2020) |
| 01/13/2020 | 54 | LETTER addressed to Judge Jesse M. Furman from Richard Liebowitz dated 1/13/20 re: Amount of Sanctions to be Awarded (If Any). Document filed by Arthur Usherson.(Liebowitz, Richard) (Entered: 01/13/2020) |
| 01/15/2020 | 55 | RESPONSE to Motion re: 14 MOTION for Sanctions *against Plaintiff and Plaintiff's Counsel*. *Letter in Response to January 13 Letter*. Document filed by Bandshell Artist Management. (Newberg, Brad) (Entered: 01/15/2020) |
| 01/17/2020 | 56 | RESPONSE to Motion re: 14 MOTION for Sanctions *against Plaintiff and Plaintiff's Counsel*. *Summary of costs and fees for mediation and sanctions motion*. Document filed by Bandshell Artist Management. (Attachments: # 1 Exhibit Detailed Summary of costs and fees)(Newberg, Brad) (Entered: 01/17/2020) |
| 01/17/2020 | 57 | LETTER addressed to Judge Jesse M. Furman from Richard Liebowitz dated 1/17/20 re: Copyright Registration Certificate. Document filed by Arthur Usherson. (Attachments: # 1 Exhibit 272 Registration)(Liebowitz, Richard) (Entered: 01/17/2020) |
| 01/18/2020 | 58 | LETTER addressed to Judge Jesse M. Furman from Brad Newberg dated 01/18/2020 re: Response to Jan 17 letter on copyright registrations. Document filed by Bandshell Artist Management. (Attachments: # 1 Exhibit Transcript pages)(Newberg, Brad) (Entered: 01/18/2020) |
| 01/24/2020 | 59 | ORDER. no later than January 31, 2020, Mr. Liebowitz shall file a declaration, sworn under penalty of perjury, specifying: (1) the nature and cause of the "administrative mistake" or "clerical error" to which he refers in his January 17, 2020 letter, including who was responsible for the mistake or error; (2) the factual basis for his inclusion of the allegation set forth in Paragraph 9 of the Complaint and the source of that factual basis, including a detailed description of any investigation into the matter that he conducted prior to the filing of the Complaint; (3) what role, if any, he played in the filing of the application for Registration 272, when and by whom that application was filed, and why the decision to obtain that registration was made (including but not limited to whether it was made due to a realization that the Photograph had not been registered); (4) when Mr. Liebowitz became aware that the Photograph was not registered under Registration 046, how he learned of that fact, and whether Mr. Liebowitz knew on November 14, 2019 (the date of the initial pretrial conference in this matter) that the Photograph had been registered after this lawsuit was commenced; and (5) why Mr. Liebowitz failed to advise the Court and defense counsel that Paragraph 9 of the Complaint was inaccurate until his January 17, 2020 letter. No later than the same date, Mr. Freeman shall file a declaration, sworn under penalty of perjury, specifying (1) the factual basis for the representations he made at the January 8, 2020 hearing about the registration of the Photograph, including that the allegation in Paragraph 9 of the Complaint was based on information provided to counsel by Mr. Usherson and that counsel had confirmed, prior to filing the Complaint, that Mr. Usherson was the claimant for Registration 046; and (2) any personal knowledge he has of any 'administrative mistake' or "clerical error" related to the allegation in Paragraph 9 of the Complaint, and the basis for such knowledge. In addition, no later than the same date, Mr. Usherson shall also file a declaration, both notarized and sworn under penalty of perjury, specifying (1) whether, as of the date this lawsuit was filed, he was aware that the Photograph had not been registered; (2) what, if any, information he provided to Mr. Liebowitz, Mr. Freeman, or any other attorney from the Liebowitz Law Firm about the registration of the Photograph and the date(s) on which he provided such information; and (3) what role, if any, he played in connection with Registration 272, including but not limited to the decision to seek registration and the actual filing of the registration. Finally, by the same date, Mr. Liebowitz is granted leave (but not required) to file a supplemental letter, not to exceed three pages, addressing the question of whether sanctions should be imposed in light of any new information in the aforementioned declarations. Defense counsel is granted leave (but not required) to file a letter, not to exceed three pages, responding to the declarations |

JA-10

| | | and any supplemental letter no later than February 5, 2020. SO ORDERED. (Signed by Judge Jesse M. Furman on 1/24/20) (yv) (Entered: 01/24/2020) |
|---|---|---|
| 01/24/2020 | 60 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 59 Order,,,,,,,,,,, *through 2/7/20* addressed to Judge Jesse M. Furman from Richard Liebowitz dated 1/24/20. Document filed by Arthur Usherson.(Liebowitz, Richard) (Entered: 01/24/2020) |
| 01/29/2020 | 61 | ORDER granting 60 Letter Motion for Extension of Time to File Response/Reply: Application GRANTED. Mr. Liebowitz, Mr. Freeman, and Mr. Usherson shall submit the declarations required by the Court's Order at ECF No. 59 by February 7, 2020. By the same date, Mr. Liebowitz may (but is not required to) file a supplemental letter as stated in the Court's Order, and defense counsel may (but is not required to) file a response by February 10, 2020. The Clerk of Court is directed to terminate ECF No. 60. (Signed by Judge Jesse M. Furman on 1/29/2020) (jwh) (Entered: 01/29/2020) |
| 02/07/2020 | 62 | AFFIDAVIT of Arthur Usherson re: 61 Order on Motion for Extension of Time to File Response/Reply,, . Document filed by Arthur Usherson. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I).(Liebowitz, Richard) (Entered: 02/07/2020) |
| 02/07/2020 | 63 | DECLARATION of Richard Liebowitz re: 61 Order on Motion for Extension of Time to File Response/Reply,, . Document filed by Arthur Usherson. (Attachments: # 1 Exhibit A).(Liebowitz, Richard) (Entered: 02/07/2020) |
| 02/07/2020 | 64 | DECLARATION of James Freeman re: 61 Order on Motion for Extension of Time to File Response/Reply,, . Document filed by Arthur Usherson..(Liebowitz, Richard) (Entered: 02/07/2020) |
| 02/10/2020 | 65 | RESPONSE to Motion re: 14 MOTION for Sanctions *against Plaintiff and Plaintiff's Counsel. Letter in Response to February 7 filing*. Document filed by Bandshell Artist Management..(Newberg, Brad) (Entered: 02/10/2020) |
| 02/12/2020 | 66 | TRANSCRIPT of Proceedings re: HEARING held on 1/8/2020 before Judge Jesse M. Furman. Court Reporter/Transcriber: Martha Martin, (212) 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/4/2020. Redacted Transcript Deadline set for 3/16/2020. Release of Transcript Restriction set for 5/12/2020..(McGuirk, Kelly) (Entered: 02/12/2020) |
| 02/12/2020 | 67 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a HEARING proceeding held on 1/8/2020 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 02/12/2020) |
| 06/26/2020 | 68 | OPINION AND ORDER re 14 MOTION for Sanctions: In this case and others, Mr. Liebowitz and his firm have fallen far short of that standard and failed to "conduct themselves in a manner compatible with the role of courts in the administration of justice." Id. at 645. Accordingly, and for the reasons stated above, the Court concludes that sanctions must be imposed on Mr. Liebowitz and his firm, as follows... In addition, as noted above, the Court will send a copy of this Opinion and Order to the Chair of the Court's Grievance Committee to take whatever action the Committee deems appropriate. The Clerk of Court is directed to terminate ECF No. 14.(See OPINION) (Signed by Judge Jesse M. Furman on 6/26/2020) (ab) (Entered: 06/26/2020) |
| 07/06/2020 | | CASHIERS OFFICE REMARK on 68 Memorandum & Opinion in the amount of $103,517.49, paid on 7/6/2020, Receipt Number 465401261556. (qs) (Entered: 07/06/2020) |
| 07/06/2020 | 69 | CERTIFICATE OF SERVICE. Document filed by Arthur Usherson..(Liebowitz, Richard) (Entered: 07/06/2020) |

| 07/06/2020 | 70 | NOTICE OF APPEARANCE by Robert James Anello on behalf of Richard Liebowitz, Liebowitz Law Firm, PLLC..(Anello, Robert) (Entered: 07/06/2020) |
|---|---|---|
| 07/06/2020 | 71 | NOTICE OF APPEARANCE by Brian A. Jacobs on behalf of Richard Liebowitz, Liebowitz Law Firm, PLLC..(Jacobs, Brian) (Entered: 07/06/2020) |
| 07/17/2020 | 72 | NOTICE OF APPEARANCE by Kevin Grossinger on behalf of Richard Liebowitz, Liebowitz Law Firm, PLLC..(Grossinger, Kevin) (Entered: 07/17/2020) |
| 07/17/2020 | 73 | NOTICE OF APPEARANCE by Andrew Dennis Dillon on behalf of Richard Liebowitz, Liebowitz Law Firm, PLLC..(Dillon, Andrew) (Entered: 07/17/2020) |
| 07/20/2020 | 74 | NOTICE OF APPEAL from 68 Memorandum & Opinion,,,. Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC. Filing fee $ 505.00, receipt number ANYSDC−20759359. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Anello, Robert) (Entered: 07/20/2020) |
| 07/20/2020 | 75 | LETTER addressed to Ruby Krajick from Robert J. Anello re: Enclosing copy of a Chase cashier's check (with LLF as remitter) in the amount of $103,517.49. Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC..(yv) (Entered: 07/20/2020) |
| 07/20/2020 |  | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 74 Notice of Appeal. (tp) (Entered: 07/20/2020) |
| 07/20/2020 |  | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 74 Notice of Appeal, filed by Liebowitz Law Firm, PLLC, Richard Liebowitz were transmitted to the U.S. Court of Appeals. (tp) (Entered: 07/20/2020) |
| 07/20/2020 | 76 | PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC. Related Document Number: 68 ..(Anello, Robert) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** (Entered: 07/20/2020) |
| 07/20/2020 | 77 | DECLARATION of Brian A. Jacobs in Support re: 76 Proposed Order to Show Cause Without Emergency Relief,. Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC..(Jacobs, Brian) (Entered: 07/20/2020) |
| 07/20/2020 | 78 | MEMORANDUM OF LAW in Support re: 76 Proposed Order to Show Cause Without Emergency Relief, *re: Motion for Stay Pending Appeal*. Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC..(Anello, Robert) (Entered: 07/20/2020) |
| 07/20/2020 | 79 | DECLARATION of Richard Liebowitz in Support re: 76 Proposed Order to Show Cause Without Emergency Relief,. Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC..(Anello, Robert) (Entered: 07/20/2020) |
| 07/20/2020 | 80 | DECLARATION of Bruce Cotler in Support re: 76 Proposed Order to Show Cause Without Emergency Relief,. Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC..(Anello, Robert) (Entered: 07/20/2020) |
| 07/21/2020 |  | **\*\*\*NOTICE TO COURT REGARDING PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document No. 76 Proposed Order to Show Cause Without Emergency Relief was reviewed and approved as to form. (km)** (Entered: 07/21/2020) |
| 07/22/2020 | 81 | OPINION AND ORDER: In sum, the Movants' eleventh−hour request for a stay of the Court's sanctions pending appeal is denied and the Courts sanctions remain in full force and effect, with the following modification: In any case in which the Movants have a good−faith belief that waiting for deposit copies might cause their client's claim to be barred by the statute of limitations, they may file, in lieu of the deposit copies, an affidavit (1) informing the court of such good−faith belief; (2) confirming that they have applied for, and are awaiting, deposit copies of the work(s) at issue; and (3) representing that they will promptly file such copies promptly upon their receipt. Nor will the Court grant the Movants' alternative request for an "administrative" stay pending the Circuits decision on whether to grant a stay pending appeal. Mem. 24−25. Granting an administrative stay would obviously ease the burden on the Circuit in the event that it is called upon to decide if a longer stay is warranted. In the Courts view, however, that virtue is outweighed by the vice of rewarding an appellant for dilatory conduct. Deadlines matter. And having given Mr. Liebowitz and his firm sufficient |

JA-12

| | | time to either comply or seek a stay, the Court should not be forced to alter its deadline merely because they waited until the last minute to do the latter. Instead, in the event of an appeal from this Order, the Court will leave it to Mr. Liebowitz and his firm to explain to the Circuit why they put that court in the position of deciding whether to grant a stay with only a few days remaining on the clock. (Signed by Judge Jesse M. Furman on 7/22/2020) (ab) (Entered: 07/22/2020) |
|---|---|---|
| 07/27/2020 | 82 | DECLARATION of Richard Liebowitz re: 68 Memorandum & Opinion,,, . Document filed by Richard Liebowitz..(Liebowitz, Richard) (Entered: 07/27/2020) |
| 09/21/2020 | 83 | DECLARATION of Richard Liebowitz re: 68 Memorandum & Opinion,,, . Document filed by Richard Liebowitz, Liebowitz Law Firm, PLLC..(Liebowitz, Richard) (Entered: 09/21/2020) |
| 09/29/2020 | 84 | DECLARATION of Richard Liebowitz . Document filed by Richard Liebowitz..(Liebowitz, Richard) (Entered: 09/29/2020) |
| 10/05/2020 | 85 | ORDER. No later than October 15, 2020, Mr. Liebowitz shall file a sworn declaration that: (1) explains how, notwithstanding the process described in his declaration of July 27, 2020, he overlooked the cases that he or his firm concededly brought described in his declarations of September 21, and 29, 2020, and describes what steps, if any, he has taken (and when), or what steps he will take, to identify any other such cases; (2) describes with particularity how the LLF internal email list Mr. Liebowitz used to identify the clients to whom he provided the Opinion and Order was compiled, who is responsible for maintaining it, and how (and how often) it is updated; explains whether it is possible that there are any clients of Mr. Liebowitz or his firm that would not be on that list; and, if so, describes what steps, if any, he has taken (and when), or what steps he will take, to identify any such clients; (3) responds to the letter addressed to the Court from Mr. Hudson dated July 28, 2020, by: a. identifying whether there are any cases in which he or his firm is acting as counsel, in any way (i.e., directly or indirectly), but has not entered a formal notice of appearance and in which he has not, as of the date of this Order, either filed the Opinion and Order or shared the Opinion and Order with the client; b. if so, showing cause why that should not be treated as a violation of the Opinion and Order; and c. either way, showing cause why the Opinion and Order should not be modified to require its filing in any case where Mr. Liebowitz or his firm is involved as counsel, whether or not he or his firm has entered a formal notice of appearance. Defense counsel may (but is not required to) respond to Mr. Liebowitz's declaration by October 21, 2020. (If defense counsel has any information that speaks to the issues referenced above and, more broadly, to Mr. Liebowitz's compliance with the Opinion and Order, he is encouraged to share that information with the Court.) No reply may be filed absent leave of Court. SO ORDERED. (Signed by Judge Jesse M. Furman on 10/2/20) (yv) (Entered: 10/05/2020) |
| 10/15/2020 | 86 | DECLARATION of Richard Liebowitz re: 85 Order,,,,,,,, . Document filed by Richard Liebowitz..(Liebowitz, Richard) (Entered: 10/15/2020) |

JA-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR USHERSON, | |
| Plaintiff, | Docket No. 1:19-cv-6368 |
| - against - | JURY TRIAL DEMANDED |
| BANDSHELL ARTIST MANAGEMENT | |
| Defendant. | |

## COMPLAINT

Plaintiff Arthur Usherson ("Usherson" or "Plaintiff") by and through his undersigned

counsel, as and for his Complaint against Defendant Bandshell Artist Management ("Bandshell"

or "Defendant") hereby alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for copyright infringement under Section 501 of the Copyright

Act. This action arises out of Defendant's unauthorized reproduction and public display of a

copyrighted photograph of singer-songwriter Leon Redbone, owned and registered by Usherson,

a professional photographer. Accordingly, Usherson seeks monetary relief under the Copyright

Act of the United States, as amended, 17 U.S.C. § 101 *et seq*.

### JURISDICTION AND VENUE

2.      This claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq*., and this Court

has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      Upon information and belief, this Court has personal jurisdiction over Defendant

because Defendant resides and/or transacts business in New York.

JA-14

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.     Usherson is a professional photographer in the business of licensing his photographs for a fee having a usual place of business at 10006 Old Holcomb Bridge Road, Roswell, Georgia 30076.

6.     Upon information and belief, Bandshell is a company with a place of business at 500 West 140th Street, #3B, New York, New York 10031. At all times material hereto, Bandshell has operated David Bromberg Quintet & Band Facebook Page at the following URL: http://www.facebook.com/DavidBrombergBand (the "Website").

## STATEMENT OF FACTS

**A.     Background and Plaintiff's Ownership of the Photograph**

7.     Usherson photographed singer-songwriter Leon Redbone (the "Photograph"). A true and correct copy of the Photograph is attached hereto as Exhibit A.

8.     Usherson is the author of the Photograph and has at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto.

9.     The Photograph was registered with United States Copyright Office and was given Copyright Registration Number VAu 1-080-046.

**B.     Defendant's Infringing Activities**

10.    On May 30, 2019, Bandshell ran the Photograph on the Website. See: https://www.facebook.com/DavidBrombergBand/photos/pb.294271320017.-2207520000.1559767400./10161528007940018/?type=3&theater. A screenshot of the Photograph on the Website is attached hereto as Exhibit B.

JA-15

11.     Bandshell did not license the Photograph from Plaintiff for its Website, nor did Bandshell have Plaintiff's permission or consent to publish the Photograph on its Website.

**CLAIM FOR RELIEF**
**(COPYRIGHT INFRINGEMENT AGAINST DEFENDANT)**
**(17 U.S.C. §§ 106, 501)**

12.     Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-11 above.

13.     Bandshell infringed Plaintiff's copyright in the Photograph by reproducing and publicly displaying the Photograph on the Website. Bandshell is not, and has never been, licensed or otherwise authorized to reproduce, publically display, distribute and/or use the Photograph.

14.     The acts of Defendant complained of herein constitute infringement of Plaintiff's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

15.     Upon information and belief, the foregoing acts of infringement by Bandshell have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

16.     As a direct and proximate cause of the infringement by the Defendant of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to damages and Defendant's profits pursuant to 17 U.S.C. § 504(b) for the infringement.

17.     Alternatively, Plaintiff is entitled to statutory damages up to $150,000 per work infringed for Defendant's willful infringement of the Photograph, pursuant to 17 U.S.C. § 504(c).

18.     Plaintiff further is entitled to his attorney's fees and full costs pursuant to 17 U.S.C. § 505.

JA-16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

1.      That Defendant Bandshell be adjudged to have infringed upon Plaintiff's
copyrights in the Photograph in violation of 17 U.S.C §§ 106 and 501;

2.      That Plaintiff be awarded either: a) Plaintiff's actual damages and Defendant's
profits, gains or advantages of any kind attributable to Defendant's infringement
of Plaintiff's Photograph; or b) alternatively, statutory damages of up to $150,000
per copyrighted work infringed pursuant to 17 U.S.C. § 504;

3.      That Defendant be required to account for all profits, income, receipts, or other
benefits derived by Defendant as a result of its unlawful conduct;

4.      That Plaintiff be awarded his costs, expenses and attorneys' fees pursuant to 17
U.S.C. § 505;

5.      That Plaintiff be awarded pre-judgment interest; and

6.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable in accordance with Federal

Rule of Civil Procedure 38(b).

Dated: Valley Stream, New York
          July 10, 2019

                                                  LIEBOWITZ LAW FIRM, PLLC

                                                  By: /s/Richard Liebowitz
                                                       Richard P. Liebowitz
                                                  11 Sunrise Plaza, Suite 305
                                                  Valley Stream, NY 11580
                                                  Tel: (516) 233-1660
                                                  RL@LiebowitzLawFirm.com
                                                  *Attorneys for Plaintiff Arthur Usherson*

JA-17

# EXHIBIT A

JA-18



JA-19

# EXHIBIT B





JA-21

JA-22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                              :

ARTHUR USHERSON,                      :
                              :

                 Plaintiff,       :              19-CV-6368 (JMF)
                              :

          -v-                   :        ORDER REGARDING
                              :     EARLY MEDIATION AND
BANDSHELL ARTIST MANAGEMENT,   :    THE INITIAL PRETRIAL
                            :        CONFERENCE
               Defendant.    :
                              :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       This case has been assigned to this Court for all purposes.  In the Court's experience, cases of this nature often benefit from early mediation.  To that end, by separate Order to be entered today, **the Court is referring this case to the Court-annexed Mediation Program.** Unless and until the Court orders otherwise, the parties shall schedule a mediation to take place **no later than two weeks** *before* the initial pretrial conference scheduled below.  Further, if the parties believe that there is need for limited discovery to facilitate the mediation, they shall confer with respect to the scope of such discovery and promptly raise any disputes with the Court in accordance with its Individual Rules and Practices in Civil Cases (available at http://nysd.uscourts.gov/judge/Furman).

       If the parties believe that early mediation would not be appropriate in this case, they shall file a letter motion seeking relief from the foregoing requirements no later than the deadline to answer.  Additionally, if the parties believe that additional time is needed for the mediation process contemplated by this Order (for example, because of a delay in service on, or the appearance of, a defendant or because the Court-annexed Mediation Program is unavailable to hold a mediation before the initial pretrial conference scheduled below), the parties may file a letter motion with this Court seeking an appropriate extension of the deadlines herein or a reasonable adjournment of the initial pretrial conference.

       Separate and apart from the foregoing, it is hereby ORDERED that counsel for all parties shall appear for an initial pretrial conference with the Court on **October 10, 2019,** at **3:15 p.m.** in **Courtroom 1105** of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York.  All counsel are required to register promptly as filing users on ECF and to familiarize themselves with the SDNY ECF Rules & Instructions, which are available at http://nysd.uscourts.gov/ecf_filing.php.  **All counsel must also familiarize themselves with the Court's Individual Rules, which are available at http://nysd.uscourts.gov/judge/Furman.** Absent leave of Court obtained by letter-motion filed before the conference, all pretrial conferences must be attended by the attorney who will serve as principal trial counsel.

JA-23

Counsel are directed to confer with each other prior to the initial pretrial conference regarding each of the subjects to be considered at a Federal Rule of Civil Procedure 16 conference (as well as the subject discussed in Paragraph (5) below).  Additionally, in accordance with Paragraph 2.B of the Court's Individual Rules and Practices, the parties are hereby ORDERED to file on ECF a joint letter, described below, as well as a proposed Civil Case Management Plan and Scheduling Order attached as an exhibit to the joint letter, no later than **Thursday of the week prior to the initial pretrial conference**.  The parties shall use this Court's form Proposed Civil Case Management Plan and Scheduling Order, which is also available at http://nysd.uscourts.gov/judge/Furman.  Any open legal issues can be addressed at the conference.

The joint letter shall not exceed five (5) pages, and shall provide the following information in separate paragraphs:

(1)     A brief statement of the nature of the action and the principal defenses thereto;

(2)     A brief explanation of why jurisdiction and venue lie in this Court.  In any action in which subject matter jurisdiction is founded on diversity of citizenship pursuant to Title 28, United States Code, Section 1332, the letter must explain the basis for the parties' belief that diversity of citizenship exists.  Where any party is a corporation, the letter shall state both the place of incorporation and the principal place of business.  In cases where any party is a partnership, limited partnership, limited liability company, or trust, the letter shall state the citizenship of each of the entity's members, shareholders, partners, and/or trustees.  *See, e.g.*, *Handelsman v. Bedford Vill. Assocs. L.P.*, 213 F.3d 48 (2d Cir. 2000).

(3)     A statement of all existing deadlines, due dates, and/or cut-off dates;

(4)     A brief description of any outstanding motions;

(5)     A brief description of any discovery that has already taken place and of any discovery that is necessary for the parties to engage in meaningful settlement negotiations;

(6)     A list of all prior settlement discussions, including the date, the parties involved, and the approximate duration of such discussions, if any;

(7)     A statement confirming that the parties have discussed the use of alternate dispute resolution mechanisms and indicating whether the parties believe that (a) a settlement conference before a Magistrate Judge; (b) participation in the District's Mediation Program; and/or (c) retention of a privately retained mediator would be appropriate and, if so, when in the case (*e.g.*, within the next sixty days; after the deposition of plaintiff is completed; after the close of fact discovery; etc.) the use of such a mechanism would be appropriate; and

(8)   Any other information that the parties believe may assist the Court in advancing the case to settlement or trial, including, but not limited to, a description of any dispositive issue or novel issue raised by the case.

If this case has been settled or otherwise terminated, counsel are not required to submit such letter or to appear, provided that a stipulation of discontinuance, voluntary dismissal, or other proof of termination is filed on the docket prior to the date of the conference, using the appropriate ECF Filing Event.  *See* SDNY ECF Rules & Instructions §§ 13.17-13.19 & App'x A, *available at* http://nysd.uscourts.gov/ecf_filing.php.

In accordance with the Court's Individual Rules and Practices, requests for an extension or adjournment may be made only by letter-motion filed on ECF and must be received at least 48 hours before the deadline or conference.  The written submission must state (1) the original date(s); (2) the number of previous requests for adjournment or extension; (3) whether these previous requests were granted or denied; (4) whether the adversary consents and, if not, the reasons given by the adversary for refusing to consent; and (5) the date of the parties' next scheduled appearance before the Court.  Unless counsel are notified that the conference has been adjourned, it will be held as scheduled.

**Counsel who have entered a notice of appearance as of the issuance of this order are directed (1) to notify all other parties' attorneys in this action by serving upon each of them a copy of this order and the Court's Individual Rules and Practices forthwith, and (2) to file proof of such notice with the Court.**  If unaware of the identity of counsel for any of the parties, counsel receiving this order must forthwith send a copy of this order and the Court's Individual Rules and Practices to that party personally.

SO ORDERED.

Dated: July 15, 2019
     New York, New York

_____
JESSE M. FURMAN
United States District Judge

JA-25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
ARTHUR USHERSON,                                                    :
                                                                    :
                                        Plaintiff,                  :          19-CV-6368 (JMF)
                                                                    :
                    -v-                                             :     MEDIATION REFERRAL
                                                                    :          ORDER
BANDSHELL ARTIST MANAGEMENT,                                        :
                                                                    :
                                        Defendant.                  :
                                                                    :
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

         It is hereby ORDERED that this case, involving claims under the Copyright Act, 17
U.S.C. § 101 *et seq.*, is referred for mediation to the Court-annexed Mediation Program.  The
parties are hereby notified that Local Rule 83.9 shall govern the mediation and are directed to
participate in the mediation in good faith.  **The mediation should take place at least two weeks
prior to the Initial Pretrial Conference, which is currently scheduled (by separate Order to
be entered today) for October 10, 2019.**  The mediation will have no effect upon any
scheduling Order issued by this Court without leave of this Court.  The Court specifically
requests a mediator with expertise in copyright matters be assigned.

         To facilitate prompt mediation, Plaintiff is hereby ORDERED to file proof of service no
more than three days after service has been effected.  Plaintiff is further ORDERED to produce
to Defendant, **by the earlier of 14 days after service of process or three business days in
advance of any mediation session,** (1) copies of records sufficient to show the royalty paid the
last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2)
the number of times the work was licensed in the last five years.

         SO ORDERED.

Dated: July 15, 2019
       New York, New York                               _____
                                                                 JESSE M. FURMAN
                                                              United States District Judge

JA-26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARTHUR USHERSON,** | |
| **Plaintiff,** | **Docket No.  1:19-cv-6368** |
| **v.** | |
| **BANDSHELL  ARTIST  MANAGEMENT** | **ANSWER    AND    AFFIRMATIVE DEFENSES  OF  BANDSHELL  ARTIST MANAGEMENT** |
| **Defendant.** | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Bandshell Artist Management ("Bandshell") by and through its attorneys, for its Answer and Affirmative Defenses to the Complaint of Plaintiff Arthur Usherson states as follows:

**NATURE OF THE ACTION**

1.      Bandshell is without sufficient information to admit or deny whether Plaintiff owns and registered the photograph at issue and therefore denies the same.  Bandshell denies any unauthorized reproduction or public display of the photograph. Bandshell denies Plaintiff is entitled to any monetary relief.  Bandshell denies any remaining allegations in this paragraph.

**JURISDICTION AND VENUE**

2.      Admitted.

3.      Admitted.

4.      Admitted.

**PARTIES**

5.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

1

6.      Denied as Bandshell's place of business is at 204 West 84th St. Ste 204, New York, New York 10024.  Further denied as Bandshell was only one of several administrators of the Website in question.

## STATEMENT OF FACTS

**A.      Background and Plaintiff's Ownership of the Photograph**

7.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

8.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

9.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

**B.      Defendant's Allegedly Infringing Activity**

10.     Bandshell admits the photograph ran on a page administrated in part by Bandshell and denies any remaining allegations in this paragraph.

11.     Denied.

## CLAIM FOR RELIEF

12.     Bandshell incorporates by reference each and every response contained in Paragraphs 1-11 above.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

2

JA-28

18.   Denied.

## **PRAYER FOR RELIEF**

Bandshell denies all factual assertions contained in Plaintiff's prayer for relief and further denies that Plaintiff is entitled to any relief in this action.

## **GENERAL DENIAL**

All allegations in the Complaint not specifically admitted are denied.

## **AFFIRMATIVE DEFENSES**

By way of further answer, and without conceding that it bears the burden of proof as to any of these defenses, Bandshell asserts the following defenses to the claims set forth in Plaintiff's Complaint:

### FIRST AFFIRMATIVE DEFENSE
### (FAILURE TO STATE A CLAIM)

Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (NO COPYRIGHT INFRINGEMENT)

Bandshell has not infringed and does not infringe any valid and enforceable copyright of Plaintiff.

### THIRD AFFIRMATIVE DEFENSE
### (FAIR USE DOCTRINE)

Plaintiff's claims are barred, in whole or in part, by the Fair Use Doctrine.

3

### FOURTH AFFIRMATIVE DEFENSE
### (ACQUIECENCE, UNCLEAN HANDS, WAIVER, AND ESTOPPEL)

The relief sought by Plaintiff is barred, in whole or in part, by the equitable doctrines of acquiescence, unclean hands, waiver, and estoppel.

### FIFTH AFFIRMATIVE DEFENSE
### (IMPLIED LICENSE)

Plaintiff's claims are barred, in whole or in part, under the doctrine of implied license.

### SIXTH AFFIRMATIVE DEFENSE
### (NO DAMAGES)

Plaintiff's claims and damages claims are barred because Plaintiff has suffered no provable damages in this case. Nor can Plaintiff show any provable nexus between any damages and the alleged infringement.

### SEVENTH AFFIRMATIVE DEFENSE
### (NO INJUNCTIVE RELIEF)

To the extent Plaintiff seeks injunctive relief for any alleged infringement, the relief is unavailable because any alleged injury to Plaintiff is not immediate or irreparable, the balance of hardships and public interest weighs against the grant of an injunction, and Plaintiff has an adequate remedy at law.

### EIGHTH AFFIRMATIVE DEFENSE
### (RESERVATION OF REMAINING DEFENSES)

Bandshell reserves all defenses, at law or in equity, which may now exist or in the future may be available based on discovery.

JA-30

WHEREFORE, Bandshell requests that this Court enter judgment in Defendant's favor, dismiss Plaintiff's Complaint with prejudice, award Defendant all costs and fees incurred herein, including attorneys' fees, and order whatever further relief this Court deems just and appropriate.

Respectfully submitted on September 25, 2019.


**BANDSHELL ARTIST MANAGEMENT**

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, VA 22102
Tel: (703) 712-5061
Fax: (703) 712-5187
Email: bnewberg@mcguirewoods.com


*Attorney for Defendant Bandshell Artist Management*

5

JA-31

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Answer and Affirmative Defenses to Plaintiff's Complaint with the Clerk of the Court using the CM/ECF system on this 25th day of September, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: September 25, 2019

/s/ Brad R. Newberg
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

JA-32



**Liebowitz Law Firm, PLLC**
ATTORNEYS FOR THE PHOTOGRAPHIC ARTS

11 SUNRISE PLAZA, STE. 305
VALLEY STREAM, NY 11580
(516) 233-1660
WWW.LIEBOWITZLAWFIRM.COM

October 4, 2019

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Usherson v. Bandshell Artist Management (1:19-cv-6368-JMF)*

Dear Judge Furman,

We represent Plaintiff, Arthur Usherson, in the above in-captioned case. Defendant engaged counsel on September 19, 2019. The mediation office did not assign a mediator because for some reason the mediation case track was terminated on July 29, 2019.  On October 3, 2019 I found a mediator that can do the mediation on October 8, 2019 via telephone to accomplish it before the October 10 Court conference.  We respectfully request to either have the mediation scheduled for October 8, 2019 via telephone or to schedule the mediation for another time in October. In addition, we respectfully request that the initial conference be adjourned until after the mediation.

The Court's consideration is much appreciated.

Respectfully submitted,

/s/Richard Liebowitz
Richard P. Liebowitz

*Counsel for Plaint₀f Arthur Usherson*

Liebowitz Law Firm, PLLC

JA-33

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR USHERSON, | |
| Plaintiff, | |
| v. | **Docket No. 1:19-cv-6368 (JMF)** |
| BANDSHELL ARTIST MANAGEMENT | |
| Defendant. | |

### NOTICE OF MOTION FOR SANCTIONS

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law,

Declaration of Brad R. Newberg dated November 6, 2019, and all exhibits annexed thereto, and

upon all prior proceedings, pleadings, and filings in this action, Defendant Bandshell Artist

Management, by and through their undersigned counsel, hereby moves this Court before the

Honorable Jesse M. Furman, at the Thurgood Marshall United States Courthouse, Courtroom

1105, 40 Foley Square, New York, New York, 10007, for an Order granting sanctions against

Plaintiff Arthur Usherson and Plaintiff's counsel, Richard Liebowitz, pursuant to this Court's

inherent authority, Federal Rules of Civil Procedure 16(f) and 41, and 28 U.S.C. § 1927.

Dated: November 6, 2019                         Respectfully submitted,

                                                */s/ Brad R. Newberg*
                                                Brad R. Newberg (#BN1203)
                                                McGuireWoods LLP
                                                1750 Tysons Blvd.
                                                Tysons Corner, VA 22102
                                                T: 703-712-5061
                                                F: 703-712-5050
                                                bnewberg@mcguirewoods.com

                                                *Attorney for Defendant Bandshell*
                                                *Artist Management*

JA-34

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Notice of Motion for Sanctions with the Clerk of the Court using the CM/ECF system on this 6th day of November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 6, 2019

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR USHERSON, | |
| Plaintiff, | |
| v. | Docket No. 1:19-cv-6368 (JMF) |
| BANDSHELL ARTIST MANAGEMENT | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SANCTIONS**

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist*
*Management*

JA-36

### TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................. 1

II.   FACTUAL BACKGROUND ................................................................. 3

III.   ARGUMENT ................................................................................. 13

   A.   Pursuant to This Court's Inherent Authority, Plaintiff and Plaintiff's Counsel Should Be Sanctioned for Violations of Court Orders .................................... 14

   B.   This Court Should Also Sanction Plaintiff's and Plaintiff's Counsel's Willful Defiance of the Court's Order under the Federal Rules of Civil Procedure ..................... 16

   C.   Plaintiff and Plaintiff's Counsel Should Be Sanctioned for their Failure to Timely File Proof of Service and Provide Licensing and Royalty Information as Ordered ......... 19

IV.   CONCLUSION ............................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975)................................................................................14

*Centennial Archaeology, Inc. v. Aecom, Inc.*,
    688 F.3d 673 ..........................................................................................15

*Craig v. UMG Recordings, Inc.*,
    2019 WL 2992043 (S.D.N.Y. 2019).......................................................13

*Craig v. UMG Recordings, Inc.*,
    380 F.Supp. 3d 324 (S.D.N.Y. 2019)....................................................14

*Dallas v. Goldberg*, 2003 WL 22872325
    2003 WL 22872325 .............................................................................15

*Early v. Superintendent of Groveland Correctional Facility*,
    680 F.Supp.2d 445 (W.D.N.Y.)............................................................17

*Ferdman v. CBS Interactive, Inc.*,
    342 F.Supp.3d 515 (S.D.N.Y. 2018).....................................................13

*Galt G/S v. Sealand Services, Inc.*,
    No. 87-CV-1038, 1989 WL 69908 (N.D.N.Y. June 13, 1989)................15

*Hall v. Flynn*,
    829 F.Supp. 1401 (N.D.N.Y. 1993) ......................................................15

*Ledju v. New York City Department of Sanitation*,
    173 F.R.D. 105 (S.D.N.Y. 1997) ..........................................................15

*LeSane v. Hall's Sec. Analyst, Inc.*,
    239 F.3d 206 (2nd Cir. 2001)................................................................17

*MA Salazar, Inc. v. Incorporated Village of Atlantic Beach*,
    499 B.R. 268 (E.D.N.Y. 2013) .............................................................14

*Meyer v. Kalanick*,
    212 F.Supp.3d 437 (S.D.N.Y. 2016)......................................................14

*New York Ass'n for Retarded Children, Inc. v. Carey*
    711 F.2d 1136 (2d Cir. 1983)................................................................15

JA-38

*Pereira v. 3072541 Canada Inc.*,
2018 WL 5999636 (S.D.N.Y. 2018) ................................................. 13

*Polaris Images Corp. v. CBS Interactive, Inc.*,
2019 WL 5067167 (S.D.N.Y. 2019) ................................................. 20

*Rice v. NBCUniversal Media, LLC*,
2019 WL 3000808 (S.D.N.Y 2019) ................................................. 13

*Romag Fasteners, Inc. v. Fossil, Inc.*,
29 F.Supp.3d 85 (D. Conn. 2014) ................................................. 17

*Sands v. Bauer Media Grp. USA, LLC*,
2019 WL 4464672 (S.D.N.Y. 2019) ........................................... 13, 18

*Saxon v. Zirkle*
97 A.3d 568 (D.C. 2014) ................................................. 15

*Steeger v. JMS Cleaning Servs. LLC*,
2018 WL 1363497 (S.D.N.Y 2018) ................................................. 13

*Walpert v. Jeffrey*,
127 F.Supp.3d 105 (S.D.N.Y. 2015) ................................................. 14

**Federal Statutes**

28 U.S.C. § 1927 ........................................... 2, 14, 16, 17

**Rules**

Federal Rules of Civil Procedure:

Rule 16(f) ........................................... 2, 14, 19

Rule 16(f)(1)(c) ................................................. 16

Rule 16(f)(2) ................................................. 16

Rule 41 ........................................... 2, 14, 18

Rule 41(b) ................................................. 17

Federal Rules of Evidence:

Rule 408 ................................................. 9

Local Rules of the United States District Courts for the Southern and Eastern
Districts of New York:

JA-39

**Rules – continued**

Rule 83.9 (including/adopting the Southern District Mediation Procedures) ................ 5-8, 12, 18

JA-40

Bandshell Artist Management ("Bandshell") respectfully submits this memorandum in support of its motion for sanctions against Plaintiff Arthur Usherson ("Usherson" or "Plaintiff") and his counsel, Mr. Liebowitz, for repeatedly violating court orders, especially the Order in this case requiring an in-person mediation by October 31, 2019.

## I.      PRELIMINARY STATEMENT

As the Court might remember, it was "to put it mildly, somewhat perturbed" by the failure of Plaintiff and Mr. Liebowitz to follow its July 15, 2019 Orders (Dkt. 5 and 6) and schedule and complete an in-person mediation in this case prior to the originally scheduled initial court conference. *See* Dkt. 13. Due to that failure, on October 7, the Court pushed off the initial conference to November 14, 2019, and issued another Order, this time ordering the parties to "conduct the in-person mediation no later than October 31, 2019." *Id.*

Defendant's counsel gave Mr. Liebowitz a list of various dates that his client could be available and that Defendant's counsel could travel from Virginia to New York. Mr. Liebowitz immediately responded by choosing the very last date possible, October 31.

Despite the Court's Orders (and even before (and after) the October 7 Order, Defendant's counsel's reminders to Mr. Liebowitz that the mediation needed to be in-person and with the parties), the instructions from the Mediation Office, this Court's Local Rule adopting the Procedures of the Mediation Office, and that Mr. Liebowitz specifically chose a date that he and his client could supposedly be available in New York, and that Mr. Liebowitz and Defendant's counsel were in contact the day before and very early the morning of mediation, with numerous references to the mediation (and no mention that he and his client would not be attending), ***neither Plaint₍₎f Mr. Usherson nor Mr. Liebowitz showed up to the mediation***. It appears

1

Plaintiff never left Georgia where he lives, and Defendant's counsel has discovered that Mr. Liebowitz was in Los Angeles, having hosting a party there the night before.[1]

Given the blatant disregard of this Court's Orders, Defendant respectfully requests, under its inherent powers, under Federal Rules of Civil Procedure 16 and 41, and under 28 U.S.C. § 1927, that this Court Order that:

- Plaintiff and its counsel (who shall be jointly responsible) shall pay/reimburse Defendant for its costs of travel and ten hours of Defendant's attorney's legal fees (representing a discounted amount of time spent on preparing the mediation statement, preparing for mediation, attendance at the courthouse, and travel);

- This matter shall be dismissed with prejudice; and,

- To the extent any Orders are issued related to this Motion, Plaintiff's counsel shall be required to provide a copy to Plaintiff and verify the same to this Court, and to the extent there are any hearings related to this Motion, Plaintiff shall be required to attend in person.

Finally, Plaintiff was also in violation of both portions of this Court's July 15 Mediation Referral Order. Dkt. 6. The July 15 Order required Plaintiff to "file proof of service no more than three days after service has been effected" and within 14 days of service to produce to Defendant "(1) copies of records sufficient to show the royalty paid the last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2) the number of times the work was licensed in the last five years." Plaintiff failed to comply with any of the Order.

---

[1] Mr. Liebowitz did send an associate (not of record in this case and seemingly with no knowledge of this case), and Mr. Liebowitz's sister—we do not know if she is even an attorney—to inform us that Mr. Usherson and Mr. Liebowitz would not be attending.

2

JA-42

We bring the violation of that particular Order to the Court's attention (in addition to the more serious violation of the mediation Orders) because this is not the first time Mr. Liebowitz has violated or been sanctioned over failure to comply with this exact Order. This Court should therefore again impose sanctions for this conduct. However, Defendant does not request that sanction be paid to Defendant. Instead, any sanctions the Court deems necessary for violation of the Order related to service and licensing information should be paid to the Clerk of Court or any other fund deemed appropriate by the Court.

## II.     FACTUAL BACKGROUND

### A.  Brief Background Regarding This Case

Defendant Bandshell is a small music management company. Bandshell represents a few musical artists, such as The David Bromberg Quintet. David Bromberg is an older gentleman, who has had a long career, originally becoming well known for playing with some of American music's legends, such as Bob Dylan. Bandshell administers The David Bromberg Quintet's Facebook page, providing information about David Bromberg and his band. On May 30, 2019, Leon Redbone, another American music legend, passed away. The profile picture on Mr. Redbone's Facebook page was a cropped portion of the photograph in question in this lawsuit. The cropped portion shows Leon Redbone, David Bromberg, and Bob Dylan together at the Mariposa Folk Festival in 1972. The photograph contained no copyright notice or copyright information whatsoever.[2] In tribute to Mr. Redbone, Bandshell posted a Rest in Peace message

---

[2] The photograph appears to have been published for years without any copyright notice. Among other issues, including Defendant's fair use of the photograph, Defendant's eventual summary judgment motion will address the fact that a plaintiff cannot hold a copyright in a work that was published prior to 1989 without a copyright notice.

3

on The David Bromberg Quintet's Facebook page, noting their friendship, and showing Mr. Redbone's Facebook profile picture.

For this, Plaintiff Arthur Usherson, through his attorney, Richard Liebowitz, is suing Bandshell.  On July 10, 2019, Plaintiff filed this suit alleging The David Bromberg Quintet's tribute to Leon Redbone showing Redbone's Facebook profile infringed on Usherson's copyright in the original photograph.  Bandshell was not served until September 5, 2019, and Bandshell immediately retained counsel, which took this case on *pro bono*.

### B.  Plaintiff's and His Counsel's Violation of Every Court Order to Date

The very first orders in this case were the Court's July 15 Orders.  (Dkt. 5 & 6).  Dkt. 6, the Mediation Referral Order required Plaintiff to "file proof of service no more than three days after service has been effected" and within 14 days of service to produce to Defendant "(1) copies of records sufficient to show the royalty paid the last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2) the number of times the work was license in the last five years."

The July 15 Order, Dkt. 6, required Plaintiff to "file proof of service no more than three days after service has been effected."  Plaintiff served Defendant on September 5, yet, in violation of the Order, did not file his proof of service for 16 days (September 21) instead of three.  Dkt. 7; *see also* Declaration of Brad R. Newberg, ¶¶ 4–5.

Regarding the licensing information requirement, Plaintiff failed to comply with this portion of the Order as well.  Plaintiff's counsel only revealed to Defendant's counsel that the photograph in question had never been licensed after Defendant's counsel questioned compliance with the July 15 Order, received no answer, and followed up the next day.  *See Id.*, ¶¶ 6–7, Ex. 1.

4

JA-44

Plaintiff then went into radio silence, forcing Defendant's counsel to contact Plaintiff's counsel on October 3 to remind him of a case management plan due that day. *Id.,* ¶ 8, Ex. 2. At that point, Plaintiff's counsel first mentioned that he needed to schedule the parties' mediation, and asked for it to be two business days later. Despite the late notice, Defendant's counsel responded that he could get to New York then, and tried to verify that Plaintiff could be there in person for mediation as well. *Id.,* ¶ 10, Ex. 2. However, Plaintiff's counsel requested that it be: a) telephonic and b) lawyers-only. *Id.,* ¶ 7, Ex. 2. Mr. Liebowitz also requested that the lawyers use a mediator he knew of and not go through the Mediation Office (although the mediator he chose is a mediator affiliated with the Mediation Office). *Id.,* ¶ 11, Ex. 2.

Defendant's counsel expressed discomfort with Mr. Liebowitz's requests on a number of levels, informing Mr. Liebowitz that he did not believe the court would want a telephonic conference—which was not in accordance with standard procedures for this Court—and there could not possibly be a mediation without the parties present. *Id.,* ¶ 12, Ex. 2. This was especially true given that the Mediation Referral Order (Dkt. 6) directed the "parties" to participate in the mediation in good faith, and in compliance with Local Rule 83.9, which is governed by the "Procedures of the Mediation Program for the Southern District of New York."

Defendant's counsel also expressed concern as to whether the mediator had the expertise required by the court Order, which (Dkt. 6) required a mediator "with expertise in copyright matters." *Id.,* ¶ 12, Ex. 2. Mr. Liebowitz assured Defendant's counsel that the mediator he chose was a "copyright lawyer who is part of the mediation program." *Id.,* ¶ 13, Ex. 2. However, a search of the mediator's background showed only experience in bankruptcy law. *Id.,* ¶ 14, Ex. 2. Defendant's counsel raised concerns about the mediator's expertise and again reiterated that the mediation would require the attendance of both parties. *Id.*

5

Eventually (and after hearing from the mediator Mr. Liebowitz had chosen the mediator's representation that he could handle copyright cases), in the spirit of cooperation, Defendant's counsel told Mr. Liebowitz that, *if and only if the arrangement was acceptable to the Court and the Mediation Office/mediator*, Defendant's counsel could agree to the telephonic mediation he was requesting as long as the parties would fully participate.  *Id.,* ¶¶ 15–16, Ex. 2.

On October 4, Mr. Liebowitz reached out to the Mediation Office to have his request docketed. *Id.,* ¶ 17, Ex. 3–4. That same day, the Mediation Office wrote the parties, expressing its discomfort with a telephonic mediation and Mr. Liebowitz's outreach to a mediator directly and not through the Mediation Office, and stating that **neither could be considered "in accordance with the procedures that govern this program."** *Id.,* ¶ 18, Ex. 3–4 (emphasis added).  The Mediation Office stated clearly that a telephonic mediation *should not go forward*, the Mediation Office would await the Court's guidance, and that the parties could choose the same mediator in the future, but it must be done through the Mediation Office's "normal process." *Id.* The Mediation Office instructed the parties that the Court's mediation Order stood, and directed them to "seek appropriate relief directly from the Judge." *Id.,* ¶ 19, Ex. 3.

Mr. Liebowitz then attempted to write the Court and get approval for his arrangement or move the October 10 initial court conference date. He sent Defendant's counsel a draft of what Mr. Liebowitz was going to send the Court, saying that he was going to file it that same day. *Id.,* ¶ 20, Ex. 5.  Defendant's counsel was very disheartened to see that the letter had various factual assertions about the history of the case that simply were not true, and apparently created in an effort to make the request more likely to be approved, such as stating Defendant's counsel was retained later than he was, that the parties had been attempting to find a mediator, and that the parties desired a telephonic mediation to avoid the costs of Defendant's Counsel coming to New

6

York—something never requested by Defendant's counsel.  *Id.,* ¶ 21, Ex. 5.  Defendant's counsel informed Mr. Liebowitz that he could not file a letter with those inaccuracies and he needed to modify the letter, which he did (at Dkt. 12, filed October 4).  *Id.,* ¶ 22, Ex. 5.

On October 7, the Court issued an Order on Mr. Liebowitz's letter.  Dkt. 13.  The Court stated that it was "to put it mildly, somewhat perturbed" by Mr. Liebowitz's actions and statements, expressing particular displeasure with Mr. Liebowitz's delays.  *Id.*  The Court adjourned the initial pretrial conference to November 14, 2019 at 4:00 pm and Ordered that the "parties shall conduct the **in-person** mediation no later than October 31, 2019."  *Id.* (emphasis added).

*In sum, this Court specifically gave the parties significant time to make sure they could conduct an in-person mediation with the parties and lead lawyers present, and conducted properly through the Mediation Office and in accordance with the mediation procedures of this Court as per the Local Rules.*  Newberg Decl.¶ 25.

The Mediation Office also followed up on October 7, contacting the parties to make them aware that the mediation needed to occur **in-person** in accordance with the Judge's direction. *Id.,* ¶ 24, Ex. 4.  This was yet another signal to Mr. Liebowitz that he needed to make sure that he and his client would be available in person at the Mediation Office for whatever mediation was scheduled. At this point, the Court, the Mediation Office, and the rules and Mediation procedures of this Court had made it clear that mediation was to be conducted in person, attended by both the parties and their lead counsel. *Id.,* ¶ 26.

Furthermore, as per the Court's Local Rule, which adopts the standing Procedures of the Mediation Program, including Section 9, "Attendance at Mediation Sessions" (emphasis added):

a. Each party **must attend mediation. This requirement is critical** to the
   effectiveness of the mediation process as it enables parties to articulate their

7

positions and interests, to hear firsthand the positions and interests of the other parties, and to participate in discussions with the mediator both in joint session and individually. **If a represented party is unable to attend** a previously scheduled mediation because of a change in that party's availability, **the party's attorney must notify the mediator immediately so that a decision can be made whether to go forward with the mediation session as scheduled or to reschedule it.** Mediators are required to report to the Court if a party failed or refused to attend, or refused to participate in the mediation.

b. Each represented party **must be accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter**.

Defendant's counsel gave Mr. Liebowitz various dates that Defendant's counsel could travel to New York from Virginia and on which his client would also be available and asked Mr. Liebowitz to pick whatever date he wanted *where his client could come to New York from Georgia and Mr. Liebowitz would be available*, to make it easiest for them to both attend in person. Newberg Decl., ¶ 28, Ex. 6. Mr. Liebowitz did not raise any issues of availability but rather immediately responded (within five minutes) with the last possible date, October 31. *Id.,* ¶ 29, Ex. 6. The in-person mediation was therefore scheduled for October 31 at noon, at the Mediation Offices at 40 Foley Square. *Id.,* ¶ 30. ███████ the mediator, informed the parties their required mediation statements were due by October 29. *Id.*

Defendant's counsel received an email from the mediator in the evening of October 23 seeking a call on October 24 ██████████████████████████. *Id.,* ¶ 31, Ex. 7. Defendant's counsel had a call with the mediator on October 24 and it was agreed that ████ ██████████████████████ the in-person mediation would move forward. *Id.,* ¶ 32.

Defendant sent a detailed Confidential Mediation Statement to the mediator before October 29. *Id.,* ¶ 32. It is unknown if Plaintiff sent such a statement.

8

On October 30, the day before the mediation, Defendant's counsel received an email
from the mediator with a potential offer from Plaintiff. *Id.,* ¶ 34.[3]  That offer was unacceptable to
Defendant. *Id.*  However, in a good-faith effort to end the case, Defendant's counsel drafted a
full proposed agreement, stating in the email (which we believe was forwarded on to Mr.
Liebowitz with the draft agreement) that Plaintiff could sign the agreement or "we will see Mr.
Liebowitz and Mr. Usherson tomorrow and we can continue discussing the possibility of
settlement at the mediation. . . ." *Id.,* ¶ 35.  Later that evening, the mediator sent an email stating
that he had talked to Mr. Liebowitz, who relayed that he "has been tied up.  He will review [the
draft Defendant's counsel sent] tonight and get back to us in morning.  Hopefully we can settle
this before need to go to **in person mediation**." *Id.,* ¶ 36, Ex. 8 (redacted) (emphasis added).
Defendant's counsel reiterated to the mediator that he would be headed to the train station "well
before 6:00 am" and further noted his assumption that "Mr. Usherson either flew to NY tonight
or is likewise on a very early plane." *Id.*  The mediator responded "I understand." *Id.*

At 4:14 am on October 31, Defendant's counsel received an email from Mr. Liebowitz
stating "Attached please find revisions to the agreement which can be discussed at mediation."
*Id.,* ¶ 37, Ex. 9 (without attachment).  Even at this point, hours before mediation, there was no
mention that Mr. Liebowitz or his client might not show despite Defendant's counsel repeatedly
mentioning to the mediator and Mr. Liebowitz their imminent in-person conference. *Id.,* ¶ 38.
The email sent by Mr. Liebowitz cc'd a "James H. Freeman" but did not mention anything about
Mr. Freeman attending the mediation. *Id.,* ¶ 39, Ex. 9.  Mr. Freeman has not made an appearance

---

[3] Although it is unlikely that Rule 408 applies here, the October 30 and 31 emails are not being
submitted out of an abundance of caution.

in this case, and to the best of Defendant's counsel's knowledge has not been on any prior emails or calls in this case. *Id.,* ¶ 40.

The revisions were unacceptable, and strange in that at least one did not seem to have any application to this matter. *Id.,* ¶ 41. Defendant's counsel was admittedly surprised to see the email had come in at 4:14 am—but (as noted below) Defendant's counsel later discovered that Mr. Liebowitz was in Los Angeles (so it was only 1:14 his time), over 2000 miles away, hosting a party, and had no intention (and likely never had any intention) of coming to the mediation. *Id.,* ¶ 58, Ex. 10.

Never once did Mr. Liebowitz state that he would not be at or even might not be at the mediation. *Id.,* ¶ 42. Never once did Mr. Liebowitz state that his client would not be at or might not be at the mediation. *Id.,* ¶ 43. This is despite numerous occasions of Defendant's counsel making references to Mr. Usherson and Mr. Liebowitz being at the Court Ordered in-person mediation. *Id.,* ¶¶ 10, 12, 14–16, 28, 35, 38.

Defendant's counsel set his alarm for 5:00 am after having apologized the night before to one daughter for having to miss her playoff volleyball match and the other for having to arrange alternative Halloween plans for her,[4] went to New York, met with his client to prepare for the mediation, and entered the mediation room with his client at 11:45 am for the noon mediation. *Id.,* ¶¶ 44–46.

At that point, and for the first time, Defendant's counsel was told by the mediator that he had gotten word that Mr. Liebowitz would not be attending the mediation, and he did not know, but doubted Mr. Usherson would be attending. *Id.,* ¶ 47. Soon thereafter, Mr. Liebowitz's associate, James Freeman, arrived with Mr. Liebowitz's sister, to let us know that Mr. Usherson

---

[4] Defendant's counsel asks the Court's forgiveness for expressing his frustration.

would not be attending either. *Id.,* ¶ 48.  Despite the Rule that lead trial counsel attend the

mediation, Mr. Liebowitz's associate, Mr. Freeman, has not even made an appearance in this

case, and seemed to have little (if any) knowledge of the details of the case. *Id.,* ¶ 49.  It is

unclear if Mr. Liebowitz's sister is an attorney or what role, if any, she has in this case. *Id.*  Mr.

Freeman seemed surprised that Defendant's counsel was upset that neither Mr. Liebowitz nor

Mr. Usherson were there. *Id.,* ¶ 50.  Clearly, sending an associate not admitted to this case and

without a client present was not remotely in compliance with the Court's direct Orders, nor with

the standing rules or procedures regarding mediations in this Court. *Id.,* ¶ 51.  Furthermore, Mr.

Liebowitz can hardly be considered unfamiliar with this Court.

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

54. █████████████████████████████████ the meeting (it is

doubtful one could call it a mediation) ended, a few minutes after it started. *Id.,* ¶ 55.

Defendant's counsel got on a train and headed back to Virginia. *Id.,* ¶ 56.

While on the train, Defendant's counsel went on the Internet to look up Mr. Liebowitz's

website. *Id.,* ¶ 57.  Defendant's counsel was shocked and appalled when the first thing that came

up in the search was Mr. Liebowitz's firm's Twitter feed, which revealed that he was in Los

Angeles, having hosted an event there the prior night. *Id.,* ¶ 58, Ex. 10.  As such, Mr. Liebowitz

almost certainly knew he could not attend the mediation when he scheduled it and up until the

moment he did not attend. *Id.,* ¶ 58, Ex. 10. This, in spite of him supposedly choosing October

31 so that he could attend and his client could travel to New York from Georgia. *Id.,* ¶ 28.

11

JA-51

On November 1. 2019, Defendant's counsel sent Mr. Liebowitz an email, requesting reimbursement of Defendant's costs and ten hours of Defendant's counsel's legal fees, as well as dismissal of this case with prejudice due to Plaintiff's and Mr. Liebowitz's violation of Court Orders. *Id.,* ¶ 60, Ex. 11. Despite the lack of need under this Court's rules to have a meet and confer on this motion, Defendant's counsel offered one anyway, and that call was held on November 4. *Id.*, ¶ 61, Ex. 11. The call did not result in resolution of this motion.

Although Defendant's lead counsel spent more than ten hours on the Mediation Statement, preparation for mediation, travel to New York, and attendance at the courthouse, and although an associate who works with Defendant's lead counsel worked on the Mediation Statement as well, Defendant is limiting its request to ten hours of its lead counsel's time. *Id.,* ¶ 62. Defendant's counsel's standard 2018 rate is $855 per hour, making the fees request $8,550. *Id.,* ¶ 63.[5] The receipts for all of Defendant's costs for the New York trip are attached to the Newberg Declaration and come to $428.75, making Defendant's total request $8,978.75, plus, to the extent awarded by the Court, Defendant's fees for this Motion. *Id.,* ¶ 64, Ex. 12. Defendant asks that Mr. Usherson and Mr. Liebowitz be jointly liable for this reimbursement. Defendant also asks for dismissal of this matter with prejudice. In a very short time, Mr. Liebowitz has blatantly defied the only two Orders issued by this Court in this case as well as the Court's Local Rules and Mediation Procedures, after at least two years in which he has defied this Court's orders over and over.

Defendant also asks the Court to sanction Mr. Usherson and Mr. Liebowitz for the failure to comply with the July 15 Mediation Referral Order regarding filing proof of service and

---

[5] Defendant's counsel has taken this case on *pro bono*. However, as discussed further in this Motion, legal fees are recoverable even in a pro bono matter.

providing licensing information.  However, Defendant believes that particular sanction should go to the Clerk of Court or other fund designated by the Court and not Defendant.

Finally, Defendant requests that the Court use its inherent powers to require Mr. Liebowitz to provide Mr. Usherson with a copy of any sanctions Orders issued in this case since it is unclear whether Mr. Usherson is aware of the Court's Orders, and verify the same to this Court.  To the extent there is any hearing on this Motion, Defendant respectfully requests that the Court Order Mr. Usherson to attend.

### III.    ARGUMENT

Plaintiff's counsel has added another instance of misconduct to his ever-lengthening list. As the Court is undoubtedly aware, Plaintiff's counsel has been repeatedly been sanctioned by this Court.[6]  Here, he has once more failed to comply with multiple Court Orders, and, in fact, has failed to comply with *any* of the Court Orders issued so far in this matter.  He failed to file his proof of service in the time required by the Court.  He failed to provide Defendant with licensing information in the time required by the Court.  He failed to schedule mediation in the time and in the manner required by the Court.  And then, after scheduling a mediation on a date that was supposedly the date that he and his client could both attend the mediation in person, neither he nor his client appeared.  Given that Mr. Liebowitz was hosting a party in Los Angeles,

---

[6] *See, e.g.*, *Sands v. Bauer Media Grp. USA, LLC*, 2019 WL 4464672, at *7 (S.D.N.Y. 2019) (ordering monetary sanctions against Mr. Liebowitz for discovery misconduct); *Craig v. UMG Recordings, Inc.*, 2019 WL 2992043, at *7 (S.D.N.Y. 2019) (ordering sanctions against Mr. Liebowitz in the amount of $98,532.65 for discovery misconduct), *Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808 (S.D.N.Y 2019), *report & recommendation adopted by* 2019 WL 3752491 (S.D.N.Y. 2019) (sanctioning Mr. Liebowitz for discovery misconduct); *Steeger v. JMS Cleaning Servs. LLC*, 2018 WL 1363497, at *3 (S.D.N.Y 2018) (requiring Mr. Liebowitz to complete four hours of ethics and professionalism CLE courses and ordering monetary sanctions against him); *Ferdman v. CBS Interactive, Inc.*, 342 F.Supp.3d 515, 529 (S.D.N.Y. 2018) (sanctioning Mr. Liebowitz by precluding evidence); *see also Pereira v. 3072541 Canada Inc.*, 2018 WL 5999636, at *3 (S.D.N.Y. 2018) ("[t]o the extent that Mr. Liebowitz and/or his law firm engage in misconduct in the future, the Court will not hesitate to impose sanctions"). There is also a pending motion against Mr. Liebowitz in *Wisser v. Vox Media*, Mem. Of Law in Support of Defendant's Mot. For Sanctions, *Wisser v. Vox Media*, No. 36 1:19-cv-1445-LGS (S.D.N.Y. Oct. 3, 2019), for allegedly forging his client's signature onto Interrogatory responses.

JA-53

it appears he never had any intention of him or his client appearing. Due to this continued and flagrant pattern of willful disregard for the Court's Orders, as well as Mr. Liebowitz's responsibilities as an officer of the court, Bandshell requests sanctions jointly against Plaintiff and its counsel under this Court's inherent authority, 28 U.S.C. §1927, and Federal Rules 16(f) and 41, including, but not limited to, costs, fees, and involuntary dismissal of this case.

## A.  Pursuant to This Court's Inherent Authority, Plaintiff and Plaintiff's Counsel Should Be Sanctioned for Violations of Court Orders

Under this Court's inherent authority, Plaintiff's counsel should be sanctioned for failing to comply with the Court's July 15 Early Mediation Order, and the October 17 Order that mediation be conducted in person (as well as the Court's Local Rule and the Court's Mediation Rules) despite numerous warnings that he and his client must appear in person. *See* Dkt. 5, 6, 13. The Court has inherent power "to sanction parties and attorneys who have 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Craig v. UMG Recordings, Inc.*, 380 F.Supp. 3d 324, 339 (S.D.N.Y. 2019) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)) (sanctioning Mr. Liebowitz). "A court may infer bad faith where the action was 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *MA Salazar, Inc. v. Incorporated Village of Atlantic Beach*, 499 B.R. 268, 274 (E.D.N.Y. 2013). "Courts' inherent powers include the power to [impose sanctions] for failure to obey court orders." *Walpert v. Jaffrey*, 127 F.Supp.3d 105, 122– 23 (S.D.N.Y. 2015). These powers include the ability to "assess[] attorneys' fees and costs against a party." *Meyer v. Kalanick*, 212 F.Supp.3d 437, 450 (S.D.N.Y. 2016). Plaintiff's counsel has willfully ignored this Court's orders and significantly impaired the resolution of this case and should be sanctioned.

14

JA-54

Defendant is being represented *pro bono,* but the general rule is that attorney's fees are recoverable even where an attorney is represented their client on a pro bono basis. *See Dallas v. Goldberg,* 2003 WL 22872325, *1 (S.D.N.Y. Dec. 5, 2003) (awarding attorney's fees under Rule 16 and the court's inherent power where the party was represented pro bono); *see also New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983) (awarding attorney's fees where a civil rights claimant was represented pro bono); *see also Centennial Archaeology, Inc. v. Aecom, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) ("The purpose of Rule 37 attorney-fee sanctions would be thwarted if the party could escape the sanction whenever the opposing counsel's compensation is unaffected by the abuse"); *see also Saxon v. Zirkle*, 97 A.3d 568, 576–77 (D.C. 2014) (awarding attorney's fees sanctions in spite of pro bono representation by guardians ad litem). As such, Defendant's counsel's representation of Bandshell on a pro bono basis is immaterial.

Plaintiff's and Mr. Liebowitz's conduct is further so egregious as to warrant dismissal as well as costs. "[D]ismissal or default may be an appropriate remedy where 'there is a showing of willfulness, bad faith, or fault." *Walpert*, 127 F.Supp.3d 105 at 122. This Court and its sister districts have repeatedly held that ignoring court orders and failing to appear at conferences is precisely the kind of willful conduct that supports dismissal.  *See, e.g., Led.ju v. New York City Department of Sanitation*, 173 F.R.D. 105 (S.D.N.Y. 1997) (dismissing a case for willful failure to obey pretrial scheduling orders); *see also Hall v. Flynn*, 829 F.Supp. 1401, 1403 (N.D.N.Y. 1993) (dismissing complaint for plaintiff's failure to appear at discovery conference); *see also Galt G/S v. Sealand Services, Inc.*, No. 87-CV-1038, 1989 WL 69908, at *1 (N.D.N.Y. June 13, 1989) (entering default judgment against defendant for failure to comply with a court order).

15

JA-55

Plaintiff and its counsel's misconduct should be sanctioned with dismissal: the Court's inherent powers to dismiss are squarely aimed at this kind of conduct.

Here, Plaintiff and Mr. Liebowitz have been in direct violation of each of the Orders issued so far in this case, the last violation being the most serious: failing to show up for mediation despite a Court Order and various warnings and reminders from the Mediation Office and Defendant's counsel. Not once did Mr. Liebowitz even raise the possibility that he and his client might not attend. But when the day came and Defendant was present with its counsel, who traveled from Virginia early that morning, Mr. Liebowitz was in California presumably hosting an event to grow his portfolio of clients, and Mr. Usherson was still in Georgia. The mediation stymied by Plaintiff's counsel's misconduct required significant preparation. As such, this case should be dismissed and Plaintiff and his counsel jointly ordered to pay the costs and fees of preparing for mediation.

## B. This Court Should Also Sanction Plaintiff's and Plaintiff's Counsel's Willful Defiance of the Court's Order under the Federal Rules of Civil Procedure

Rule 16(f)(1)(c) states, "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." "Instead of or in addition to any other sanction, the court **must** order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Rule 16(f)(2) (emphasis added). Plaintiff and its counsel cannot either justify or explain their failures, and thus sanctions are warranted.

Additionally, sanctions should be imposed under 28 U.S.C. § 1927. § 1927 provides "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously

16

may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F.Supp.3d 85, 105 (D. Conn. 2014) (*judgment vacated in part on other grounds by Romag Fasteners, Inc. v. Fossil, Inc.,* 686 Fed.Appx. 889 (Fed. Cir. 2017)). As such, sanctions should be imposed against Mr. Liebowitz under § 1927 in addition to the court's inherent authority.

Further, under the Federal Rules of Civil Procedure, a case should be dismissed where "the plaintiff fails . . . to comply with . . . a court order." F. R. Civ. P. 41(b). The Second Circuit has "instructed a district court contemplating dismissing a plaintiff's case under Rule 41(b) . . . to consider: '[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal; [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.'" *Early v. Superintendent of Groveland Correctional Facility*, 680 F.Supp.2d 445, 448 (W.D.N.Y.) (quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2nd Cir. 2001)). After a balancing of these factors, and considering the many warnings Mr. Liebowitz has received from this Court regarding his conduct over the past couple of years, the situation here calls for dismissal of this matter with prejudice.

As discussed throughout this memorandum, Plaintiff's counsel ignored both the Court's July 15 Order and its October 17 Order as well as the Local Rule and this Court's standing Mediation Procedures. *See* Dkt. 5, 6, 13; Local Rule 83.9; Procedures of the Mediation Program of the Southern District of New York, Section 9. This conduct goes beyond a simple mistake and passes into willful misconduct. "A 'mere oversight' that happens once or twice is one thing, [a] pattern of discovery and related abuse is quite another and rings of deliberate indifference to an attorney's obligation to behave in a professional, responsible, and competent manner in each and every case he handles." *Sands v. Bauer Media Grp. USA, LLC*, 2019 WL 4464672 at *7 (S.D.N.Y 2019) (sanctioning Mr. Liebowitz). The Court has already recognized Mr. Liebowitz's knowing violation of the Court's orders in this case, stating "he knew or should have known that . . . docket entry did not mean mediation would not be scheduled (let alone relieve counsel of the obligation to comply with the Court's order requiring mediation no later than two weeks before the initial pretrial conference). Dkt. 13.  However, Mr. Liebowitz was not dissuaded from his course of misconduct and failed to attend or have his client attend an in person mediation under the October 17 Order. He cannot excuse his conduct as his failure to conduct mediation stemmed from hosting a client event in California. Instead of responsibly conducting a case he already handles, Mr. Liebowitz was attempting to drum up more business.

In addition to monetary sanctions, Plaintiff's and Plaintiff's counsel's conduct warrants dismissal under Rule 41.  Plaintiff appears to have no excuse (and chose his counsel), and as previously discussed, the disregard for this Court's orders is part of a sustained pattern. Monetary sanctions have had little effect on Mr. Liebowitz.  Further, he is clearly on constructive notice that his defiance of court orders could result in dismissal under the authority this memorandum describes given his history. Bandshell has been prejudiced and is likely to be prejudiced by Mr.

18

JA-58

Liebowitz continuing this pattern as it has already sustained significant costs, multiplied proceedings, and delayed litigation. Allowing this case to continue would undoubtedly result in further misdeeds on Plaintiff's counsel's part, and further prejudice to Bandshell.

**C.  Plaintiff and Plaintiff's Counsel Should Be Sanctioned for their Failure to Timely File Proof of Service and Provide Licensing and Royalty Information as Ordered.**

This Court should bring whatever sanctions it deems appropriate to be paid to the Clerk of the Court for Plaintiff's counsel's failure to comply with this Court's July 15 Mediation Referral Order regarding service and licensing information.  Dkt. 5, 6.  As discussed above, Rule 16(f) provides "the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  Plaintiff's counsel's misconduct warrants further sanctions under this Rule.

Plaintiff and its counsel entirely disregarded this Court's order, something for which this Court has already sanctioned Mr. Liebowitz in prior cases.  The July 15 Order required Plaintiff to "file proof of service no more than three days after service has been effected."  Dkt. 6. Plaintiff served Defendant on September 5, yet, in violation of the Order, did not file his proof of service for 16 days (September 21) instead of three.  The July 15 Order also required Plaintiff to produce to Defendant within 14 days after service (i.e., September 19) to provide "(1) copies of records sufficient to show the royalty paid the last three times the work (e.g., the photograph or video) at issue in this case was licensed and (2) the number of times the work was license in the last five years." Dkt. 6.  Plaintiff failed to do this.  Plaintiff's counsel only revealed to Defendant's counsel that the photograph in question had never been licensed after Defendant's counsel questioned compliance with the July 15 Order.

19

JA-59

While Defendant cannot claim severe prejudice from the willful failure of those parts of the July 15 Orders, we bring this to the Court's attention because this is not the first time Mr. Liebowitz has committed this exact form of misconduct, and he has been warned and sanctioned by this Court over this exact Order in the past.  *See Polaris Images Corp. v. CBS Interactive, Inc.*, 2019 WL 5067167 at *2 (S.D.N.Y. 2019) (noting Mr. Liebowitz had twice disregarded orders to provide information in advance of mediation and sanctioning him). This Court should again impose sanctions for this conduct.  However, Defendant does not request any sanction be paid to Defendant.  Instead, any sanctions the Court deems necessary should be paid to the Clerk of Court or any other fund deemed appropriate by the Court.

## IV.    CONCLUSION

Plaintiff's misconduct has no excuse.  Plaintiff's counsel's misconduct in this case, as well as the growing list of cases sanctioning him, demonstrates his utter lack of regard for court orders and his obligations as an officer of this Court. He has shown again and again that he will not be deterred from misconduct by monetary sanctions. There is little hope he will correct his practices unless severe sanctions are issued. Bandshell is just the latest litigant to suffer the costs of Mr. Liebowitz's actions in the form of costs, multiplied proceedings, and delayed litigation. Defendant now asks this Court to grant sanctions against Plaintiff and Mr. Liebowitz in the form of 1) Bandshell's costs, and ten hours of legal fees, in preparing for and traveling to mediation, 2) involuntary dismissal of this case under the Federal Rules and the Court's inherent authority, 3) Bandshell's fees in preparing this Motion; 4) whatever sanctions the Court deems appropriate to address Plaintiff's and Mr. Liebowitz's failure to comply with the July 15 Orders, and 5) any other sanctions that the Court may deem appropriate to deter future misconduct.

Defendant also respectfully asks that Plaintiff's counsel be required to provide Plaintiff a copy with any Orders related to this Motion, and verify the same to this Court, and if there is to be a show cause or other hearing on this Motion, that Mr. Usherson be required to attend.

Dated: November 6, 2019

Respectfully Submitted,

Brad R. Newberg

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Memorandum of Law in Support

of Motion for Sanctions with the Clerk of the Court using the CM/ECF system on this 6th day of

November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system

pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 6, 2019

> */s/ Brad R. Newberg*
> Brad R. Newberg (#BN1203)
> McGuireWoods LLP
> 1750 Tysons Blvd.
> Tysons Corner, VA 22102
> T: 703-712-5061
> F: 703-712-5050
> bnewberg@mcguirewoods.com
>
> *Attorney for Defendant Bandshell Artist*
> *Management*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR USHERSON, | |
| **Plaintiff,** | |
| v. | **Docket No. 1:19-cv-6368 (JMF)** |
| **BANDSHELL ARTIST MANAGEMENT** | |
| **Defendant.** | |

## DECLARATION OF BRAD R. NEWBERG IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

I, Brad R. Newberg, declare:

1. I am an attorney licensed to practice in the United States District Court for the Southern District of New York.

2. I am a partner in the Intellectual Property department of McGuireWoods LLP, which represents Defendant Bandshell Artist Management ("Defendant" or "Bandshell"). I head the McGuireWoods copyright and trademark litigation practice and have 20 years of experience in those fields. I am handling this case pro bono.

3. I make this declaration in support of Defendant's Motion for Sanctions.

4. Bandshell was served on September 5, 2019.

5. The proof of service was filed by Plaintiff on September 21, 2019.

6. On September 19, 2019, I emailed Mr. Liebowitz given that the Court Ordered that the Plaintiff provide Defendant with copies of records sufficient to show royalties paid the last three times the photograph at issue was licensed and the number of times the work had been licensed in the past three years.

1

JA-63

7. Having received no response, I followed up with Mr. Liebowitz on September 20. He responded to inform me that he had not found any prior licensing for this photograph. A true and correct copy of this email exchange is attached as Exhibit 1.

8. Plaintiff did not contact Defendant regarding the case management plan or mediation required by the Court until I sent an email on October 3, 2019 to remind him of the case management plan due that day. A true and correct copy of this email chain is attached as Exhibit 2.

9. As shown in Exhibit 2, Mr. Liebowitz did not respond at all to the case management plan request at first, but noted the mediation requirement and asked if we could schedule the mediation to occur two business days later.

10. As shown in Exhibit 2, I stated that I could get to New York that day for the in-person mediation, and wanted to make sure that Mr. Usherson could make it there (from Georgia) at that time. I also noted that the Court ordered that the mediator be someone with expertise in copyright law and the mediation office might not be able to accomplish all of this in a day or two.

11. As shown in Exhibit 2, Mr. Liebowitz stated that he was "going to reach out to a mediator I know to see if he is available early next week."

12. At this point, I started becoming uncomfortable. As shown in Exhibit 2, I responded that despite his desire "to have this done by Monday, I do want to make sure we handle this in the ways required by the Court and the Court's mediation rules." I again noted the need for a mediator with copyright expertise, the need to handle the mediation through the Court's mediation program, and the need for the parties' attendance.

2

JA-64

13. As shown in Exhibit 2, Mr. Liebowitz responded that the mediator he suggested, ███████████ "is a copyright lawyer who is part of the mediation program." Mr. Liebowitz also suggested that the mediation be done over the phone with just the lawyers.

14. As shown in Exhibit 2, I responded: "I'm very uncomfortable with some of your suggestions regarding the mediation." I raised concerns that an Internet search showed the person he suggested to mediate was a bankruptcy lawyer, not a copyright lawyer. I also stated: "the Court's rules are clear that all parties must attend mediations without exception, and even suggests that the mediation is pointless without the parties. Our clients cannot simply give us authority."

15. As shown in Exhibit 2, in an effort to move forward, I noted that if ████████ was indeed a copyright lawyer and part of the mediation program and if the mediation program's mediator believed that a telephonic mediation "would comply with the Court's mediation rules," then my client and I could be available for such a mediation. I made clear: "I am not willing to have a mediation, however, without the full participation of the parties."

16. After hearing from ██████████ that he had some experience mediating copyright cases, as shown in Exhibit 2, I reiterated that a phone mediation could only be done if in compliance with the rules, and the attorneys and clients fully participated. I again stated: "I do not believe there is any reading of the rules that would say our clients do not have to participate." I finished my email by again reminding Mr. Liebowitz of the case management plan that was due.

JA-65

17. Mr. Liebowitz then (on October 4) contacted the Mediation Office to request that a telephonic mediation be added to the docket. A true and correct copy of this email chain is attached within Exhibits 3 & 4.

18. As shown in Exhibits 3 & 4, the Mediation Office immediately responded by rejecting his request, stating: "The outreach to ████████ directly, and the request to convene telephonically, are not in accordance with the procedures that govern this program." The Mediation Office stated that it was reaching out to chambers, that the telephonic mediation *should not* go forward, and that any future mediation should be done "through our normal process."

19. As shown in Exhibit 3, the Mediation Office told the parties that the original Order regarding mediation stood and if it could not be complied with, a party could "seek appropriate relief directly from the Judge."

20. In an effort to seek relief from this Court, Mr. Liebowitz drafted a letter, and sent it to me, saying that he was going to file it that same day (October 4). A true and correct copy of the relevant portion of this email chain and his *draft* letter is attached as Exhibit 5.

21. I was upset to see that the letter he drafted was factually false in many respects and I made him aware of it. For instance, as shown in Exhibit 5, the draft stated that "Defendant has just recently engaged counsel of September 25, 2019." That was false. The draft stated that the "parties have been trying to find a mediator." That was false. The draft stated that he wanted to do the mediation "via telephone to avoid the cost of Defendant's counsel to come up from Virginia." That was false as I never made such a request and, in fact, stated that the mediation should be done in person.

4

22. As Exhibit 5 shows, I made Mr. Liebowitz aware of my displeasure and told him of the misstatements of fact that needed to be changed. He responded that he would "fix and file," which he did.

23. On October 7, the Court issued an Order, stating it was "to put it mildly, somewhat perturbed" by Plaintiff's request. The Court criticized Mr. Liebowitz for not following the Court's prior Order. The Court adjourned the initial pretrial conference to November 14 and Ordered that the parties conduct an **in-person** mediation by October 31.

24. As shown in Exhibit 4, the Mediation Office wrote the parties that same day, noting the Court's Order and stating that the parties must conduct "an in person session in accordance with the Judge's direction."

25. This Court gave the parties significant time to make sure they could conduct an in-person mediation with the parties and lead lawyers present, and conducted through the Mediation Office in accordance with the mediation procedures of this Court adopted by the Local Rules.

26. Both the Court and the Mediation Office stated in no uncertain terms that the mediation needed to be in person.

27. Furthermore, the Court's Local Rules adopt the Mediation Procedures of the Southern District of New York, which not only discuss the importance of in person mediations, but state that **the actual parties and their lead attorneys** must be present at the in person mediation.

28. I provided Mr. Liebowitz with several dates on which I and my client could be available in person in New York for mediation and asked him to pick a date where both he and

his client would also be available. A true and correct copy of this email chain is attached as Exhibit 6.

29. As shown in Exhibit 6, Mr. Liebowitz did not raise any issues of availability, and responded within five minutes, picking the last possible date, October 31.

30. The parties scheduled the mediation for October 31 at noon at the Mediation Offices at 40 Foley Square. ███████ informed the parties that they should send him the required mediation statements by October 29.

31. I received an email from ███████ on October 23, 2019 seeking a call on October 24, 2019 ███████████████████. A true and correct copy of this email chain is attached as Exhibit 7.

32. I had a call with ███████ on October 24, and it was agreed that ███████ ███████████ in-person mediation would move forward.

33. Defendant then sent its detailed Confidential Mediation Statement to the mediator.

34. On October 30, 2019, I received an email from ███████ with a potential offer from Plaintiff. The offer was unacceptable to my client.

35. However, in a good-faith effort to reach a resolution in the case, I drafted a full proposed agreement, and sent it to ███████ stating that Plaintiff could accept and sign the agreement or "we will see Mr. Liebowitz and Mr. Usherson tomorrow and we can continue discussing the possibility of settlement at the mediation. . . . " I believe this email was forwarded to Mr. Liebowitz as ███████ had sent on other emails and Mr. Liebowitz eventually responded to the draft proposal.

36. Later that evening on October 30, ███████ sent me an email stating he had talked to Mr. Liebowitz, who relayed that he "has been tied up. He will review [the draft I

6

JA-68

sent] tonight and get back to us in the morning. Hopefully we can settle this before need to go to **in person** mediation" (emphasis added). I reiterated that I would be headed to the train station well before 6:00 AM the next day and noted my assumption that "Mr. Usherson either flew to NY tonight or is likewise on a very early plane." ▮▮▮▮ responded "I understand." A true and correct copy of this email chain is attached as Exhibit 8, redacted to eliminate settlement discussions.

37. On October 31 at *4:14 am*, I received an email from Mr. Liebowitz stating "Attached please find revisions to the agreement which can be discussed at mediation." A true and correct copy of this email (without attachment) is attached as Exhibit 9.

38. At this point, neither I nor my client had received any word that Mr. Liebowitz or his client would not attend the in-person mediation—or that their lack of attendance was even contemplated. I had made numerous references at this point to Mr. Liebowitz and to the mediator about the parties and Mr. Liebowitz and I meeting in person in New York.

39. As shown in Exhibit 9, Mr. Liebowitz's 4:14 am email courtesy copied a "James H. Freeman" but did not mention anything about Mr. Freeman attending the mediation, and I did not think twice about it.

40. Mr. Freeman had not made an appearance in this case and, to the best of my knowledge, Mr. Freeman had not been on any prior emails or calls in this case.

41. The revisions to the draft settlement agreement were unacceptable, and odd in that at least one did not seem to have any application to this matter.

42. Mr. Liebowitz never communicated that he would not or might not be at the mediation.

JA-69

43. Mr. Liebowitz never communicated that his client would not or might not be at the mediation.

44. I woke up at 5:00 am on the morning of October 31 (at which point I saw Mr. Liebowitz's 4:14 am email), and then I headed to the train station.

45. I made sure to attend this mediation in person. I did not let the fact that I was, for instance, missing one daughter's playoff volleyball match, or had to arrange alternative Halloween plans for another, affect my ability to be at the mediation.

46. On October 31, I arrived in New York, met with my client to prepare for the mediation, and entered the mediation room with my client at 11:45 am for the noon mediation.

47. At this point, I was told for the first time by ▇▇▇▇▇▇ that he had gotten word that Mr. Liebowitz would not be attending the mediation, and that Mr. Liebowitz's associate would be attending instead, and he did not know whether, but doubted Mr. Usherson would be attending.

48. Mr. Freeman, an associate of Mr. Liebowitz, arrived with Mr. Liebowitz's sister to let us know that Mr. Usherson would not be attending either.

49. Mr. Freeman seemed to have little to no knowledge of the details of this case and has not made an appearance in the case. I do not know if Mr. Liebowitz's sister is an attorney or what her role is in this case, if any.

50. Mr. Freeman seemed surprised that I was upset that Mr. Usherson and Mr. Liebowitz were not attending the mediation.

51. Given that neither Mr. Usherson nor Mr. Liebowitz were there, the mediation could not move forward.

JA-70

52. ████████████████████████████████████

████████████████████████████████

53. ████████████████████████████████████

████

54. ████████████████████████████████████

████ █ ████████████████████████████

55. ████████████████████████████████████

████████████████████

56. My client and I left the mediation room, and I traveled home to Virginia by train.

57. While on the train, I attempted to look up Mr. Liebowitz's website.

58. One of the first search results was the Twitter page for Liebowitz Law Firm, PLLC. I was shocked to discover a post from Mr. Liebowitz that morning, thanking those who attended an event he hosted in Los Angeles the prior night. A true and correct copy of a screenshot of the posting from the Liebowitz Law Firm, PLLC's Twitter feed is attached as Exhibit 10.

59. Based on the posting, it seems highly unlikely that the Los Angeles event was an impromptu event, but rather something that had been planned even before Mr. Liebowitz scheduled the October 31 in-person mediation for him and his client.

60. On November 1, 2019, I sent Mr. Liebowitz an email requesting reimbursement of Defendant's costs and ten hours of my legal fees, as well as dismissal of this case due to his violation of Court Orders. A true and correct copy of this email chain is attached as Exhibit 11.

61. As shown in Exhibit 11, I offered to have a meet and confer on this motion via telephone although it did not appear required by this Court's rules. We had such a call on November 4, 2019. The call did not result in resolution of this motion.

62. I spent more than ten hours on the Mediation Statement, preparation for mediation, travel to New York, and attendance at the planned in-person mediation. My associate, Michael Shafer, worked on the Mediation Statement as well. However, I limited my request to ten hours of my time and none of Mr. Shafer's.

63. Although this case is being handled pro bono, my standard 2018 rate as charged by McGuireWoods LLP is $855 per hour. This rate is consistent with the rates McGuireWoods charges for attorneys of my experience.

64. The receipts for Defendant's costs for the New York trip came to $428.75. True and correct copies of these receipts are attached as Exhibit 12.

65. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 6, 2019

_____
Brad R. Newberg (#BN1203)

JA-72

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Declaration of Brad R. Newberg with the Clerk of the Court using the CM/ECF system on this 6th day of November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 6, 2019

/s/ Brad R. Newberg
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

11

JA-73

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | Richard Liebowitz <RL@liebowitzlawfirm.com> |
| **Sent:** | Friday, September 20, 2019 4:55 PM |
| **To:** | Newberg, Brad R. |
| **Subject:** | Re: Usherson v. Bandshell Artist Management 19-cv-6368-JMF |

Hi Brad,

Checking with process server. I am not sure if they were official severed. If not, can you do a waiver of service? My client is still looking but as of now doesn't look like any licensing for this photo. Are you around for a phone call on Monday at 3pm to see if we can get resolved? Thanks.

On Fri, Sep 20, 2019 at 4:49 PM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

Following up on this. Thank you.


**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787


**From:** Newberg, Brad R.
**Sent:** Thursday, September 19, 2019 12:04 PM
**To:** 'RL@Liebowitzlawfirm.com' <RL@Liebowitzlawfirm.com>
**Subject:** Usherson v. Bandshell Artist Management 19-cv-6368-JMF


Richard,


I'm going to be representing Bandshell in this case. I just left you a voicemail, but can you let me know when you might be available today or tomorrow to discuss the case?


Also, a couple of quick things:

1)   Can you let me know the exact date that Bandshell was served? My client is not positive whether it was September 4, 5, or 6.

2)   I don't think these have been sent to my client yet, but can you please send to me the records sufficient to show the royalty paid the last three times the photograph at issue was licensed, and sufficient to show the number of times the work was licensed in the last five years?

Thank you.


**Brad R. Newberg**
Partner
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
T:  +1 703 712 5061
M: +1 703 772 6787
F:  +1 703 712 5187
bnewberg@mcguirewoods.com
Bio | VCard | www.mcguirewoods.com

# McGuireWoods

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*
--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com


*******************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*******************************************************************

JA-75

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | Richard Liebowitz <RL@liebowitzlawfirm.com> |
| **Sent:** | Thursday, October 03, 2019 12:02 PM |
| **To:** | Newberg, Brad R. |
| **Cc:** | Shafer, Michael A. |
| **Subject:** | Re: Case Management Plan in Usherson v. Bandshell Artist Management |

Thank you. Will find out ███████ availability on Tuesday morning. Will have any revisions to the plan and joint letter by 6pm today.

On Thu, Oct 3, 2019 at 11:55 AM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

Based on ██████████ representation that he is familiar with copyright law (and as stated below, your statement that he will be doing this as part of the SDNY mediation program (so without compensation)), we can go ahead with him as the mediator.  If he believes your suggestion of a telephone mediation is appropriate under the rules, and you and your client and he are available, my client and I can be available by phone Tuesday morning, October 8.  As previously stated, I do not believe there is any reading of the rules that would say our clients do not have to participate.


Please do let me know as well regarding my inquiries related to the joint letter and case management plan.  Thanks.



**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787


**From:** Newberg, Brad R.

**Sent:** Thursday, October 03, 2019 11:10 AM
**To:** 'Richard Liebowitz' <RL@liebowitzlawfirm.com>
**Cc:** Shafer, Michael A. <MShafer@mcguirewoods.com>
**Subject:** RE: Case Management Plan in Usherson v. Bandshell Artist Management



Richard,


I'm very uncomfortable with some of your suggestions regarding the mediation.  I will take you at your word that the attorney you just recommended, ████████████, is part of the SDNY mediation program—and therefore would also be conducting the mediation without compensation.  However, a quick search on ███████████ suggests that his career has been as a bankruptcy and antitrust litigator, not that he is a "copyright lawyer" as your email states, and the Court's Order is clear that it wants a mediator with copyright expertise.  If there is information on ██████████ of which I am not aware, please let me know.

1

Also, the Court's rules are clear that all parties must attend mediations without exception, and even suggests that the mediation is pointless without the parties. Our clients cannot simply give us authority. The rules also say that everyone must be there in person, although if a party has a particular hardship, they may apply to attend telephonically. I would be willing to consider an agreement to conduct the mediation over the phone, but it is unclear how that would work given the need for joint and solo sessions with the mediator.

My concern is simply making sure this is done correctly.

If ███████ is indeed a "copyright lawyer," (and part of the SDNY program doing this without compensation) and he believes that the mediation should occur over the phone and that doing such would comply with the Court's mediation rules, then we could be available by phone and I would suggest Tuesday morning (if by phone). I am not willing to have a mediation, however, without the full participation of the actual parties.

--

Meanwhile, we do need to get the joint letter and case management plan on file today. Please send me a draft that I can review/request changes to, and add Defendant's portions.

**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787

From: Richard Liebowitz <RL@liebowitzlawfirm.com>
Sent: Thursday, October 03, 2019 10:28 AM
To: Newberg, Brad R. <BNewberg@mcguirewoods.com>
Cc: Shafer, Michael A. <MShafer@mcguirewoods.com>
Subject: Re: Case Management Plan in Usherson v. Bandshell Artist Management

Hi Brad,

Yes, ██████ is a copyright lawyer who is part of the meditation program. We can do via phone if all the parties agree. I think because of the time sensitiveness we do over the phone. If you have authority from your client just the lawyers can be on the phone.

On Thu, Oct 3, 2019 at 10:22 AM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

Please do keep me posted. A few things though:

1)   Despite the desire to have this done Monday, I do want to make sure we handle this in the ways required by the Court and the Court's mediation rules.

2)   Obviously we will want any mediator to be part of the Court program as well as have the copyright expertise ordered by the Court.  As we are handling this case pro bono, we are not willing to pay for an outside mediator.

3)   I still have to check with my client obviously as this is very late notice and I have no idea if he is available Monday afternoon.

4)   3:30 pm is the earliest I can do Monday due to another Court ordered settlement conference.

5)   As Tuesday-Wednesday is Yom Kippur, those days would be out.


Can you also let me know your availability on the case management conference/joint letter?



**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787

**From:** Richard Liebowitz <RL@liebowitzlawfirm.com>
**Sent:** Thursday, October 03, 2019 10:07 AM
**To:** Newberg, Brad R. <BNewberg@mcguirewoods.com>
**Cc:** Shafer, Michael A. <MShafer@mcguirewoods.com>
**Subject:** Re: Case Management Plan in Usherson v. Bandshell Artist Management


Thanks. I am going to reach out to a mediator I know to see if he is available early next week. Will keep you posted. Thank you.


On Thu, Oct 3, 2019 at 10:04 AM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

Thanks.  My email was directed to the joint letter and case management plan due today.  But as to the mediation, my understanding was that the mediation was to occur by a week ago (although there is also an entry in PACER that the mediation deadlines were terminated).


I actually will be in New York on Monday for a settlement meeting that will end around 3:00 pm.  I could be at the courthouse (or could host at McGuireWoods' NY office) at 3:30 pm, but a) I would have to check with my client that he is available on such short notice (is Mr. Usherson also available then?), and b) the Court has ordered that the mediator be someone with expertise in copyright.  I'm not sure the mediation office will be able to get someone like that with one business day's notice.  Let me know if they can and I will check with my client.

3

**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787

**From:** Richard Liebowitz <RL@liebowitzlawfirm.com>
**Sent:** Thursday, October 03, 2019 9:46 AM
**To:** Newberg, Brad R. <BNewberg@mcguirewoods.com>
**Cc:** Shafer, Michael A. <MShafer@mcguirewoods.com>
**Subject:** Re: Case Management Plan in Usherson v. Bandshell Artist Management

Hi Brad,

I will contact the mediation office. We need to have a mediation before next week. Are you available on Monday to have the mediation? Thank you.

On Thu, Oct 3, 2019 at 8:59 AM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

Hi Richard.  This is due today.  I am available to discuss just about any time today.  And if you have a draft that you'd like us to consider and add our defenses and other information to in advance of the call, we would be happy to do that.

**Brad R. Newberg**
Partner
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
T:   +1 703 712 5061
M: +1 703 772 6787
F:   +1 703 712 5187
bnewberg@mcguirewoods.com
Bio | VCard | www.mcguirewoods.com

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

--

JA-79

Best,


Richard Liebowitz, Esq.

Liebowitz Law Firm, PLLC

t.516-233-1660

RL@LiebowitzLawFirm.com

www.LiebowitzLawFirm.com



*********************************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*********************************************************************

--

Best,


Richard Liebowitz, Esq.

Liebowitz Law Firm, PLLC

t.516-233-1660

RL@LiebowitzLawFirm.com

www.LiebowitzLawFirm.com



*********************************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*********************************************************************

--

Best,


Richard Liebowitz, Esq.

Liebowitz Law Firm, PLLC

t.516-233-1660

RL@LiebowitzLawFirm.com

www.LiebowitzLawFirm.com



*********************************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

*********************************************************************

--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com


*********************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*********************************************************************

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | ███████████████████ on behalf of MediationOffice@nysd.uscourts.gov |
| **Sent:** | Friday, October 04, 2019 3:28 PM |
| **To:** | RL@LiebowitzLawFirm.com |
| **Cc:** | Newberg, Brad R. |
| **Subject:** | Re: Usherson v. Bandshell Artist Management 19-cv-6368 |

Counsel, We have heard back from chambers with direction that you should either comply with the exiting order (to hold mediation at least two weeks prior to the Oct 10 IPTC) or seek appropriate relief directly from the judge.

Mediation Office
United States District Court
Southern District of New York
40 Foley Square, Suite 120
New York, New York 10007
(212) 805-0643
Email: mediationoffice@nysd.uscourts.gov www.nysd.uscourts.gov/mediation

From:    Mediation Office NYSD/NYSD/02/USCOURTS
To:      RL@LiebowitzLawFirm.com, bnewberg@mcguirewoods.com
Cc:      ██████████████████
Date:    10/04/2019 01:43 PM
Subject: Re: Usherson v. Bandshell Artist Management 19-cv-6368
Sent by: ████████████

Dear Mr. Liebowitz, We are waiting to hear back from chambers. ██████████ confirmed his willingness to work with counsel in this matter. We learned through our conversation with him, however, that he had been asked to conduct a telephonic session. The outreach to ██████████ directly, and the request to convene telephonically, are not in accordance with the procedures that govern this program so we reached out to chambers for guidance and are awaiting direction from the judge. I am copying all counsel and ██████████ to confirm that there will not be a session next Tuesday. If the judge decides that mediation should go forward in the future, ██████████ has indicated his willingness to work on this matter through our normal process.

Mediation Office
United States District Court
Southern District of New York
40 Foley Square, Suite 120
New York, New York 10007
(212) 805-0643
Email: mediationoffice@nysd.uscourts.gov www.nysd.uscourts.gov/mediation

From:    Richard Liebowitz <RL@liebowitzlawfirm.com>
To:      mediation_intern@nysd.uscourts.gov
Cc:      SDNY Mediation Office <MediationOffice@nysd.uscourts.gov>

JA-82

Date:    10/04/2019 12:57 PM
Subject: Usherson v. Bandshell Artist Management 19-cv-6368


Hi ███ ,

Just confirming you reached out to ███████ regarding our scheduled mediation for this Tuesday, October 8, 2019 at 11:30am? Can you please add this to the docket today so the Judge knows we are having the mediation then?

Thank you.

Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
https://protect2.fireeye.com/url?k=d1659f25-8def25f1-d165ad71-8687eb7ec816-94b82f4bd75f22cf&q=1&u=http%3A%2F%2Fwww.liebowitzlawfirm.com%2F


*********************************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.


*********************************************************************

JA-83

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | ████████████████ on behalf of MediationOffice@nysd.uscourts.gov |
| **Sent:** | Monday, October 07, 2019 3:24 PM |
| **To:** | RL@LiebowitzLawFirm.com; Newberg, Brad R.; ████████████ |
| **Subject:** | Re: Usherson v. Bandshell Artist Management 19-cv-6368 |

Counsel, Judge Furman has extended the time to mediate to October 31. We will assign ████████ as the mediator and will send out that notice shortly. Please promptly contact ████████ to arrange for an in person session in accordance with the Judge's direction.

Mediation Office
United States District Court
Southern District of New York
40 Foley Square, Suite 120
New York, New York 10007
(212) 805-0643
Email: mediationoffice@nysd.uscourts.gov www.nysd.uscourts.gov/mediation

From:    Mediation Office NYSD/NYSD/02/USCOURTS
To:      RL@LiebowitzLawFirm.com, bnewberg@mcguirewoods.com
Cc:      ████████████████
Date:    10/04/2019 01:43 PM
Subject:Re: Usherson v. Bandshell Artist Management 19-cv-6368
Sent by:      ████████████

Dear Mr. Liebowirz, We are waiting to hear back from chambers. ████████ confirmed his willingness to work with counsel in this matter. We learned through our conversation with him, however, that he had been asked to conduct a telephonic session. The outreach to ████████ directly, and the request to convene telephonically, are not in accordance with the procedures that govern this program so we reached out to chambers for guidance and are awaiting direction from the judge. I am copying all counsel and ████████ to confirm that there will not be a session next Tuesday. If the judge decides that mediation should go forward in the future, ████████ has indicated his willingness to work on this matter through our normal process.

Mediation Office
United States District Court
Southern District of New York
40 Foley Square, Suite 120
New York, New York 10007
(212) 805-0643
Email: mediationoffice@nysd.uscourts.gov www.nysd.uscourts.gov/mediation

From:    Richard Liebowitz <RL@liebowitzlawfirm.com>
To:      mediation_intern@nysd.uscourts.gov
Cc:      SDNY Mediation Office <MediationOffice@nysd.uscourts.gov>

Date:   10/04/2019 12:57 PM
Subject: Usherson v. Bandshell Artist Management 19-cv-6368


Hi ███ ,

Just confirming you reached out to ███████ regarding our scheduled mediation for this Tuesday, October 8, 2019
at 11:30am? Can you please add this to the docket today so the Judge knows we are having the mediation then?

Thank you.

Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
https://protect2.fireeye.com/url?k=9bf9330b-c768cf3f-9bf9015f-0cc47aab5846-
970f8aac7a9ec516&q=1&u=http%3A%2F%2Fwww.liebowitzlawfirm.com%2F


*********************************************************************

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and
may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient,
you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail
and delete this message. Thank you.


*********************************************************************

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | Richard Liebowitz <RL@liebowitzlawfirm.com> |
| **Sent:** | Friday, October 04, 2019 5:35 PM |
| **To:** | Newberg, Brad R. |
| **Cc:** | Shafer, Michael A. |
| **Subject:** | Re: Case Management Plan in Usherson v. Bandshell Artist Management |

Thank you. I will fix and file.

Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is intended only for the designated recipient(s). It may contain confidential or proprietary
information and may be subject to the attorney-client privilege or other confidentiality protections. If you are
not a designated recipient, you may not review, copy or distribute this message. If you receive this in error,
please notify the sender by reply e-mail and delete this message. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On Fri, Oct 4, 2019 at 4:16 PM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

While the tone of the letter and the request is ok, I do not believe that all of the history is factually correct. It currently
reads:

We represent Plaintiff, Arthur Usherson, in the above in-captioned case. Defendant has just recently engaged
counsel on September 25, 2019. The mediation office did not assign a mediator because for some reason the
mediation case track was terminated on July 29, 2019. The parties have been trying to find a mediator. On
October 3, 2019 we found a mediator that can do the mediation on October 8, 2019 via telephone to avoid the
cost of Defendant's counsel to come up from Virginia. We respectfully request to either have the mediation
schedule for October 8, 2019 via telephone or to schedule the mediation for another time in October. In
addition, we respectfully request that the initial conference be adjourned until after the mediation.

However, my email to you stating that I represented Bandshell was on September 19. And it is not correct to say that
we have been trying to find a mediator or that the telephonic aspect was to avoid the cost of me coming up from
Virginia. I actually don't have a problem coming to NY depending on the date. I would be ok with you **stating the
following in your letter:**

JA-86

We represent Plaintiff, Arthur Usherson, in the above in-captioned case. Defendant engaged counsel on September 19, 2019. The mediation office did not assign a mediator because for some reason the mediation case track was terminated on July 29, 2019.  On October 3, 2019 I found a mediator that can do the mediation on October 8, 2019 via telephone to accomplish it before the October 10 Court conference.  We respectfully request to either have the mediation scheduled for October 8, 2019 via telephone or to schedule the mediation for another time in October. In addition, we respectfully request that the initial conference be adjourned until after the mediation.

**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787

**From:** Richard Liebowitz <RL@liebowitzlawfirm.com>
**Sent:** Friday, October 04, 2019 4:07 PM
**To:** Newberg, Brad R. <BNewberg@mcguirewoods.com>
**Cc:** Shafer, Michael A. <MShafer@mcguirewoods.com>
**Subject:** Re: Case Management Plan in Usherson v. Bandshell Artist Management

Hi Brad,

I think we should file this letter with the Court today. Please let me know. Kindly call me at 646-740-3808.

Best,

Richard Liebowitz, Esq.

Liebowitz Law Firm, PLLC

t.516-233-1660

RL@LiebowitzLawFirm.com

www.LiebowitzLawFirm.com

JA-87



**Liebowitz** ⬤ **Law Firm, PLLC**
ATTORNEYS FOR THE PHOTOGRAPHIC ARTS

11 SUNRISE PLAZA, STE. 305
VALLEY STREAM, NY 11580
(516) 233-1660
WWW.LIEBOWITZLAWFIRM.COM

October 4, 2019

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Usherson v. Bandshell Artist Management (1:19-cv-6368-JMF)*

Dear Judge Furman,

We represent Plaintiff, Arthur Usherson, in the above in-captioned case. Defendant has just recently engaged counsel on September 25, 2019. The mediation office did not assign a mediator because for some reason the mediation case track was terminated on July 29, 2019. The parties have been trying to find a mediator. On October 3, 2019 we found a mediator that can do the mediation on October 8, 2019 via telephone to avoid the cost of Defendant's counsel to come up from Virginia. We respectfully request to either have the mediation schedule for October 8, 2019 via telephone or to schedule the mediation for another time in October. In addition, we respectfully request that the initial conference be adjourned until after the mediation.

The Court's consideration is much appreciated.

Respectfully submitted,

/s/Richard Liebowitz
Richard P. Liebowitz

*Counsel for Plaintiff Arthur Usherson*

Liebowitz ⬤ Law Firm, PLLC

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | Richard Liebowitz <RL@liebowitzlawfirm.com> |
| **Sent:** | Monday, October 07, 2019 4:22 PM |
| **To:** | Newberg, Brad R. |
| **Cc:** | ▮ |
| **Subject:** | Re: Usherson v. Bandshell Artist Management 19-cv-6368 |

Oct 31st at 12pm works. ▮ does this work? Thanks.

On Mon, Oct 7, 2019 at 4:17 PM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:
Please let me know if any of October 11, 16, 28 or 31 work for the both of you and Mr. Usherson. Thank you very much.


Brad R. Newberg
McGuireWoods LLP

On Oct 7, 2019, at 3:34 PM, Richard Liebowitz <RL@liebowitzlawfirm.com> wrote:

> Thanks.
>
> On Mon, Oct 7, 2019 at 3:29 PM Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:
> I will check with my client and get back to you by tomorrow with available dates. Thank you.
>
>
> Brad R. Newberg
> McGuireWoods LLP
>
> On Oct 7, 2019, at 3:25 PM, Richard Liebowitz <RL@liebowitzlawfirm.com> wrote:
>
>> Thank you. Brad and ▮ when are you available?
>>
>> On Mon, Oct 7, 2019 at 3:24 PM <MediationOffice@nysd.uscourts.gov> wrote:
>> Counsel, Judge Furman has extended the time to mediate to October 31. We will assign ▮ as the mediator and will send out that notice shortly. Please promptly contact ▮ to arrange for an in person session in accordance with the Judge's direction.
>>
>> Mediation Office
>> United States District Court
>> Southern District of New York
>> 40 Foley Square, Suite 120
>> New York, New York 10007
>> (212) 805-0643
>> Email: mediationoffice@nysd.uscourts.gov
>> www.nysd.uscourts.gov/mediation

From:   Mediation Office NYSD/NYSD/02/USCOURTS
To:   RL@LiebowitzLawFirm.com, bnewberg@mcguirewoods.com
Cc:   ████████████
Date:   10/04/2019 01:43 PM
Subject:   Re: Usherson v. Bandshell Artist Management 19-cv-6368
Sent by:   ████████████

Dear Mr. Liebowirz, We are waiting to hear back from chambers. ████████████ confirmed his willingness to work with counsel in this matter. We learned through our conversation with him, however, that he had been asked to conduct a telephonic session. The outreach to ████████████ directly, and the request to convene telephonically, are not in accordance with the procedures that govern this program so we reached out to chambers for guidance and are awaiting direction from the judge. I am copying all counsel and ████████████ to confirm that there will not be a session next Tuesday. If the judge decides that mediation should go forward in the future, ████████████ has indicated his willingness to work on this matter through our normal process.

Mediation Office
United States District Court
Southern District of New York
40 Foley Square, Suite 120
New York, New York 10007
(212) 805-0643
Email: mediationoffice@nysd.uscourts.gov
www.nysd.uscourts.gov/mediation

From:   Richard Liebowitz <RL@liebowitzlawfirm.com>
To:   mediation_intern@nysd.uscourts.gov
Cc:   SDNY Mediation Office <MediationOffice@nysd.uscourts.gov>
Date:   10/04/2019 12:57 PM
Subject:   Usherson v. Bandshell Artist Management 19-cv-6368

Hi ██████ ,

Just confirming you reached out to ████████████ regarding our scheduled mediation for this Tuesday, October 8, 2019 at 11:30am? Can you please add this to the docket today so the Judge knows we are having the mediation then?

Thank you.

Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com


**************************************************************
****


This message is intended only for the designated recipient(s). It may
contain confidential or proprietary information and may be subject to the
attorney-client privilege or other confidentiality protections. If you are
not a designated recipient, you may not review, copy or distribute this
message. If you receive this in error, please notify the sender by reply
e-mail and delete this message. Thank you.


**************************************************************
****


--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com


**************************************************************
***
This message is intended only for the designated recipient(s). It may contain
confidential or proprietary information and may be subject to the attorney-
client privilege or other confidentiality protections. If you are not a designated
recipient, you may not review, copy or distribute this message. If you receive
this in error, please notify the sender by reply e-mail and delete this message.
Thank you.
**************************************************************
***

JA-91

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com

*******************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message.,Thank you.
*******************************************************************
--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com

*******************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*******************************************************************

JA-92

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | ████████████████ |
| **Sent:** | Wednesday, October 23, 2019 7:35 PM |
| **To:** | Newberg, Brad R. |
| **Subject:** | Re: Usherson |

Fine will call you at 10


Sent from Yahoo Mail for iPhone

On Wednesday, October 23, 2019, 7:34 PM, Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

> I'm happy to discuss tomorrow. I'm around in the morning. 703-712-5061
>
> Brad R. Newberg
> McGuireWoods LLP
>
>
> > On Oct 23, 2019, at 7:04 PM, ████████████████████ wrote:
> >
> > I am the mediator in the above case. Can I call you tomorrow morning to see if we can settle this matter without you having to come to New York?
> >
> >
> > Sent from Yahoo Mail for iPhone

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

JA-93

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | ████████████ |
| **Sent:** | Wednesday, October 30, 2019 10:03 PM |
| **To:** | Newberg, Brad R. |
| **Subject:** | Re: Mediation |

I understand

Sent from Yahoo Mail for iPhone

On Wednesday, October 30, 2019, 9:36 PM, Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

> █████ I'm headed to the train station well before 6:00 am. And to be candid, I would have assumed Mr Usherson either flew to NY tonight or is likewise on a very early plane.
>
> Thanks.
>
> Brad R. Newberg
> McGuireWoods LLP

>> On Oct 30, 2019, at 8:15 PM, ██████████████████ wrote:
>>
>> Talked to Richard and he has been tied up. He will review tonight and get back to us in morning. Hopefully we can settle this before need to go to in person mediation. ████
>>
>> Sent from Yahoo Mail for iPhone

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

JA-94

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | Richard Liebowitz <RL@liebowitzlawfirm.com> |
| **Sent:** | Thursday, October 31, 2019 4:12 AM |
| **To:** | Newberg, Brad R.; ▮▮▮▮▮▮; James H. Freeman |
| **Subject:** | Usherson v. Bandshell |
| **Attachments:** | Usherson v. Bandshell- Settlement Agreement.doc |

Hi All,

Attached please find revisions to the agreement which can be discussed at the mediation. Thank you.


Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



JA-95

JA-96

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | Newberg, Brad R. |
| **Sent:** | Friday, November 01, 2019 9:23 AM |
| **To:** | 'Richard Liebowitz' |
| **Cc:** | Shafer, Michael A. |
| **Subject:** | Motion related to Mediation in Usherson v. Bandshell Artist Management |

Richard,

As you are aware, the failure of Mr. Usherson or you to attend yesterday's mediation was a direct violation of the Court's Orders (as well as the instructions of the Mediation Office). This is especially disconcerting because we specifically arranged a time that you and your client could be there—and sending an associate in your stead (who did not seem to know the specifics of this case) is not acceptable. Because of these actions, we were unable to conduct any meaningful mediation.

As such, we will be moving for our costs of the day, and legal fees for preparation for the mediation, travel, and attendance, which I will limit to ten hours. I have itemized those numbers below. We will also be moving for dismissal of the case. We plan on filing papers related to this motion early next week. While I do not believe a meet and confer is required for this motion under the Local Rules or Judge Furman's Individual Rules, I am available today before 3:00 pm, or Monday before 2:00 pm to confer on this issue.

Costs:
$374 for train
$5.50 for subway
$24 for parking at train station
$25.25 for breakfast and lunch in train stations
Total in costs: $428.75

Legal fees:
At this point (in addition to time spent on the motion), the motion will request ten hours of my time at my standard 2018 rate to cover the creation of the mediation statement, preparation for mediation, travel, and attendance. For your information, the actual amount of hours actually expended was higher and my associate, Michael Shafer also spent time related to mediation. My standard 2018 rate is $855. As such, ten hours is $8,550.

Total in costs and fees: $8,978.75.

Finally, if you are in agreement that you will pay the $8,978.75 in costs and fees and dismiss your case with prejudice, let me know and we can avoid the motion. Thank you.


**Brad R. Newberg**
Partner
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
T:  +1 703 712 5061
M: +1 703 772 6787
F:  +1 703 712 5187
bnewberg@mcguirewoods.com

```
        UNION STATION PARKIN#5
        30 MASSACHUSETTS AVE NE
         WASHINGTON, DC 20002
10/31/2019              17:33:47
         CREDIT CARD
          VISA SALE

Card #          XXXXXXXXXXX5861
Network:                   VISA
Chip Card:     CAPITAL ONE VISA
AID:          A000000031010
SEQ #:                       49
Batch #:                    202
INVOICE                      49
Approval Code:          00421D
Entry Method:         Chip Read
Mode:                    Issuer

SALE AMOUNT         $24.00


     CUSTOMER COPY
```

```
            MVM RECEIPT

MTA NYC TRANSIT
N067-34 ST-PENN STA
NEW YORK CITY NY

MVM #: 1430(N067  0401)

Thurs 31 Oct 19 09:55

Trans: Sale OK
Payment Mode: Credit
Amount:         $ 29.00
Card Value:     $ 29.00
New Card Fee:   $  1.00
Total Paid:     $ 30.00

VISA
Card #:
 **********5861
Auth#: 06066D
Ref #: 048801378133

Serial #:3028880752
Type: 000
   FULL FARE
        Questions?
Call (212) METROCARD
```

```
     STARBUCKS Store #7759
  50 Massachusetts Avenue, Space T-16
    Washington, DC  (202) 682-5895
-------------------------------------
           CHK 694282
        10/31/2019 06:27 AM
     2765811   Drawer: 1  Reg: 4
-------------------------------------
   Quad Espresso          2.95
     Quad
     With Coconut Milk
     In A Grande Cup
   Bacon Gouda Sndwch      3.95

   Sbux Card               7.59
   XXXXXXXXXXXX0767

   Subtotal             $6.90
   Tax 10%              $0.69
   Total               $7.59
Change  Due          $0.00

--------- Check Closed ---------------
        10/31/2019 06:27 AM

SBUX Card x0767 New Balance:  9.30
Card is registered.
```

```
        Zaro's Bakery
         1 Penn Plaza
       Amtrak Rotunda
Host: Ty-Asia           10/31/2019
ORDER #3307                1:02 PM
                             30308

Tomato & Mozz Baguette      10.25
XL Chocolate Ruggelach       3.50
Bottle Soda                  2.76

Subtotal                    16.51
Tax                          1.15

For Here Total      17.66

Visa                        17.66
   Auth:03316D


Need Breakfast or Lunch For Your Office?
       Zaro's Can Help.
   Email Catering@zaro.com

   --- Check Closed ---
```

JA-98

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | etickets@amtrak.com |
| **Sent:** | Monday, October 28, 2019 9:44 AM |
| **To:** | Newberg, Brad R. |
| **Subject:** | Amtrak: eTicket and Receipt for Your 10/31/2019 Trip - BRAD NEWBERG |
| **Attachments:** | Newberg Brad 201910280944110888.pdf |

### SALES RECEIPT



Purchased: 10/28/2019 6:44 AM PTThank you for your purchase.

1. Retain this receipt for your records.
2. Print the attached eTicket and carry during your trip.

Merchant ID 006241 Massachusetts Ave NWWashington, DC 20001800-USA-RAILAmtrak.com

# Reservation Number - 3C3DCEWASHINGTON, DC - NEW YORK PENN, NY (Round-Trip)OCTOBER 28, 2019

## Billing Information

BRAD NEWBERG12005 CREEKBEND DRRESTON, VA 20194-

**Visa** ending in 6349 (Purchase)Authorization Code 02450D

**Total $313**

## Purchase Summary - Ticket Number 3010624515041

**TRAIN 2154: WASHINGTON, DC - NEW YORK (PENN STATION), NY**Depart 7:00 AM, Thursday, October 31, 2019
1 ACELA BUSINESS CLASS SEAT

**$215.00**

**Ticket Terms & Conditions**ACELA SERVICE, NO PARTIAL REFUND IF USED ON OTHER SERVICE

**Subtotal**

**$215.00**

**TRAIN 85: NEW YORK (PENN STATION), NY - WASHINGTON, DC**Depart 3:05 PM, Thursday, October 31, 2019
1 RESERVED COACH SEAT

**$98.00**

JA-99

| | **Subtotal** |
| --- | --- |
| | **$98.00** |
| | **Total Charged by Amtrak** |
| | **$313.00** |

## Passengers

Brad Newberg

## Important Information

- Try the FindYourWay app for personalized train and station information at New York Penn Station. Download it on Google Play or the Apple App Store today.
- Tickets are non-transferable.
- Changes to your itinerary may affect your fare. Refund and exchange restrictions and penalties for failure to cancel unwanted travel may apply. If your travel plans change, contact us before departure to change your reservation. If you do not board your train, your entire reservation from that point will be canceled. If you board a different train without notifying us, you will have to pay for it separately; the conductor cannot apply the money paid for your prior reservation. For more information please visit Amtrak.com/changes.
- Summary of Terms and Conditions: Ticket valid for carriage or refund (subject to the refund rules of the fare purchased) for twelve months after day of issue unless otherwise specified. Amtrak tickets may only be sold or issued by Amtrak or an authorized travel agent/tour operator. Tickets sold or issued by an unauthorized third party will be voided by Amtrak. This ticket is a contract of carriage which includes specific terms and conditions and a binding arbitration agreement between Amtrak and the ticket holder. The terms and conditions and arbitration agreement are available at Amtrak.com/terms-and-conditions.html. Tickets sold for non-Amtrak service are subject to the tariffs of the providing carrier.
- Questions? Contact us online at Amtrak.com/contact or call 1-800-USA-RAIL (1-800-872-7245) or for text telephone (TTY) 1-800-523-6590.

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | etickets@amtrak.com |
| **Sent:** | Thursday, October 31, 2019 12:38 PM |
| **To:** | Newberg, Brad R. |
| **Subject:** | Amtrak: eTicket and Receipt for Your 10/31/2019 Trip - BRAD NEWBERG - UPDATED |
| **Attachments:** | Newberg Brad 201910311238220930.pdf |

**SALES RECEIPT**



Purchased: 10/28/2019 6:44 AM PTModified: 10/31/2019 9:38 AM PTThank you for your purchase.

1. Retain this receipt for your records.
2. Print the attached eTicket and carry during your trip.

Merchant ID 006351 Massachusetts Ave NWWashington, DC 20001800-USA-RAILAmtrak.com

# Reservation Number - 3C3DCENEW YORK PENN, NY - WASHINGTON, DC (One-Way)OCTOBER 28, 2019
Billing Information

| |
|---|
| BRAD NEWBERG12005 CREEKBEND DRRESTON, VA 20194- |
| **Visa** ending in 6349 (Purchase)Authorization Code 04658D   **Total $61** |

## Change Summary - Ticket Number 3040635531828

| | |
|---|---|
| **Original Amount Paid** | **$313.00** |
| **Travel Amount Used** | **($215.00)** **Subtotal** |
| | **$98.00** |

JA-101

| | |
|---|---|
| Revised Trip Details**TRAIN 93: NEW YORK (PENN STATION), NY - WASHINGTON, DC**Depart 2:02 PM, Thursday, October 31, 2019<br>1 RESERVED COACH SEAT | |
| | **$159.00**<br>**Subtotal** |
| | **$159.00** |
| | **Revised Fare** |
| | **$159.00** |
| | **Total** |
| | **$61.00** |

## Passengers

Brad Newberg

## Important Information

- Try the FindYourWay app for personalized train and station information at New York Penn Station.  Download it on Google Play or the Apple App Store today.
- Tickets are non-transferable.
- Changes to your itinerary may affect your fare.  Refund and exchange restrictions and penalties for failure to cancel unwanted travel may apply.  If your travel plans change, contact us before departure to change your reservation.  If you do not board your train, your entire reservation from that point will be canceled.  If you board a different train without notifying us, you will have to pay for it separately; the conductor cannot apply the money paid for your prior reservation.  For more information please visit Amtrak.com/changes.
- Summary of Terms and Conditions:  Ticket valid for carriage or refund (subject to the refund rules of the fare purchased) for twelve months after day of issue unless otherwise specified.  Amtrak tickets may only be sold or issued by Amtrak or an authorized travel agent/tour operator.  Tickets sold or issued by an unauthorized third party will be voided by Amtrak.  This ticket is a contract of carriage which includes specific terms and conditions and a binding arbitration agreement between Amtrak and the ticket holder.  The terms and conditions and arbitration agreement are available at Amtrak.com/terms-and-conditions.html.  Tickets sold for non-Amtrak service are subject to the tariffs of the providing carrier.
- Questions?  Contact us online at Amtrak.com/contact or call 1-800-USA-RAIL (1-800-872-7245) or for text telephone (TTY) 1-800-523-6590.

JA-102

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Arthur Usherson                                        :
                                                       :
                              Plaintiff,               :          19___-CV-_6368_(JMF)
              -v-                                       :
                                                       :          CIVIL CASE
Bandhsell Artist Management                            :          MANAGEMENT PLAN
                                                       :          AND SCHEDULING
                              Defendant(s).            :          ORDER
                                                       :
------------------------------------------------------------------------X

       This Civil Case Management Plan and Scheduling Order is submitted by the parties in accordance with Fed. R. Civ. P. 26(f)(3).

1.    All parties [consent ☐ / do not consent ☑] to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. *[If all parties consent, the remaining Paragraphs should not be completed. Instead, within three (3) days of submitting this Proposed Case Management Plan and Scheduling Order, the parties shall submit to the Court a fully executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, available at* http://nysd.uscourts.gov/file/forms/consent-to-proceed-before-us-magistrate-judge*.]*

2.    The parties [have ☑ / have not ☐] conferred pursuant to Fed. R. Civ. P. 26(f).

3.    Settlement discussions [have ☑ / have not ☐] taken place.

4.    *[If applicable]* Counsel have discussed an informal exchange of information in aid of early settlement and have agreed upon disclosure of the following information within _____ days/weeks:

    _____

    _____

    _____

    _____

    _____

5.    Amended pleadings may not be filed and additional parties may not be joined except with leave of the Court.  Any motion to amend or to join additional parties shall be filed no later than __December 13, 2019__ .  [*Absent exceptional circumstances, a date not more than thirty (30) days following the initial pretrial conference.  Any motion to amend or to join additional parties filed after the deadline in this paragraph will be subject to the "good cause" standard in Fed. R. Civ. P. 16(b)(4) rather than the more lenient standards of Fed. R. Civ. P. 15 and 21.*]

6.    Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) shall be completed no later than __November 29, 2019__.  [*Absent exceptional circumstances, a date not more than fourteen (14) days following the initial pretrial conference.*]

7.    [*If applicable*] The plaintiff(s) shall provide HIPAA-compliant medical records release authorizations to the defendant(s) no later than _____.

8.    Discovery

   a.   The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York.

   b.   All fact discovery shall be completed no later than __March 13, 2020__.  [*A date not more than 120 days following the initial pretrial conference, unless the Court finds that the case presents unique complexities or other exceptional circumstances.*]

   c.   The parties agree that there [is ☐ / is no ☑] need for expert discovery.  If the parties agree that there is no need for expert discovery, all discovery shall be completed by the deadline for fact discovery, unless — prior to that date — a party files, and the Court grants, a letter-motion seeking an extension for purposes of taking expert discovery; any such motion should explain why expert discovery has become necessary and propose a schedule for such discovery.  [*If any party believes that there is a need for expert discovery, the parties should complete Paragraph 8(d).*]

   d.   [*If applicable*]  All expert discovery, including reports, production of underlying documents, and depositions, shall be completed no later than _____.  [*Absent exceptional circumstances, a date not more than 45 days from the date in Paragraph 8(b) (i.e., the completion of all fact discovery).*]

   e.   The parties should not anticipate extensions of the deadlines for fact discovery and expert discovery set forth in the foregoing Paragraphs.  Relatedly, the parties should not make a unilateral decision to stay or halt discovery (on the basis of settlement negotiations or otherwise) in anticipation of an extension.  If something unforeseen arises, a party may seek a limited extension of the foregoing deadlines by letter-motion filed on ECF.  Any such motion must be filed before the relevant deadline and must explain why, despite the parties' due diligence, discovery could not be completed by the relevant deadline.

9.     Interim Discovery Deadlines

    a.   Initial requests for production of documents shall be served by ___December 6, 2019___.
        *[Absent exceptional circumstances, a date not more than thirty (30) days following the
        initial pretrial conference.]*

    b.   Interrogatories pursuant to Rule 33.3(a) of the Local Civil Rules of the Southern District
        of New York shall be served by ___December 6, 2019___.   *[Absent exceptional
        circumstances, a date not more than thirty (30) days following the initial pretrial
        conference.]*   No Rule 33.3(a) interrogatories need to be served with respect to
        disclosures automatically required by Fed. R. Civ, P. 26(a).

    c.   Unless otherwise ordered by the Court, contention interrogatories pursuant to Rule
        33.3(c) of the Local Civil Rules of the Southern District of New York must be served no
        later than thirty (30) days before the close of discovery.  No other interrogatories are
        permitted except upon prior express permission of the Court.

    d.   Unless otherwise ordered by the Court, depositions of fact witnesses shall be completed
        by the date set forth in Paragraph 8(b).

          i.   Absent an agreement between the parties or an order from the Court, depositions
            are not to be held until all parties have responded to initial requests for document
            production.

          ii.   There is no priority in deposition by reason of a party's status as a plaintiff or a
            defendant.

         iii.   Absent an agreement between the parties or an order from the Court, non-party
            depositions shall follow initial party depositions.

    e.   Unless otherwise ordered by the Court, requests to admit shall be served by no later than
        thirty (30) days before the close of discovery.

    f.   Any of the deadlines in Paragraphs 9(a) through 9(e) may be extended by the written
        consent of all parties without application to the Court, provided that all fact discovery is
        completed by the date set forth in Paragraph 8(b).

    g.   In the event that there is expert discovery, no later than thirty (30) days prior to the date
        in Paragraph 8(b) (i.e., the completion of all fact discovery), the parties shall meet and
        confer on a schedule for expert disclosures, including reports, production of underlying
        documents, and depositions, provided that (1) expert report(s) of the party with the
        burden of proof shall be due before those of the opposing party's expert(s); and (2) all
        expert discovery shall be completed by the date set forth in Paragraph 8(c).

10.    All motions and applications shall be governed by the Federal Rules of Civil Procedure, the
        Local Rules of the Southern District of New York, and the Court's Individual Rules and
        Practices (available at http://nysd.uscourts.gov/judge/Furman).

11.   In the case of discovery disputes, parties should follow Local Civil Rule 37.2 with the following modifications.  Any party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute.  If this meet-and-confer process does not resolve the dispute, the party shall, in accordance with the Court's Individual Rules and Practices in Civil Cases, promptly file a letter-motion, no longer than three pages, explaining the nature of the dispute and requesting an informal conference.  Any letter-motion seeking relief *must* include a representation that the meet-and-confer process occurred and was unsuccessful.  Any opposition to a letter-motion seeking relief shall be filed as a letter, not to exceed three pages, within three business days.  Counsel should be prepared to discuss with the Court the matters raised by such letters, as the Court will seek to resolve discovery disputes quickly, by order, by conference, or by telephone.  **Counsel should seek relief in accordance with these procedures in a timely fashion; if a party waits until near the close of discovery to raise an issue that could have been raised earlier, the party is unlikely to be granted the relief that it seeks, let alone more time for discovery.**

12.   All counsel must meet in person for at least one hour to discuss settlement within fourteen (14) days following the close of fact discovery.

13.   Absent good cause, the Court will not have summary judgment practice in a non-jury case.  Summary judgment motions, if applicable, and any motion to exclude the testimony of experts pursuant to Rules 702-705 of the Federal Rules of Evidence and the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), line of cases, are to be filed within thirty (30) days of the close of fact or expert discovery (whichever is later).  Unless otherwise ordered by the Court, opposition to any such motion is to be filed two (2) weeks after the motion is served on the opposing party, and a reply, if any, is to be filed one (1) week after service of any opposition.

14.   Unless otherwise ordered by the Court, within thirty (30) days of the close of all discovery, or, if a dispositive motion has been filed, within thirty (30) days of a decision on such motion, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Fed. R. Civ. P. 26(a)(3).  The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices for Civil Cases, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.

15.   If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Fed. R. Civ. P. 51(a)(2)(A).  If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.

16.   Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

JA-106

17.    This case [is ☑ / is not ☐ ] to be tried to a jury.

18.    Counsel for the parties have conferred, and the present best estimate of the length of trial is
       2-3 days                          .

19.    Other issues to be addressed at the Initial Pretrial Conference, including those set forth in
       Fed. R. Civ. P. 26(f)(3), are set forth below.

       None.                                                                    

       _____

       _____

       _____

**TO BE FILLED IN BY THE COURT IF APPLICABLE:**

       _____ shall file a motion for/to _____ no
later than _____. Any opposition shall be filed by _____.
Any reply shall be filed by _____. At the time any reply is due, the moving party
shall supply one courtesy hard copy of all motion papers by mail or hand delivery to the Court in
accordance with the Court's Individual Rules and Practices.

       The parties shall contact the Chambers of the Magistrate Judge assigned to this case on or
before _____ in order to schedule settlement discussions under his/her supervision in
or about _____.

       The parties shall file a joint letter by _____ indicating whether they
would like the Court to refer the case to the assigned Magistrate Judge and/or the Court mediation
program for settlement purposes and, if so, approximately when they believe a settlement
conference should be held.

       The next pretrial conference is scheduled for _____ at
_____ in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New
York, New York 10007.

       Absent leave of Court, by **Thursday of the week prior to any future conference**, the
parties shall file on ECF a joint letter, not to exceed three (3) pages, regarding the status of the case.
The letter should include the following information in separate paragraphs:

       (1) A statement of all existing deadlines, due dates, and/or cut-off dates;

       (2) A brief description of any outstanding motions;

       (3) A brief description of the status of discovery and of any additional discovery that needs to
           be completed;

JA-107

(4) A list of all prior settlement discussions, including the date, the parties involved, whether any third-party (e.g., Magistrate Judge, mediator, etc.) was involved, and the approximate duration of such discussions, if any;

(5) A statement of whether or how the Court could facilitate settlement of the case (for example, through a(nother) settlement conference before the assigned Magistrate Judge or as part of the Court's Mediation Program);

(6) A statement of the anticipated length of trial and whether the case is to be tried to a jury;

(7) A statement of whether the parties anticipate filing motions for summary judgment; and

(8) Any other issue that the parties would like to address at the pretrial conference or any information that the parties believe may assist the Court in advancing the case to settlement or trial.

This Order may not be modified or the dates herein extended, except by further Order of this Court for good cause shown. Further, the use of any alternative dispute resolution mechanism does not stay or modify any date in this Order. Indeed, unless the Court orders otherwise, parties engaged in settlement negotiations must proceed on parallel tracks, pursuing settlement and conducting discovery simultaneously. Parties should not assume that they will receive an extension of an existing deadline if settlement negotiations fail.

Any application to modify or extend the dates herein (except as provided in Paragraph 9(f)) shall be made in a written application in accordance with Court's Individual Rules and Practices for Civil Cases and shall be made no fewer than two (2) business days prior to the expiration of the date sought to be extended. Absent exceptional circumstances, extensions will not be granted after deadlines have already passed.

SO ORDERED.

Dated:
New York, New York

_____
JESSE M. FURMAN
United States District Judge

JA-108

**BY ECF**

November 7, 2019

**The Honorable Jesse M. Furman**
**United States District Court**
**Southern District of New York**
**Thurgood Marshall**
**United States Courthouse**
**40 Foley Square**
**New York, NY 10007**

Re: *Usherson v. Bandshell Artist Management (19-cv-6368-JMF)*

Dear Judge Furman,

Plaintiff Arthur Usherson ("Plaintiff" or "Usherson") and defendant Bandshell Artist Management ("Bandshell") jointly submit this revised letter in anticipation of the Initial Pretrial Conference scheduled for 4:00pm on November 14, 2019.

### 1. A Brief Statement of the Nature of the Action and Defenses

#### a. Plaintiff's Statement:

Plaintiff is a professional photographer in the business of licensing his photographs for a fee. Plaintiff took a photograph of singer songwriter Leon Redbone. Defendant ran the photograph on its Facebook without permission of Plaintiff. Plaintiff asserts that Defendant's use was willful.

#### b. Defendant's Statement:

Bandshell states that it represents certain musicians, including David Bromberg, who became well-known in the 1960s and 70s as a guitar player and folk artist, alongside Bob Dylan and others. Bandshell administers David Bromberg's Facebook page. When Bromberg's friend and fellow musician, Leon Redbone died this year, Bandshell re-posted Redbone's Facebook profile picture (which was an approximately 50-year old photograph of Redbone, Bromberg, and Dylan) on Bromberg's Facebook page with a Rest in Peace message. The photo was used solely on a personal page as a tribute and had no indication that it belonged to anyone else. Bandshell only found out about Usherson's claim when served with this lawsuit. The use was a fair use under copyright law, and at worst Bandshell's actions were innocent and not willful. Furthermore, given the lack of copyright notice, it does not appear Usherson has rights to protect in the photograph. There are no damages, no profit was made through this non-commercial use of the photo, and Usherson has never licensed the photograph in question.

**JA-109**

2.  **Statement of Venue**

There is no dispute as to venue.  Defendant resides in this District.

3.  **Existing Deadlines and Due Dates**

None.

4.  **Outstanding Motions**

Plaintiff will respond to Defendant's motion for sanctions by November 13, 2019.

5.  **Discovery**

No Discovery has taken place of yet.

6.  **Settlement**

Plaintiff's Statement- The parties conducted a mediation on October 31, 2019 at 40 Foley Square.  Two attorneys from the Liebowitz Law Firm, PLLC, both of whom are admitted to practice in this District, attended the mediation in person on behalf of Plaintiff Arthur Usherson. Plaintiff, who resides in Roswell Georgia, more than 100 miles away from the Courthouse, appeared via telephone and was in good faith ready to negotiate a settlement and was on the phone for the duration of the mediation. Indeed, Plaintiff actively participated by speakerphone and spoke directly to Defendant and his counsel while the mediator was present.  Further, the mediator, ████████████ indicated that Plaintiff was permitted to appear telephonically under Rule 9F of the mediation program.



Defendant- Substantively, virtually everything in Plaintiff's statement is *false*, and Defendant's counsel has warned Plaintiff against filing a false statement regarding the scheduled mediation with the Court.  Defendant will not get into the specifics of offers here, except to state that it has provided details of the history of this matter in the lengthy Sanctions Motion it filed on November 6.  In sum, both Plaintiff and Plaintiff's attorney failed to attend the scheduled October 31 mediation, while Defendant was there and Defendant's attorney traveled from Virginia to be there.  Instead, Plaintiff was still in Georgia (and also was not "on the phone for the duration of the mediation" as Plaintiff's statement says).  And Plaintiff's counsel was in Los Angeles having hosted a party the night before.  Therefore, the mediation could not move forward.  Plaintiff and his counsel were Ordered by this Court and warned by the mediation office in no uncertain terms that they needed to attend the October 31 mediation in person.  In

2

JA-110

fact, that date was specifically chosen by Plaintiff's counsel as a date that he and his client could supposedly be in New York and at the mediation.  Defendant and Defendant's counsel arrived at the Mediation Offices never once having heard that there was even a chance that Plaintiff or Plaintiff's counsel would not be there.

7.  **Facilitation of Settlement**

The parties will continue discussing settlement during discovery.

8.  **Trial Length**

2-3 days

9.  **Summary Judgment-**
Yes, the parties anticipate filing motions for summary judgment

10. **No other issues.**

Respectfully Submitted,
/s/Richard Liebowitz
Richard P. Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
RL@LiebowitzLawFirm.com

/s/ Brad R. Newberg
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: (703) 712-5061
F: (703) 712-5050
bnewberg@mcguirewoods.com

*Attorney for Plaintiff Arthur Usherson*

*Attorney for Defendant Bandshell Artist Management*

3

Case 1:19-cv-06368-JMF   Document 19   Filed 11/14/19   Page 1 of 3



**Liebowitz ◯ Law Firm, PLLC**
ATTORNEYS FOR THE PHOTOGRAPHIC ARTS

11 SUNRISE PLAZA, STE. 305
VALLEY STREAM, NY 11580
(516) 233-1660
WWW.LIEBOWITZLAWFIRM.COM

November 13, 2019

**VIA ECF**

Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Usherson v. Bandshell Artist Management,* 1:19-cv-06368 (JMF)

Dear Judge Furman:

We represent Plaintiff Arthur Usherson ("Plaintiff") in the above-captioned case. We write in opposition to Defendant Bandshell Artist Management ("Defendant")'s motion for sanctions against Plaintiff and Plaintiff's counsel. [Dkt. # 14]  Given that Defendant's motion is utterly lacking in merit and has been interposed for a bad faith purpose, Plaintiff respectfully submits this letter opposition so as to avoid the time of expense of briefing a formal motion.  In the event the Court determines that a formal brief and supporting affidavit is necessary after reviewing this opposition and conducting the Rule 16(f) conference, then Plaintiff respectfully requests the Court's leave to supplement his opposition accordingly.

**Relevant Background**

By Order dated October 7, 2019, the Court stated that it "continues to believe that early mediation in the normal course (i.e., in person) makes sense. Accordingly, . . . .[t]he parties shall conduct the in-person mediation no later than October 31, 2019." [Dkt. #13]

On October 31, 2019, the parties conducted a mediation on October 31, 2019 at 40 Foley Square. Two attorneys employed by Liebowitz Law Firm, PLLC, both of whom are admitted to practice in this District and had knowledge of all the facts in the case, attended the mediation in person. Plaintiff appeared via telephone and was in good faith ready to negotiate a settlement and was on the phone for the duration of the substantive portion of the mediation. Nothing in the Court order or mediation rules states that lead counsel needs to attend the mediation.

At the top of the mediation session, defense counsel indicated that he was upset that neither Mr. Liebowitz nor Mr. Usherson appeared in person. ███████████████████████

████████████████████████████████████████████

Defendant subsequently moved for sanctions against Plaintiff and Mr. Liebowitz.



JA-112

Liebowitz ⦾ Law Firm, PLLC

**Point I:**      **Plaintiff Participated in the Mediation in Good Faith and In Compliance with the Court's Order and S.D.N.Y. Mediation Rules**

The Court's Order does not explicitly state that <u>both</u> attorneys and parties must be present in person.  Rather, it says that "[t]he parties shall conduct the in-person mediation no later than October 31, 2019." [Dkt. #13]  As attorneys represent parties, there is a reasonable interpretation of this Order that only attorneys are required to be present in-person.

Moreover, Rule 9(f) of the S.D.N.Y. Procedures of the Mediation Program, dated June 2, 2017, provides as follows:

> "Under some circumstances, if a party resides more than 100 miles from the Courthouse, and it would be a great hardship for the party to attend in person, he or she may request that the mediator allow for telephonic participation at the mediation; however, if such request is granted, that party must participate by telephone with full attention and for the duration of the mediation."

Here, Plaintiff lives in Roswell, Georgia, which is approximately 865 miles from the Courthouse.  Accordingly, Plaintiff obtained permission from the assigned mediator, ███████ to appear at the scheduled mediation by telephone provided that counsel was present in person. Mr. Liebowitz also told ███████ that an associate of Liebowitz Law Firm with knowledge of the facts of the case would appear in-person, and ███████ consented to this. Whether conducted by an outside mediator or by a Magistrate Judge, this is routine practice in S.D.N.Y. mediation sessions where the actual parties are located out-of-state and where the travel expense to get to New York might eat greatly into any settlement amount.

During the course of the mediation, which lasted about forty-five minutes, Plaintiff actively participated by speakerphone and spoke directly to Defendant and his counsel while the mediator was present. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

**Point II:**      **With Respect to Licensing Fees, Plaintiff is in Compliance with the Court's Order**

By Defense counsel's own admission, Mr. Liebowitz notified Defendant on September 20, 2019 that there was no prior licensing fee information for the Photograph.  [Dkt. # 16, ¶ 7] As a matter of law, Plaintiff cannot be held accountable for not producing documents that he does not have. *Williams v. Bank Leumi Tr. Co. of New York*, No. 96 CIV. 6695(LMMAJP),

JA-113

Liebowitz ◎ Law Firm, PLLC

1999 WL 375559, at *1 (S.D.N.Y. June 7, 1999) ("It is too obvious to need citation that the Court cannot compel a party to produce documents that he does not possess."); see also *Rudawsky v. Borror*, No. 2:06-CV-144, 2007 WL 2127879, at *1 (S.D. Ohio Apr. 5, 2007) ("The Court cannot compel defendant to produce what it does not have").

As such, Defendant's argument that Plaintiff violated the Court's order by not producing licensing fee information is meritless.

**Point III:**     **With Respect to Service of Process, Plaintiff Promptly Filed the Affidavit of Service Within One Day After Having Received It From the Process Server**

Finally, Plaintiff filed the affidavit of service of the summons and complaint on September 21, 2019, just one day after receiving it from the process server. Such conduct is not sanctionable.

**Conclusion**

Based on the foregoing, Defendant's motion for sanctions should be denied and this case should be allowed to proceed on the merits.

Respectfully Submitted,

**/s/richardliebowitz/**
Richard Liebowitz

*Plaintiff's Counsel*

3

JA-114

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                              :
Arthur Usherson                               :
                                              :
                    Plaintiff, [▼]            :        19  -CV- 6368 (JMF)
                                              :
          -v-                                 :
                                              :        CIVIL CASE
Bandhsell Artist Management                   :        MANAGEMENT PLAN
                                              :        AND SCHEDULING
                    Defendant([▼]             :        ORDER
                                              :
------------------------------------------------------------------X

         This Civil Case Management Plan and Scheduling Order is submitted by the parties in
accordance with Fed. R. Civ. P. 26(f)(3).

1.    All parties [consent [ ] / do not consent [✔]] to conducting all further proceedings
      before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c).
      The parties are free to withhold consent without adverse substantive consequences.  [*If all
      parties consent, the remaining Paragraphs should not be completed.  Instead, within three
      (3) days of submitting this Proposed Case Management Plan and Scheduling Order, the
      parties shall submit to the Court a fully executed Notice, Consent, and Reference of a Civil
      Action to a Magistrate Judge, available at* http://nysd.uscourts.gov/file/forms/consent-to-
      proceed-before-us-magistrate-judge.]

2.    The parties [have [✔] / have not [ ]] conferred pursuant to Fed. R. Civ. P. 26(f).

3.    Settlement discussions [have [✔] / have not [ ]] taken place.

4.    [*If applicable*] Counsel have discussed an informal exchange of information in aid of early
      settlement and have agreed upon disclosure of the following information within
      _____ days/weeks:

      _____

      _____

      _____

      _____

      _____

5.  Amended pleadings may not be filed and additional parties may not be joined except with leave of the Court.  Any motion to amend or to join additional parties shall be filed no later than   December 13, 2019   .  [*Absent exceptional circumstances, a date not more than thirty (30) days following the initial pretrial conference.  Any motion to amend or to join additional parties filed after the deadline in this paragraph will be subject to the "good cause" standard in Fed. R. Civ. P. 16(b)(4) rather than the more lenient standards of Fed. R. Civ. P. 15 and 21.*]

6.  Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) shall be completed no later than than   November 29, 2019 .  [*Absent exceptional circumstances, a date not more than fourteen (14) days following the initial pretrial conference.*]

7.  [*If applicable*] The plaintiff(s) shall provide HIPAA-compliant medical records release authorizations to the defendant(s) no later than _____.

8.  Discovery

    a.  The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York.

    b.  All fact discovery shall be completed no later than ~~March 13, 2020~~ Jan. 31, 2020 .  [*A date not more than 120 days following the initial pretrial conference, unless the Court finds that the case presents unique complexities or other exceptional circumstances.*]

    c.  The parties agree that there [is ☐ / is no ☑ ] need for expert discovery.  If the parties agree that there is no need for expert discovery, all discovery shall be completed by the deadline for fact discovery, unless — prior to that date — a party files, and the Court grants, a letter-motion seeking an extension for purposes of taking expert discovery; any such motion should explain why expert discovery has become necessary and propose a schedule for such discovery.  [*If any party believes that there is a need for expert discovery, the parties should complete Paragraph 8(d).*]

    d.  [*If applicable*]  All expert discovery, including reports, production of underlying documents, and depositions, shall be completed no later than _____.  [*Absent exceptional circumstances, a date not more than 45 days from the date in Paragraph 8(b) (i.e., the completion of all fact discovery).*]

    e.  The parties should not anticipate extensions of the deadlines for fact discovery and expert discovery set forth in the foregoing Paragraphs.  Relatedly, the parties should not make a unilateral decision to stay or halt discovery (on the basis of settlement negotiations or otherwise) in anticipation of an extension.  If something unforeseen arises, a party may seek a limited extension of the foregoing deadlines by letter-motion filed on ECF.  Any such motion must be filed before the relevant deadline and must explain why, despite the parties' due diligence, discovery could not be completed by the relevant deadline.

9.   Interim Discovery Deadlines

    a.   Initial requests for production of documents shall be served by ___December 6, 2019___.
        *[Absent exceptional circumstances, a date not more than thirty (30) days following the
        initial pretrial conference.]*

    b.   Interrogatories pursuant to Rule 33.3(a) of the Local Civil Rules of the Southern District
        of New York shall be served by ___December 6, 2019___.   *[Absent exceptional
        circumstances, a date not more than thirty (30) days following the initial pretrial
        conference.]*  No Rule 33.3(a) interrogatories need to be served with respect to
        disclosures automatically required by Fed. R. Civ, P. 26(a).

    c.   Unless otherwise ordered by the Court, contention interrogatories pursuant to Rule
        33.3(c) of the Local Civil Rules of the Southern District of New York must be served no
        later than thirty (30) days before the close of discovery.  No other interrogatories are
        permitted except upon prior express permission of the Court.

    d.   Unless otherwise ordered by the Court, depositions of fact witnesses shall be completed
        by the date set forth in Paragraph 8(b). *Each side is limited to one (1) deposition*
        *(assuming that the person who posted the photograph on defendant's behalf*
        *and its corporate designee are one and the same), absent leave of court.*

        i.   Absent an agreement between the parties or an order from the Court, depositions
            are not to be held until all parties have responded to initial requests for document
            production.

        ii.   There is no priority in deposition by reason of a party's status as a plaintiff or a
            defendant.

        iii.   Absent an agreement between the parties or an order from the Court, non-party
            depositions shall follow initial party depositions.

    e.   Unless otherwise ordered by the Court, requests to admit shall be served by no later than
        thirty (30) days before the close of discovery.

    f.   Any of the deadlines in Paragraphs 9(a) through 9(e) may be extended by the written
        consent of all parties without application to the Court, provided that all fact discovery is
        completed by the date set forth in Paragraph 8(b).

    g.   In the event that there is expert discovery, no later than thirty (30) days prior to the date
        in Paragraph 8(b) (i.e., the completion of all fact discovery), the parties shall meet and
        confer on a schedule for expert disclosures, including reports, production of underlying
        documents, and depositions, provided that (1) expert report(s) of the party with the
        burden of proof shall be due before those of the opposing party's expert(s); and (2) all
        expert discovery shall be completed by the date set forth in Paragraph 8(c).

10.   All motions and applications shall be governed by the Federal Rules of Civil Procedure, the
      Local Rules of the Southern District of New York, and the Court's Individual Rules and
      Practices (available at http://nysd.uscourts.gov/judge/Furman).

JA-117

11.     In the case of discovery disputes, parties should follow Local Civil Rule 37.2 with the following modifications.  Any party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute.  If this meet-and-confer process does not resolve the dispute, the party shall, in accordance with the Court's Individual Rules and Practices in Civil Cases, promptly file a letter-motion, no longer than three pages, explaining the nature of the dispute and requesting an informal conference.  Any letter-motion seeking relief *must* include a representation that the meet-and-confer process occurred and was unsuccessful.  Any opposition to a letter-motion seeking relief shall be filed as a letter, not to exceed three pages, within three business days.  Counsel should be prepared to discuss with the Court the matters raised by such letters, as the Court will seek to resolve discovery disputes quickly, by order, by conference, or by telephone.  **Counsel should seek relief in accordance with these procedures in a timely fashion; if a party waits until near the close of discovery to raise an issue that could have been raised earlier, the party is unlikely to be granted the relief that it seeks, let alone more time for discovery.**

12.     All counsel must meet in person for at least one hour to discuss settlement within fourteen (14) days following the close of fact discovery.

13.     Absent good cause, the Court will not have summary judgment practice in a non-jury case.  Summary judgment motions, if applicable, and any motion to exclude the testimony of experts pursuant to Rules 702-705 of the Federal Rules of Evidence and the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), line of cases, are to be filed within thirty (30) days of the close of fact or expert discovery (whichever is later).  Unless otherwise ordered by the Court, opposition to any such motion is to be filed two (2) weeks after the motion is served on the opposing party, and a reply, if any, is to be filed one (1) week after service of any opposition.

14.     Unless otherwise ordered by the Court, within thirty (30) days of the close of all discovery, or, if a dispositive motion has been filed, within thirty (30) days of a decision on such motion, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Fed. R. Civ. P. 26(a)(3).  The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices for Civil Cases, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.

15.     If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Fed. R. Civ. P. 51(a)(2)(A).  If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.

16.     Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

JA-118

17.   This case [is ☑ / is not ☐ ] to be tried to a jury.

18.   Counsel for the parties have conferred, and the present best estimate of the length of trial is
2-3 days_____.

19.   Other issues to be addressed at the Initial Pretrial Conference, including those set forth in
Fed. R. Civ. P. 26(f)(3), are set forth below.

None._____

_____

_____

_____

### TO BE FILLED IN BY THE COURT IF APPLICABLE:

_Defendant_ shall file a motion for/to _bond_____ no
later than _November 27, 2019_. Any opposition shall be filed by _December 11, 2019_
Any reply shall be filed by _Dec. 18 2019_. At the time any reply is due, the moving party
shall supply one courtesy hard copy of all motion papers by mail or hand delivery to the Court in
accordance with the Court's Individual Rules and Practices.

The parties shall contact the Chambers of the Magistrate Judge assigned to this case on or
before _____ in order to schedule settlement discussions under his/her supervision in
or about _____.

The parties shall file a joint letter by _____ indicating whether they
would like the Court to refer the case to the assigned Magistrate Judge and/or the Court mediation
program for settlement purposes and, if so, approximately when they believe a settlement
conference should be held.

The next pretrial conference is scheduled for _February 6, 2020_ at
_3:30 pm_ in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New
York, New York 10007.

Absent leave of Court, by **Thursday of the week prior to any future conference**, the
parties shall file on ECF a joint letter, not to exceed three (3) pages, regarding the status of the case.
The letter should include the following information in separate paragraphs:

(1) A statement of all existing deadlines, due dates, and/or cut-off dates;

(2) A brief description of any outstanding motions;

(3) A brief description of the status of discovery and of any additional discovery that needs to
be completed;

(4) A list of all prior settlement discussions, including the date, the parties involved, whether any third-party (e.g., Magistrate Judge, mediator, etc.) was involved, and the approximate duration of such discussions, if any;

(5) A statement of whether or how the Court could facilitate settlement of the case (for example, through a(nother) settlement conference before the assigned Magistrate Judge or as part of the Court's Mediation Program);

(6) A statement of the anticipated length of trial and whether the case is to be tried to a jury;

(7) A statement of whether the parties anticipate filing motions for summary judgment; and

(8) Any other issue that the parties would like to address at the pretrial conference or any information that the parties believe may assist the Court in advancing the case to settlement or trial.

This Order may not be modified or the dates herein extended, except by further Order of this Court for good cause shown. Further, the use of any alternative dispute resolution mechanism does not stay or modify any date in this Order. Indeed, unless the Court orders otherwise, parties engaged in settlement negotiations must proceed on parallel tracks, pursuing settlement and conducting discovery simultaneously. Parties should not assume that they will receive an extension of an existing deadline if settlement negotiations fail.

Any application to modify or extend the dates herein (except as provided in Paragraph 9(f)) shall be made in a written application in accordance with Court's Individual Rules and Practices of Civil Cases and shall be made no fewer than two (2) business days prior to the expiration of the date sought to be extended. Absent exceptional circumstances, extensions will not be granted after deadlines have already passed.

SO ORDERED.

Dated: November 14, 2019
New York, New York

JESSE M. FURMAN
United States District Judge

Defendant is granted leave to file an amended answer no later than November 22, 2019.

Plaintiff shall file a formal opposition to the motion for sanctions by November 18, 2019; Defendant shall file any reply by November 25, 2019. The parties should address in those submissions whether the Court should hold an evidentiary hearing and, if so, what witnesses should be called and how it should be conducted.

JA-120

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR USHERSON,

                        Plaintiff,                    Docket No. 1:19-cv-06368-JMF

    - against -

BANDSHELL ARTIST MANAGEMENT

                        Defendant.

### PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO SANCTIONS

Plaintiff Arthur Usherson, via counsel, respectfully submits this memorandum of law in opposition to Defendant Bandshell Artist Management ("Defendant")'s motion for sanctions.

## **RELEVANT BACKGROUND**

The Court's Mediation Referral Order, dated July 15, 2019, states that "Local Rule 83.9 shall govern the mediation and are directed to participate in the mediation in good faith." [Dkt. # 6]. By Order dated October 7, 2019, the Court stated that it "continues to believe that early mediation in the normal course (i.e., in person) makes sense. Accordingly, . . . .[t]he parties shall conduct the in-person mediation no later than October 31, 2019." [Dkt. #13].

On October 31, 2019, the parties conducted a mediation on at 40 Foley Square. Two attorneys employed by Liebowitz Law Firm, PLLC, both of whom are admitted to practice in this District attended the mediation in person. Mr. Freeman, an experienced copyright practitioner, had knowledge of all the facts in the case.

Plaintiff, who resides over 860 miles from the courthouse, appeared via telephone pursuant to Rule 9(f) of S.D.N.Y. Mediation Rules and consistent with ordinary custom of practice. Plaintiff acted in in good faith and was ready to negotiate a settlement. He was on the phone for the duration of the substantive portion of the mediation. Nothing in the Court order or mediation rules stated that lead counsel needed to attend the mediation.

At the top of the mediation session, defense counsel indicated that he was upset that neither Mr. Liebowitz nor Mr. Usherson appeared in person. ████████████████
████████████████████████████████████
████████████████████
██████████████████████████

████████████████  The meditation was adjourned after about 45 minutes.  Defendant

subsequently moved for sanctions against Plaintiff and Mr. Liebowitz on grounds that they did

not attend mediation in person.

## ARGUMENT

**POINT I:**     **PLAINTIFF PARTICIPATED IN THE MEDIATION IN GOOD FAITH AND IN COMPLIANCE WITH THE COURT'S ORDER AND S.D.N.Y. MEDIATION RULES**

The Court's subsequent Order, dated October 7, 2019, states that the mediation should

be conducted in person, but does not explicitly state that <u>both</u> attorneys and parties must be

present in person. Rather, it says that "[t]he parties shall conduct the in-person mediation no

later than October 31, 2019." [Dkt. #13] As attorneys represent parties, there is a reasonable

interpretation of this Order that only attorneys are required to be present in-person.  Mr.

Liebowitz understood the Court's 10/7/19 Order to mean that counsel for the parties was

required to participate in person. [Richard Liebowitz Declr. ¶ 7].

However, the Court's 10/7/19 order is silent with respect to the mode of client

participation and does not specifically state that clients were required to attend in-person. [*Id.*]

*Compare* Local Rule 33.1(d)(2) of the Second Circuit's rules, which states that "A mediator

may require *a client* to participate in a conference in person or by telephone."

[www.ca2.uscourts.gov/clerk/case_filing/rules/title7/local_rule_33_1.html] (italics added).

S.D.N.Y. Local Rule 83.9(c)(3) provides that "the mediation program shall be

governed by 'The Procedures of the Mediation Program for the Southern District of New York'.

L.R. 83.9(c)(3).  Moreover, Rule 9(f) of the S.D.N.Y. Procedures of the Mediation Program,

dated June 2, 2017, provides as follows:

"Under some circumstances, if a party resides more than 100 miles from the Courthouse, and it would be a great hardship for the party to attend in person, he or she may request that the mediator allow for telephonic participation at the mediation; however, if such request is granted, that party must participate by telephone with full attention and for the duration of the mediation."

Here, Plaintiff lives in Roswell, Georgia, which is approximately 865 miles from the Courthouse. [Richard Liebowitz Declr. ¶ 11]  Accordingly, Plaintiff obtained permission from the assigned mediator, ███████████, to appear at the scheduled mediation by telephone provided that counsel was present in person. [Richard Liebowitz Declr. ¶ 13]. Mr. Liebowitz also informed ██████████ that an associate of Liebowitz Law Firm with knowledge of the facts of the case would appear in-person, and ██████████ consented to this. [Richard Liebowitz Declr. ¶ 13].

Whether conducted by an outside mediator or by a Magistrate Judge, it is routine practice in S.D.N.Y. mediation sessions for parties located out-of-state to participate telephonically.  [Richard Liebowitz Declr. ¶ 13; Freeman Declr. ¶ 7]. This is warranted given that in cases involving modest recovery, the travel expenses alone could greatly reduce the benefit of any settlement amount. [Richard Liebowitz Declr. ¶ 12].

During the course of the mediation, which lasted about forty-five minutes, Plaintiff actively participated by speakerphone and spoke directly to Defendant and his counsel while the mediator was present.  [Freeman Declr. ¶¶ 11-16, Rebecca Liebowitz Declr. ¶¶ 6-13].

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

██████████████████████████████████████

JA-124

███████████████████████████████████████████████████████

█████████████████████████████████████████

**POINT II:** **DEFENDANT'S CLAIM FOR MONETARY AWARD IS BARRED BY THE DOCTRINE OF UNCLEAN HANDS AND BY THE ABSENCE OF ANY PREJUDICE**

The Court's Mediation Referral Order, dated July 15, 2019, states that "Local Rule 83.9 shall govern the mediation and are directed to participate in the mediation in good faith." [Dkt. # 6].

"Courts have refused to invoke their inherent authority to impose sanctions where the party requesting sanctions has unclean hands." *Thomas v. Schwab*, No. 09-CV-13632, 2012 WL 6553773, at *1 (E.D. Mich. Dec. 14, 2012); *see also S. Shore Ranches, LLC v. Lakelands* Co., LLC, No. 09–CV–105, 2010 WL 2546112, at *5 (E.D.Cal. Jun. 18, 2010) ("Both parties have a form of 'unclean hands,' and the Court will not use its inherent authority to reward one party over the other."); *Fayemi v. Hambrecht & Quist, Inc.,* 174 F.R.D. 319, 326–27 (S.D.N.Y. 1997) (applying unclean hands maxim and refusing to impose evidentiary sanction).

**A.** ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

Convenience to defense counsel should not have been a factor as Liebowitz Law Firm employees also had to incur time attending the mediation, but did not complain. ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ The Court should decide sanctions

motions on a case-by-case basis.  Here, there is no evidence that Mr. Liebowitz violated the

Court's order by, for example, not participating in mediation as was the case in *Rice v*

*NBCUniversal.*

**B.      Defendant Was Not Prejudiced by the Lack of In-Person Attendance by Mr. Liebowitz or Mr. Usherson**

The crux of Defendant's motion for sanctions is that it wasted its time and money on

attending the October 31 mediation because neither Mr. Liebowitz nor Mr. Usherson attended in

person.  However, Defendant has abjectly failed to demonstrate how Liebowitz and Usherson's

in-person participation would have made any difference.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

Given that Defendant cannot show that it suffered any prejudice as a result of Usherson's telephonic appearance, nor suffered any prejudice as a result of Mr. Freeman's in-person attendance in lieu of Mr. Liebowitz, any claim to monetary relief should be denied.

### POINT III:   WITH RESPECT TO LICENSING FEES, PLAINTIFF IS IN COMPLIANCE WITH THE COURT'S ORDER

By Defense counsel's own admission, Mr. Liebowitz notified Defendant on September 20, 2019 that there was no prior licensing fee information for the Photograph. [Dkt. # 16, ¶ 7] As a matter of law, Plaintiff cannot be held accountable for not producing documents that he does not have. *Williams v. Bank Leumi Tr. Co. of New York*, No. 96 CIV. 6695(LMMAJP), 1999 WL 375559, at *1 (S.D.N.Y. June 7, 1999) ("It is too obvious to need citation that the Court cannot compel a party to produce documents that he does not possess."); see also *Rudawsky v. Borror*, No. 2:06-CV-144, 2007 WL 2127879, at *1 (S.D. Ohio Apr. 5, 2007) ("The Court cannot compel defendant to produce what it does not have").

As such, Defendant's argument that Plaintiff violated the Court's order by not producing licensing fee information is meritless.

### POINT IV:   WITH RESPECT TO SERVICE OF PROCESS, PLAINTIFF PROMPTLY FILED THE AFFIDAVIT OF SERVICE WITHIN ONE DAY AFTER HAVING RECEIVED IT FROM THE PROCESS SERVER

Plaintiff filed the affidavit of service of the summons and complaint on September 21, 2019, just one day after receiving it from the process server. [Richard Liebowitz Declr. ¶ 4] Such conduct is not sanctionable.

**POINT V:**   **DEFENDANT'S REQUEST FOR FEES IS GROSSLY EXCESSIVE AND DISPROPORTIONATE TO ANY ALLEGED HARM CAUSED**

For all the reasons stated in Points I-IV, *supra*, sanctions are not warranted as Plaintiff is in substantial compliance with the Court's orders and S.D.N.Y. mediation rules.  Moreover, Defendant is to blame for not participating in mediation in good faith.

If the Court does find that sanctions are warranted, then Defendant's recovery should not exceed $400/hr. x. 2.0 hours of billable time, or $800.  One hour to attend mediation plus one hour to prepare is reasonable.  Moreover, defense counsel cannot possibly bill more than $400/hr. in this District, which is a substantial hourly rate for an attorney of defense counsel's experience.  *Pyatt v. Raymond*, No. 10 Civ. 8764 (CM), 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving hourly rates of $400 for partners in copyright and trademark cases).

**POINT VI:**   **THE COURT SHOULD AWARD PLAINTIFF HIS FEES FOR HAVING TO OPPOSE THIS FRIVOLOUS MOTION**

Given that Defendant and his counsel acted in bad faith at mediation, there was no justification for Defendant's filing of this motion.  Further, the motion is improperly motivated because Defendant is simply trying to exploit the Liebowitz Law Firm's past history of sanctions orders. Accordingly, the Court should award Plaintiff his fees in connection with the instant motion pursuant to the Court's inherent powers.

**CONCLUSION**

Based on the foregoing, Plaintiff and his counsel respectfully request that Defendant's motion for sanctions should be DENIED and this case should be allowed to proceed on the

merits.  If sanctions are imposed, they should not exceed the amount of $800.00


Dated: November 18, 2019
      Valley Stream, NY

                                        Richard Liebowitz
                                        LIEBOWITZ LAW FIRM, PLLC
                                        11 Sunrise Plaza, Suite 305
                                        Valley Stream, NY 11580
                                        516-233-1660
                                        RL@LiebowitzLawFirm.com

                                        *Attorneys for Plaintiff*

JA-130

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTHUR USHERSON,

                              Plaintiff,

        - against -

BANDSHELL ARTIST MANAGEMENT

                              Defendant.

---

Docket No. 1:19-cv-06368-JMF

**DECLARATION OF RICHARD LIEBOWITZ**

I, RICHARD LIEBOWITZ, declare under the penalty of perjury that the following is true
and correct to the best of my personal knowledge.

1.      I am lead counsel for Plaintiff Arthur Usherson ("Plaintiff") in this action.

2.      I submit this Declaration in opposition to Defendant Bandshell Artist

Management ("Defendant")'s motion for sanctions.

**Proof of Service**

3.      Defendant was served with a copy of the summons and complaint on September

5, 2019.

4.      The certificate of service was filed on September 21, 2019 because I did not

receive the certificate from the process server until September 20, 2019.  Attached as Exhibit A

is a true and correct copy of the e-mail from the process server, dated September 20, 2019.

**Licensing Fee Information**

5.      On or about September 20, 2019, I advised defense counsel that Defendant was still looking for licensing but as of that date Plaintiff did not have licensing fee information for the Photograph at issue in this case.

**Mediation**

6.      At all relevant times, I was aware of the Court's Order, dated October 7, 2019, in which the Court stated that it "continues to believe that early mediation in the normal course (i.e., in person) makes sense. Accordingly, . . . .[t]he parties shall conduct the in-person mediation no later than October 31, 2019." [Dkt. #13]

7.      I understood the Court's 10/7/19 Order to mean that counsel for the parties was required to participate in person.  However, the Court's order is silent with respect to the mode of client participation and does not specifically state that clients were required to attend in-person.  *Compare* Local Rule 33.1(d)(2) of the Second Circuit's rules, which states that "A mediator may require a client to participate in a conference in person or by telephone." [*see* www.ca2.uscourts.gov/clerk/case_filing/rules/title7/local_rule_33_1.html]

8.      S.D.N.Y. Local Rule 83.9(c)(3) provides that "the mediation program shall be governed by "The Procedures of the Mediation Program for the Southern District of New York". Rule 9(f) of The Procedures of the Mediation Program for the Southern District of New York provides that clients who are located more than 100 miles from the courthouse may participate in mediation via telephone with the mediator's approval.  Attached as Exhibit B is a true and correct copy of the S.D.N.Y. Procedures of the Mediation Program (6/2/2017) (the "S.D.N.Y. Mediation Rules")

9.      I have diligently reviewed the S.D.N.Y. Mediation Rules and am not aware of any rule which requires that lead counsel personally attend scheduled mediations.

10.     I employ an associate, James Freeman, who has eighteen years of experience
admitted to this Court.  Mr. Freeman is well-versed in copyright law.  I routinely ask Mr.
Freeman to attend Court-ordered mediations on my behalf (regardless of whether he has filed a
notice of appearance).  Before the instant motion, I am not aware of any instance where Mr.
Freeman's participation at mediation has been contested by an opposing party.

11.     Plaintiff resides in Roswell, Georgia, more than 100 miles from the S.D.N.Y.
courthouse.

12.     I have personally participated in dozens of mediations in this Circuit.  It is routine
practice in this District for clients who reside more than 100 miles from the courthouse to
participate in mediation by telephone.  This is because it is prejudicial for an out-of-state plaintiff
to have to incur the time and out-of-pocket travel expense to appear in-person, particularly given
that the defendant (who resides in the venue) does not have to incur such time and expense.  The
prejudice to Plaintiff is exacerbated by the monetary value of the case, which is relatively
modest.

13.     Prior to October 31, 2019, the mediation date scheduled in this case, I sought and
received approval from ████████████ the assigned mediator, for Mr. Usherson to attend the
mediation via telephone and for my associate James Freeman to appear who had full knowledge
of the case.  I obtained ████████████ consent via telephone.

14.     ██████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████

JA-133

15.     I did not personally attend the mediation session on October 31, 2019.  However, Mr. Freeman, who was accompanied by Rebecca Liebowitz, an attorney who was recently admitted to practice in this Court, was prepared to settle the case.


Dated: November 18, 2019
        Valley Stream, NY

> /s/**richardliebowitz**/
> Richard Liebowitz
> Liebowitz Law Firm, PLLC
> 11 Sunrise Plaza, Suite 305
> Valleystream, NY 11580
> 516-233-1660
> RL@LiebowitzLawFirm.com
>
> *Attorneys for Plaintiff*

JA-134

# EXHIBIT A

 Gmail

Richard Liebowitz <richardpliebowitz@gmail.com>

## Usherson v. Bandshell Artist Management

**GOTHAM** <gothamprocess@hotmail.com>                                              Fri, Sep 20, 2019 at 5:13 PM
To: Richard Liebowitz <RL@liebowitzlawfirm.com>

Sent from Outlook

---

**From:** Richard Liebowitz <RL@liebowitzlawfirm.com>
**Sent:** Friday, September 20, 2019 4:52 PM
**To:** GOTHAM <gothamprocess@hotmail.com>
**Subject:** Re: Usherson v. Bandshell Artist Management

[Quoted text hidden]

---

 **img275.pdf**
40K

# EXHIBIT B



# PROCEDURES OF
# THE MEDIATION PROGRAM
## (6/2/2017)

Mediation Program
United States District Court
Southern District of New York
40 Foley Square, Suite 120
New York, New York 10007
(212) 805-0643
Email:  mediationoffice@nysd.uscourts.gov
www.nysd.uscourts.gov/mediation

JA-138

## Table of Contents

1.   Introduction and Scope ...................................................................................................................2

2.   Confidentiality ...................................................................................................................................2

3.   Entering and Removing Cases from Mediation .............................................................................3

4.   Assignment of the Mediator ...........................................................................................................3

5.   Disqualification .................................................................................................................................4

6.   Mediation Scheduling.......................................................................................................................4

7.   Electronic Devices in the Courthouses ..........................................................................................6

8.   Mediation Statements ......................................................................................................................6

9.   Attendance at Mediation Sessions ................................................................................................7

10.  Mediation Location ..........................................................................................................................8

11.  Mediation Forms ..............................................................................................................................8

12.  Reporting ..........................................................................................................................................8

13.  Post-mediation Survey .....................................................................................................................9

14.  Mediation Panel Application Criteria ..............................................................................................9

15.  Mediation Panel Application Process ........................................................................................... 10

16.  Service as a Mediator .................................................................................................................... 11

17.  Code of Conduct ............................................................................................................................ 11

18.  Complaints about Mediators: Investigation/Remediation ........................................................ 12

19.  Complaints About the Mediation Program or Director .............................................................. 13

20.  Resignation or Removal from the Mediation Panel .................................................................... 13

21.  Immunity ........................................................................................................................................ 14

JA-139

## 1.  Introduction and Scope

These procedures are promulgated for the management of the Mediation Program of the Southern District of New York. They shall not be deemed to vest any rights in litigants or their attorneys and shall be subject to such amendments from time to time as shall be approved by the Court. These procedures contemplate flexibility in the Mediation Program and in the mediation of each individual case. The Mediation Office may, if requested, offer guidance and assistance in any given matter.

## 2.  Confidentiality[1]

a.  Any communications made exclusively during or for the mediation process shall be confidential except as to the provisions indicated in this section. The mediator shall not disclose any information about the mediation process, communications, or participants to anyone except for Mediation Office staff. Mediation Office staff must also maintain confidentiality except as to the provisions indicated in this section. Administrative aspects of the mediation process, including the assignment of a mediator, scheduling and holding of sessions, and a final report that the case has concluded or not concluded through mediation, or that parties failed to participate, are not confidential and will appear on the docket of the case.

b.  The parties may not disclose discussions or other communications with the mediator unless all parties agree, because it is required by law, or because otherwise confidential communications are relevant to a complaint against a mediator or the Mediation Program arising out of the mediation. The parties may agree to disclose information provided or obtained during mediation to the Court while engaged in further settlement negotiations with a District or Magistrate Judge. The parties may disclose the terms of settlement if either party seeks to enforce those terms.

---

[1] These confidentiality rules are intended to include the protections afforded by Rule 408 of the Federal Rules of Evidence, the New York State rules of evidence, and the Model Standards of Conduct for Mediators, promulgated by the American Bar Association, American Arbitration Association, and the Association for Conflict Resolution (September 2005), available as of 11/2/16 at: http://www.americanbar.org/content/dam/aba/migrated/2011_build/dispute_resolution/model_standards_conduct_april2007.authcheckdam.pdf.

JA-140

    c.  Documents and information otherwise discoverable under the Federal Rules of Civil Procedure shall not be shielded from discovery merely because they are submitted or referred to in the mediation.

    d.  The mediator shall not be inquired of or called as a witness or deponent in any proceeding related to the dispute in which the mediator served, or be compelled to produce documents that the mediator received or prepared for mediation.

**3.  Entering and Removing Cases from Mediation**

    a.  Cases enter the Mediation Program either through a process of automatic referral or by referral of a specific case from the presiding judge with or without the request of the parties.

    b.  Any party may request removal from mediation by submitting such a request in writing to the presiding judge. The Mediation Office should be copied on any requests for removal. Mediation deadlines will be stayed pending a determination from the presiding judge.

**4.  Assignment of the Mediator**

    a.  The mediators on the panel for the Southern District of New York are divided into sub-groups based on areas of subject matter expertise. For most substantive areas of law, mediators identify to the program the areas in which they have the requisite experience or background. In consultation with members of the employment bar, the following criteria were developed for all mediators assigned to employment cases. Any mediator who wishes to mediate employment cases through the SDNY must: i) Have five years of experience practicing employment law in the past eight years; or ii) In the last three years have: taken an EEO/employment law CLE for at least 5 CLE credits, or been an instructor at an employment law CLE, or taught a course in employment law; or iii) Have greater than five years of demonstrated expertise as an employment law neutral.

    b.  Once the Mediation Office receives a referral (either through a Mediation Referral Order or an automatic process), a mediator is selected for proposed assignment at random from the sub-group of mediators who have the subject matter expertise that is relevant to the case. If no such mediator is available, the Mediation Office will select a proposed mediator at random from a sub-group of mediators with expertise in a related subject matter. The mediator selected must respond to the Mediation Office as quickly as possible, but no later than three (3) business days, to accept the assignment, to request an extension of time to clear conflicts, or to decline. Upon

notice that the selected mediator has declined, or after three (3) business days without notice of acceptance or a request for an extension of time, another mediator will be selected. Once a mediator has accepted the case, the Mediation Office shall notify the mediator and the parties of the assignment. The assignment of a case to a mediator should take place within ten (10) business days of the receipt by the Mediation Office of the mediation referral.

c. Mediators are provided with a free PACER account to access pleadings and other relevant information that may be needed when considering whether to accept a case, or for relevant research while mediating. At the mediator's request, the Mediation Office will forward documents and information to the mediator directly. The free PACER account is only to be used for the purposes of service as a mediator on SDNY matters and mediators may not allow others to use the account.

## 5. Disqualification

a. Before accepting an appointment as a mediator, and at all times after accepting such an appointment, a mediator shall disclose to the Mediation Office, in the first instance, any circumstance that could give rise to a reasonable apprehension of a lack of impartiality such as those circumstances enumerated under 28 U.S.C. § 455.

b. Any mediator who makes a disclosure under (5)(a) and who is deemed qualified to serve by the Mediation Office shall continue as the assigned mediator if all parties to the dispute waive, in writing, all objections to any reasonable apprehension of a lack of impartiality or conflict of interest that arises as a consequence of the disclosure.

c. Any party may submit a written request to the Director of the ADR Program for the mediator's disqualification based on the circumstances enumerated in 28 U.S.C. § 455 or  28 U.S.C. § 144. This request should be submitted within three (3) days from the date of the notification of the mediator's name, or from the date of the discovery of a new ground for disqualification. A denial of such a request by the Director of the ADR Program is subject to review by the presiding judge upon motion filed within ten (10) days of the date of the Director of the ADR Program's denial.

## 6. Mediation Scheduling

a. The mediator shall confer with counsel for the parties, or parties themselves if proceeding *pro se*, immediately after assignment of a case to determine an appropriate date, time, and location for the first mediation session. Unless cases enter the Mediation Program through an order that imposes specific timelines or guidelines for the mediation process, the date, time, and location of the first session

JA-142

should be finalized within thirty (30) days of the assignment of the mediator unless there is a specific reason why a date certain cannot be established within thirty (30) days.  If the parties require no discovery or information before mediation can take place, the mediator should hold the first session within thirty (30) days of the assignment of the mediator. If the parties require discovery or information for the purpose of mediation, the parties must confer to establish a short reasonable timeline for the completion of limited discovery and should hold the first session within thirty (30) days of the completion of limited discovery. The assigned mediator shall promptly notify the Mediation Office of the date, time, and location of the first mediation session or the reason for failing to schedule within the 30-day period. The Mediation Office will docket the date, time, and location of the mediation session.

b. In certain instances, mediation participants may wish to indefinitely adjourn mediation pending some specific action in the case (e.g. a decision on a pending motion), or remove a case from mediation entirely. Such requests should be made directly to the presiding judge with copies to the assigned mediator and the Mediation Office.

c. On or before receipt of each party's mediation statements (see section 8), the assigned mediator may contact counsel, or parties themselves if proceeding *pro se*, to schedule either a joint or individual preliminary case conference telephone call.

d. Any subsequent sessions shall be scheduled within thirty (30) days of the prior session, unless there is a specific reason why a date certain cannot be established. The assigned mediator shall promptly notify the Mediation Office of the date, time, and location of the next mediation session or the reason for failing to schedule within the 30-day period. The Mediation Office will docket the date, time, and location of the mediation session.

e. The mediation will conclude when the parties reach a resolution of some or all issues in the case or when the mediator or parties conclude that resolution (or further resolution) is not possible.

f. With the permission of the presiding judge, parties who have not settled through mediation may return to mediation at any point and may request the original mediator (if he or she is available) or that a new mediator be assigned.

### 7. Electronic Devices in the Courthouses

    a. Attorneys with SDNY service passes may bring cell phones into the Courthouse. (Information on how to obtain a SDNY secure pass can be found at http://www.nysd.uscourts.gov/file/forms/attorney-service-pass-application.) To request permission to bring an additional or different electronic device into the Courthouse for a specific proceeding, an Electronic Device Order must be submitted to the mediation office at least two weeks before the scheduled mediation date.

    b. Attorneys coming to the Courthouse for the purpose of mediation without a secure pass, who wish to bring a cell phone or other approved electronic device, must submit an Electronic Device Order at least two weeks before the scheduled mediation date.

    c. The Electronic Device Order can be found on the Court's website: http://www.nysd.uscourts.gov/mediation under "Mediation Forms."

### 8. Mediation Statements

    a. Unless otherwise directed by the mediator, at least seven (7) days before the first scheduled mediation session, each party shall prepare and deliver to the mediator, either *ex parte* or as the mediator directs or the parties agree, a mediation statement not exceeding ten double-spaced pages including:

        i. the party's contentions as to both liability and damages;

        ii. the status of any settlement negotiations;

        iii. the names of the persons, in addition to counsel, with full authority to resolve the matter who will attend the mediation; and

        iv. the parties' reasonable settlement range, including any non-monetary proposals for settlement of the action.

    b. The mediator may request the parties to provide different or additional information in the mediation statement including, for example, information about the parties or the dispute which might be useful in resolving the case.

    c. These mediation statements shall be subject to the confidentiality of the mediation process and treated as documents prepared "for settlement purposes only."

9. **Attendance at Mediation Sessions**

   a. Each party must attend mediation. This requirement is critical to the effectiveness of the mediation process as it enables parties to articulate their positions and interests, to hear firsthand the positions and interests of the other parties, and to participate in discussions with the mediator both in joint session and individually. If a represented party is unable to attend a previously scheduled mediation because of a change in that party's availability, the party's attorney must notify the mediator immediately so that a decision can be made whether to go forward with the mediation session as scheduled or to reschedule it. Mediators are required to report to the Court if a party failed or refused to attend, or refused to participate in the mediation.

   b. A party other than a natural person (e.g., a corporation or an association) satisfies this attendance requirement if represented by a decision-maker who has full settlement authority and who is knowledgeable about the facts of the case. "Full settlement authority" means the authority to agree to the opposing side's settlement offer, if convinced to do so at the mediation.

   c. Each represented party must be accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter.

   d. A fully authorized representative of the client's insurance company must attend where the decision to settle and/or the amount of settlement must be approved by the insurance company.

   e. A government unit or agency satisfies this attendance requirement if represented by a person who has, to the greatest extent feasible, full settlement authority, and who is knowledgeable about the facts of the case, the governmental unit's position, and the procedures and policies under which the governmental unit decides whether to accept proposed settlements. In addition, in cases where the Comptroller of the City of New York has authority over settlement, the Assistant Corporation Counsel must make arrangements in advance of the session for a representative of the Comptroller either to attend the session or to be available by telephone to approve any proposed settlement. If the action is brought by the government on behalf of one or more individuals, at least one such individual also must attend.

   f. Under some circumstances, if a party resides more than 100 miles from the Courthouse, and it would be a great hardship for the party to attend in person, he or she may request that the mediator allow for telephonic participation at the

JA-145

mediation; however, if such request is granted, that party must participate by telephone with full attention and for the duration of the mediation.

g.  Counsel for parties, parties if *pro se*, or the mediator may occasionally wish to invite individuals who are not part of the mediation process to observe the mediation. Observers may only attend if all parties, counsel for parties, and the mediator consent. As a condition of an observer attending, each observer is required to sign the Mediation Confidentiality Agreement (attached) and will be bound by any confidentiality provisions that are relevant to the mediation as if they were a party to the mediation.

h.  Requests for observers to attend should be made in advance to the Mediation Office, in writing, and should include the following:

   i.  A statement of the requester's relationship to the individual who wishes to observe, and

   ii.  A statement that all parties, counsel for parties, and the mediator have been consulted and that all consent to the individual(s) observing.

## 10. Mediation Location

Mediation sessions may take place at the mediator's office, at the Courthouse, or at any other location agreed to by the mediator and the parties.

## 11. Mediation Forms

a.  All participants in the mediation must read and sign the Mediation Confidentiality Agreement (attached) before or at the start of the mediation. Copies of this signed form should be retained by the Mediation Office.

b.  Any term sheet or stipulation developed through mediation must be read and signed by all parties and/or counsel for parties.

## 12. Reporting

a.  After referral of a case to the Mediation Program, such referral will be closed with the docketing of a Final Report of Mediator indicating that the mediation was:

   i.  Held and agreement was reached on all issues. The judge may wish to issue a "30 day order" under which the case is automatically closed in 30 days unless a party seeks to re-open the matter.

    ii.  Held and agreement was reached on some, but not all, issues.

    iii.  Held and agreement was reached as to some, but not all, parties.

    iv.  Held but was unsuccessful in resolving any issue in the case. The Mediation Unit will consider the referral to be completed and close its files at this time but the judge may re-refer parties to mediation at any point.

    v.  Not held as parties represent that they have reached settlement on all issues. The judge may wish to issue a "30 day order" under which the case is automatically closed in 30 days unless a party seeks to re-open the matter.

    vi.  Not held as a stipulation settling all of the issues of the case was entered into prior to mediation.

    vii.  Not held as one or both parties failed, refused to attend, or refused to participate in the mediation.

    viii.  Not held as the case was removed from mediation by the judge.

b. The Final Report of Mediator shall be submitted by the mediator to the Mediation Office within seven (7) days of the final mediation session or the results set forth in (a)(v), (vi), (vii) or (viii).

c. If the Final Report of Mediator indicates the result set forth in (a)(i), (ii), (iii), or (v), the parties should promptly submit a stipulation of discontinuance or other appropriate document to the Clerk of Court.

## 13. Post-mediation Survey

To assist in the continued development of the Mediation Program, the Court requests that all counsel for parties, or parties if *pro se*, respond to a short survey after the close of the mediation process. When the Final Report of Mediator is docketed on CM/ECF attorneys of record will receive a Notice of Electronic Filing in which a hyperlink to the survey is embedded. The survey may also be sent from the Mediation Office as a fillable document and is accessible on the Court's mediation web site (http://www.nysd.uscourts.gov/mediaton).

## 14. Mediation Panel Application Criteria

An individual may apply to serve as a mediator if he or she satisfies the following criteria:

a. Is a member in good standing of the bar of any United States District Court;

b. Has substantial exposure to mediation in federal court or has mediated cases in other settings;

c. Has successfully completed an initial mediation training of at least 30 hours within the last three years or, if the initial mediation training was completed more than three years ago the applicant has:

    i. served as a mediator in more than 5 disputes during the last three years, or

    ii. successfully completed during the last three years at least one other mediation skills training, apprenticeship program, or practicum;

d. Provides a letter of reference from a party, mediation training provider, colleague, judge, court administrator, or appropriate staff person with a public or private dispute resolution organization, that specifically addresses the applicant's mediation process skills including the ability to listen well, facilitate communication, and assist with settlement discussions; and

e. Is willing to participate in training, mentoring programs, and ongoing assessment as detailed in section (17)(d).

## 15. Mediation Panel Application Process

a. Approximately once a year the Mediation Program will review all pending applications. Applicants will be notified whether or not they have been selected for an interview. Consistent with Standard IV of the Model Standards of Conduct for Mediators, all mediators asked to continue on past the interview are required to observe at least three cases and participate in a mentor mediation before undertaking to mediate cases on his or her own.

b. The purpose of the mentor mediation is for the incoming mediator to take the lead with a mentor mediator there to provide support and step in (as needed) to maintain the quality of the process. The mentor mediator will also provide a recommendation as to the incoming mediator's readiness to join the panel.

c. The process of observation and acceptance of a matter for mentor mediation should take no longer than six months.

**16. Service as a Mediator**

    a.  An individual may serve as a mediator once he or she has been certified by the Chief Judge or his/her designee to be competent to perform the duties of a mediator for this Court.

    b.  Each individual certified as a mediator shall take the oath or affirmation prescribed by 28 U.S.C. § 453.

    c.  All mediators shall serve without compensation.

    d.  Unless the Director of the ADR Program approves otherwise, mediators who are invited to join the Court's panel will be expected to meet the following requirements to remain on the panel:

        i.  Membership in good standing of the bar of any United States District Court;

        ii.  Attending at least one continuing education program in mediation each year;

        iii.  Participating in ongoing assessment as determined by the Director of the ADR Program; and

        iv.  Mediating at least two cases per year.

    e.  All mediators are assumed available to accept cases unless the Mediation Office is notified otherwise. Mediators should notify the Mediation Office if they cannot accept cases for a discrete period of time by sending an e-mail to the Mediation Office with the start and end dates. The Mediation Office will automatically resume sending cases to the mediator on the date indicated by the mediator. Mediators who request not to receive cases indefinitely, and who are inactive for a period exceeding one year, will be presumed retired from the panel. Mediators who wish to return to active status after being inactive for more than one year shall write a letter of request to the Director of the ADR Program. Reinstatement to the panel is at the discretion of the Director of the ADR Program and will be based on the needs of the program at the time the request is received.

**17. Code of Conduct**

The code of conduct set forth herein applies in its entirety to every mediator who is on the panel of the Southern District of New York. While mediators come from various professional

backgrounds and may have been exposed to differing mediation theories, every mediator for the Southern District of New York must adhere to this code of conduct at a minimum.

    **a.** As representatives of the Southern District of New York, mediators should at all times be professional, respectful, and measured in their communication with attorneys for parties, *pro se* parties, and the Mediation Office.

    **b.** Mediators should understand and clearly convey that they are not decision-makers but facilitators of the decision-making of the parties. They may choose to meet with parties separate from their attorneys, or with attorneys separate from the parties. Mediators should ensure that participants in mediation understand that the role of the mediator is that of a neutral intermediary, not that of an advocate or representative for any party. A mediator should not offer legal advice to a party. If a mediator offers an evaluation of a party's position or of the likely outcome in court, or offers a recommendation with regard to settlement, the mediator should ensure that the parties understand that the mediator is not acting as an attorney for any party; is not providing legal advice; and is not speaking for the Court or any judge.

    **c.** Mediators should provide the same quality of service as they would for paying clients, or should request that the case be reassigned if they cannot do so.

    **d.** Mediators shall not work as consultants or attorneys in any pending or future action relating to any dispute in which they served as mediators, including actions between persons not parties to the mediation process.

    **e.** Mediators shall not solicit or accept payment for any aspect of any case undertaken as a panel mediator.

    **f.** Mediators should be familiar with, and at all times uphold, the values of the Model Standards of Conduct for Mediators, particularly Standard VI.

    **g.** This code of conduct also applies to prospective panel mediators undertaking observation or co-mediation, to observers, and to anyone else who has access to a mediation under the auspices of the Program.

## 18. Complaints about Mediators: Investigation/Remediation

The following protocol is observed whenever the Mediation Office receives a complaint about a mediator.

    **a.** The Director of the ADR Program will begin by gathering information from relevant parties, attorneys for parties, and other relevant Court personnel or observers. The

JA-150

Director of the ADR Program will then contact the mediator in question to discuss the complaint or concern directly. This may be a phone call or an in-person meeting, depending on convenience and the nature of the complaint. In most cases, the issue will be considered sufficiently addressed after a discussion with the mediator.

b.  If the complaint is serious, or if the particular complaint is part of a pattern, the Director of the ADR Program and the mediator may explore options for correction. A plan will be determined on a case-by-case basis, and might include being observed or observing cases, attending relevant training, co-mediating, or participating in simulated mediations. It is possible that a mediator will be suspended from mediating during the remedial period. The situation will be reassessed after the determined course of action is completed.

c.  If a mediator chooses not to participate in the remedial process, he or she will be choosing to discontinue serving as a panel mediator.

d.  If similar or other complaints persist after the remedial period, the mediator and the Director of the ADR Program may discuss options for additional remedial work or the mediator may be removed from the panel (section 20(d)).

## 19. Complaints About the Mediation Program or Director

a.  Complaints by a mediator or mediation participant about Mediation Program staff or protocols should be made to the Director of the ADR Program. If the complaint is not satisfactorily resolved, the mediator or participants may contact the Chair of the Mediation Services Committee.

b.  Complaints about the Director of the ADR Program should be made to the Chair of the Mediation Services Committee.

## 20. Resignation or Removal from the Mediation Panel

Mediators may resign from the mediation panel at any time by notifying the Mediation Office. The Director of the ADR Program may remove mediators from the mediation panel for:

a.  Failing to meet the requirements of section (17)(d); or

b.  Violating the Code of Conduct set forth in section (18); or

c.  Violating any other Procedures promulgated by the Mediation Program; or

JA-151

    d.  Based on complaints, observations, or communications with counsel, parties, or the Mediation Program, that indicate that a mediator is no longer mediating in a way that is appropriate for the Mediation Program or that resources are not available to provide sufficient training or support to enhance the quality of a mediator's practice.

## 21. Immunity

Any person designated to serve as a mediator pursuant to these Procedures shall be immune from suit based upon actions engaged in or omission made while performing the duties of a mediator.

JA-152



**Mediation Confidentiality Agreement**

Parties, counsel for the Parties, any observers, and the mediator agree as follows:

a.   Any communications made exclusively during or for the mediation process shall be confidential except as to the provisions indicated in this agreement. The mediator shall not disclose any information about the mediation process, communications, or participants to anyone except for Mediation Office staff. Mediation Office staff must also maintain confidentiality except as to the provisions indicated in this section. Administrative aspects of the mediation process, including the assignment of a mediator, scheduling and holding of sessions, and a final report that the case has concluded or not concluded through mediation, or that parties failed to participate, are not confidential and will appear on the docket of the case.

b.   The parties may not disclose discussions or other communications with the mediator unless all parties agree, because it is required by law, or because otherwise confidential communications are relevant to a complaint against a mediator or the Mediation Program arising out of the mediation. The parties may agree to disclose information provided or obtained during mediation to the Court while engaged in further settlement negotiations with a District or Magistrate Judge. The parties may disclose the terms of settlement if either party seeks to enforce those terms.

c.   Documents and information otherwise discoverable under the Federal Rules of Civil Procedure shall not be shielded from discovery merely because they are submitted or referred to in the mediation.

d.   The mediator shall not be inquired of or called as a witness or deponent in any proceeding related to the dispute in which the mediator served, or be compelled to produce documents that the mediator received or prepared for mediation.

The undersigned have read and agree to comply with this agreement.

Dated:

Plaintiff(s): _____          Defendant(s): _____

Attorney(s) for Plaintiff(s):_____          Attorney(s) for Defendant(s):_____

Mediator:_____          Observer(s):_____

JA-153

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR USHERSON, | |
| Plaintiff, | Docket No. 1:19-cv-06368-JMF |
| - against - | |
| BANDSHELL ARTIST MANAGEMENT | |
| Defendant. | |

**DECLARATION OF JAMES FREEMAN**

I, JAMES FREEMAN, declare under the penalty of perjury that the following is true and correct to the best of my personal knowledge.

1.      I am an employee of Liebowitz Law Firm, PLLC (the "Firm") and admitted to practice law in this District.

2.      I am not counsel of record in this action but I have personal knowledge of the mediation that took place on October 31, 2019, as well as communications that took place the night before the mediation on October 30.

3.      I submit this Declaration in opposition to Defendant Bandshell Artist Management ("Defendant")'s motion for sanctions.

**October 30, 2019**

4.      I was informed as to the existence of this matter at about 8:00 p.m. on October 30, 2019.  Mr. Liebowitz notified me of the time/place of mediation, sent me copies of the complaint

and the most recent settlement agreement draft, informed me of the price agreed to and the

outstanding non-monetary terms concerning right of publicity.  Mr. Liebowitz indicated that the

case was likely to settle that evening but that if it didn't, I should be prepared to attend the

mediation in person.

5.      On October 30, Mr. Liebowitz also informed Mr. Usherson that I would be

appearing at the mediation on Mr. Usherson's behalf and provided me with Mr. Usherson's

telephone number.  It was my understanding as of the evening of October 30 that Mr. Usherson

would be participating in the mediation via telephone because he resides in Georgia.

6.      The Firm currently has approximately 440 pending actions filed in the U.S.

District Courts, with only three lawyers to service those cases.   Given the high volume of Mr.

Liebowitz's practice, it is quite common for Mr. Liebowitz to seek my assistance on any number

of cases upon less than 24-hours notice, even where I have not entered a notice of appearance.

7.      I have personally participated in well over two dozen mediations in this Circuit.

Whether mediation is conducted by a Magistrate Judge or by a Court-approved mediator, it is

routine practice in this District for clients who reside more than 100 miles from the courthouse to

participate in mediation by telephone provided, of course, that counsel participates in person.

**October 31, 2019**

8.      I personally attended the mediation scheduled for October 31, 2019.  I attended

the mediation along with Rebecca Liebowitz, an employee of the Firm who is newly admitted to

practice in this District.

9.      Ms. Liebowitz and I arrived at the mediation room in the lower level of 40 Foley

Square at about 11:46 a.m. ▮▮▮▮▮▮▮▮▮▮ the mediator, defense counsel and defendant's

representative were all present when we arrived.

10.    Defense counsel initially objected to proceeding with mediation because Mr. Usherson was not present in-person.  I indicated that Mr. Usherson was available by telephone, as was common practice for out-of-state plaintiffs.



JA-156

16.     I did not record the exact time I left the mediation room.  However, I estimate that no more than 40-45 minutes passed from the time I first entered the room until the time when the mediation was adjourned.

17.

Dated:     November 18, 2019
            Valley Stream, NY

/jameshfreeman/
James H. Freeman

JA-157

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR USHERSON,

                        Plaintiff,

    - against -

BANDSHELL ARTIST MANAGEMENT

                        Defendant.

Docket No. 1:19-cv-06368-JMF

## DECLARATION OF REBECCA LIEBOWITZ

I, REBECCA LIEBOWITZ, declare under the penalty of perjury that the following is true and correct to the best of my personal knowledge.

1.      I am an employee of Liebowitz Law Firm, PLLC (the "Firm") and admitted to practice law in this District.

2.      I am not counsel of record in this action but I have personal knowledge of the mediation that took place on October 31, 2019.

3.      I submit this Declaration in opposition to Defendant Bandshell Artist Management ("Defendant")'s motion for sanctions.

4.      As a newly admitted practitioner, I attended the mediation session in order to "shadow" Mr. Freeman and learn from the process.

**October 31, 2019**

5.      I personally attended the mediation scheduled for October 31, 2019.  I attended the mediation along with James Freeman, an employee of the Firm.

6.      Mr. Freeman and I arrived at the mediation room in the lower level of 40 Foley Square at about 11:46 a.m. ███████████, the mediator, defense counsel and defendant's representative were all present.

7.      Defense counsel initially objected to proceeding with mediation because neither Mr. Liebowitz nor Mr. Usherson were present in-person.

8.      ████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

9.      ████████████████████████████
████████████████████████████████████
███████████████

10.     ████████████████████████████
████████████████████████████████████
████████████████████

11.     ████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████

12.     ████████████████████████████
████████████████████████████████████

JA-159



13.      I did not record the exact time I left the mediation room.  However, I estimate that no more than 40-45 minutes passed from the time I entered the room until the time when the mediation was adjourned.

Dated:      November 18, 2019
            Valley Stream, NY

/rebeccaliebowitz/
Rebecca Liebowitz

JA-160

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARTHUR USHERSON,** | |
| **Plaintiff,** | **Docket No.  1:19-cv-6368-JMF** |
| **v.** | |
| **BANDSHELL  ARTIST  MANAGEMENT,** | **FIRST    AMENDED    ANSWER    AND AFFIRMATIVE    DEFENSES    OF BANDSHELL ARTIST MANAGEMENT** |
| **Defendant.** | |

**DEFENDANT'S FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S COMPLAINT**

Defendant Bandshell Artist Management ("Bandshell") by and through its attorneys, for

its First Amended Answer and Affirmative Defenses to the Complaint of Plaintiff Arthur

Usherson states as follows:

**NATURE OF THE ACTION**

1.       Bandshell is without sufficient information to admit or deny whether Plaintiff

owns and registered the photograph at issue and therefore denies the same.  The evidence to date

suggests that Plaintiff does not own any copyrights in the photograph at issue and that it might

also not have been properly registered before the filing of this case.  Bandshell denies any

unauthorized reproduction or public display of the photograph. Bandshell denies Plaintiff is

entitled to any monetary relief.  Bandshell denies any remaining allegations in this paragraph.

**JURISDICTION AND VENUE**

2.       Admitted.

3.       Admitted.

4.       Admitted.

**PARTIES**

5.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

6.      Denied as Bandshell's place of business is at 204 West 84th St. Ste 204, New York, New York 10024.  Further denied as Bandshell was only one of several administrators of the Website in question.

**STATEMENT OF FACTS**

**A.      Background and Plaintiff's Ownership of the Photograph**

7.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

8.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

9.      Bandshell is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

**B.      Defendant's Allegedly Infringing Activity**

10.      Bandshell admits the photograph ran on a page administrated in part by Bandshell and denies any remaining allegations in this paragraph.

11.      Denied.

**CLAIM FOR RELIEF**

12.      Bandshell incorporates by reference each and every response contained in Paragraphs 1-11 above.

13.      Denied.

14.      Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Denied.

**PRAYER FOR RELIEF**

Bandshell denies all factual assertions contained in Plaintiff's prayer for relief and further denies that Plaintiff is entitled to any relief in this action.

**GENERAL DENIAL**

All allegations in the Complaint not specifically admitted are denied.

**AFFIRMATIVE DEFENSES**

By way of further answer, and without conceding that it bears the burden of proof as to any of these defenses, Bandshell asserts the following defenses to the claims set forth in Plaintiff's Complaint:

FIRST AFFIRMATIVE DEFENSE
(FAILURE TO STATE A CLAIM)

Plaintiff fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE
(NO COPYRIGHT INFRINGEMENT)

Bandshell has not infringed and does not infringe any valid and enforceable copyright of Plaintiff.

<u>THIRD AFFIRMATIVE DEFENSE</u>
(FAIR USE DOCTRINE)

Plaintiff's claims are barred, in whole or in part, by the Fair Use Doctrine.

<u>FOURTH AFFIRMATIVE DEFENSE</u>
(ACQUIECENCE, UNCLEAN HANDS, WAIVER, AND ESTOPPEL)

The relief sought by Plaintiff is barred, in whole or in part, by the equitable doctrines of acquiescence, unclean hands, waiver, and estoppel.

<u>FIFTH AFFIRMATIVE DEFENSE</u>
(IMPLIED LICENSE)

Plaintiff's claims are barred, in whole or in part, under the doctrine of implied license.

<u>SIXTH AFFIRMATIVE DEFENSE</u>
(NO DAMAGES)

Plaintiff's claims and damages claims are barred because Plaintiff has suffered no provable damages in this case.  Nor can Plaintiff show any provable nexus between any damages and the alleged infringement.

<u>SEVENTH AFFIRMATIVE DEFENSE</u>
(NO INJUNCTIVE RELIEF)

To the extent Plaintiff seeks injunctive relief for any alleged infringement, the relief is unavailable because any alleged injury to Plaintiff is not immediate or irreparable, the balance of hardships and public interest weighs against the grant of an injunction, and Plaintiff has an adequate remedy at law.

EIGHTH AFFIRMATIVE DEFENSE
(LACK OF NOTICE ON PRE-1989 WORK)

Plaintiff's claims are barred because Plaintiff failed to place a valid and proper copyright

notice on publications of the photograph in question prior to March 1, 1989, and therefore has

lost any potential copyright rights in the work.

NINTH AFFIRMATIVE DEFENSE
(COPYRIGHT REGISTRATION INVALID)

Plaintiff's claims are barred because its copyright registration(s) is/are invalid.  The

copyright registration appears to have been fraudulently obtained or is otherwise invalid for at

least the following reasons:  a) Plaintiff attempted to register published works, including

potentially the photograph in question in this case, as part of a registration for a group of

allegedly unpublished works; and, b) Plaintiff attempted to register works, including potentially

the photograph in question in this case, which cannot be subject to copyright protection because

they were published without a valid and proper copyright notice prior to March 1, 1989.

Furthermore, although invalid even without fraud, upon information and belief, Plaintiff knew

such misrepresentations and omissions were false and material when the applications for

copyright registration were submitted to the Copyright Office.

TENTH AFFIRMATIVE DEFENSE
(FAILURE TO STATE A CLAIM AND LACK OF STANDING DUE TO LACK OF
COPYRIGHT RIGHTS)

Plaintiff's claims are barred, because without proper copyright rights or a proper

copyright registration, Plaintiff cannot seek relief for an alleged infringement of the photograph

in question.

ELEVENTH AFFIRMATIVE DEFENSE
(FAILURE TO STATE A CLAIM AND LACK OF STANDING DUE TO LATE
REGISTRATION)

To the extent that Plaintiff has a valid copyright registration but the sole valid copyright

registration is Plaintiff's August 22, 2019 Registration, #VAu001373272, or any other

registration filed after the Complaint in this case was filed, Plaintiff's claims are barred, because

one cannot file a copyright claim on a work and satisfy the Copyright Act's registration

requirements by registering it thereafter or relying on a later registration.

TWELFTH AFFIRMATIVE DEFENSE
(RESERVATION OF REMAINING DEFENSES)

Bandshell reserves all defenses, at law or in equity, which may now exist or in the future

may be available based on discovery.

JA-166

WHEREFORE, Bandshell requests that this Court enter judgment in Defendant's favor, dismiss Plaintiff's Complaint with prejudice, award Defendant all costs and fees incurred herein, including attorneys' fees, and order whatever further relief this Court deems just and appropriate.

Respectfully submitted on November 19, 2019.

**BANDSHELL ARTIST MANAGEMENT**

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
MCGUIREWOODS LLP
1750 Tysons Boulevard
Suite 1800
Tysons Corner, VA 22102
Tel: (703) 712-5061
Fax: (703) 712-5187
Email: bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

7

JA-167

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing First Amended Answer and

Affirmative Defenses to Plaintiff's Complaint with the Clerk of the Court using the CM/ECF

system on this 19th day of November 2019, which constitutes service on Plaintiff, a registered

user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 19, 2019

/s/ Brad R. Newberg
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

8

JA-168

**McGuireWoods LLP**
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
Phone: 703.712.5000
Fax: 703.712.5050
www.mcguirewoods.com

**Brad R. Newberg**
Direct: 703.712.5061

MCGUIREWOODS

bnewberg@mcguirewoods.com
Fax: 703.712.5187

December 4, 2019

**VIA ECF**
The Honorable Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Furman_NYSDChambers@nysd.uscourts.gov

> **Re:** _**Usherson v. Bandshell Artist Management**_, **1:19-cv-6368 (JMF) Letter Brief**
> **Regarding Filing Under Seal**

Dear Judge Furman,

    Per this Court's November 20, 2019 Order (Dkt 26), Defendant Bandshell Artist Management submits the following statement regarding any need to keep the filings sealed with regards to Defendant's Motion for Sanctions, and apologizes that, even with the Thanksgiving holiday, this letter should have been filed on December 2.

    Defendant does not believe that there is any need for sealing. As the Court noted, there is a strong presumption in favor of public access to judicial documents. Defendant, in some of the exhibits it attached, made very minor redactions simply to remove certain specific monetary terms of settlement discussions it did not believe were material to the substance of the motion. As such, Defendant does not believe the papers, as submitted, need to continue to be sealed.

Respectfully submitted,

_s/Brad R. Newberg/_
Brad. R. Newberg
_Attorney for Defendant Bandshell Artist_
_Management._

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ARTHUR USHERSON,                                                  :
                                                                  :
                              Plaintiff,                          :          19-CV-6368 (JMF)
                                                                  :
              -v-                                                 :     MEMORANDUM OPINION
                                                                  :          AND ORDER
BANDSHELL ARTIST MANAGEMENT,                                      :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Pending before the Court in this copyright case is Defendant Bandshell Artist

Management's motion for sanctions against Plaintiff and Plaintiff's counsel, Richard Liebowitz

— a frequent target of sanctions motions and orders imposing sanctions in this District.  ECF No.

14; *see, e.g.*, *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at

*1 (S.D.N.Y. July 10, 2019) ("In his relatively short career litigating in this District, Richard

Liebowitz has earned the dubious distinction of being a regular target of sanctions-related

motions and orders.  Indeed, it is no exaggeration to say that there is a growing body of law in

this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz

alone.").  Defendant's motion turns in large part on the veracity of factual representations that

Liebowitz has made to the Court, some under oath.[1]  In particular, Liebowitz asserts that a

mediator in the Court-annexed Mediation Program gave advance permission by telephone for

_____

[1]      Notably, Liebowitz's veracity has already been found wanting by other Judges on this
Court.  *See, e.g.*, Nov. 13, 2019 Minute Entry, *Berger v. Imagina Consulting, Inc.*, 18-CV-8956
(CS) (noting a finding on the record at a conference held on November 13, 2019, that Liebowitz
had "willfully lied to the Court"); *Sands v. Bauer Media Group USA, LLC*, No. 17-CV-9215
(LAK), 2019 WL 6324866, at *2 & n.1 (S.D.N.Y. Nov. 26, 2019) (describing several statements
made by Liebowitz as "false").

JA-170

(1) an associate to appear instead of Liebowitz at an October 31, 2019 in-person mediation, and

(2) Plaintiff Arthur Usherson to appear telephonically at the mediation, rather than in person.

Defense counsel asserts that those representations are false — and that the mediator (the

"Mediator") has indicated that, if called upon to do so, would testify to that effect.  Determining

the truth or falsity of Liebowitz's assertions is critical to the integrity of both the proceedings

before the Court and the Court-annexed Mediation Program itself.

Determining the truth or falsity of Liebowitz's assertions, however, requires delving into

an area that is usually beyond the scrutiny of the Court and the public.  That is, to repurpose a

familiar phrase, what happens in mediation is generally supposed to stay in mediation.  *See, e.g.*,

Rule 2(a), Procedures of the S.D.N.Y. Mediation Program (Dec. 26, 2018) ("Mediation Rules")

(providing that communications made "exclusively during or for the mediation process shall be

confidential"), *available at* https://nysd.uscourts.gov/programs/mediation-adr; *see also, e.g.*, *In*

*re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011) ("Confidentiality is an important feature of the

mediation and other alternative dispute resolution processes.").  The general rule of

confidentiality is eminently sound.  As the Second Circuit has explained, "confidentiality is

'essential' to [the] . . . vitality and effectiveness" of mediation.  *Id.* at 58.  "Promising

participants confidentiality in [mediation] proceedings promotes the free flow of information that

may result in the settlement of a dispute, and protect[s] the integrity of alternative dispute

resolution generally."  *Id.* at 57-58 (internal quotation marks and citations omitted).

That said, there are important exceptions to the rule of confidentiality in the mediation

context.  For example, disclosure of confidential mediation communications is authorized upon a

showing of "(1) a special need for the confidential material, (2) resulting unfairness from a lack

of discovery, and (3) that the need for the evidence outweighs the interest in maintain

JA-171

confidentiality." *Id.* at 58; *see also id.* at 58-59 (discussing the rules governing confidentiality of mediation communications and disclosure thereof set forth in the Administrative Dispute Resolution Act of 1996, 5 U.S.C. §§ 571 *et seq.*, and the Administrative Dispute Resolution Act of 1998, 28 U.S.C. §§ 651 *et seq.*).  The Mediation Rules of this Court also allow for disclosure of "communications with the mediator" if "all parties agree, because [disclosure] is required by law, or because otherwise confidential communications are relevant to a complaint against a mediator or the Mediation Program arising out of the mediation."  Mediation Rule 2(b).  In other words, there are cases in which the strong interest in preserving confidentiality in mediation must — and does — give way to other, even weightier interests.

This is such a case.  On October 7, 2019, the Court ordered the parties to comply with the Court's prior Mediation Referral Order, ECF No. 6, by participating in an "in-person mediation no later than October 31, 2019."  *See* ECF No. 13.  The parties agreed to hold the mediation on the very last possible day — October 31, 2019 — but neither Liebowitz nor his client appeared. *See* ECF No. 16 ("Newberg 1st Decl."), at ¶¶ 47-48.  Instead, two associates from Liebowitz's firm — neither of whom had (or has since) entered an appearance on behalf of Plaintiff and neither of whom had much, if any, knowledge of the case — arrived and confirmed that Liebowitz and Plaintiff would not be attending in person.  *Id.*  After Liebowitz's associates, Defendant, and defense counsel spoke briefly with Plaintiff on the phone — the details of their conversation are not relevant to Defendant's motion and, thus, need not be made public — the mediation ended without a resolution.  *See id.* ¶ 55; ECF No. 23 ("Freeman Decl."), at ¶ 15.

Liebowitz does not dispute that he and his client failed to appear in person at the mediation, but he contends that the Mediator gave him advance permission to send an associate in his place and for Plaintiff to appear by telephone.  Specifically, at a conference before the

3

Court on November 14, 2019, Liebowitz stated on the record that he had "personally advised" the Mediator "before the mediation" that Plaintiff would not appear in person and that the Mediator had "said that was okay." ECF No. 27 ("Tr."), at 7.[2] Several days later, Liebowitz repeated this claim in a sworn declaration, and further averred that he had obtained the Mediator's permission for Freeman to appear as counsel instead of himself. *See* ECF No. 22 ("Liebowitz Decl."), at ¶ 13. Liebowitz made the same claims in Plaintiff's opposition to the sanctions motion. *See* ECF No. 21 ("Pl. Opp."), at 4; ECF No. 19, at 2. As noted, defense counsel disputes these assertions, stating in a declaration currently filed under seal that the Mediator told counsel that the Mediator never gave Liebowitz such permission and that the Mediator would testify to that effect if called as a witness. *See* Newberg 2d Decl. ¶¶ 23-25.

The need to resolve this dispute — and to rule on Defendant's motion — justifies a limited inquiry into Liebowitz's communications with the Mediator. Only the Mediator can clarify whether he did, in fact, give Liebowitz advance permission to depart from the Mediation Program's rules, which applied to the mediation by virtue of Local Civil Rule 83.9. These Rules mandate attendance by "[e]ach party," Mediation Rule 9(a); mandate attendance "by the lawyer who will be primarily responsible for handling the trial of the matter," Mediation Rule 9(c); and allow a party who "resides more than 100 miles from the Courthouse" for whom in-person appearance "would be a great hardship" to participate by telephone, but only with the permission of the assigned mediator, Mediation Rule 9(f). Shedding light on these issues is critical for determining whether Liebowitz complied with the Court's Orders (which incorporated the Local

---

[2]      It is worth noting that the November 14, 2019 conference was only one day after Liebowitz had appeared before Judge Seibel in connection with the contempt proceedings in *Berger*, a proceeding in which he was taken to task for lying to the Court. *See supra* note 1.

Rules and the Mediation Rules by reference) and whether Liebowitz was truthful in his representations to the Court — some made under penalty of perjury.

The Court does not call upon the Mediator to involve himself further in this litigation lightly. A mediator should generally not be dragged into litigation beyond the mediation itself — both to protect the confidentiality of mediation communications and (mindful that the lawyers who serve as mediators in this Court's Mediation Program do so on a volunteer basis) to avoid disincentivizing lawyers from serving as mediators. In the unique circumstances of this case, however, it is necessary to call upon the Mediator to provide evidence. To minimize the burdens on him (and the Mediation Program generally), the Court will carefully limit the evidence required from the Mediator regarding his communications with Liebowitz. Moreover, rather than holding an evidentiary hearing in the first instance, the Court will proceed in steps, beginning with a declaration from the Mediator. In particular, the Mediator shall submit a declaration detailing any and all communications with Liebowitz regarding Liebowitz's personal attendance at the mediation and Plaintiff's participation by telephone in the mediation. The Mediator should specify whether (and if so, when and how) he gave Liebowitz permission (1) not to appear personally at the mediation (and to send an associate instead); and (2) for Plaintiff not to appear at the mediation in person and to appear by telephone instead.

Significantly, limiting the Mediator's disclosures to these issues protects the confidentiality of the information discussed at the mediation itself, which is the primary focus of the rule of confidentiality. *See Bernard v. Galen Grp., Inc.*, 901 F. Supp. 778, 784 (S.D.N.Y. 1995) ("The guarantee of confidentiality permits and encourages counsel to discuss matters [at mediation conferences] in an uninhibited fashion." (quoting *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979)). That is, the Court's inquiry concerns only a

5

narrow set of communications about procedural matters that occurred *before* the mediation proper — not communications about the substance of the case or the parties' settlement negotiations.  Indeed, although Liebowitz casts aspersions on the conduct and good faith of Defendant and defense counsel during the mediation itself in his opposition papers, ECF Nos. 21-24, the Court will not permit inquiry into such matters.  These allegations have no bearing on the veracity of Liebowitz's representations to the Court or the Court's resolution of Defendant's sanctions motion — and impinge more directly on the core of the rule of confidentiality.

To the extent that the Court's limited inquiry may still reach communications protected by the general rule of confidentiality, the parties have implicitly consented to disclosure through their submissions to the Court.  *See* Mediation Rule 2(b) (allowing for disclosure of "communications with the mediator" if "all parties agree").  Moreover, this case falls squarely within the exceptions to the rule of confidentiality recognized by the Second Circuit in *Teligent*. Liebowitz's representations to the Court in response to Defendant's sanctions motion, including some under penalty of perjury, have created a special need for the confidential material.  Failing to discover the limited information necessary to resolve this factual dispute would not only result in unfairness to Defendant, but would also threaten the integrity of the proceedings before the Court and the integrity of the Court-annexed Mediation Program itself.  Given the nature of the communications sought and the careful restrictions the Court has drawn, any remaining interest in confidentiality is outweighed by the need for the Mediator's evidence.

There is one more matter impinging on the general rule of confidentiality that the Court must address: whether and to what extent the Mediator's declaration, the transcript of the November 14, 2019 conference, the motion papers filed thus far, and any future filings and proceedings should be made public.  "Given the interest in maintaining the confidentiality of

negotiations and discussions conducted as part of the Court-annexed Mediation Program," the Court issued an Order on November 20, 2019 that temporarily sealed any filings made in connection with the sanctions motion pending a final determination by the Court and directed the parties to file letters stating "their views on whether and to what extent the motion filings should remain under seal given the strong presumption in favor of public access to judicial documents." ECF No. 26.  Amazingly, Liebowitz did not comply with the Court's Order by filing a letter. Defendant did comply, stating that sealing is not necessary.  ECF No. 33.

For the most part, the Court agrees with Defendant and concludes that the presumption in favor of public access to judicial documents and judicial proceedings requires that the filings and proceedings relating to the sanctions motion should be public.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).  The presumption in favor of public access is especially weighty here, as Defendant has filed a formal motion asking the Court to exercise its coercive authority in the form of sanctions.  *See id.* at 123-24.  In addition, the public has a strong interest in knowing about the additional aspersions cast on Liebowitz's truthfulness. Following the Court's warning to "be very, very, very careful" about any representations made to the Court, *see* Tr. at 7, Liebowitz repeatedly asserted — both in person and in filings — that his and his client's absences from the mediation were justified because he had received permission in advance.  The public — including other litigants — and other judges who may come into contact with Liebowitz, a frequent litigant in this District, have an interest in the Court's determination of the veracity of these representations.

By contrast, the considerations cutting against public access here are generally weak.  As discussed, the interest in confidentiality with respect to the communications that are relevant to the Court's inquiry is limited.  The parties have also expressed no objections to unsealing.

7

Nevertheless, the Court concludes that some redactions are warranted to preserve the confidentiality of substantive mediation discussions and the integrity of the Mediation Program. Specifically, the allegations made in the parties' submissions about the parties' conduct at the mediation proper — and, in particular, the content of their negotiations — shall be redacted, as they have no bearing on the sanctions motion and directly implicate the core purpose of the rule of confidentiality.  The same is true of the identities of the Mediator and court employees working in the Court-annexed Mediation Program, which shall also be redacted to protect their privacy.  The Court finds that the presumption in favor of public access is much weaker as to those portions of the motion papers, and the countervailing interests are stronger.

The Court has reviewed the parties' motion papers and will file on the public docket versions of their submissions redacted in accordance with the discussion above.  The unredacted versions shall be filed and maintained under seal.  All future filings in connection with the sanctions motion shall be filed publicly, but, absent further order of the Court, shall (1) be limited to the issues of whether Liebowitz obtained advance permission from the Mediator for an associate to appear at the mediation instead of himself and for Plaintiff to participate in the mediation by telephone; and (2) not include the names of the Mediator or any court employees working in the Mediation Program (or, if need be, shall redact their names).  No other filings in connection with the sanctions motion are permitted absent leave of the Court.

The Director of the Court-annexed Mediation Program is directed to provide a copy of this Memorandum Opinion and Order to the Mediator, who shall submit a declaration, consistent with the directions above, by **December 18, 2019**.  The Mediator should do so, in the first instance, by e-mail to Furman_NYSDChambers@nysd.uscourts.gov so that the Court can review

the declaration and redact it as appropriate.  Upon review of the Mediator's declaration, the

Court will decide what, if any, further proceedings are necessary to resolve Defendant's motion.

      SO ORDERED.

Dated: December 9, 2019
      New York, New York

                                        JESSE M. FURMAN
                                 United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR USHERSON, | |
| Plaintiff, | |
| v. | Docket No. 1:19-cv-6368 (JMF) |
| BANDSHELL ARTIST MANAGEMENT, | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION FOR SANCTIONS</u>**

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist*
*Management*

JA-179

## TABLE OF CONTENTS

**I.   PLAINTIFF'S AND PLAINTIFF'S COUNSEL'S FAILURE TO ATTEND THE MEDIATION** ........................................................................................................... 1

**II.   DEFENDANT'S ALLEGED 'BAD FAITH' OFFER** ...................................... 7

**III.   DEFENDANT'S COUNSEL'S REASONABLE RATE AND HOURS** ...................... 9

**IV.   PLAINTIFF VIOLATED THE COURT'S JULY 15 ORDERS** ................................ 10

**V.   THE COURT'S REQUEST RELATED TO A POSSIBLE EVIDENTIARY HEARING** ................................................................................................................. 10

JA-180

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Mantel v. Smash.com, Inc.* ........................................................................................ 9
No. 6:19-cv-06113 (FPG)

*Pyatt v. Raymond* ...................................................................................................... 9
2012 WL 1668248 (S.D.N.Y. May 10, 2012)

*Wisser v. Vox Media* .................................................................................................. 1
19-cv-1445 (LGS)

**Procedures of The Mediation Program for the United States District Court of the Southern District of New York**

Section 9 ...................................................................................................................... 2

Section 9(a) .............................................................................................................. 1, 6

Section 9(c) .............................................................................................................. 1, 2

Plaintiff's Response is filled with falsehoods, some demonstrably false from the record, and which would not protect Plaintiff and his counsel, even if true. Plaintiff's Response shows that his counsel has not learned from any of the prior sanctions and contempt orders against him. He once again refuses to follow Court Orders and directions and refuses to take responsibility for his actions. ██████████████████████████████████████████████

██████████████████████████████████████████████████████[1]

Here, Plaintiff's counsel decides to ignore the crux of the sanctions motion (as well as the Court's explicit Order to discuss whether an evidentiary hearing is needed and what form it would take), ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

## I.   PLAINTIFF'S AND PLAINTIFF'S COUNSEL'S FAILURE TO ATTEND THE MEDIATION

Defendant went through the history of this Court's Orders and the mediation in its initial papers. Defendant refers the Court there and will be brief in reiterating the main points.

- This Court Ordered the Parties to have an early mediation in accordance with the Local Rule and the Mediation Procedures of this Court.

- The Local Rule and the Procedures it adopts require mediations to have the in-person presence of the parties and have them be "accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter." Section 9(a), (c).

---

[1] *See, e.g.*, *Wisser v. Vox Media*, 19-cv-1445 (LGS) (Dkt. 45, at 2, 24) (last month, when faced with a claim that he forged his client's signature on Interrogatory responses never seen by his client, Mr. Liebowitz responded that the sanctions motion was "frivolous" and fueled by a bad faith "blood lust" for sanctions).

1

- While there is *no procedure by which lead counsel can avoid this obligation* (*see* Section 9), there is a procedure by which a request can be made to have a party attend telephonically.  "Great hardship" must be shown, and as discussed below and in prior papers, Plaintiff's initial request for a telephonic mediation was a) rejected by the mediation office a month before the scheduled mediation, then b) rejected by this Court, and, c) never brought up again (nor should it have been).

  o Mr. Liebowitz states in his declaration, ¶ 9: "I have diligently reviewed the S.D.N.Y. Mediation Rules and am not aware of any rule which requires that lead counsel personally attend scheduled mediations."

  o Mr. Liebowitz even attaches the rules to his Declaration (Ex. B) and highlights page 7.  Somehow his "diligent[] review[]" missed Section 9(c) on the very same page, requiring lead counsel to attend mediation.

- Plaintiff did not attempt to schedule a mediation until just before the initially-scheduled Court conference was to occur, and then attempted to go outside the mediation process and schedule a telephonic conference with the mediator he picked (after Defendant rejected his request to not involve the parties).

- The Mediation Office rejected Mr. Liebowitz's attempts and told him that his actions could not be considered "in accordance with the procedures that govern this program." First Newberg Decl., ¶ 18, Ex. 3–4.  The Mediation Office stated clearly that a telephonic mediation *should not go forward* unless allowed by this Court.  *Id.*, ¶ 19, Ex. 3.

- Mr. Liebowitz then (after submitting a draft letter to Defendant's counsel with various false statements) wrote the Court to attempt to get approval for a telephonic mediation.

- On October 7, the Court (Dkt. 13) rejected Mr. Liebowitz's request and stated that it was "to put it mildly, somewhat perturbed" by his actions and statements, expressing particular displeasure with Mr. Liebowitz's delays.  *Id.*, ¶ 23.  The Court adjourned the

2

initial pretrial conference a month so that the parties would have time to "conduct the **in-person** mediation no later than October 31, 2019." *Id.* (emphasis added).  The Mediation Office followed up on October 7, contacting the parties to make them aware that the mediation needed to occur **in-person** in accordance with the Court's direction. *Id.*, ¶ 24, Ex. 4.

- Mr. Liebowitz was given various dates and asked to pick whatever date he wanted *where his client could come to New York from Georgia and Mr. Liebowitz would be available.* Newberg Decl., ¶ 28, Ex. 6.  Mr. Liebowitz did not raise any issues of availability but rather immediately responded with the last possible date, October 31.

- *In sum, at no point did Mr. Liebowitz ever make a request for him not to attend the mediation as lead (and only) counsel, and his request to have any of the mediation done telephonically was rejected by both the Mediation Office and this Court.  From the Court's October 7 Order until the October 31 mediation, not once did Mr. Liebowitz suggest that he or his client might not attend the mediation.*

- The documentary evidence shows that even as late as October 30, Defendant's counsel and the mediator were under the impression that Mr. Liebowitz and Plaintiff would be at the mediation in person.  *Id.*, ¶ 36, Ex. 8.  Even Mr. Liebowitz's email early the morning of October 31 gave no indication he or his client would not be there.  *Id.,* ¶ 37, Ex. 9.

- At the mediation, Defendant's counsel was told by the mediator that he had gotten word the night before that Mr. Liebowitz would not be attending the mediation.  *Id.,* ¶ 47.

- Mr. Liebowitz's associate, James Freeman, arrived with Mr. Liebowitz's sister, to state that Mr. Usherson would not be attending either.  *Id.,* ¶ 48.  Neither are admitted to this case, and Mr. Freeman's own Declaration states that he was first "informed as to the

3

*existence of this matter* at about 8:00 pm on October 30."  Freeman Decl., ¶ 4 (emphasis added).  This explains why Mr. Freeman seemed to have practically no knowledge of the facts.  In the Declaration of Mr. Liebowitz's sister, Rebecca Liebowitz, she does not claim to have any knowledge regarding the facts of this case at all.

-  Defendant's counsel was back at Penn Station by no later than 12:38 pm. *Id.,* ¶ 56, Ex. 12.

- Mr. Liebowitz's firm's Twitter feed revealed that instead of being at the NY mediation, he was in Los Angeles, having hosted an event there the prior night.  *Id.,* ¶ 58, Ex. 10.

As Plaintiff and Plaintiff's counsel cannot dispute the existence of the Court Orders, the Mediation Office instructions, the Local Rule and Mediation Procedures (although they actually do attempt to ignore what those rules say), their only disputes involve claims that: 1) they were given mediator permission to ignore all of the above; 2) it was reasonable to interpret the Orders, Rules, Procedures, and instructions as allowing Plaintiff not to attend the mediation in person because "parties" actually just means "counsel for parties"; and, 3) the October 31 mediation was longer and more substantive than Defendant claims.

On the first claim, as detailed in the initial papers and the various exhibits attached to the First Newberg Declaration submitted therewith, on October 4, Mr. Liebowitz initially requested that the mediation be telephonic (although he made no requests regarding his own participation).

4

JA-185

That request was denied by both the Mediation Office and this Court in no uncertain terms.  Mr.

Liebowitz, however declares (in contravention of these Orders, Rules, and instructions) that he

received permission from the mediator, ███████████, for Mr. Usherson to attend the

mediation via telephone, and for his associate Mr. Freeman (who again has not appeared in this

case and admitted he did not even know of the existence of this case until late in the night before

the mediation) to attend instead of Mr. Liebowitz.  Liebowitz Decl. ¶ 13, Response p. 4.

**As there is not a single email or other writing even suggesting this "approval"**

**occurred, and given the various emails showing that both Defendant's counsel and the**

**mediator expected Mr. Usherson and Mr. Liebowitz to be at the mediation in person as late**

**as the night of October 30,** Mr. Liebowitz claims that this approval happened by telephone.

The Court correctly asked Mr. Liebowitz in open Court when this supposed approval

occurred, and Mr. Liebowitz responded that he could not remember, that it was just some time

before October 31 (and that he just assumed the mediator would tell Defendant's counsel).

Second Declaration of Brad R. Newberg, ("Second Newberg Decl."), ¶¶ 18–19, Ex. 1.  Given the

opportunity to provide the Court more detail in his declaration, Mr. Liebowitz declines, simply

saying his call was "[p]rior to October 31, 2019, the mediation date scheduled in this case."

Liebowitz Decl., ¶ 13.  Of course, if well before, one might wonder why Mr. Freeman was not

told about the case or the mediation until the night of October 30.

Because Defendant's counsel was concerned over apparently false representations being

made by Mr. Liebowitz and submitted to the Court in Plaintiff's November 18 filing,

Defendant's counsel called ███████ on November 19.  Second Newberg Decl., ¶ 21.[2]

---

[2] Defendant's counsel did not ask ████████ for a Declaration so as not to ask a mediator to
take sides in a dispute.  However, ███████ informed Defendant's counsel that should this
Court decide to move forward with an evidentiary hearing, he would make himself available.

███████ told Defendant's counsel that he has conducted various mediations with parties represented by Mr. Liebowitz, and that there have been other mediations where he allowed Mr. Liebowitz's client to appear by phone, but made absolutely clear that **this was not one of them**. Second Newberg Decl., ¶ 23. ██████ made clear that he had no knowledge that Mr. Liebowitz would not be at the mediation until the night of October 30 when Mr. Liebowitz called and *informed* him (without asking for approval) that Mr. Liebowitz was out of town and that Mr. Liebowitz's associate would be at the mediation instead. *Id.,* ¶ 24. ██ ██████ stated that no mention was made of Mr. Usherson at all, and he only found out that Mr. Usherson would not be at the mediation when Defendant's counsel did, that is, when Mr. Freeman and Mr. Liebowitz's sister informed Defendant, Defendant's counsel, and the mediator of that fact when they arrived at the mediation. *Id.,* ¶ 25.

Perhaps recognizing that Mr. Liebowitz's statements to this Court would be revealed as false, in page 3 of Plaintiff's Response brief, Mr. Liebowitz falls back on the idea that it is a "reasonable interpretation" of the Court's Order that the "**parties** shall conduct the **in-person** mediation no later than October 31, 2019" (Dkt. 13) (emphasis added) to say that actual parties are not required to attend mediations, only attorneys, who represent parties.

Putting aside the absurdity of this position as well as putting aside Section 9(a) of the Mediation Rules (which Mr. Liebowitz has declared he has "diligently reviewed" (Decl. ¶ 9)) which talk about the importance of party attendance, Plaintiff's counsel must know his interpretation is unreasonable or there would have been no reason for him to seek approval for his actions, which he falsely claims to have done.

Finally, as to the length and substance of the time the parties were together, Plaintiff continues to claim that the mediation was "about 45 minutes" (Pl. Response at 3) and that Mr.

6

JA-187

Usherson "was on the phone for the duration of the substantive portion of the mediation" (Pl. Response at 2).[3]  Of note:

- **Plaintiff has chosen not to submit a Declaration from Mr. Usherson**.  Defendant, on the other hand, has submitted a Declaration with this Reply.  We refer the Court to the Declaration of Mark J. McKenna ("McKenna Decl."), corroborating the accounts herein.

- Mr. Freeman's and Ms. Liebowitz's declarations now carefully say the mediation lasted "no more than 40-45 minutes" (Freeman Decl. ¶ 16, Rebecca Liebowitz Decl. ¶ 13).

- Having now seen the First Newberg Declaration stating that Defendant and its counsel arrived to the mediation room at 11:45 am, and having heard Defendant's counsel state in open Court that Plaintiff's counsel's claim of a 45 minute mediation was belied by Defendant's counsel's 12:38 receipt from changing his train at Penn Station,[4] Plaintiff's counsel now tries to claim an arrival and mediation start time of 11:46 am.  Even if that statement were not false, the timeline would still not allow for a 45 minute mediation.

**II.**  ████████████████████████████

Defendant will spend little time here on Plaintiff's counsel's attempt to deflect from his actions.  The history of settlement discussions in this case is relatively simple:  Plaintiff's counsel attempted to shake Defendant down for a large amount for its posting of a Rest in Peace message with the profile cover photo of Leon Redbone on Facebook.  McKenna Decl., ¶ 7, an offer later reiterated to Defendant's counsel.  Second Newberg Decl., ¶ 26.  Defendant made a counter-offer and also served Plaintiff with a Rule 68 Offer of Judgment, which Plaintiff ignored.  *Id.*, ¶ 27.  Plaintiff did not make another offer before Defendant's counsel was emailed by the

---

[3] For context, the next line in Plaintiff's Response is the demonstrably false statement that the rules do not require lead counsel attendance (Pl. Response at 2).

[4] *See* First Newberg Decl., ¶ 64, Ex. 12; Second Newberg Decl. ¶ 15; McKenna Decl., ¶ 41.

7

mediator the day before the October 31 mediation to say that he had spoken to Mr. Liebowitz and believed Plaintiff would settle for much less than previously indicated. *Id.* ¶ 28, Ex. 2. Defendant made a counter-offer to the amount the mediator stated Plaintiff might settle for. The counter-offer stated it was good "if and only if a signed settlement agreement can be effectuated today. . . . I should be clear that this offer expires this evening and will likely not be offered again, including at mediation tomorrow." *Id.*, ¶ 29, Ex. 3.

Mr. Liebowitz **did not** advise whether Plaintiff accepted the offer, so Defendant's counsel sent a draft proposal for Plaintiff's review. The email from Defendant's counsel stated: "In trying to make this easy given that the mediation is scheduled for tomorrow and I will be offline for the night shortly, I have created a settlement agreement, which is attached. Mr. Usherson can sign the agreement tonight without edits and we can be done. Otherwise, we will see Mr. Liebowitz and Mr. Usherson tomorrow and we can continue discussing the possibility of settlement at the mediation (although as you have noted [meaning as ███████ had already noted to Mr. Liebowitz in writing], the $[ ] offer will be off the table)." *Id.*, ¶ 31, Ex. 5. Instead of accepting the offer, at 4:14 am on October 31, Mr. Liebowitz sent "revisions to the agreement which can be discussed at the mediation." First Newberg Decl., *Id.*, ¶ 37, Ex. 9.



JA-189

███████████████████████████████

██████████████████████████████████

█████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████

## III.    DEFENDANT'S COUNSEL'S REASONABLE RATE AND HOURS

Plaintiff objects to Defendant's counsel's rate by citing a single case and misrepresenting it. Plaintiff cites (Pl. Resp. at 9) *Pyatt v. Raymond*, No. 10 Civ. 8764 (CM), 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) with for the proposition that it "collect[ed] cases approving hourly rates of $400 for partners in copyright and trademark cases." This is false: *Pyatt* collected seven cases, all from a decade or more ago, one of which approved a range of $400-$540, and the other six approving rates from $520-$650. Given the decade-plus since, Defendant's counsel's rates are easily in line with *Pyatt*.[5]

Finally, Defendant's counsel drafted a detailed Mediation Statement, prepared for mediation, traveled to and from NY, met with his client, and attended the mediation. Plaintiff is wrong in suggesting Defendant should be awarded no more than two hours of time. In addition, Defendant's counsel has spent far more than ten hours on this Motion. Defendant proposes that should this Court award it attorneys' fees in relation to this Motion, Defendant submit its time records for whatever activities are part of the fee award.

---

[5] Just two months ago in the W.D.N.Y., Mr. Liebowitz himself asked for more than $400 per hour in a fee request despite graduating law school almost 20 years after Defendant's counsel. *See, e.g.*, *Mantel v. Smash.com, Inc.*, No. 6:19-cv-06113 (FPG) (Dkt. 11). Unlike his attempt to mislead here, in the *Mantel* Declaration, ¶ 24, Mr. Liebowitz **correctly** cites *Pyatt's* range, and also cites numerous other cases in an attempt to support a proper rate for him of $400-$855.

## IV.    PLAINTIFF VIOLATED THE COURT'S JULY 15 ORDERS

Plaintiff does not deny that he failed to timely file proof of service, but blames his process server for withholding the proof of service.  While not a valid excuse, he attaches an exhibit (Liebowitz Decl., Ex. A) from September 20, which he implies exonerates him, but it has no words and does not show the attachment, therefore proving nothing.  Plaintiff also does not deny that he failed to timely provide Defendant (with whom he had been in contact for two months, *see* McKenna Decl., ¶ 7) the required licensing information.  He suggests that he was not required to if the work had never been licensed.  That is contrary to the Court's Order.

## V.    THE COURT'S REQUEST RELATED TO A POSSIBLE EVIDENTIARY HEARING

The Court directed the parties (Dkt. 20) in their Response and Reply papers to address "whether the Court should hold an evidentiary hearing and, if so, what witnesses should be called and how it should be conducted."  Plaintiff ignored the Court's direction in its Response.

The above violations are clear and Plaintiff should not be allowed to supplement its Response through an evidentiary hearing.  Defendant welcomes an evidentiary hearing, however, if the purpose and structure is the following: (a) Individuals who have submitted declarations are made available not for direct testimony, but for questioning by the Court to the extent the Court has open questions, and for limited cross-examination; (b) Mr. Usherson appears in person, not for direct testimony, but for questioning by the Court, with limited cross-examination; (c) the Court can conduct an in-camera review of Plaintiff's Mediation Statement and Plaintiff's counsel's communications with Mr. Usherson and ▮▮▮▮▮ about the mediation; and, (d) to the extent the Court deems it necessary, the mediator ▮▮▮▮▮ appears for questioning by the Court and examination by the parties' counsel.  Defendant and its counsel have checked their schedules and respectfully request that any required hearing take place on December 9, 12 or 13.

10

JA-191

Dated: November 25, 2019

Respectfully Submitted,

Brad R. Newberg

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have emailed Plaintiff's counsel and this Court in accordance with the Court's sealing rules and Dkt. 26, on this 25th day of November, 2019, and will electronically file the foregoing Reply Memorandum of Law in Support of Motion for Sanctions with the Clerk of the Court using the CM/ECF system when instructed by the Court which further constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 25, 2019

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

12

JA-193

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ARTHUR USHERSON,

    Plaintiff,

    v.

BANDSHELL ARTIST MANAGEMENT

    Defendant.

Docket No. 1:19-cv-6368-(JMF)

## SECOND DECLARATION OF BRAD R. NEWBERG IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

I, Brad R. Newberg, declare:

1. I am an attorney licensed to practice in the United States District Court for the Southern District of New York.

2. I am a partner in the Intellectual Property department of McGuireWoods LLP, which represents Defendant Bandshell Artist Management ("Defendant" or "Bandshell").

3. I make this Second Declaration in support of Defendant's Motion for Sanctions.

4. I refer the Court to my November 5 Declaration in Support of Defendant's Motion for Sanctions for a more detailed recitation of the events of this case. I have reviewed that Declaration and still stand by all of the statements therein.

5. I have further reviewed the Declaration of Mark J. McKenna, and agree with his recitation therein for all events at which I was present.

6. I make this Second Declaration only to add on to my initial Declaration and the Declaration of Mr. McKenna.

1

7. I do want to reiterate that after the Mediation Office denied Mr. Liebowitz's request for him and his client to appear at the mediation by telephone, and after this Court also denied his request, and both the Mediation Office instructed and this Court Ordered an in-person mediation, I emailed Mr. Liebowitz and gave him dates to choose from with the specific statement that he should choose one where he could be available and Mr. Usherson was available to fly to New York.  *See also* my initial Declaration at ¶ 28, Ex. 6.  He chose the last possible date according to the Court Order, October 31.

8. At no point from the Court's October 7 Order until the October 31 mediation date did Mr. Liebowitz ever suggest that he or his client might not attend the mediation.

9. The documentary evidence shows that even as late as October 30, I and the mediator were under the impression that Mr. Liebowitz (as lead and only admitted counsel) and Mr. Usherson would be at the mediation in person.  *See also* my initial Declaration at ¶ 36, Ex. 8.

10. To be clear, Mr. Freeman and Ms. Liebowitz's sister did *not* arrive at the mediation at 11:46 am as their Declarations state.  As stated in my prior Declaration, my client and I arrived at 11:45 am and spoke with the mediator for approximately ten-fifteen minutes before Mr. Freeman and Ms. Liebowitz arrived at approximately noon.

11. The meeting was over by no later than 12:15, and the portion with Mr. Usherson on speakerphone lasted approximately two minutes.

12. ███████████████████████████████████
███████████████████████████████████
██████████████████

2

13. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

14. After the meeting, my client and I retrieved our phones from security, and then walked to and took the subway together, with me getting off at Penn Station.

15. I would have liked to change my train right away, but I did not have adequate reception on the subway, and so I had to wait until I arrived at Penn Station.  As my receipts show, my transaction to change to the next available train occurred at 12:38 pm, and I ate lunch in the train station at 1:02 pm.

16. Mr. Liebowitz states that despite the Mediation Procedures, this Court's Orders, and the instructions from the Mediation Office, he received permission from the mediator, ████████████████ to send an associate not admitted to this case in his place and to have Mr. Usherson not attend, but be available by phone.

17. As *all* of the documentary evidence suggests this to be untrue, Mr. Liebowitz says this permission occurred by phone.

18. Mr. Liebowitz was directly asked by the Court during the November 14 conference when this supposed conversation occurred.

19. Mr. Liebowitz stated "I don't know the exact date, but it was before the mediation, and he said yes."  A copy of the transcript pages showing Mr. Liebowitz's discussion with the Court on this subject are attached as Exhibit 1 to this Declaration.

3

20. Mr. Liebowitz still does not answer that question in his declaration, just stating that it was prior to October 31.

21. Because I was concerned at what appeared to be false statements being made to the Court by Mr. Liebowitz, on November 19, 2019, I called the mediator, ██████████.

22. I did not ask ██████ for a Declaration because I did not believe that would be appropriate, but ██████ informed me that he would make himself available if the Court decided to hold an evidentiary hearing.

23. ██████ told me that he has conducted various mediations with parties represented by Mr. Liebowitz, and that there have been other mediations where he allowed Mr. Liebowitz's client to appear by phone, but he stated clearly and pointedly to me that **this was not one of them**.

24. ██████ also made clear that he had no knowledge that Mr. Liebowitz would not be at the mediation until the night of October 30 when Mr. Liebowitz called and *informed* him (without asking for approval) that Mr. Liebowitz was out of town and that Mr. Liebowitz's associate would be at the mediation instead.

25. ██████ stated that no mention was made of Mr. Usherson at all, and he only found out that Mr. Usherson would not be at the mediation when Defendant's counsel did, that is, when Mr. Freeman and Mr. Liebowitz's sister informed Defendant, Defendant's counsel, and the mediator of that fact when they arrived at the mediation.

26. In September, 2019, Mr. Liebowitz told me it would take $25,000 to settle this case.

27. When he did not seem willing to budge much, if at all, from this demand, my client authorized me to serve Plaintiff with a Rule 68 Offer of Judgment, which I did. Plaintiff did not accept or respond to that offer.

4

JA-197

28. Plaintiff did not make another offer before I was contacted by the mediator on October 30 via email to tell me that he believed Plaintiff would settle for much less than Plaintiff's original demand.  A true and correct copy of that email (with the number redacted) is attached as Exhibit 2 to this Declaration.

29. After communicating with my client, I made an offer, and the offer made clear that it was contingent on "if and only if a signed settlement agreement can be effectuated today" and stated: "I should be clear that this offer expires this evening and will likely not be offered again, including at mediation tomorrow." ██████████ responded that he would forward the offer on "clearly advising him that this is the last and final offer and is likely to decrease if not accepted."  A true and correct copy of that email (with the numbers redacted) is attached as Exhibit 3 to this Declaration.

30. ██████████ did indeed forward my offer and its contingent nature to Mr. Liebowitz, adding in his own language to make that point additionally clear. ████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████ ██████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████ A true and correct copy of that email (with the number redacted) is attached as Exhibit 4 to this Declaration.

31. Mr. Liebowitz did not advise whether Plaintiff accepted the offer and Mr. Liebowitz's question made no sense, so I thought that the only possible way we night be able to

settle this case on October 30 was to send a full proposal for signature.  I sent a draft proposal to the mediator for Plaintiff's review, and the mediator sent it on.  My email stated:  "In trying to make this easy given that the mediation is scheduled for tomorrow and I will be offline for the night shortly, I have created a settlement agreement, which is attached.  **Mr. Usherson can sign the agreement tonight without edits and we can be done.  Otherwise, we will see Mr. Liebowitz and Mr. Usherson tomorrow** and we can continue discussing the possibility of settlement at the mediation (although as you have noted [meaning as ███████ had already noted to Mr. Liebowitz in writing], the   $[  ] offer will be off the table)." (emphasis added).  A true and correct copy of that email (with the number redacted) is attached as Exhibit 5 to this Declaration.

32. Mr. Liebowitz rejected my draft proposal, making revisions instead.  He sent these revisions at 4:14 am on October 31, and his email stated that his revisions "can be discussed at the mediation."  *See* my first Declaration, Ex. 9.

33. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████  If the Court requests, I can provide a sealed copy of the proposal that was sent on October 30.

34. ████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████    ██████████
████████████████████████████████████████████████
██████████████████████████

6

35. If the Court calls for an evidentiary hearing, I am happy to answer any questions the Court may have.

36. I have checked my schedule and, due to travel schedules around the holidays, I respectfully request that if any hearing is called, it be any day during the week of December 9. I have spoken with Mr. McKenna and he could testify December 9, 12, or 13 of that week.

37. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 25, 2019

Brad R. Newberg (#BN1203)

JA-200

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Second Declaration of Brad R. Newberg with the Clerk of the Court using the CM/ECF system on this 25th day of November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 25, 2019

/s/ Brad R. Newberg
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

8

JA-201

**Exhibit 1**

1

JBEJUSHC                        Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ARTHUR USHERSON,

4                   Plaintiff,

5              v.                           19 Civ. 6368 JMF

6    BANDSHELL ARTIST MANAGEMENT,

7                   Defendant.

8    ------------------------------x

9

10                                     November 14, 2019
                                       4:00 p.m.
11

12

13   Before:

14                    HON. JESSE M. FURMAN,

15                                     District Judge

16

17                        APPEARANCES

18

     LIEBOWITZ LAW FIRM, PLLC
19        Attorneys for plaintiff
     BY:  RICHARD LIEBOWITZ, Esq.
20        JAMES FREEMAN, Esq.
                   Of counsel
21

22   McGUIRE WOODS, LLP
          Attorneys for defendant
23   BY:  BRAD RICHARD NEWBERG, Esq.
                   Of counsel
24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

JBEJUSHC                          Conference

 1   31, and I arrived with my client to find no Mr. Liebowitz, no

 2   Mr. Usherson.

 3          So to say that it lasted 45 minutes, to say Mr.

 4   Usherson was on the phone the entire substance, to say

 5   plaintiff obtained permission from the assigned mediator to say

 6   nothing in this Court order or mediation rules say lead counsel

 7   needs to be at the mediation, to say Mr. Freeman, who made no

 8   appearance, and clearly asked me about the case, did not have

 9   knowledge of the case, to say all of these things in this

10   letter, each one of those is specifically false.

11          The emails I attached to my motion, including the

12   receipts I attached, showed various timelines, showed continued

13   reminders Mr. Liebowitz and his client had to be there.  Even

14   the documentary evidence shows many of these statements are

15   false.  That is as brief as I can be.  I apologize.

16          THE COURT:  All right.  Mr. Liebowitz?  Mr. Freeman?

17          MR. LIEBOWITZ:  Yes.  I will represent to the Court

18   that James Freeman is my colleague who works in my law firm,

19   and he knows the facts of the cases that I filed, and he was

20   ready, fully prepared at the mediation.  My sister that just

21   recently passed the Bar, she came as well and she's a member of

22   this Court as well.

23          THE COURT:  She is admitted to this Court?

24          MR. LIEBOWITZ:  Yes, she is admitted.  Two lawyers

25   came that were familiar with the facts.  I said to the

JBEJUSHC                    Conference

1    mediator, according to the mediation rules -- and a lot of the

2    magistrates have this rule -- saying if they are a hundred

3    miles away from the courthouse, you can appear telephonically.

4    When I spoke to the mediator, he said yes.  The reason for this

5    is because --

6                THE COURT:  Mr. Liebowitz, I want to caution you that

7    you're already in a lot of hot water in this Court, and I think

8    you know that.  In that regard, I would be very, very, very

9    careful about the representations you make to me.

10               If you prefer to let Mr. Freeman do the speaking, that

11   is one thing, although they are still representations on your

12   behalf.  When did you advise ███  ███████ Mr. Usherson was not

13   going to appear in person?

14               MR. LIEBOWITZ:  I don't know the exact date, but it

15   was before the mediation, and he said yes.

16               THE COURT:  In what means did you do that?

17               MR. LIEBOWITZ:  It was telephone.

18               THE COURT:  And you personally advised him?

19               MR. LIEBOWITZ:  I personally.

20               THE COURT:  And he said that was okay?

21               MR. LIEBOWITZ:  He said that was okay.

22               THE COURT:  Is there a reason you didn't tell Mr.

23   Newberg that Mr. Usherson wasn't coming?

24               MR. LIEBOWITZ:  I thought the mediator was going to

25   tell him he was going to appear telephonically.  The rule says

JBEJUSHC                          Conference

1    to let the mediator know.  Whether or not the mediator told

2    him -- I worked with the mediator before, and this has never,

3    never, ever been an issue, and I believe he does help the other

4    side appear telephonically.

5              The reason for having this rule mediation rule in the

6    mediation program, I guess one of the purposes, you know, is

7    to, you know, limit the costs of the litigation.

8              Now, Mr. Freeman and Ms. Liebowitz attended the

9    mediation, were fully prepared, and Mr. Freeman can talk about,

10   because he was actually there, what happened.  ███████ ███████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████ ████████████

13   ████████████████████

14              THE COURT:  You told me in the letter.

15              MR. LIEBOWITZ:  ████████████████████████████ ██

16   █████████████████████████████████████████████████████████████

17   ████████████████ █████████ ██████████████████████████████████

18   ██████████████████████████ █████████████████████████████ ██

19   ████████████████████████████████████

20   ███████████ ████████████████████████████ ████████████████████

21   ██████████████████████ ███████████████████████████

22   █████████████████████████████████████████████

23        ██████████████████████ ██ ██████████████████████████

24   ████ ██ ███████████ ██████████████████████████████

25   ███████ ██████████████████████████ ██████████████████████

JBEJUSHC                        Conference

1  [REDACTED]

2  [REDACTED]

3  [REDACTED]

4  [REDACTED]

5           Mr. Freeman, I guess, can take it from there exactly

6  what happened, but --

7           THE COURT:  All right.  Mr. Freeman.

8           MR. FREEMAN:  Yes.  Thank your Honor.

9           In terms of my personal knowledge of this case, I

10  learned about the existence of the case at approximately 8:00

11  o'clock pm on October 30th, so it was the night before the

12  mediation.  Mr. Liebowitz had indicated that there was a

13  settlement in principle regarding the price.  There was an

14  actual settlement agreement that was being circulated, which I

15  did review.

16           I did review the complaint.  I reviewed the exhibits

17  to the complaint.  I reviewed the copyright registration, and I

18  also had email correspondence with Mr. Usherson the evening

19  before, and it was clear he was in Georgia.

20           So the next morning I arrived at 40 Foley Square

21  downstairs with Ms. Liebowitz, just recently admitted.  We did

22  walk in.  I had no knowledge one way or the other as to what

23  clearances were made in terms of telephonic appearances, but I

24  can attest to the Court, having personally participated in

25  dozens of mediations in this district, that the ordinary custom

JA-207

**Exhibit 2**

JA-208

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | ███████████ |
| **Sent:** | Wednesday, October 30, 2019 9:07 AM |
| **To:** | Newberg, Brad R. |
| **Subject:** | Mediation |

had a long, frank talk with Mr Liebowitz last night and I believe that he would settle for         . I do not know if this is of any interest to you but believe that I should engine. please advise. Regards, ███████

JA-209

**Exhibit 3**

JA-210

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | ████████████████ |
| **Sent:** | Wednesday, October 30, 2019 3:20 PM |
| **To:** | Newberg, Brad R. |
| **Cc:** | Shafer, Michael A. |
| **Subject:** | Re: Mediation |

Will forward to mr Liebowitz clearly advising him that this is the last and final offer and is likely to decrease if not accepted. Stay tuned

████  ████

On Wednesday, October 30, 2019, 03:10:25 PM EDT, Newberg, Brad R. <bnewberg@mcguirewoods.com> wrote:

████████

I have discussed this matter with my client, and while he cannot possibly agree to pay         in this matter, he has agreed that, if and only if a signed settlement agreement can be effectuated today with a full release of Bandshell, its owners, employees, agents, and clients (including David Bromberg and his band or anyone else related to Mr. Bromberg or the band members) concerning the use of Mr. Usherson's photograph and any other claims of any type, known or unknown, Bandshell will pay

I should be clear that this offer expires this evening and will likely not be offered again, including at mediation tomorrow.

Thanks very much.

**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787

**From:** █████████████████
**Sent:** Wednesday, October 30, 2019 9:45 AM
**To:** Newberg, Brad R. <BNewberg@mcguirewoods.com>
**Subject:** Re: Mediation

1

Thanks

Sent from Yahoo Mail for iPhone

On Wednesday, October 30, 2019, 9:44 AM, Newberg, Brad R. <BNewberg@mcguirewoods.com> wrote:

I will discuss with my client. Thanks.

Brad R. Newberg

McGuireWoods LLP

On Oct 30, 2019, at 9:07 AM, ██████████████████ wrote:

had a long, frank talk with Mr Liebowitz last night and I believe that he would settle for ███ I do not know if this is of any interest to you but believe that I should engine. please advise. Regards, ██████████

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

2

**Exhibit 4**

JA-213

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | |
| **Sent:** | Wednesday, October 30, 2019 5:33 PM |
| **To:** | Newberg, Brad R. |
| **Subject:** | Fw: Mediation |

???

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Wednesday, October 30, 2019, 5:28 PM, Richard Liebowitz <RL@liebowitzlawfirm.com> wrote:

> A full release related to the photo? I am sure my client will allow them to use the photo on their
> facebook page but they need to have a credit. Can my client then use the photo on T-shirts, he
> needs the bands permission?
>
>> On Wed, Oct 30, 2019 at 1:12 PM                        wrote:
>> talked to Brad. Unsurprisingly he wants a full release; in effect a license to use the photo as you
>> have given in other settlements. by paying the         they want to say good-bye to you
>>
>>
>>
>>> On Wednesday, October 30, 2019, 03:32:58 PM EDT, Richard Liebowitz <rl@liebowitzlawfirm.com>
>>> wrote:
>>>
>>> Will let you know. Waiting for client to get back to me.
>>>
>>>> On Wed, Oct 30, 2019 at 12:18 PM                        wrote:
>>>> This is the last and FINAL offer from defendant. Please advise me ASAP whether acceptable
>>>> or not
>>>>
>>>>
>>>>
>>>>
>>>>
>>>> I have discussed this matter with my client,  if and only if a signed settlement agreement can
>>>> be effectuated today with a full release of Bandshell, its owners, employees, agents, and
>>>> clients (including David Bromberg and his band or anyone else related to Mr. Bromberg or the
>>>> band members) concerning the use of Mr. Usherson's photograph and any other claims of
>>>> any type, known or unknown, Bandshell will pay

1

I should be clear that this offer expires this evening and will likely not be offered again, including at mediation tomorrow.

*Woods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com

*****************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*****************************************************************

--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com

*****************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*****************************************************************

JA-215

**Exhibit 5**

**Newberg, Brad R.**

| | |
|---|---|
| **From:** | Newberg, Brad R. |
| **Sent:** | Wednesday, October 30, 2019 6:34 PM |
| **To:** | ▓ |
| **Subject:** | RE: Mediation |
| **Attachments:** | Usherson-Bandshell Draft Settlement Agreement.pdf |

I'm not sure exactly what he means through his question since his client isn't selling us the copyright, but is giving my client a license. We do not have an issue with credit on future uses.

In trying to make this easy given that the mediation is scheduled for tomorrow and I will be offline for the night shortly, I have created a settlement agreement, which is attached. Mr. Usherson can sign the agreement tonight without edits and we can be done. Otherwise, we will see Mr. Liebowitz and Mr. Usherson tomorrow and we can continue discussing the possibility of settlement at the mediation (although as you have noted, the ▓ offer will be off the table).

Thanks for your help on this.

**Brad R. Newberg**
McGuireWoods LLP
T: +1 703 712 5061 | M: +1 703 772 6787

**From:** ▓
**Sent:** Wednesday, October 30, 2019 5:33 PM
**To:** Newberg, Brad R. <BNewberg@mcguirewoods.com>
**Subject:** Fw: Mediation

???

Sent from Yahoo Mail for iPhone

Begin forwarded message:

On Wednesday, October 30, 2019, 5:28 PM, Richard Liebowitz <RL@liebowitzlawfirm.com> wrote:

> A full release related to the photo? I am sure my client will allow them to use the photo on their facebook page but they need to have a credit. Can my client then use the photo on T-shirts, he needs the bands permission?

> On Wed, Oct 30, 2019 at 1:12 PM ▓ wrote:

>> talked to Brad. Unsurprisingly he wants a full release; in effect a license to use the photo as you have given in other settlements. by paying the ▓ they want to say good-bye to you

>> ▓

>> On Wednesday, October 30, 2019, 03:32:58 PM EDT, Richard Liebowitz <rl@liebowitzlawfirm.com> wrote:

1

Will let you know. Waiting for client to get back to me.

On Wed, Oct 30, 2019 at 12:18 PM ██████████████████ wrote:

This is the last and FINAL offer from defendant. Please advise me ASAP whether acceptable or not

████████████

I have discussed this matter with my client, if and only if a signed settlement agreement can be effectuated today with a full release of Bandshell, its owners, employees, agents, and clients (including David Bromberg and his band or anyone else related to Mr. Bromberg or the band members) concerning the use of Mr. Usherson's photograph and any other claims of any type, known or unknown, Bandshell will pay

I should be clear that this offer expires this evening and will likely not be offered again, including at mediation tomorrow.

*Woods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com

*******************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*******************************************************************

--
Best,

Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
t.516-233-1660
RL@LiebowitzLawFirm.com
www.LiebowitzLawFirm.com

JA-218

********************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
********************************************************************

JA-219

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR USHERSON, | |
| **Plaintiff,** | |
| v. | **Docket No. 1:19-cv-6368-(JMF)** |
| BANDSHELL ARTIST MANAGEMENT, | |
| **Defendant.** | |

**DECLARATION OF MARK J. MCKENNA IN SUPPORT OF DEFENDANT'S MOTION**
**FOR SANCTIONS**

I, Mark J. McKenna, declare:

1.  I am the owner and sole employee of Defendant Bandshell Artist Management.

2.  Bandshell represents a few musicians who have been around a very long time, such as David Bromberg. As part of that representation, we administer the personal Facebook page of the David Bromberg Quintet & Band, giving information about Mr. Bromberg.

3.  Mr. Bromberg was good friends with another musician, Leon Redbone.

4.  In May of 2019, Mr. Redbone died, and Bandshell placed a Rest in Peace message to Mr. Redbone on the David Bromberg Quintet & Band Facebook page. In referencing Mr. Redbone, Mr. Redbone's Facebook cover picture was put in the Rest in Peace post.

5.  That picture was especially appropriate because it showed Mr. Redbone with Mr. Bromberg and Bob Dylan at the 1972 Mariposa Folk Festival.

6.  There was no information on or with the photograph referencing any copyright information or a copyright owner.

1

**JA-220**

7. In July of 2019, I received a phone call from Richard Liebowitz. In that call, he stated that his client, Arthur Usherson, had filed a lawsuit against Bandshell for the Rest in Peace Facebook post, and it would take $25,000 to make the case go away.

8. On September 5, 2019, I was served with the lawsuit.

9. I was able to find pro bono representation in this case and am represented by McGuireWoods LLP, including Brad Newberg.

10. Early in this case, Mr. Newberg informed me that Plaintiff's attorney reiterated the same $25,000 demand he had made to me to Mr. Newberg.

11. After Plaintiff refused an initial offer I authorized Mr. Newberg to make, I authorized Mr. Newberg to serve Plaintiff with a Rule 68 Offer of Judgment. The Plaintiff never responded to that offer.

12. After the Court ordered that the parties and their counsel attend an in-person mediation, I gave Mr. Newberg dates that I would be available to attend. He let me know to give him several dates since Plaintiff would have to choose from them a date that Mr. Liebowitz would be available and that Mr. Usherson could fly to New York from Georgia.

13. Mr. Newberg informed me that Mr. Liebowitz had chosen October 31 and that I should clear my calendar for that day, which I did.

14. On October 30, we were informed that Mr. Usherson might settle for far less than his original offer. As the number floated as a possibility was still too high, I authorized Mr. Newberg to make an offer with the specific instructions that my offer would only be available for October 30, and would not be available if Mr. Newberg had to travel

2

to New York (especially given that while I am being represented pro bono, I might still
have to pay certain costs).

15. I am aware that in an effort to maximize the chance of settlement, Mr. Newberg even
drafted a draft proposal, which he informed the other side would only be available if
signed that night, and would not be available at mediation.

16. On the morning of October 31, Mr. Newberg informed me that Mr. Usherson had not
signed the proposal, and instead Mr. Liebowitz issued a counter-proposal at 4:14 am,
which Mr. Liebowitz stated could be discussed at the mediation.

17. Mr. Newberg and I made plans to meet just over an hour before the mediation to discuss
how it would likely go.

18. Mr. Newberg and I met a little before 11:00 am, and he explained to me how the
mediation session would likely go, and that when parties meet face-to-face, there can
often be a settlement reached even where you did not previously think there would be.

19. We entered the mediation room at 11:45 am.

20. I fully expected to meet in person with Mr. Usherson and Mr. Liebowitz.

21. The other side was not there yet, so we sat down and started talking with the mediator,
█████████████.

22. █████████ informed us that he had heard from Mr. Liebowitz the night before
(October 30) that Mr. Liebowitz would be out of town, so he would not be appearing,
but he was sending an associate of his in his place, and it would be up to us whether
we wished to move forward.

3

23. My attorney noted that no other attorney had made an appearance for Mr. Usherson and that he had not dealt with anyone but Mr. Liebowitz. He then asked if Mr. Usherson would be there as required.

24. The mediator stated that he assumed so, as Mr. Usherson was required to attend, but he really could not say for sure. He stated that he had not been told anything about Mr. Usherson, only that Mr. Liebowitz was out of town.

25. My attorney (and I) informed ███████ that if Mr. Usherson was not present in person, there would be no way to move forward and we would not be able to hold the mediation. ██████ stated that he understood and agreed.

26. Around noon, two people from Mr. Liebowitz's office arrived, a gentleman and a young woman. The gentleman introduced himself as Mr. Freeman. The woman did not talk, but Mr. Freeman said she was Ms. Liebowitz's sister and would be observing.

27. My attorney explained that the situation was unacceptable and that Mr. Usherson and Mr. Liebowitz were supposed to attend the mediation and that their absence was in violation of the Court's Order and the mediation rules.

28. ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████

29. ████████████████████████████████████
████████████████████████

30. We were ready to leave as there was no way to proceed with the mediation.

31. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

32. ████████████████████████████████████████████
████████████████████████████████████

33. ██████████████████████████████████████

34. ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

35. ██████████████████████████████████

36. ████████████████████████████████████

37. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

38. The entirety of the call with Mr. Usherson lasted no more than two minutes.

39. My attorney and I left immediately after, at approximately 12:10-12:15 pm.

40. My attorney and I got our phones from the security desk, walked to the subway together and got on the same subway line.

JA-224

41. On the subway, my attorney was going to see if he could change his train back to Washington DC to an earlier train but he did not have enough reception in the subway, so he said he would have to see if he could do it once he got to Penn Station.

42. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 22, 2019

_____

Mark J. McKenna

JA-225

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Declaration of Mark J. McKenna with the Clerk of the Court using the CM/ECF system on this 25th day of November, 2019, which constitutes service on Plaintiff, a registered user of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Dated: November 25, 2019

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Attorney for Defendant Bandshell Artist Management*

7

JA-226

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                               :
ARTHUR USHERSON,                      :
                                                :
                             Plaintiff,           :             19-CV-6368 (JMF)
                                                :
                   -v-                       :                 ORDER
                                                :
BANDSHELL ARTIST MANAGEMENT,   :
                                                :
                          Defendant.        :
                                                  :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

         In accordance with the Court's Memorandum Opinion and Order dated December 9,

2019, the Mediator submitted to the Court the attached Declaration, which the Court has redacted

to remove references to the Mediator's name.  No later than **noon** on **December 16, 2019**, Mr.

Liebowitz shall file a letter on ECF indicating if he believes that an evidentiary hearing is

necessary to resolve Defendant's motion.  In the absence of such a request, the Court will treat

the facts set forth in the Mediator's declaration as uncontested.


         SO ORDERED.

Dated: December 11, 2019
       New York, New York
                                                  JESSE M. FURMAN
                                          United States District Judge

IN THE MATTER OF

19 civ 06368 (JMF)

Usherson V. Brandshell

1.  ▮▮▮▮▮▮▮▮ under penalty of perjury, states as follows, I was the appointed mediator in the above referenced case and I requested the parties to give me a couple of mutually agreeable dates.

2.  Some time thereafter I received a communication from Mr. Liebowitz asking whether I would agree to conduct the mediation telephonically since the attorney for the defendant was located in Virginia.  I agreed if it was mutually agreeable and informed the office of mediation.

3.  After this agreement was communicated to mediation I received a call informing me that it was office policy for mediations to be in person.

4.  I so informed the parties and requested that they confer and give me a date for an in person mediation.  I was informed by Mr. Liebowitz that the parties agreed to October 31, 2019 at the offices of the mediation office at the courthouse.

5.  On the date prior to the mediation I conferred with attorneys for both parties as to the status of negotiations.  While the parties were somewhat close to resolving the matter no ultimate agreement was reached.

6.  That evening I talked to Mr. Liebowitz and was informed that the mediation was on.  He did not inform me that he would not personally appear but through an associate.  But I have mediated a few prior mediations involving Mr. Liebowitz where on at least one occasion that office appeared by an associate without incident.

7.  At no time was I informed that the plaintiff would not personally appear but would be available by telephone.  I should say that in a few prior mediations his client appeared by telephone without incident.  On this occasion no discussion was had by me as to client appearance.

8.  It was only on the day of the mediation that I was informed by defendant's counsel that the October 31, date was agreed to specially because both attorneys and more importantly their respective client would personally appear.  Frankly this was news to me.

9.  Mr. Liebowitz's associate appeared and at the conclusion of the mediation his client by telephone, but no agreement was reached partly I believe because of the lack of personal appearance which were allegedly agreed to by counsel.

4817-8716-8686 1

Dated;

December 10, 2019



**Liebowitz** ⊙ **Law Firm, PLLC**
ATTORNEYS FOR THE PHOTOGRAPHIC ARTS

11 SUNRISE PLAZA, STE. 305
VALLEY STREAM, NY 11580
(516) 233-1660
WWW.LIEBOWITZLAWFIRM.COM

December 16, 2019

**BY ECF**

Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *Usherson v. Bandshell Artist Management,* 1:19-cv-06368 (JMF).

Dear Judge Furman:

  We represent Arthur Usherson in the above-entitled copyright matter. Pursuant to this Court's Order, dated December 11, 2019, we write to inform the Court that Mr. Liebowitz, plaintiff's counsel, hereby contests certain statements proffered by the Mediator in his declaration [Dkt. #39, pp. 2-3] but respectfully submits that an evidentiary hearing is not warranted.

  As illustrated below, some of the Mediator's statements are squarely contradicted by defense counsel's declaration, submitted on November 6, 2019 [Dkt. #16, ¶¶ 46-47], concerning the key facts which form the basis of Defendant's motion for sanctions. These contradictions warrant denial of the Defendant's motion for sanctions. In the event that the Court does not find the evidence sufficient to rule on the paper submissions, then a hearing should be conducted to resolve the factual disputes.

**<u>Point I</u>: THE MEDIATOR CORROBORATES KEY ASPECTS OF MR. LIEBOWITZ'S TESTIMONY**

  **A. The Mediator Admits that A Teleconference Took Place on October 30**

  By way of declaration, the Mediator admits a telephone conversion took place between himself and Mr. Liebowitz on October 30, 2019, the night before the mediation session [Mediator Declr., Dkt. #39, ¶ 6 ("That evening I talked to Mr. Liebowitz and was informed that the mediation was on.") Thus, the Mediator has corroborated Mr. Liebowitz's testimony before the Court that a telephone conversion was had prior to the mediation.

  **B. The Mediator Admits that There Was An Existing Custom and Practice of Granting Mr. Liebowitz's Clients Permission to Appear Telephonically**

  The Mediator also admits that in "a few prior mediations" (i.e., more than one), the Mediator routinely granted permission for Mr. Liebowitz's clients to appear telephonically and for his associate to personally attend in his stead. [*Id.* at ¶ 6 ("I have mediated a few prior

**Liebowitz** ⊙ Law Firm, PLLC

Liebowitz ◉ Law Firm, PLLC

mediations involving Mr. Liebowitz where on at least one occasion that office appeared by an associate without incident."); *Id.* at ¶ 7 ("I should say that in a few prior mediations his client appeared by telephone without incident."). This again corroborates Mr. Liebowitz's testimony and establishes a "pattern or practice" of conduct showing that Mr. Liebowitz harbored a good faith belief that the requisite permissions were granted by the Mediator in this case.

Indeed, the Mediator granted Mr. Liebowitz's clients permission to appear telephonically in five (5) previous cases. *Emerson v. Telepictures Productions Inc.,* 19-cv-4247 (VEC); *Mottram v. Onion, Inc.,*19-cv-02224-VEC; *McGovern v. Q Digital Inc.,*19-cv-05956 (VM); *Pereira v Source Digital,* 19-cv-1820 (VEC), *Sadowski v. Seeking Alpha, Inc.,* No. 18-cv-09193-VM. In the latter case, *Sadowski,* the Mediator granted Mr. Liebowitz permission to send an associate on his behalf.

**Point II:**      **DEFENSE COUNSEL ALSO CORROBORATES MR. LIEBOWITZ'S TESTIMONY**

**A.**      **Before the Mediation Session Began, The Mediator Advised Defense Counsel That Mr. Liebowitz Would Not be Attending**

The Mediator states that Mr. Liebowitz "did not inform [the Mediator] that he would not personally appear but through an associate." [Dkt. #39, p. 2, ¶ 6] While this statement conflicts with that of Mr. Liebowitz, it must be emphasized that opposing counsel actually corroborates Mr. Liebowitz's testimony that such notification was provided.

Specifically, on November 6, 2019, just six days after the mediation session, Brad R. Newberg, Esq. swore as follows:

"On October 31, I arrived in New York, met with my client to prepare for the mediation and entered the mediation room with my client at 11:45 a.m. for the noon mediation. At this point, I was told for the first time by [the Mediator] that he had gotten word that Mr. Liebowitz would not be attending the mediation, and that Mr. Liebowitz's associate would be attending instead, and he did not know whether, but doubted Mr. Usherson would be attending." [Newberg Declr., Dkt. # 16, ¶¶ 46-47 (underlined added)]

As such, both Mr. Liebowitz and Mr. Newberg have testified that the Mediator was, in fact, notified *prior to* the mediation session that Mr. Liebowitz's associate would be attending in his stead.

**B.**      **Before the Mediation Session Began, The Mediator Advised Defense Counsel That He "Doubted" Mr. Usherson Would be Attending in Person**

With respect to Mr. Usherson's telephonic appearance, the Mediator states that "[a]t no time was I informed that the plaintiff would not personally appear but would be available by telephone." [Dkt. #39, p. 2, ¶ 7] But once again, Mr. Newberg's declaration reveals that the Mediator knew (or at least suspected) that Mr. Usherson would not be attending in person. Newberg testified that the Mediator "doubted Mr. Usherson would be attending." [Dkt. # 16, ¶

2

JA-231

Liebowitz ◎ Law Firm, PLLC

47] Under these circumstances, it is evident that Mr. Liebowitz notified the Mediator that Mr. Usherson would be appearing telephonically and that such request was granted.

**Conclusion**

Based on the foregoing, there is no evidentiary basis upon which to impose sanctions against Mr. Liebowitz. Accordingly, the motion for sanctions should be denied.  In the event that the Court finds a hearing is warranted, then we intend to participate in good faith.

Respectfully submitted,

**s/richardliebowitz/**
Richard Liebowitz

*Counsel for Plaintiff Arthur Usherson*

3

JA-232

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                   :

ARTHUR USHERSON,                       :
                                                   :

                      Plaintiff,         :          19-CV-6368 (JMF)
                                                 :

                 -v-                    :            ORDER
                                                 :

BANDSHELL ARTIST MANAGEMENT,  :
                                                 :

                      Defendant.     :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        After reviewing Plaintiff's response to the Court's December 11, 2019 Order, the Court concludes that an evidentiary hearing is warranted, if not necessary, to resolve certain factual disputes relevant to Defendant's motion for sanctions.

        The Court plans to conduct the evidentiary hearing as follows.  Consistent with the Court's prior Memorandum Opinion and Order, the evidentiary hearing will be narrowly limited to whether (and if so, when and how) the Mediator gave Liebowitz permission (1) not to appear personally at the October 31, 2019 mediation (and to send an associate instead); and (2) for Plaintiff himself not to appear at the mediation in person and to participate by telephone instead. The Court will hear in-person testimony from three witnesses: Liebowitz, Newberg, and the Mediator.  The Court will treat the declarations already submitted by these witnesses as their direct testimony and may conduct additional questioning of each witness.  After any questioning by the Court, counsel will be given an opportunity to question each witness — in the case of the Mediator, both sides will be permitted to ask additional questions; in the case of each lawyer, only opposing counsel will be allowed to ask additional questions.

        Unless the Court orders otherwise, the evidentiary hearing shall be held on **January 8, 2020**, at **9:30 a.m.** in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York.  Richard Liebowitz, Brad Newberg, and the Mediator must attend in person.  The parties may, but do not have to, attend in person.

        Any party objecting to the foregoing — or believing that a conference should be held to discuss these (or any other) matters — shall submit a letter by **noon** on **December 19, 2019**.

        SO ORDERED.

Dated: December 17, 2019
      New York, New York

                                   JESSE M. FURMAN
                              United States District Judge

JA-233

**McGuireWoods LLP**
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
Phone: 703.712.5000
Fax: 703.712.5050
www.mcguirewoods.com

**Brad R. Newberg**
Direct: 703.712.5061

# McGuireWoods

bnewberg@mcguirewoods.com
Fax: 703.712.5187

December 19, 2019

**VIA ECF**
The Honorable Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
Furman_NYSDChambers@nysd.uscourts.gov

>            Re:    *Usherson v. Bandshell Artist Management*, 1:19-cv-6368 (JMF): Jan 8 Hearing

Dear Judge Furman,

    We represent Defendant Bandshell Artist Management.  As you have likely seen, today Plaintiff Usherson withdrew the above-captioned case with prejudice, to which we stipulated (although, to be candid, had we not been representing our client pro bono—meaning he would have had significant legal expenses to be reimbursed—we and our client would not have so stipulated).

    Based on the Court's statements at the initial conference that a resolution of this case would not necessarily resolve the need for sanctions against Plaintiff and Plaintiff's counsel, I assume, unless I hear otherwise, that the January 8 evidentiary hearing is still going forward.  As an officer of the court, I wanted to make this Court aware that I am still available to appear, testify, and otherwise participate as the Court has already set forth or in any other way.

    Finally, I note that our motion requested an Order that Mr. Usherson be made aware of any Orders regarding the motion.  I note this because I still have concerns regarding that issue broadly.

                    Respectfully submitted,

                    *s/Brad R. Newberg/*
                    Brad. R. Newberg
                    *Attorney for Defendant Bandshell Artist
                    Management.*

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

JA-234

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
ARTHUR USHERSON,                                                    :
                                                                    :
                              Plaintiff,                            :            19-CV-6368 (JMF)
                                                                    :
                  -v-                                               :            ORDER
                                                                    :
BANDSHELL ARTIST MANAGEMENT,                                        :
                                                                    :
                              Defendant.                            :
                                                                    :
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        On December 19, 2019, the parties submitted a stipulation of voluntary dismissal.  ECF
No. 45.  Dismissal of the case moots Defendant's motion for a bond, but it does not moot
Defendant's motion for sanctions.  *See, e.g.*, *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447
(JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019) (noting, in imposing sanctions on Mr.
Liebowitz, that "voluntary dismissal 'does not preclude the district court from considering
collateral issues such as sanctions.'" (quoting *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
775 F.3d 128, 134 (2d Cir. 2014)).  Accordingly, the January 8, 2020 hearing will proceed as
planned.  At that hearing, the Court will hear sworn testimony from three witnesses in the
following order: Mr. Liebowitz, Mr. Newberg, and the Mediator.  As noted, the Court will treat
their previously submitted declarations as their direct testimony and proceed directly to cross-
examination — limited to the issues of whether Mr. Liebowitz obtained advance permission
from the Mediator for an associate to appear at the mediation instead of Mr. Liebowitz and for
Plaintiff to participate in the mediation by telephone.  *See* ECF No. 42.  In the case of Mr.
Liebowitz and Mr. Newberg, the Court will begin with cross-examination by opposing counsel
and then proceed to its own questioning.  In the case of the Mediator, the Court will engage in its
own questioning first and then give counsel for both sides an opportunity to ask follow-up
questions.  Counsel should be prepared for brief oral argument at the close of the hearing.

        The Clerk of Court is directed to terminate ECF No. 29.

        SO ORDERED.

Dated: December 20, 2019
        New York, New York                          _____
                                                          JESSE M. FURMAN
                                                          United States District Judge

JA-235

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR USHERSON<br><br>Plaintiff,<br><br>v.<br><br>BANDSHELL ARTIST MANAGEMENT<br><br>Defendant. | **STIPULATION OF DISMISSAL OF CIVIL ACTION WITH PREJUDICE (FRCP 41(a)(1)(A)(ii)**<br><br>Case No.: **1:19-cv-6368** |

IT IS HEREBY STIPULATED by Plaintiff Arthur Usherson and Defendant Bandshell

Artist Management that the case has been settled and that the above case should be

dismissed with prejudice with each side to bear its own costs and attorney's fees.

Richard P. Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Tel: (516) 233-1660
RL@LiebowitzLawFirm.com

Dated: December 18, 2019

*Attorneys for Plaintiff Arthur Usherson*

Brad Newberg
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
Tysons, VA 22102-4215
703-712-5061
BNewberg@McGuireWoods.com
December 18, 2019

*Attorneys for Defendant*
*Bandshell Artist Management*

SO ORDERED.  To be clear, the Court retains jurisdiction to adjudicate Defendant's pending motion for sanctions and any other sanctions-related matters.  *See, e.g., Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019) (noting, in imposing sanctions on Mr. Liebowitz, that "voluntary dismissal 'does not preclude the district court from considering collateral issues such as sanctions.'" (quoting *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014)).

The Clerk of Court is directed to close this case but should NOT terminate ECF No. 14.

December 20, 2019

JA-236

JBEJUSHC                    Conference

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ARTHUR USHERSON,

 4                  Plaintiff,

 5        v.                              19 Civ. 6368 JMF

 6   BANDSHELL ARTIST MANAGEMENT,

 7                  Defendant.

 8   ------------------------------x

 9

10                                    November 14, 2019
                                      4:00 p.m.
11

12

13   Before:

14                      HON. JESSE M. FURMAN,

15                                        District Judge

16

17                          APPEARANCES

18

19   LIEBOWITZ LAW FIRM, PLLC
          Attorneys for plaintiff
20   BY:  RICHARD LIEBOWITZ, Esq.
          JAMES FREEMAN, Esq.
21                  Of counsel

22   McGUIRE WOODS, LLP
          Attorneys for defendant
23   BY:  BRAD RICHARD NEWBERG, Esq.
                  Of counsel
24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.

                          (212) 805-0300

JA-237

JBEJUSHC                    Conference

1          (In Open Court)

2          (Case Called)

3          THE COURT:  Good afternoon.

4          All right.  So we're here for the initial pretrial

5   conference but, of course, there is also a pending motion for

6   sanctions, and this morning, at 12:20, Mr. Liebowitz filed a

7   letter response to that motion.

8          I am not going to consider it because it is not a

9   formal response.  You are not permitted to file a letter in

10  response to a formal motion, so I'll disregard it until a

11  formal opposition is filed, but certainly it previews, I

12  suppose, what Mr. Liebowitz's arguments are going to be on that

13  score.

14         It seems to me there are some fundamental

15  disagreements about what happened, and I wonder if an

16  evidentiary hearing of some fashion should be held at which Mr.

17  Usherson should testify, perhaps others should testify, but I

18  don't know if, Mr. Newberg, you want to respond since you

19  filed --

20         MR. NEWBERG:  Sure.  I will be brief since obviously

21  there are a lot of facts in the motion.  I don't want to take a

22  lot of the court's time.

23         I will say that in the case management letter, Mr.

24  Liebowitz said he would be fully responding to the motion by

25  the 13th, yesterday.  So I considered this to be the response,

JBEJUSHC                    Conference

1    but if your Honor wants to give him more time to actually

2    respond, so be it.  Obviously, we welcome any evidentiary

3    hearing with Mr. Usherson to appear in person and my client to

4    appear in person.

5         One thing I will say about what was just explored and

6    this letter, we have obviously issues here with veracity, and

7    your Honor may or may not be aware of Judge Seibel's hearing.

8         THE COURT:  I am well aware of it.

9         MR. NEWBERG:  I won't go into it, but obviously it has

10   been referred to the grievance committee as well as fines and

11   contempt orders.  So to get this letter which is substantively

12   so false on so many levels and demonstrative so from the

13   documentary evidence we presented to you is shocking, given a

14   few hours earlier promises were made to this Court, through

15   Judge Seibel, these sorts of representations, false

16   representations, would not be made again.

17        So I am happy to argue the motion, but obviously we'll

18   take the court's direction on that.

19        THE COURT:  First of all, it is "Seibel," just for

20   your information.

21        MR. NEWBERG:  I literally took that from the news

22   report that said how it was pronounced.

23        THE COURT:  Don't always trust what you read.

24        Tell me more specifically what representations you

25   think are problematic, and Mr. Liebowitz, what is your

JA-239

JBEJUSHC                    Conference

1    response, which again is only informal at this point.

2         MR. NEWBERG:  Sure.  To say the mediation occurred is

3    an overstatement at most, where it says the mediation lasted 45

4    minutes.  If one would say a ediation occurred, it lasted

5    approximately two minutes.

6         Mr. Liebowitz and his client were ordered to be there

7    in person.  The mediation office reminded them.  This Court

8    issued an order for them to appear in person at the mediation

9    under the rules.  The Southern District of New York rules

10   specifically say the party and lead counsel need to be there.

11        That is another thing, he says there is nothing in the

12   court order or mediation order that says lead counsel needs to

13   attend the mediation.  9(c) specifically says lead counsel must

14   attend the mediation.

15        In terms of Mr. Usherson being on the phone and

16   actively participating the entire time, essentially we got

17   there.  We were told by the mediator -- when I said I'll look

18   for Mr. Liebowitz in person, he said, "I just heard from Mr.

19   Liebowitz, he is not going to be here."

20        I said, "Well, will Mr. Usherson be here?"  He said,

21   "I don't know.  We'll see.  I hope he will be."

22        And Mr. Freeman and Mr. Liebowitz's sister, neither of

23   which had made an appearance in this case, came to tell us

24   neither of those would be there.  We said okay, I guess we

25   can't have the mediation.  The mediator said we can't have the

JA-240

JBEJUSHC                    Conference

1    mediation.

2    ████████████████████████████████████████

3    ████████████████████████████████████████████

4    ████████████████████████████████████████

5    ████████████████████████████████████████

6    ████████████████████████████████████████████

7    ████████████████████████████████████████

8    ██████████████████████████████

9          In fact, I was back at Penn Station just after 12:30.

10   The mediation was noon.

11         In terms of obtaining permission from the assigned

12   mediator was also false.  Mr. Liebowitz asked the mediator can

13   we have a telephonic conference on the mediation?  I said it

14   cannot be lawyers only, and eventually we agreed okay, if

15   everybody will participate by telephone.

16         This is back in late September, early October, he

17   asked the mediation office would that be okay.  The mediation

18   office said in no uncertain terms no, that is not okay.  Lead

19   counsel needs to be there in person, the parties need to be

20   there in person.  If you want relief from that, go ask the

21   Court.

22         And when he asked the Court, the Court gave a full

23   month to conduct an in-person mediation with the parties and

24   under the rules which required lead counsel to be there.  I

25   gave him various dates.  He picked the very last date, October

JA-241

JBEJUSHC                    Conference

1   31, and I arrived with my client to find no Mr. Liebowitz, no

2   Mr. Usherson.

3          So to say that it lasted 45 minutes, to say Mr.

4   Usherson was on the phone the entire substance, to say

5   plaintiff obtained permission from the assigned mediator to say

6   nothing in this Court order or mediation rules say lead counsel

7   needs to be at the mediation, to say Mr. Freeman, who made no

8   appearance, and clearly asked me about the case, did not have

9   knowledge of the case, to say all of these things in this

10  letter, each one of those is specifically false.

11         The emails I attached to my motion, including the

12  receipts I attached, showed various timelines, showed continued

13  reminders Mr. Liebowitz and his client had to be there.  Even

14  the documentary evidence shows many of these statements are

15  false.  That is as brief as I can be.  I apologize.

16         THE COURT:  All right.  Mr. Liebowitz?  Mr. Freeman?

17         MR. LIEBOWITZ:  Yes.  I will represent to the Court

18  that James Freeman is my colleague who works in my law firm,

19  and he knows the facts of the cases that I filed, and he was

20  ready, fully prepared at the mediation.  My sister that just

21  recently passed the Bar, she came as well and she's a member of

22  this Court as well.

23         THE COURT:  She is admitted to this Court?

24         MR. LIEBOWITZ:  Yes, she is admitted.  Two lawyers

25  came that were familiar with the facts.  I said to the

JA-242

JBEJUSHC                    Conference

1   mediator, according to the mediation rules -- and a lot of the

2   magistrates have this rule -- saying if they are a hundred

3   miles away from the courthouse, you can appear telephonically.

4   When I spoke to the mediator, he said yes.  The reason for this

5   is because --

6           THE COURT:  Mr. Liebowitz, I want to caution you that

7   you're already in a lot of hot water in this Court, and I think

8   you know that.  In that regard, I would be very, very, very

9   careful about the representations you make to me.

10          If you prefer to let Mr. Freeman do the speaking, that

11  is one thing, although they are still representations on your

12  behalf.  When did you advise ████████ Mr. Usherson was not

13  going to appear in person?

14          MR. LIEBOWITZ:  I don't know the exact date, but it

15  was before the mediation, and he said yes.

16          THE COURT:  In what means did you do that?

17          MR. LIEBOWITZ:  It was telephone.

18          THE COURT:  And you personally advised him?

19          MR. LIEBOWITZ:  I personally.

20          THE COURT:  And he said that was okay?

21          MR. LIEBOWITZ:  He said that was okay.

22          THE COURT:  Is there a reason you didn't tell Mr.

23  Newberg that Mr. Usherson wasn't coming?

24          MR. LIEBOWITZ:  I thought the mediator was going to

25  tell him he was going to appear telephonically.  The rule says

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

8

JBEJUSHC                    Conference

1   to let the mediator know.  Whether or not the mediator told

2   him -- I worked with the mediator before, and this has never,

3   never, ever been an issue, and I believe he does help the other

4   side appear telephonically.

5          The reason for having this rule mediation rule in the

6   mediation program, I guess one of the purposes, you know, is

7   to, you know, limit the costs of the litigation.

8          Now, Mr. Freeman and Ms. Liebowitz attended the

9   mediation, were fully prepared, and Mr. Freeman can talk about,

10  because he was actually there, what happened.  ██████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ███████████████████████

14          THE COURT:  You told me in the letter.

15          MR. LIEBOWITZ:  ██████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23       ███████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

JA-244

JBEJUSHC                    Conference

1    ████████████████████████████████████████████

2    ██████████████████████████████████████████

3    ████████████████████████████████████████████

4    ███████████████████████

5              Mr. Freeman, I guess, can take it from there exactly

6    what happened, but --

7              THE COURT:  All right.  Mr. Freeman.

8              MR. FREEMAN:  Yes.  Thank your Honor.

9              In terms of my personal knowledge of this case, I

10   learned about the existence of the case at approximately 8:00

11   o'clock pm on October 30th, so it was the night before the

12   mediation.  Mr. Liebowitz had indicated that there was a

13   settlement in principle regarding the price.  There was an

14   actual settlement agreement that was being circulated, which I

15   did review.

16             I did review the complaint.  I reviewed the exhibits

17   to the complaint.  I reviewed the copyright registration, and I

18   also had email correspondence with Mr. Usherson the evening

19   before, and it was clear he was in Georgia.

20             So the next morning I arrived at 40 Foley Square

21   downstairs with Ms. Liebowitz, just recently admitted.  We did

22   walk in.  I had no knowledge one way or the other as to what

23   clearances were made in terms of telephonic appearances, but I

24   can attest to the Court, having personally participated in

25   dozens of mediations in this district, that the ordinary custom

JA-245

JBEJUSHC                    Conference

1   and practice is for the attorneys, particularly where the

2   plaintiff is out of state, for magistrate judges or mediators

3   to permit leave for the party to appear telephonically.

4           As far as I knew, the fact Mr. Usherson was not there

5   was nothing out of the ordinary.  It was actually very routine

6   and very ordinary.  When I did arrive, it was clear opposing

7   counsel was visibly upset, and he expressed his disdain that we

8   had appeared and not Mr. Liebowitz.  He expressed disdain Mr.

9   Usherson wasn't there.  There was about five to seven minutes

10  of back-and-forth about whether or not the mediation would

11  proceed.  Mr. Newberg said it.

12  ███████████████████████████████████████

13  ███████████████████████████████████████████

14  ███████████████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ███████████████████████████████████████████

18  ██████████████████████████████████████████

19  ████████████████████████████████████████████

20  ██████████████████████████████████████████████

21  ██████████████████████████████████████████████

22  ████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

25  ██████████████████████████████████████████████

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

JBEJUSHC                    Conference

1

2

3

4

5

6        I was definitely there at least a half an hour if not

7   40 minutes.  I don't know where he is getting two minutes from

8   when you count the administrative aspects and substantive

9   mediation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JBEJUSHC                    Conference

1    ███████████████████████████████

2          ██████████████████████████████████████

3    ████████████████████████████████████████████

4    ████████████████████████████████████████████

5    █████████████████████████████████████████

6    ██████████████████████████████████

7    ███████████████████████████████████████

8    ████████████████████████████████████████████

9          THE COURT: ████████████████████████████

10   █████████████████████

11         Mr. Newberg, do you care to respond, and we can decide

12   how to proceed.

13         MR. NEWBERG:  Yes, your Honor, I would like to

14   respond.  I stand by a lot of what I said here.  I don't know

15   where to begin.  I will say that in terms of, as Mr. Liebowitz

16   said, he never mentioned he would be there, Mr. Usherson would

17   be there.  Exhibit 8 to my motion is literally the night before

18   communications between the mediator and myself about Mr.

19   Usherson being there in person.  He clearly at 10:03 pm the

20   night before thought Mr. Usherson was going to be there in

21   person, thought Mr. Liebowitz was going to be there in person

22   at 10:03 the night before.

23         Whenever this phone call supposedly happened, maybe it

24   is the phone call from six weeks earlier he then asked the

25   mediation office and this Court to approve that was rejected,

JA-248

```
JBEJUSHC                    Conference
```

1   but ██████████ made clear he was not aware of this.

2           On the Exhibit 6, it is clear that I am asking let's

3   make sure he and Mr. Usherson can be there in person.  Mr.

4   Freeman says all this time that took place.  Again I refer the

5   Court to my receipts from Exhibit 12 that shows my change of my

6   train which I made in Penn Station and got an email receipt at

7   12:38 pm for this noon mediation.

8           This was not a case of we were there 45 minutes and

9   then somehow I went back in time to Penn Station and got this

10  receipt.  There is even the next train available, 2:00 o'clock,

11  and even a receipt for my lunch in Penn Station a few minutes

12  later.  I am not exactly sure what Mr. Freeman said, he

13  reviewed email from Mr. Usherson and he was clearly in Georgia.

14  I am not on any emails with Mr. Usherson.

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████

19  ████████████████████████████████████  I said clearly in

20  my email look, I'm leaving on an early morning train.  If we

21  don't have a resolution, we'll all see each other in New York.

22  I got back revisions at 4:14 am on October 31st from Ms.

23  Liebowitz, which actually was 1:14 his time, since he was on

24  Los Angeles time.

25  ████████████████████████████████████████████████████████████

```
JBEJUSHC                    Conference
```

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ███████████████████████████████████████████

5 ██████████████

6         ████████████████████████████████████████

7 ██████████████████████████████████████████

8 ███████████████████████████████████████████

9 ████████████████████████████████████████ That

10 was it.  It was less than two minutes.  I was back in Penn

11 Station.

12          I am not sure if there is anything else your Honor

13 thinks is strange or quizzical your Honor wants me to address,

14 I am happy to, but otherwise I will sit down.

15          THE COURT:  How do you think I should proceed?  Do you

16 think I should hold a hearing?

17          MR. NEWBERG:  We are happy to have an evidentiary

18 proceeding with my client and Mr. Usherson here in person so

19 that they can discuss this.  Right now what we have is Mr.

20 Liebowitz saying he would be responding to this motion by the

21 13th.  I am not going to quibble over the 20 minutes, 12:20 in

22 the morning on the 14th, but I am happy to reply, frankly, to

23 his -- take this letter as his response, submit a reply and

24 have the Court, if the Court doesn't does want an evidentiary

25 hearing, to take the declarations that we have filed and file

JA-250

JBEJUSHC                    Conference

1   our reply and take his motion and decide the issue.

2           THE COURT:  All right.  So here is what I will do.

3           First, as I said, I am not going to consider the

4   informal response to a formal motion.  I will give Mr.

5   Liebowitz until Monday of next week to file a formal opposition

6   in accordance with the local rules.  I will give Mr. Newberg

7   until the following Monday to file a reply, including whatever

8   you think should be filed in support of the reply.

9           At the moment, I am leaning toward holding a hearing

10  to get to the bottom of this.  There are some fundamental

11  disputes of fact that I think are relevant to whether Mr.

12  Liebowitz and his client complied with my orders in this case.

13  There is no question there was failure to comply with some of

14  them for sure.

15          But I am sufficiently concerned and sufficiently

16  skeptical of keeping -- I will keep an open mind, but I am not

17  willing to take counsel's representations for it, that I think

18  it might be necessary to have a hearing, presumably with Mr.

19  Usherson, presumably with Mr. Newberg's client, perhaps with

20  some or all of you testifying and perhaps with ██████████

21  testifying.

22          One of you in your opposition and your reply address

23  whether you think a hearing is appropriate, and to the extent I

24  conclude a hearing is appropriate, tell me how you think that

25  hearing should be conducted, particularly if any or all of you

JBEJUSHC                    Conference

1   needs to testify, how you think it should be handled.  I will

2   issue an order that gives you further guidance on that front.

3          More broadly, I guess we are here for the initial

4   conference.  One option would be to put everything on hold

5   pending adjudication of the sanctions motion and see where that

6   lands us.  I will say I am skeptical of the request to dismiss

7   the complaint on that basis.  I think if sanctions are

8   appropriate, monetary sanctions are presumably the way to go

9   and not dismissal, but so in part for that reason I guess my

10  inclination would not be to hit the pause button.

11         Another option would be to proceed with discovery in

12  the normal course.  I guess the third option is somewhere

13  in-between.  I wanted to raise this.  Mr. Newberg has a

14  footnote in his memorandum of law, suggesting that there may be

15  a threshold issue with respect to the copyright in this case

16  that because it may predate 1989, that it is not a valid

17  copyright in the absence of a registration.  I don't know if

18  you're right about that, and maybe you can elaborate on it.

19         Would that be dispositive of the claims in this case

20  and, if so, is that something we should have early summary

21  judgment motion practice on?  What is your thought?

22         MR. NEWBERG:  Thank you.  Yes, that would be

23  dispositive.  They lose all rights in copyright for publishing,

24  print out, listening, anything regarding your photograph

25  without notice if it was done before 1989.

JA-252

JBEJUSHC                    Conference

1        Additionally, actually just yesterday we also

2   discovered that after this case was filed, Mr. Usherson filed a

3   copyright registration, which it seems to be on these

4   photographs, so now it is unclear whether the registration in

5   the complaint actually does cover the photograph or if it is

6   the new copyright registration.

7        If it is the new copyright registration, it is

8   unequivocal this case must be dismissed with prejudice based on

9   the Supreme Court's recent holding in terms of having to have a

10  registration before you file and the Second Circuit and this

11  Court's holdings that that is a non-curable error.

12       So now we discovered that yesterday.  One of the

13  things I was going to ask your Honor, I think we we need to

14  amend our answer.  I do think that having discovery purely on

15  those aspects early would probably be a very good idea.

16       THE COURT:  Mr. Liebowitz.

17       MR. LIEBOWITZ:  Your Honor, so what defendant doesn't

18  realize is this is an unpublished work.  The VA number is VAU.

19  When it is VAU, it is unpublished.  So defendants say it was

20  published before 1989 is not accurate.  So it was VAU, it is

21  unpublished, and that does not affect any public domain or

22  anything like that.

23       It was unpublished, so there is no issue with

24  registration.  I don't know what defense counsel means about

25  other registrations or other photographs.  I will have to see

JA-253

18

JBEJUSHC                    Conference

1    what my office did, but this is the correct registration.  It

2    is registered as unpublished, and there are statutory damages

3    and attorney's fees in this case.

4            We believe that if defendant wants to take up these

5    issues during discovery, we want to have discovery as well.  We

6    want to determine why wasn't there a license, why wasn't the

7    photograph taken down.  There are a lot of factors that go into

8    statutory damages, and we believe that the appropriate thing to

9    do at this stage is to just set discovery, set the dates, and

10   let the parties engage and hopefully during that process the

11   parties could eventually get to a settlement number we are

12   willing to live with and we can finally put this matter to

13   rest.

14           MR. NEWBERG:  May I respond briefly, your Honor?

15           THE COURT:  Sure.

16           MR. NEWBERG:  Responding backwards on the point of the

17   facts on the discovery Mr. Liebowitz is talking about, that is

18   normal discovery.  What we are talking about --

19           THE COURT:  Slow down.

20           MR. NEWBERG:  -- is preemptive discovery on the notice

21   on registration.  I can tell Mr. Liebowitz right here on

22   August -- this is a photo, sort of well known folk community

23   photo of Bob Dylan, Leon Redbone and David Bromberg at the

24   Mariposa Folk Festival on July 16, 1972.

25           Taking this backwards, while there is a registration

JA-254

JBEJUSHC                    Conference

1    that was mentioned in the complaint that simply just says

2    unpublished photographs, Nos. 122-208, that is what was for the

3    complaint.  On August 22nd, a very specific registration was

4    issued that says Arthur Usherson, Bob Dylan at Mariposa Folk

5    Festival, July 16, 1972, 30 photographs.  Clearly it is very

6    likely one of these 30 photographs is the photograph in

7    question, which is a photograph of Bob Dylan at the Mariposa

8    Folk Festival, July 16, 1972.

9         As far as the publication, I am well aware the

10   registration says that they're unpublished photographs.  I

11   think that is almost certainly inaccurate.  This is a

12   photograph that has been widely circulated.  I found examples

13   of it ranging back 10 to 20 years, and so if it were

14   unpublished, it would, it would be widely circulated, which may

15   be another reason to take discovery.  Thank you.

16        THE COURT:  If there is a generic registration on day

17   one, and then a more specific registration on day two, I don't

18   know why that would, be but in theory cover the same work?.

19        MR. NEWBERG:  It is possible then it could cover the

20   same work.  We are willing to find out whether these

21   unpublished photographs are composite copies to determine

22   whether or not this is part of it and why there was this new

23   registration.

24        In addition, if you published hundreds or a group of

25   unpublished photographs, a collection, if any of those

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

JA-255

JBEJUSHC                    Conference

1    photographs, and -- this may be the reason for the new

2    registration -- if any of those photographs actually were

3    published, that takes away the entire copyright registration.

4    So I have 50 unpublished photographs and 10 published, and to

5    put them in as unpublished photographs and try to get them in

6    that way and determine some of them were published, then that

7    copyright is no longer valid.

8            THE COURT:  What do you need to get to the bottom of

9    that and figure out what is going on here?

10           MR. NEWBERG:  In terms of discovery, we need discovery

11   on deposit copies of the photographs were put in for this 2011

12   registration.  We need discovery on Mr. Usherson of when these

13   photographs were published, if they were published, and if they

14   have, how they have been used, and discovery of why this new

15   registration was put in on August 22nd, because if the new

16   registration was essentially the first valid registration for

17   this photograph, then this case is -- and that is a separate

18   issue obviously from the notice, which is another reason for

19   dismissing.

20           If it were found, that is the other part of discovery,

21   if this is a published photograph and it was published without

22   notice prior to 1989, then there is no copyright possibility

23   whatsoever.

24           THE COURT:  What discovery would you need on that

25   aside from the deposition of Mr. Usherson?

JA-256

JBEJUSHC                    Conference

1      MR. NEWBERG:  We need the deposition, obviously, the

2   documents in his possession regarding how this photo has been

3   used, licensed, published, distributed in the past.

4      THE COURT:  I guess my concern with the idea I floated

5   of having limited and early summary judgment:  A, it sounds a

6   little messier than I had hoped; and, B, it sounds like the

7   discovery you would need is not so different from the discovery

8   that would be taken if the case were proceeding in the normal

9   course.  All right, guys.

10      MR. NEWBERG:  On Mr. Usherson, it would be similar.

11      We have a deposition on discovery, but on Mr.

12   Usherson, that would be encompassed.  I would say maybe half of

13   the discovery we need on Mr. Usherson.  Of course, none of that

14   is needed on our side.  So it is possible it cuts out

15   three-quarters, but certainly there is a large amount.

16      THE COURT:  What else do you need aside from that if

17   the case were to proceed in the normal course?

18      MR. NEWBERG:  In the normal course, what we need is

19   things like Mr. Usherson's licensing history, if there was any.

20   Obviously, it has been said so far he never licensed this in

21   the past.  We want to obviously delve into that, and we want to

22   go through the creation of it, obviously establish he is

23   actually the author of this photograph, and so those are the

24   main points.  I would have to give it some thought additionally

25   what we want from plaintiffs.

JA-257

JBEJUSHC                    Conference

1          THE COURT:  Mr. Liebowitz.

2          MR. LIEBOWITZ:  Your Honor, I don't think early

3     summary judgment is appropriate.  It is all these issues of

4     obviously photographers, they take a lot of photographs of the

5     same subject matter all the time.  Just because he's

6     registering and having another registration with a name, the

7     same event, why he is drawing so many conclusions from that,

8     but photographers do that all the time to get more photographs

9     registered.

10          I think there is a lot of discovery issues that need

11     to happen on both ends, and I think simply going along with

12     what the parties propose as a discovery plan should be the

13     right approach to continue the case, doing briefing at the end

14     of discovery.

15          THE COURT:  Talk to me about the merits.  Is it the

16     case that defendant took or Mr. Bromberg took a picture from

17     Mr. Redbone's Facebook profile and simply posted it?  It says,

18     "Rest in peace."  Is that the gravamen?

19          MR. LIEBOWITZ:  Yes.  This is straightforward.  We

20     believe liability is there.  They used the photograph.  They're

21     not disputing it.

22          THE COURT:  Did they gain anything from it?

23          MR. LIEBOWITZ:  They're using it, the management

24     company is using it on their Facebook page.  We have had to

25     find out during discovery what was the purpose.

JA-258

JBEJUSHC                    Conference

1          Now, you know, whether or not they made money off of

2     it, you know, I don't think is, you know, such, you know -- it

3     may be one factor of a defense, but the only two factors you

4     need is it is registered with the copyright office and they

5     copied the photograph.  Now, I don't believe defendants are

6     disputing that they copied the photograph, and I think

7     ultimately this is a case regarding damages.

8          What is the appropriate statutory damages for an

9     iconic photograph of singer-songwriter Leon Redbone?

10          THE COURT:  A photograph that never before had been

11     licensed?

12          MR. LIEBOWITZ:  Yes.  Just because it wasn't licensed

13     before doesn't mean that he's not entitled to a licensing fee.

14          THE COURT:  Doesn't the licensing history factor

15     heavily into what the appropriate licensing fee brings,

16     statutory damages would be?

17          MR. LIEBOWITZ:  Yes.  That is the reason for statutory

18     damages.  If the statutory damages exist because if there is no

19     actual damages because here if there is no licensing, then the

20     Courts would look at okay, the range is between 750 and

21     150,000, where in the spectrum it should be.  That is the

22     purpose of the statutory damages.  Not only if there is no

23     actual damages, what about deterrence?  Is defendant going to

24     keep on using the photographs without permission?

25          What about, you know, a license?  What about photo

JBEJUSHC                    Conference

1    credit?  There has to be some deterrence because they will

2    continue to do it.  I strongly believe that is the reason for

3    statutory damages.

4         Here if there is no licensing fee, we are going to

5    have other factors going to statutory damages like the

6    willfulness.  Why license?  We want to find out a history of

7    other licenses from the defendant, how they licensed

8    photographs of other people before and what they charged for

9    that amount.  I think this case comes down to damages, and we

10   need to determine all of these things during discovery to find

11   out what an appropriate number is.

12        THE COURT:  Well, I don't know if it comes down to

13   damages or not, but maybe a fair use argument as well.  If it

14   does come down to damages, I must say it is not clear to me

15   that it would lead to anything short of the low end of the

16   statutory damages award, which makes me think discovery

17   shouldn't be the tail that wags the dog in this case.

18        MR. LIEBOWITZ:  Your Honor, at the mediation and say

19   zero dollars.  You know, it is worth something.  The statute

20   has a minimum of 750 to 150,000.

21        THE COURT:  Mr. Liebowitz, do you think you're getting

22   150,000?

23        MR. LIEBOWITZ:  No, no, your Honor.

24        All I am saying is at the mediation when they offered

25   zero dollars, that's bad faith.  We were negotiating a

JA-260

25

JBEJUSHC                    Conference

1   settlement.  We got a number the day before.  This case should

2   have been done weeks ago, and we tried to resolve the matter

3   without coming here today, and we tried doing that, but the

4   defendants take the position that they're trolling for

5   sanctions, trying to make money off of this, and we are open to

6   settlement, the same number we discussed before the mediation.

7   If they didn't agree to the terms, we could have worked it out.

8        I am still hopeful and truly hope that defendant, in

9   good faith after this, we can go outside and try to discuss a

10  resolution so that we could resolve the case and move on.

11       THE COURT:  All right.  Even if you resolve the case,

12  as you know full well, with your history with me, that doesn't

13  necessarily resolve the sanctions if I decide to proceed with

14  that.  Be that as it may, my inclination is given the amount in

15  controversy or likely to be in controversy here, we should

16  severely limit the discovery, and I wonder if you need, either

17  side needs more than one deposition.

18       Your positions on that?

19       MR. LIEBOWITZ:  I believe that whoever posted the

20  photograph, if it was more than one person, we need to get one

21  or two people and then defendant's corporate representative.

22       THE COURT:  Mr. Newberg?

23       MR. NEWBERG:  The person involved, it is the same as

24  our corporate representative.  So it would be the individual,

25  30 (b)(6), the same day.  I do not know at this point that we

JA-261

JBEJUSHC                    Conference

1   need beyond Mr. Usherson.  No pun intended, I don't want to

2   make a federal case out of this, depositions would be taken of

3   other people who have been posting this and using this over the

4   years, but I'm not likely to do that.  So I would say that's

5   probably accurate.

6            I would like to briefly respond to the merits portion,

7   but if you would rather me not?

8            THE COURT:  You can briefly, but I do want to move on

9   and bring this to a close.

10           MR. NEWBERG:  Sure.  Which is going to lead to one

11  open issue, which is on the merits issue, we think this is

12  pretty quintessential fair use.  This was a Bromberg page.

13  Dave Bromberg is an older gentleman, so he has someone who

14  administers his page, and that is the defendant here.  It is

15  not common commercial use, literally one of his good friends

16  who has a cropped version of the photograph, not even the full

17  portion.

18           THE COURT:  Why don't you use that microphone.  It

19  would be better and closer to you.

20           MR. NEWBERG:  With no copyright notice on it

21  whatsoever.  It hasn't been licensed, ever.  There is no market

22  for it.  There hasn't been a market.  No market was affected,

23  no market will be affected.  It was simply literally a, "Rest

24  in Peace" message to Leon Redbone.  Leon Redbone's profile

25  picture, it wasn't one of his pictures and his photos.  It was

JBEJUSHC                    Conference

1   just showing his profile picture.  It clearly wasn't used for

2   creative purpose.  Every single one of the factors for fair use

3   lines up.

4          The other thing that I would say is in terms of the

5   value, I mean they keep going to this zero offer.  We had

6   gotten offers from them 25 and 24, 10, 5, 2, 1200, et cetera.

7   We had made an offer of judgment in this case which got ignored

8   which is more than the statutory minimum.  So in addition to

9   fair use, we believe that we've got a good argument to have

10  costs and fees under Rule 68, and so one open issue I did want

11  to bring up is defendant does plan on moving for a bond to

12  continue with this case.  We think we have a very strong

13  argument.

14         THE COURT:  When do you plan to bring that motion?

15         MR. NEWBERG:  I can bring it within the next two

16  weeks.

17         THE COURT:  All right.  Why don't you file it within

18  the next two weeks.  Mr. Liebowitz can respond two weeks

19  thereafter, and you can reply a week thereafter.

20         I am going to limit discovery.  I am not going to

21  limit discovery substantively.  I am persuaded that there is no

22  reason to do that here, that it wouldn't lead too much to an

23  efficiency game.  However, given what I sense is the amount in

24  controversy, and my discretion under Rule 26 with respect to

25  ensuring discovery is proportional to the case, I am going to

JA-263

JBEJUSHC                    Conference

1    limit depositions to one per side.

2              If you want to take more than that, you are going to

3    need to seek leave of me and explain why it is necessary.  The

4    one is premised on the assumption the person who posted the

5    photograph and 30 (b)(6) are one and the same person, so I when

6    I say "one," it is a combined individual and corporate

7    depositions.  So I want to be clear about that.  If that proves

8    not to be the case, then I would not limit it to one, and

9    plaintiff could take two of the defendants, the person who

10   posted it and the corporate representative.

11             I will in light of that set a deadline for the

12   completion of discovery, and also you need the time you

13   proposed, and instead I'll give you until January 31st of next

14   year to complete discovery.  Then I will have you back the week

15   after that, namely, on February 6th, at 3:30 in the afternoon,

16   at which point we will see where things stand and what motions

17   you would anticipate filing and the like.

18             I may well see you before that.  If I do decide to

19   hold an evidentiary hearing in connection with the sanctions

20   motion, I have already given you your briefing schedule on

21   that, and I will remind you in your opposition and reply, you

22   should address whether a hearing should be held and, if so,

23   what it would look like and how we should proceed depending on

24   who the witnesses should be, and you should discuss who should

25   be called as a witness.

JA-264

JBEJUSHC                    Conference

1          A couple of quick comments, reminders.  Mr. Liebowitz

2     has heard this before, but first, that January 31st deadline is

3     a fixed and firm deadline.  You should not assume you will get

4     more time for discovery than that.  There is obviously no

5     expert discovery to be had here, so that is the end of

6     discovery.

7          The interim discovery deadline set forth in Paragraph

8     9 are subject to change by written agreement between you.  It

9     does need to be in writing.  You do need my permission

10    otherwise.  However, that January 31 deadline is one I am

11    setting, and do not assume you will get more time.

12         If you have an application on that front, it better be

13    in writing, and better be filed on ECF, and better be filed as

14    a letter motion, and better be filed before January 31, and you

15    better have a good argument why additional time is needed in

16    that regard.  Don't assume it will be granted.

17         If there are discovery disputes along the way, you're

18    required to confer with one another in an effort to resolve

19    them in good faith.  I would strongly urge you to have a

20    written record of this communication.  Hopefully you can sort

21    things out nonetheless.  If you can't, then either side can

22    file a letter motion, not to exceed three pages, seeking

23    discovery under Rule 37.2 conference, and the other side has

24    three business days in which to respond, and I will resolve the

25    issue promptly by written order or by some form of conference.

SOUTHERN DISTRICT REPORTERS, P.C.

JA-265

JBEJUSHC                    Conference

1          Try to work it out.  If you can't work it out, there

2     is a process in place to work it out for you, and you better

3     avail yourself of it in a timely fashion.  Otherwise, you will

4     not get whatever it is you think you're entitled to or

5     additional time, either.

6          That I think resolves all I needed to accomplish

7     today.  I will obviously be looking and reading with care

8     whatever you file on both the sanctions issue and the bond

9     issue.  Is there anything else that you need to address today?

10         MR. LIEBOWITZ:  Nothing, your Honor.  Thank you.

11         MR. NEWBERG:  One question, I mentioned leave to amend

12    the notice and registration issues.  I respectfully ask for

13    that.

14         THE COURT:  When would you be able to do that?

15         MR. NEWBERG:  Any day next week would be fine.  It is

16    very limited.

17         THE COURT:  I will give you until next Friday to file

18    an amended answer.  Anything else?

19         MR. NEWBERG:  No, your Honor.

20         THE COURT:  We are adjourned.  Thank you.

21         (Court adjourned)

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

JA-266

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                        :
ARTHUR USHERSON,                  :
                        :
              Plaintiff,       :        19-CV-6368 (JMF)
                        :
        -v-                :         <u>ORDER</u>
                        :
BANDSHELL ARTIST MANAGEMENT,  :
                        :
             Defendant.     :
                        :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      As stated on the record at the close of the evidentiary hearing held on January 8, 2020, Defendant shall serve via overnight courier a copy of the files obtained from the U.S. Copyright Office for the copyright registration by **January 9, 2020**, and file proof of service **within one business day of service**. No later than **January 17, 2020**, Plaintiff shall file a letter on ECF addressing (1) whether Paragraph 9 of the Complaint is accurate; and (2) if not, whether sanctions are warranted on this basis against either Plaintiff's counsel or Plaintiff himself.

      In addition, by **January 13, 2020**, Plaintiff shall submit a letter brief not to exceed three pages addressing the effect, if any, of the parties' stipulation of dismissal on Defendant's motion for sanctions and addressing the appropriate sanctions in the event that the Court deems sanctions to be appropriate. Defendant shall submit any reply to Plaintiff's submission, not to exceed three pages, by **January 15, 2020**. Finally, Defendant shall submit a detailed accounting of the costs and attorney's fees incurred (had counsel not been pro bono) in connection with the October 31, 2019 mediation and the pending motion for sanctions by **January 17, 2020**.

      SO ORDERED.

Dated: January 8, 2020
      New York, New York                   _____
                                      JESSE M. FURMAN
                                United States District Judge