# 20-2304

## In the
## United States Court of Appeals
## For the Second Circuit

_____

ARTHUR USHERSON,

*Plaintiff,*

RICHARD P. LIEBOWITZ; LIEBOWITZ LAW FIRM, PLLC,

*Miscellaneous-Appellants,*

v.

BANDSHELL ARTIST MANAGEMENT,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Southern District of New York
Case No. 1:19-cv-06368-JMF

_____

**BRIEF OF DEFENDANT-APPELLEE
BANDSHELL ARTIST MANAGEMENT**

_____

Brad R. Newberg
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: (703) 712-5061

*Counsel for Defendant-Appellee Bandshell Artist Management*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, and to enable Judges and Magistrates of the Court to evaluate possible disqualification or recusal, the undersigned counsel of record hereby certifies that Appellee, Bandshell Artist Management ("Bandshell"), is not a publicly traded company and no company owns more than 10% of its stock. Bandshell has no corporate parents, affiliates, or subsidiaries.

*/s/ Brad R. Newberg*
Brad R. Newberg

*Counsel for Defendant-Appellee*
*Bandshell Artist Management*

i

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ...................................................................................1

STANDARD OF REVIEW ...........................................................................2

STATEMENT OF ISSUES PRESENTED....................................................3

STATEMENT OF THE CASE......................................................................4

    1.    Relevant Facts and Procedural History ................................4

        A.    Liebowitz and Case Background ...............................4

        B.    Mr. Liebowitz's Violation of Initial District Court Orders .......6

        C.    Mr. Liebowitz's Violations of Orders Related to
            Mediation ...................................................................7

        D.    The November 14, 2019 Initial Court Conference .................13

        E.    Mr. Liebowitz's Papers Regarding the Sanctions Motion.......14

        F.    Settlement of the Case ..............................................16

        G.    The January 8, 2020 Hearing ...................................16

        H.    Appellants' False Statements about the Copyright
            Registration ..............................................................20

        I.    The Sanctions Order and Post-Sanctions................................23

    2.    Ruling Presented for Review.................................................24

SUMMARY OF ARGUMENT ...................................................................26

ARGUMENT .............................................................................................30

    1.    The district court's findings that Mr. Liebowitz violated six
        court orders, lied to the court, and brought and maintained the
        copyright infringement lawsuit in bad faith, were not an abuse
        of discretion ...................................................................30

        A.    The district court did not abuse its discretion in finding
            that Mr. Liebowitz lied in bad faith representing that the
            mediator gave permission for Mr. Usherson to attend
            mediation by phone...................................................33

ii

  B. The district court did not abuse its discretion by finding
   that Mr. Liebowitz brought and maintained the lawsuit in
   bad faith ................................................................................. 39

 2. The district court's imposition of monetary sanctions was not
  an abuse of discretion ......................................................................... 42

  A. The $84,517.49 sanction was not an abuse of discretion ........ 42

  B. The $20,000 sanction was not an abuse of discretion ............ 45

 3. The district court's imposition of non-monetary sanctions was
  not an abuse of discretion .................................................................. 47

 4. In the event this case is remanded for further proceedings,
  Appellants have not demonstrated that unusual circumstances
  warrant reassigning this case to a different district judge ................. 50

CONCLUSION ................................................................................................. 54

CERTIFICATE OF COMPLIANCE .................................................................. 55

CERTIFICATE OF SERVICE .......................................................................... 56

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 60 E. 80th St. Equities, Inc.*,
   218 F.3d 109 (2d Cir. 2000) ...............................................................41

*Adlife Mktg. & Commc'ns Co., Inc. v. Buckingham Bros., LLC*,
   No. 519CV0796LEKCFH, 2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020).........4

*Belaustegui v. KC Media LLC*,
   No. 4:20 CV 531 CDP, 2020 WL 4805075
   (E.D. Mo. Aug. 17, 2020) ......................................................................4

*Berger v. Imagina Consulting, Inc.*,
   No. 18-CV-8956 (CS), 2019 WL 6695047
   (S.D.N.Y. Nov. 1, 2019) ................................................................29, 52

*Centennial Archaeology, Inc. v. AECOM, Inc.*,
   688 F.3d 673 (10th Cir. 2012) ............................................................43

*Chevrestt v. Barstool Sports, Inc.*,
   No. 20-CV-1949, 2020 WL 2301210
   (S.D.N.Y. May 8, 2020) ................................................................23, 52

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990)........................................................................2, 32

*Craig v. UMG Recordings, Inc.*,
   No. 16-CV-5439, 2019 WL 2992043
   (S.D.N.Y. July 9, 2019) ......................................................................53

*Dallas v. Goldberg*,
   No. 95-cv-9076, 2003 WL 22872325
   (S.D.N.Y. Dec. 5, 2003) ......................................................................43

*Enmon v. Prospect Capital Corp.*,
   675 F.3d 138 (2d Cir. 2012) ........................................................32, 38, 43, 45

*Feliciano v. Spirit Tribe, Inc.*,
   No. CV 3:19-1356, 2020 WL 6059744
   (M.D. Pa. Oct. 14, 2020)......................................................................4

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
      139 S. Ct. 881 (2019), JA251-252 ........................................................41

*Gallop v. Cheney*,
      667 F.3d 226 (2d Cir. 2012) ................................................................48

*Gonzalez v. Hasty*,
      802 F.3d 212 (2d Cir. 2015) ................................................................51

*Goodyear Tire & Rubber Co. v. Haeger*,
      137 S. Ct. 1178 (2017)........................................................................44

*In re Gravel*,
      601 B.R. 873 (D. Ver. 2019)................................................................46

*Jamieson v. Hoven Vision LLC*,
      No. 20-CV-1122-WJM-KLM, 2020 WL 7043865
      (D. Colo. Dec. 1, 2020)........................................................................4

*Kalfus v. God's World Publ'ns, Inc.*,
      No. 20-cv-4601, 2020 WL 6690660
      (S.D.N.Y. Nov. 13, 2020) ......................................................................4

*Konangataa v. Am. Broadcastingcompanies, Inc.*,
      No. 16-CV-7382(LAK), 2017 WL 2684067
      (S.D.N.Y. June 21, 2017)....................................................................52

*L.S. v. Webloyalty.com, Inc.*,
      954 F.3d 110 (2d Cir. 2020) ........................................................50, 51

*MacDraw, Inc. v. CIT Grp. Equip. Financing, Inc.*,
      73 F.3d 1253 (2d Cir. 1996) ..................................................................2

*Malibu Media, LLC v. Doe*,
      No. 18-cv-10956, 2019 WL 1454317
      (S.D.N.Y. Apr. 2, 2019)........................................................................20

*Martens v. Thomann*,
      273 F.3d 159 (2d Cir. 2001) ........................................................50, 53

*In re Martin-Trigona*,
      737 F.2d 1254 (2d Cir. 1984) ......................................................48, 50

*McDermott v. Monday Monday, LLC*,
    No. 17CV9230 (DLC), 2018 WL 5312903
    (S.D.N.Y. Oct. 26, 2018) ....................................................................52

*Nat'l Lawyers Guild v. Att'y Gen.*,
    94 F.R.D. 616 (S.D.N.Y. 1982) ..........................................................43

*Otto v. Hearst Commc'ns, Inc.*,
    No. 1:17-CV-04712-GHW, 2020 WL 377479
    (S.D.N.Y. Jan. 23, 2020)....................................................................53

*Otto v. Hearst Commc'ns, Inc.*,
    No. 17CV4712GHWJLC, 2019 WL 1034116
    (S.D.N.Y. Feb. 21, 2019) ....................................................................53

*Polaris Images Corp. v. CBS Interactive, Inc.*,
    19-cv-3670, 2019 WL 5067167 (S.D.N.Y. Oct. 9, 2019) ...................22

*Polaris Images Corp. v. ENTtech Media Grp. LLC*,
    No. 19 CIV. 8208 (KPF), 2020 WL 2904865
    (S.D.N.Y. June 3, 2020)......................................................................53

*Renna v. Bright Mountain Media, Inc.*,
    No. 19-CV-5510 (LDH), 2020 WL 6786011
    (E.D.N.Y. Oct. 19, 2020) ......................................................................4

*Reynolds v. Hearst Commc'ns, Inc.*,
    No. 17CV6720(DLC), 2018 WL 1229840 (S.D.N.Y. Mar. 5, 2018) ...............52

*Rice v. Musee Lingerie, LLC*,
    No. 18-CV-9130, 2019 WL 2865210 (S.D.N.Y. July 3, 2019)........................53

*Rock v. Enfants Riches Deprimes, LLC*,
    No. 17-cv-2618, 2020 WL 468904 (S.D.N.Y. Jan. 29, 2020)..........22, 28, 41, 53

*Sadowski v. Ziff Davis, LLC*,
    No. 20CV2244(DLC), 2020 WL 3397714
    (S.D.N.Y. June 19, 2020)....................................................................52

*Sands v. Bauer Media Grp. USA, LLC*,
    No. 17-CV-9215(LAK), 2019 WL 6324866
    (S.D.N.Y. Nov. 26, 2019) ....................................................................52

vi

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323 (2d Cir. 1999) ................................................................32

*United States v. Iodice*,
525 F.3d 179 (2d Cir. 2008) ................................................................36

*United States v. Norman*,
776 F.3d 67 (2d Cir. 2015) ..................................................................36

*United States v. Robin*,
553 F.2d 8 (2d Cir. 1977) ....................................................................51

*Wilson v. D'Apostrophe Design Inc.*,
No. 20-cv-0003, 2020 WL 4883849 (S.D.N.Y. Aug. 20, 2020) ........................5

*Wisser v. Vox Media, Inc.*,
No. 19 CIV. 1445 (LGS), 2020 WL 1547381
(S.D.N.Y. Apr. 1, 2020)................................................................29, 52

**Statutes**

28 U.S.C. § 1927 ........................................................................25, 32, 42

**Other Authorities**

Fed. R. Civ. P. 11 ...........................................................................49

Fed. R. Civ. P. 16 ......................................................................25, 42

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from a June 26, 2020 sanctions order entered by the United States District Court for the Southern District of New York, and modified by that Court's July 22, 2020 Order. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court had federal question subject matter jurisdiction over this copyright matter pursuant to 28 U.S.C. §§ 1331, 1338(a).

The Appellants, Richard P. Liebowitz and the Liebowitz Law Firm, PLLC, filed a Notice of Appeal on July 20, 2020.

1

## <u>STANDARD OF REVIEW</u>

A district court's Order imposing sanctions is reviewed for an abuse of discretion. *See MacDraw, Inc. v. CIT Grp. Equip. Financing, Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996). A court abuses its discretion where its ruling is based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

2

## STATEMENT OF ISSUES PRESENTED

1.      Whether the district court's factual findings that Liebowitz violated multiple Court Orders, lied to the district court, and brought a copyright infringement action despite not having a copyright registration prior to filing and maintained that action despite being put on notice as to the lack of registration, were clearly erroneous.

2.      Whether the district court's imposition of monetary sanctions based on its findings constituted an abuse of discretion.

3.      Whether the district court's imposition of non-monetary sanctions based on its findings constituted an abuse of discretion.

4.      In the event that this case is remanded to the district court for further proceedings, whether this Court must reassign the case to a different judge.

3

## STATEMENT OF THE CASE

**1.    Relevant Facts and Procedural History**

### A.    Liebowitz and Case Background

Richard P. Liebowitz is perhaps the most sanctioned attorney in modern

United States history.  The Appendix to the district court's Opinion subject to this

appeal lists *forty* cases in which Mr. Liebowitz has received substantial sanctions

or warnings for violating court orders, making false statements, and pursuing

meritless or extortive cases.  For the few months since Judge Furman's sanctions

Order, a simple Westlaw search reveals additional times courts have issued written

opinions sanctioning Mr. Liebowitz or questioning the veracity of his statements.[1]

---

[1] *See, e.g.*, *Belaustegui v. KC Media LLC*, No. 4:20 CV 531 CDP, 2020 WL 4805075, at *3 (E.D. Mo. Aug. 17, 2020) (awarding sanctions under Section 1927 due to Mr. Liebowitz's "reckless disregard of his duties to this Court"); *Feliciano v. Spirit Tribe, Inc.,* No. CV 3:19-1356, 2020 WL 6059744, at *4 (M.D. Pa. Oct. 14, 2020) (dismissing case for failure to comply with court order concerning status of service); *Adlife Mktg. & Commc'ns Co., Inc. v. Buckingham Bros., LLC*, No. 519CV0796LEKCFH, 2020 WL 4795287, at *5, 11 (N.D.N.Y. Aug. 18, 2020) (finding Mr. Liebowitz's submission "fraudulent and materially false" and recommending his removal from roll of Northern District of New York due to his failure to inform the court of disbarment from Northern District of California or of order in District of Colorado declaring him no longer in good standing); *Renna v. Bright Mountain Media, Inc.*, No. 19-CV-5510 (LDH), 2020 WL 6786011, at *5 (E.D.N.Y. Oct. 19, 2020) (questioning veracity of Mr. Liebowitz's hours/fee submission); *Jamieson v. Hoven Vision LLC,* No. 20-CV-1122-WJM-KLM, 2020 WL 7043865, at *3 (D. Colo. Dec. 1, 2020) (Mr. Liebowitz frivolously filed a claim without personal jurisdiction and filed papers "with total disregard for his suspension from practicing before the Court").

Additional courts have required Mr. Liebowitz to post bonds given the likelihood that he or his client would need to pay the defendants' costs and/or attorneys' fees.  *See, e.g.*, *Kalfus v. God's World Publ'ns, Inc.*, No. 20-cv-4601,

4

In fact, on October 5, 2020, Judge Furman himself issued an Order to Show
Cause as to why Appellants had repeatedly violated the Order at issue. On
November 30, 2020, he issued an opinion in which he found that Mr. Liebowitz
violated the Order <u>at issue in this appeal</u> at least *113 times*. *See* ECF No. 87 at 4.
Judge Furman decided not to issue additional sanctions because, that same day, the
ten-judge Grievance Committee unanimously suspended Mr. Liebowitz's right to
practice law in the Southern District of New York, effective immediately to
"protect the public" from Mr. Liebowitz. *Id.* at 8. Mr. Liebowitz is the name
partner and seemingly sole owner of the Liebowitz Law Firm ("LLF"), a firm of
record for each of the cases in which Mr. Liebowitz has been sanctioned.

Mr. Liebowitz and LLF were counsel to the Plaintiff below, Arthur
Usherson. JA1. The action involved a copyright infringement claim brought
against Defendant-Appellee Bandshell Artist Management ("Bandshell"). JA1,
13-20. A client of Bandshell's was legendary singer, songwriter, and guitarist
David Bromberg, and Bandshell helped Bromberg with his personal Facebook
page. JA108. In 1972, Usherson took a photograph of David Bromberg, Bob
Dylan, and Leon Redbone at a music festival. JA18, 108. Years later, Mr.

---

2020 WL 6690660, at *1 (S.D.N.Y. Nov. 13, 2020) (ordering bond); *Wilson v.
D'Apostrophe Design Inc.*, No. 20-cv-0003, 2020 WL 4883849, at *3-4 (S.D.N.Y.
Aug. 20, 2020) (ordering $20,000 bond based in part on Mr. Liebowitz's history of
dishonesty and failing to comply with court orders).

Redbone made a cropped version of the photograph his Facebook profile picture. JA18, 20, 108. When Mr. Redbone died, Bandshell posted a 'Rest in Peace' message on Bromberg's personal page, and the message contained Redbone's profile picture. *Id.* Usherson, through Mr. Liebowitz and LLF, filed suit on July 10, 2019, claiming the Rest in Peace Facebook post constituted copyright infringement. JA1, 13-20.

Bandshell was served on September 5, 2019, and immediately retained counsel, which took the case pro bono.

### B.  Mr. Liebowitz's Violation of Initial District Court Orders

Appellants violated at least six court orders. This included multiple violations of the very first orders issued by the court in this case on July 15, 2019. SPA26.

ECF No. 6 (JA25) ordered Plaintiff to "file proof of service no more than three days after service has been effected." Appellants failed to comply with that order. SPA3-4, 26; JA3.

That Order also required Plaintiff to produce discovery related to the licensing and royalty history of the work at issue. Appellants failed to comply with that Order, only claiming that there did not appear to be any such history after Defendant's counsel prodded Mr. Liebowitz when the deadline had passed. SPA26; JA73-74.

6

As the court below noted (SPA26), Appellants tried to get out of violations of certain orders by claiming they violated other orders instead. For instance, Appellants claimed that, despite Mr. Liebowitz's associate, James Freeman, who never entered an appearance in this case, swearing twice under oath and in open court that he never heard about this case until the night before mediation, it was acceptable for Mr. Liebowitz to send Mr. Freeman to mediation in his stead because Mr. Freeman was supposedly trial counsel. JA1, 153-54, 337, 363-65. As noted by the court, if such a statement were true, it would mean Appellants violated additional orders by having Mr. Liebowitz appear as trial counsel at the initial court conference. *Id.*

## C. Mr. Liebowitz's Violations of Orders Related to Mediation

ECF Nos. 5 & 6, issued by the district court on July 15, 2019, required the parties to conduct a mediation no later than September 26, 2019 (two weeks before the pretrial conference set for October 10, 2019). JA22-25.

Mr. Liebowitz did not even raise the mediation requirement to Defendant's counsel until October 3, 2019, asking for it to occur two business days later. JA63, 78. Despite the late notice, Defendant's counsel, Mr. Newberg, agreed to attend the mediation in New York, and tried to verify that Plaintiff Usherson would attend the mediation in person as required. JA63, 75-78. However, contrary to the standing order and the Mediation Rules of the Southern District of New York, Mr.

7

Liebowitz requested that it be conducted telephonically and with only lawyers present. JA62-65, 75-78. Mr. Liebowitz also requested that the lawyers use a mediator he knew of and not go through the Mediation Office (although the mediator he chose is affiliated with the Mediation Office). *Id.* Mr. Newberg expressed his discomfort, but agreed that, *if a telephonic arrangement was acceptable to the Court and the Mediation Office/mediator*, Defendant could move forward, and with Mr. Liebowitz's chosen mediator, but with the parties fully participating. JA75-76.

On October 4, Mr. Liebowitz reached out to the Mediation Office to have his request docketed. JA81-84. That same day, the Mediation Office replied that Mr. Liebowitz's requests were **"not in accordance with the procedures that govern this program."** *Id.* (emphasis added). The Mediation Office stated that a telephonic mediation *could not go forward*, that the Mediation Office would await the Court's guidance, and that the parties could choose the same mediator in the future, but it must be done through the Mediation Office's "normal process." *Id.* The Mediation Office instructed that the Court's mediation Order stood, and directed the parties to "seek appropriate relief directly from the Judge." JA81.

Mr. Liebowitz then drafted a letter to be submitted to the Court, which he first sent to counsel for Defendant. JA85-87. That draft filing contained multiple false statements about the case, including that the parties desired a telephonic

8

mediation to avoid the costs of Defendant's counsel coming to New York—something never requested by Defendant's counsel. *Id.* Defendant's counsel replied, stating that Mr. Liebowitz's letter must be modified, as he could not allow false statements to be filed with the Court. JA85-86. Mr. Liebowitz made those changes and filed his letter request. JA32. At no point in the letter did Mr. Liebowitz ask to be relieved of his duty to attend the mediation.

On October 7, the Court issued an Order <u>denying Mr. Liebowitz's request for his client to appear telephonically at the mediation</u>. *See* ECF No. 13. The Court stated that it was "to put it mildly, somewhat perturbed" by Mr. Liebowitz's actions and statements, expressing particular displeasure with Mr. Liebowitz's delays. *Id.* The Court adjourned the initial pretrial conference to November 14, 2019, and ordered that the "parties shall conduct the **in-person** mediation no later than October 31, 2019." *Id.* (emphasis added). The district court gave the parties time to make sure they could conduct an in-person mediation with the parties and lead lawyers present, and conducted properly through the Mediation Office and in accordance with the mediation procedures of the court as per the Local Rules. *Id.*; JA66; SPA4-5.

The Mediation Office followed-up, reiterating that mediation needed to occur **in-person**. JA83. At this point, the Court, the Mediation Office, and the

Mediation Rules of the court had made it clear that mediation was to be conducted in person, attended by both the parties and lead counsel.

The court's Local Rule further adopts the SDNY's Standing Procedures of the Mediation Program, including Section 9, "Attendance at Mediation Sessions." Section 9 requires each party to attend the mediation in person as a "critical" requirement of the process; it also requires the party to be "accompanied at mediation by the lawyer who will be primarily responsible for handling the trial of the matter." JA144-45.

Based on the court Order, Defendant's counsel proposed dates that he and his client would be available, and asked Mr. Liebowitz to pick any date where his client could come to New York from Georgia and Mr. Liebowitz would be available. JA88; SPA4-5. Mr. Liebowitz responded with October 31 (the last possible date), and the in-person mediation was scheduled for October 31 at noon, before the same mediator Mr. Liebowitz had originally hand-picked. *Id.*

On October 30, Defendant's counsel received an email from the mediator with a potential offer from Plaintiff. JA67, 210-18. That offer was unacceptable to Defendant. *Id.* However, in a good-faith effort to see if the case could be settled prior to mediation, Defendant's counsel drafted a full proposed agreement, stating in the email (which was forwarded on to Mr. Liebowitz with the draft agreement) that Plaintiff could sign the agreement or "we will see Mr. Liebowitz and Mr.

10

Usherson tomorrow and we can continue discussing the possibility of settlement at the mediation. . . ." *Id.* There was no response that Mr. Liebowitz or Mr. Usherson would not be at the mediation. *Id.*

Later that evening, the mediator sent an email stating that he had talked to Mr. Liebowitz, and relayed that Mr. Liebowitz "has been tied up. He will review [the draft Defendant's counsel sent] tonight and get back to us in morning. Hopefully we can settle this before need to go to **in person mediation**." JA67-68, 93 (emphasis added). Given the statement that Mr. Liebowitz would be responding the morning of the mediation, Defendant's counsel reiterated to the mediator that he would be headed to the train station "well before 6:00 am" and further noted his assumption that "Mr. Usherson either flew to NY tonight or is likewise on a very early plane." *Id.* The mediator responded, "I understand." *Id.* The various emails reflected the mediator's and defense counsel's belief that Mr. Liebowitz and Mr. Usherson would both attend the mediation in person.

At 4:14 am on October 31, Defendant's counsel received an email from Mr. Liebowitz stating, "Attached please find revisions to the agreement which can be discussed at mediation." JA68, 94. Even at this point, there was no mention that Messrs. Liebowitz or Usherson might not show. *Id.* The email sent by Mr. Liebowitz cc'd a "James H. Freeman" (for the first time) but did not mention anything about Mr. Freeman attending the mediation. JA94. Mr. Freeman never

11

made an appearance in this case, and was not on prior emails or calls in this case. JA1, 68.

Defendant's counsel responded that the revisions were unacceptable and took a train to New York for the in-person mediation. JA68.

Not once did Mr. Liebowitz state that he or Mr. Usherson would not be at the mediation. This is despite numerous occasions of Defendant's counsel making references to Mr. Usherson and Mr. Liebowitz being at the court-ordered, in-person mediation. *See, e.g.*, JA63-68.

Soon after Defendant and its counsel arrived at mediation, Mr. Liebowitz's associate, James Freeman, arrived with Mr. Liebowitz's sister, and conveyed that Mr. Liebowitz and Mr. Usherson would not be attending. JA69. Mr. Freeman stated he had just found out about the case the night before; he had little (if any) knowledge of the details of the case. JA69, 153-54, 337.

As testified later by the mediator, the lack of in-person appearance by Mr. Usherson or Mr. Liebowitz negatively affected any ability the parties had to settle the case. SPA5; ECF No. 39 at 2.

While on the train home, Defendant's counsel went on the Internet to look up Mr. Liebowitz's website. JA70, 95. Mr. Liebowitz's firm's Twitter feed revealed that he was in Los Angeles, having hosted an event there the prior night,

even though he supposedly chose October 31 so that he could attend and his client could travel to New York from Georgia.  *Id*.

Bandshell moved for sanctions on November 6, 2019.

### D.     The November 14, 2019 Initial Court Conference

On November 13, 2019, Appellants filed a letter response to the sanctions motion.  JA111-13.

On November 14, 2019, the Court held this case's initial pre-trial conference.  Mr. Liebowitz, the only attorney who entered an appearance for Plaintiff in this case, appeared on behalf of Plaintiff "as principal trial counsel." SPA7.

When the subject of the sanctions motion arose, Mr. Liebowitz, not addressing his own failure to appear at mediation, claimed that he had received permission from the mediator for Mr. Usherson to attend the mediation by telephone.  JA241-242.  Mr. Liebowitz stated that he could not remember when he received such permission.  JA242.  Mr. Freeman, although not appearing as an attorney in this case, was present and represented that he "learned about the existence of the case at approximately 8:00 o'clock pm on October 30th," and was not told anything about clearances for Mr. Liebowitz or Mr. Usherson not to appear at the mediation.  JA244.

13

### E.    Mr. Liebowitz's Papers Regarding the Sanctions Motion

The Court then asked Mr. Liebowitz to file a formal opposition to the

sanctions motion, and to address whether an evidentiary hearing should be called

and, if so, the structure and witnesses.  JA119, 226.  Mr. Liebowitz ignored the

latter direction, but filed a declaration, under oath, stating that the mediator gave

him permission not to attend at all, and for Mr. Usherson to attend by telephone.

JA132.  Like in his November 13 letter response and his November 14 statements

in court, Mr. Liebowitz did not say when such permission occurred.  Mr. Liebowitz

also stated that Mr. Freeman routinely attends mediations on his behalf regardless

of whether Mr. Freeman has appeared in the case, and here Mr. Freeman had "full

knowledge" of the case.  *Id.*  Mr. Freeman and Mr. Liebowitz's sister also

submitted declarations and neither stated any knowledge of Mr. Liebowitz getting

permissions from the mediator.  JA153-159.  Mr. Freeman declared that he only

found out about the "existence of this matter" the night before the mediation.

JA153 ¶ 4.

Defendant's counsel spoke to the mediator who denied ever giving

permission for Messrs. Liebowitz or Usherson not to attend in person, and stated

that he first found out Mr. Usherson would not attend in person when Mr.

Usherson failed to show.  JA196.  Upon being informed of this, the court ordered

the mediator to submit a sworn declaration, and he did so.  SPA12; JA227-28.  The

14

mediator's sworn declaration stated that he was *specifically informed by the mediation office that the mediation must occur in person and he informed Mr. Liebowitz of that fact before the mediation date was chosen*. JA227. The mediator's declaration further stated that Mr. Liebowitz "did not inform me that he would not personally appear" and "[a]t no time was I informed that the plaintiff would not personally appear but would be available by telephone." *Id.* (emphasis added).

After the mediator submission, Mr. Liebowitz filed a letter proffering a new line of defense: that this mediator had a "custom and practice" of allowing Mr. Liebowitz's clients to appear telephonically and Mr. Liebowitz to send an associate on his behalf, citing five cases where the mediator supposedly allowed his clients to attend telephonically, and one of which his associate attended on his behalf. JA229-230.

As later discovered, and as became evident at the hearing discussed below, these statements were false. Not only had the mediator not given Mr. Liebowitz such permissions in the past (but rather his clients just did not show), JA437, 464-65, but in one of the cases Mr. Liebowitz cited, it was Mr. Liebowitz's adversary who asked for his client, who lived in Israel, to attend telephonically, and Mr. Liebowitz refused to consent to that request, stating that it was against the rules. JA354-60, 464-65.

15

### F.     Settlement of the Case

As the district court and other judges in this district have noted, Mr. Liebowitz has a pattern of settling cases when he gets into hot water.  SPA44, 55-59 (collecting cases).  The court warned Mr. Liebowitz that settling this case would not enable him to evade sanctions.  JA260.  On December 17, 2019, the district court ordered an evidentiary hearing for January 8, 2020.  JA232.

Two days later, the parties filed a stipulation of voluntary dismissal having settled the case for no money changing hands—and with Plaintiff sweetening the pot by giving Defendant an unlimited digital license to the photograph.[2]  JA235. Defendant's counsel noted to the court that Defendant only agreed to the dismissal because given his pro bono representation, there was no better result to be had for his client.  JA233.

Citing prior cases, the district court noted that dismissal did not moot the need for sanctions, and went forward with the hearing.  JA234, 260.

### G.     The January 8, 2020 Hearing

The January 8, 2020 hearing was mostly limited to cross-examination, with the court treating the prior declarations as direct testimony—although Mr. Liebowitz was allowed direct testimony related to his new theory concerning the

---

[2] A condition of settlement was that the settlement *not* be confidential.

mediator's supposed "custom and practice," first raised by Mr. Liebowitz after the mediator's declaration.  JA352-55.

The cross-examination of Mr. Liebowitz stretched for over two hours as Mr. Liebowitz invented story after story, being forced to move onto a new excuse as each one fell apart.  JA355-423.

As noted above, Mr. Liebowitz was forced to admit that in one of the past cases he cited for his client appearing telephonically before this mediator, it was actually the other side who asked for permission for the client to appear telephonically (less than six months before the mediation in this case), and Mr. Liebowitz objected stating that parties were not allowed to appear telephonically under the "rules of the mediation office."  JA355-356, 464-65.

He also claimed that the supposed permissions in this case came the night before the mediation, October 30, between 7:30 and 8:00 pm.  JA366.  He testified to this unequivocally on January 8, 2020, even though he said on November 14, 2019 at the initial court conference that he could not remember when such permissions occurred (even having seen the sanctions motion and responding to it), and he could not pinpoint a date in any of his other submissions or declarations. JA132, 242.  On the stand, Mr. Liebowitz stated that certain emails had jogged his memory, but these were the same emails attached to the sanctions motion filed before the November 14, 2019 conference and to which Mr. Liebowitz had

17

responded to in writing multiple times. JA392-96. His only excuse for not remembering that he supposedly received permissions the very night before the mediation just two weeks later, but remembering it with clarity months later was "I often forget things." JA394.

Mr. Liebowitz had no excuse for the many emails suggesting he and his client would be at the mediation. JA405-06, 409-10, 415-19. He also could not explain how he would have made the mediation, seeing as he was in Los Angeles the night of October 30. JA407-408. He could not even say whether Mr. Usherson was aware that he would need to be there if Mr. Liebowitz could not secure permission for Mr. Usherson not to attend. JA384-385. Mr. Liebowitz claimed, if his supposed request for permission was denied, he could have easily flown overnight across the country and secured his elderly client's presence in New York from Georgia by morning. JA384-385, 407-408.

Mr. Liebowitz also testified that he had told Mr. Freeman about his securing of permissions with the mediator and that Mr. Liebowitz always figured that Mr. Freeman would go to the mediation because Mr. Freeman was operating as trial counsel in the case, and had been fully informed about the case from the beginning. JA377-382. This was despite Mr. Freeman never entering an appearance in this case and Mr. Liebowitz appearing in the prior conference as trial counsel. This was also despite Mr. Freeman's sworn declarations and stating in

18

open court that he learned about the "existence of this case" the night before the mediation.  JA153-54, 206, 337.  When presented with this glaring inconsistency, Mr. Liebowitz testified that he had not read Mr. Freeman's prior declaration (despite signing papers referring to that declaration) and Mr. Freeman must have completely forgotten about his involvement in this case.  JA376-84, 386, 411-14.[3]

Defendant's counsel testified briefly and then the mediator testified.  In addition to the mediator's sworn declaration, stating that Mr. Liebowitz "did not inform me that he would not personally appear but through an associate" and that "[a]t no time was I informed that the plaintiff would not appear but would be available by telephone," the mediator testified that in a few prior cases, while he did *not* give Mr. Liebowitz permission for his client to not be there, Mr. Liebowitz took such actions without asking, and that at no point in this case did Mr. Liebowitz ever mention the possibility of his client not attending in person.  JA227-28, 436-437, 440, 444, 451.  The mediator only learned that Mr. Usherson would not be attending in person when Mr. Freeman arrived and said so.  JA227-28, 447, 449, 461.  As stated in his sworn declaration, JA227, the mediator testified

---

[3] Mr. Liebowitz's statements that Mr. Freeman was actually trial counsel and well aware of all aspects of this case were also belied by the simple fact that Mr. Liebowitz's attempted excuse for months was that he got "permission" from the mediator for Mr. Freeman to attend.  Of course, if Mr. Freeman was indeed trial counsel—which he certainly was not as he never even entered an appearance in the case—no such permissions from the mediator would have even been necessary.

19

that prior to the mediation date being picked, *he specifically informed Mr. Liebowitz that Mr. Usherson would have to appear at the mediation in person*. JA439 ("It's got to be in person."). *See also* JA453-54.

### H. Appellants' False Statements about the Copyright Registration

As this Court is aware, a plaintiff may not file a copyright complaint without its work being registered first, and a defect as to that requirement is incurable. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 18-cv-10956, 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019). In the Complaint, Appellants claimed that the photograph in question was registered pursuant to copyright registration VAu1-080-046. JA14 ¶ 9.

The Copyright Office records for that registration do not make reference to the photograph at issue, and Defendant's counsel discovered during their investigation for this case, a second copyright registration, # VAu001373272, filed after the complaint in this case, which did appear to make reference to the photograph in question. JA327-28.

Concerned that this might mean that Mr. Liebowitz knew or realized the photograph was not registered when he filed the Complaint—which would mandate dismissal—Defendant's counsel raised this issue at the November 14, 2019 initial court conference, and also requested early discovery on the registration issue. JA251-255; SPA9.

20

Mr. Liebowitz argued against early discovery on the registration issue by assuring the district court that the registration listed in the complaint was "the correct registration." JA252-53, 257; SPA10. As it turns out, this assurance, upon which the court relied, was false.

Not trusting Mr. Liebowitz's assurances in open court, and not receiving the deposit copies associated with the claimed registration from Mr. Liebowitz, Defendant's counsel paid for the Copyright Office to search its records and send Defendant's counsel the deposit copies for VAu1-080-046. JA471. Defendant's counsel did not receive the deposit copies until early January 2020, after the case had already settled, and just before the January 8, 2020 hearing. JA471. The deposit copies revealed that the photograph in question had not been registered as part of VAu1-080-046, and, as such, the lawsuit was a sham. JA471-472.

When presented with this evidence, LLF, through Mr. Freeman, stated that it was the practice of LLF to not verify that the works sued upon had actually been registered by their clients. JA483. He could not explain why LLF and Mr. Liebowitz themselves had filed a later copyright registration listing the work at issue if they did not know that the work was not previously registered. JA483-485.

Based on the new revelations, the court ordered Mr. Liebowitz, Mr. Freeman, and Mr. Usherson to submit declarations. JA295-297. Mr. Freeman's declaration admitted that LLF had registered the photograph in a separate

21

registration after filing the Complaint, but said he had no personal knowledge of it until the January 8 hearing. JA338-41 ¶¶ 9, 15, 22. Mr. Usherson's affidavit stated that he provided LLF with a CD-ROM containing all of the photographs in the VAu1-080-046 registration (which did not include the photograph at issue) prior to the filing of the complaint. JA300 ¶ 9. This, by itself, shows that Mr. Liebowitz and LLF knew that the photograph at issue was not registered as part of VAu1-080-046 when they filed the complaint in this case. Mr. Usherson further declared that he provided LLF with a CD-ROM of an additional thirty photographs, containing the photograph at issue, which was later registered by LLF. JA301 ¶ 15.

Mr. Liebowitz's declaration showed that he did no investigation, even though the CD-ROM provided by his client did not contain the photograph and even after the issue was raised at the initial conference. JA331. Mr. Liebowitz's declaration blamed a low-level former employee (from whom they provided no declaration) for what he and Mr. Freeman called a supposed "administrative error," a term Mr. Liebowitz and LLF have used previously in efforts to get out of sanctions. JA330-332. *See, e.g.*, *Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618, 2020 WL 468904, at *3-4 (S.D.N.Y. Jan. 29, 2020) (Mr. Liebowitz "stonewalled discovery requests" related to registration, and blamed the registration not including the work on "mistake[]"); *Polaris Images Corp. v. CBS*

*Interactive, Inc.*, 19-cv-3670, 2019 WL 5067167, at *3 (S.D.N.Y. Oct. 9, 2019) ("[G]iven the frequency with which Mr. Liebowitz commits 'administrative errors,' the undersigned is unconvinced that they are indeed good faith oversights"); *Chevrestt v. Barstool Sports, Inc.*, No. 20-CV-1949, 2020 WL 2301210, at *2 (S.D.N.Y. May 8, 2020) (rejecting "Mr. Liebowitz's recurring, unacceptable excuse" of administrative error).

## I.     The Sanctions Order and Post-Sanctions

On June 26, 2020, the Court issued the Sanctions Order at issue in this appeal.  The order spent 54 pages and a seven-page appendix detailing Appellants' sanctionable behavior and history.  SPA1-61.  Some of the non-monetary sanctions required compliance within 30 days.

On July 20, 2020, Appellants, having already paid the monetary portion of the sanctions award, filed a motion with the district court, asking for a stay of the non-monetary sanctions pending appeal.  On July 22, 2020, the district court issued a 14-page decision detailing the meritless nature of the stay request and Appellants' lack of any serious chance on appeal.  SPA62-75.

On July 23, 2020, Appellants then asked this Court for a stay of the sanctions, which this Court denied, first through Judge Livingston on July 27, and then by a three-judge panel on August 21, 2020.

23

On November 30, 2020, the district court issued an opinion finding that Mr.
Liebowitz violated the Order at issue at least *113 times* in five months.  *See* ECF
No. 87 at 4.  That same day, the Grievance Committee unanimously suspended Mr.
Liebowitz's right to practice law in the Southern District of New York, effective
immediately to "protect the public."  *Id.* at 8.

## 2.    Ruling Presented for Review

By its Order of June 26, 2020, the district court imposed multiple sanctions
on Appellants.  SPA54.  Those sanctions were based on a series of findings.

First, the court found that Mr. Liebowitz "violated at least six of the Court's
Orders."  SPA26-27.  The district court found that Mr. Liebowitz's violations
"were willful" and "part of an even longer pattern of violations in scores of cases."
SPA27-28.  These findings are not challenged by Appellants.

Second, the court found that Mr. Liebowitz repeatedly lied about whether
the mediator had granted permission for Mr. Usherson to participate
telephonically.  SPA35.[4]

Third, the court found that Mr. Liebowitz and LLF failed to investigate
whether the photograph at issue had been registered and therefore whether the

---

[4] The court also found that Mr. Liebowitz repeatedly lied about receiving
permission for him to send his associate instead of him on a preponderance of the
evidence, but tied his sanctions to findings made on clear and convincing evidence.

24

lawsuit could be properly commenced, had assured the court it had been registered, and failed to investigate the issue even after being put on notice. SPA38-44.

Based on these findings, the district court imposed a range of sanctions, pursuant to Federal Rule of Civil Procedure 16, 28 U.S.C. § 1927, and the court's own inherent authority, designed to deter Mr. Liebowitz's conduct. These sanctions included, *inter alia*:

(1) Mr. Liebowitz and LLF pay the Clerk of Court sanctions totaling $103,517.49;

(2) Mr. Liebowitz serve a copy of the sanctions Opinion and Order on Mr. Usherson;

(3) Mr. Liebowitz and LLF serve a copy of the Opinion and Order on each of LLF's current clients;

(4) Mr. Liebowitz and LLF file a copy of the Opinion and Order on the docket of any currently pending case brought by Mr. Liebowitz/LLF;

(5) In any action filed within one year of the Opinion and Order by Mr. Liebowitz or LLF, Appellants file a copy of the Opinion and Order on the docket of the case; and,

(6) In any action filed by Appellants within one year that involves allegations or claims of copyright infringement, the complaint shall include as an attached exhibit a copy of the deposit files maintained by the Copyright Office reflecting prior registration of the relevant copyrighted work or works at issue.

SPA54.

## SUMMARY OF ARGUMENT

Mr. Liebowitz and LFF cannot seriously contest any of the factual bases for the district court's thorough opinion.

Appellants cannot (and do not) deny that Mr. Liebowitz violated many of the court's orders. SPA26-27.

They cannot deny that neither Mr. Usherson nor Mr. Liebowitz showed up for the mediation on October 31, a date chosen by Mr. Liebowitz as a date that he and Mr. Usherson could be in New York. JA66-69.

They cannot deny that as of the night of October 30, Mr. Liebowitz was in Los Angeles, and the elderly Mr. Usherson was in Georgia, neither with any plans to attend the mediation. JA390, 407-408.

They cannot deny that Mr. Liebowitz had his associate and his sister attend in his place, and first told his associate about the existence of the case on October 30, a fact Mr. Liebowitz lied about under oath multiple times, even in the face of a sworn declaration and statements in court from his associate. JA153-154, 158, 382.

They cannot deny that Mr. Liebowitz has no evidence for his claim that he received permission from the mediator to defy the Court's Order and have his client attend telephonically. JA444.

They cannot deny the mediator's unequivocal testimony that *he specifically told Mr. Liebowitz his client had to appear in person based on the court's Order and the Mediation Office's instructions*, and Mr. Liebowitz never even raised the possibility Mr. Usherson might not attend. JA444 ("Q. Did [Mr. Liebowitz] ask your permission for Mr. Usherson to appear by phone. A. No."). *See also* JA227, 439-40, 444, 451-54.

They cannot deny that Mr. Liebowitz lied under oath about getting permission in the past as a matter of course from the same mediator. JA355-356, 366, 464-65.

They cannot deny the various emails in the record, including from the night before the mediation, showing that the mediator and Defendant's counsel expected Messrs. Liebowitz and Usherson to be there, and Mr. Liebowitz's own emails, saying nothing about he or his client not being there. JA75-93.

They cannot deny that in an effort to avoid this sanctions motion, they (in what has become a pattern for them), abandoned this case. JA235. As Judge Furman warned them beforehand, however, that tactic was not going to work. JA260.

They cannot deny that they filed this case even though Mr. Usherson did not have a copyright registration on the work in question, which was fatal to Plaintiff's case. *See* JA14 ¶ 9; JA340-41.

27

They cannot deny that Defendant's counsel put them on notice of his suspicions regarding the copyright registration at the first court conference on November 14, 2019, and when the court asked about it, Mr. Liebowitz avoided early discovery by assuring the court that the photograph was registered through the registration number cited in the Complaint. JA252-253.

They cannot deny that Mr. Liebowitz knew those assurances were false, given that the CD-ROM given to them by their client did not contain the photograph, and given that two months earlier, on August 22, 2019, he and LLF attempted to cover up their mistake by registering the photograph post-Complaint (even though such post-Complaint actions are futile under the law). JA300-01, 340-341.

They cannot deny that the Copyright Office deposit copies, received by Defendant's counsel after settlement, conclusively proved that the claimed registration did not contain the photograph in question.[5] JA471-472; SPA19-22.

And finally they cannot deny the *dozens* of times Mr. Liebowitz has been sanctioned prior to this case for instances of outright lies to the judges of the district courts of this Circuit and others, including outlandish actions such as lying

---

[5] Nor is this the only time a court has been suspicious that Mr. Liebowitz and LLF filed a case where a photograph had not actually been registered. *See, e.g.*, *Rock*, 2020 WL 468904, at *3-4 (Mr. Liebowitz and LLF "fail[ed] to investigate the evidentiary basis for a Complaint" by flouting his "responsibility to ensure that the Photograph was registered before filing the Complaint").

about the day his grandfather died to excuse missing a court hearing, *Berger v. Imagina Consulting, Inc.*, No. 18-CV-8956 (CS), 2019 WL 6695047, at *3 (S.D.N.Y. Nov. 1, 2019), or forging his client's signature on Interrogatory responses never seen by his client, *Wisser v. Vox Media, Inc.,* No. 19 CIV. 1445 (LGS), 2020 WL 1547381, at *6 (S.D.N.Y. Apr. 1, 2020); SPA55-61 (listing 40 different cases as examples). *See also infra* at Argument, Section 4.

Because of the overwhelming evidence against them, Appellants cherry-pick just a few of Mr. Liebowitz's egregious actions, ignore the rest itemized in the sanctions order, and then argue that Mr. Liebowitz somehow does not deserve these sanctions. However, their arguments amount to a claim that, as a matter of law, large monetary sanctions or requirements related to future filings are *per se* improper. This is because arguably no attorney in U.S. history has ever deserved a higher level of sanctions than Richard Liebowitz. If these sanctions are to be overturned, it would be akin to saying that the sanctions at issue are never appropriate. Unfortunately for Appellants, the law gives courts great flexibility in designing sanctions, and there is nothing in the district court's opinion that rises to the level of abuse of that discretion.

## **ARGUMENT**

The district court's order below should not be disturbed. The court's findings that Mr. Liebowitz violated multiple orders, lied to the court, and brought and maintained the lawsuit below in bad faith, are all well-supported by the record. In light of the district court's findings, the sanctions imposed were not an abuse of discretion, especially given Appellants' history of prior sanctions (by dozens of judges of the court below and others) not affecting their behavior.

And, of course, since the order at issue, Appellants have been sanctioned by even more courts, have violated the order below at least 113 times, and Mr. Liebowitz's ability to practice law in the Southern District of New York has been suspended.

**1.     The district court's findings that Mr. Liebowitz violated six court orders, lied to the court, and brought and maintained the copyright infringement lawsuit in bad faith, were not an abuse of discretion.**

As an initial point, Appellants do not deny that they violated "at least six of the Court's Orders." SPA26. In fact, they skip those findings *entirely*.[6]

---

[6] Appellants also ignore that the district court's opinion was quite focused, and was lenient regarding Mr. Liebowitz's persistent, repeated lies to the court. For instance, based on the above recitation of facts, the court could easily have found by clear and convincing evidence that Mr. Liebowitz lied about being given permission from the mediator to have his associate, James Freeman, appear in his stead. Mr. Liebowitz even claimed Mr. Freeman was actually trial counsel (despite never entering an appearance) and had extensive involvement on the case. However, Mr. Freeman submitted two sworn declarations and stated in court that he had no involvement and was not even aware of the "existence" of this case until

30

Appellants maintain instead that the district court abused its discretion when it found, by a mountain of clear and convincing evidence, that Mr. Liebowitz lied to the court in bad faith about whether the mediator gave permission for Mr. Usherson to attend the mediation by telephone, and that Mr. Liebowitz falsely alleged in the Complaint that the photograph at issue was registered prior to initiating the lawsuit and then lied about the registration being incorrect and maintained this lawsuit despite being put on notice regarding the issue concerning the registration.

Of course, even on those points, Appellants cannot seriously challenge the findings of the district court. The court's factual findings—described in over 54 pages and attaching a seven-page appendix—are overwhelmingly supported by both testimonial and documentary evidence *with absolutely **no** documents backing up Appellants' story*, and the only testimonial evidence in support of Appellants' position being Mr. Liebowitz's self-serving and constantly-changing testimony.

The decision at issue was not a gut reaction or a vendetta: The district court properly based its factual findings in large part on the credibility assessments it made, as the fact-finder in this case, after reviewing various sworn declarations and

the night before the mediation. Mr. Liebowitz's only explanation was that Mr. Freeman must have somehow forgotten all the work he did. JA153-54, 206, 337, 376-84, 411-14.

filings, after reviewing documentary evidence, and after conducting a full evidentiary hearing and listening to several hours of testimony. *See, e.g.*, SPA13-19, 29-44 (recounting relevant portions of testimony from evidentiary hearing and making credibility determinations). Appellants barely touch the evidence, focusing instead on a couple of vague statements to make it appear as if less evidence supported the court's ruling and as if the court made its decision simply based upon a disliking of Mr. Liebowitz himself.

A district court abuses its discretion if its ruling is based on a clearly erroneous view of the evidence. *Cooter & Gell*, 496 U.S. at 405. A court may impose sanctions under its inherent power or under Section 1927 when: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted). "[B]ad faith may be inferred … if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

An abuse of discretion did not occur in this case. In fact, the district court let many of Mr. Liebowitz's false statements go by and focused on just a few specifics based on clear and convincing evidence. A full review of Mr.

32

Liebowitz's testimony from the January 8, 2020 hearing, JA351-426, shows that his sworn testimony often crossed the line from duplicitous to outright preposterous. As such, the court showed remarkable restraint.

### A. The district court did not abuse its discretion in finding that Mr. Liebowitz lied in bad faith representing that the mediator gave permission for Mr. Usherson to attend mediation by phone.

In attempting to argue that the district court abused its discretion in finding that Mr. Liebowitz lied in bad faith about whether the mediator gave permission for Mr. Usherson to attend the mediation by phone, Appellants attack the district court's view and weighing of evidence.

Appellants' attacks are based purely on the idea that the district court should not have weighed the evidence *at all*, but rather should have accepted the testimony of Mr. Liebowitz, just because those excuses brought up a conflict in the evidence. Essentially, Appellants ask this Court to ignore all of the evidence—which Appellants do as they focus only on a couple of vague statements—and rely instead on the constantly-changing stories of a person who has lied so many times to so many judges that he recently had his ability to practice law in the Southern District of New York suspended by a 10-judge committee, which found that they needed to institute the punishment immediately so as to "protect the public." *See* Brief of Appellants ("App. Br.") at 31-42; *see also* ECF No. 87 (suspending Mr. Liebowitz's ability to practice in Southern District of New York).

33

Moreover, it should not be ignored that Appellants' first argument (App. Br. at 32-33) is to disparage the very mediator hand-picked by Mr. Liebowitz, and imply that he committed perjury in both a sworn declaration and in testimony under oath to avoid letting the court know that he had a practice of letting Mr. Liebowitz violate the strict mediation rules and local rules of the court. That they do so is both desperate and distasteful.

Putting aside the untoward nature of this line of defense, it fits with Appellants' history of blaming others for their deception. Here, Appellants must admit that Mr. Liebowitz's failure to attend the mediation at all and to have Mr. Usherson not appear in person violated court rules and a **direct order by Judge Furman and follow-up directives by the Mediation Office**. However, Appellants say it is all the mediator's fault, because he supposedly allowed Mr. Liebowitz to violate the rules and orders and then tried to cover up his supposed permissions by lying to the court. Interestingly, Appellants never explain why they would have asked the mediator for permission for Mr. Usherson to appear telephonically at all. Mr. Liebowitz had already asked the Mediation Office and the court for permission to have Mr. Usherson appear telephonically: both entities denied that request, and the district court admonished Mr. Liebowitz and ordered Mr. Usherson to appear in person "in no uncertain terms." SPA5; ECF No. 13.

34

Mr. Liebowitz even admitted under oath that he knew any deviation from the rules had to come from the court and not the mediator. JA396.

The rest of Appellants' defense does not get any more lucid or credible. They pretend as if emails and declarations do not say what they actually say. For instance, there is an email string where Defendant's counsel responded to the mediator's idea from the night before mediation that the mediation might be avoided if the parties could settle late that night. Defendant's counsel noted that Mr. Usherson had likely already flown to New York, and the mediator responded "I understand." JA93. Appellants suggest that Defendant's counsel somehow knew Mr. Usherson was not attending (despite even Mr. Liebowitz testifying that he never told Defendant's counsel, JA242), and that the mediator lied to Defendant's counsel so as not to blow up an in-person mediation he knew was never going to take place.

Appellants' defense further ignores numerous emails, declarations, filings, and statements in open court supporting the court's opinion. To focus on a single email or a single line of mediator testimony does nothing to put aside all of the other evidence. Appellants' argument also ignores that there is not a single piece of evidence supporting their theory. Mr. Liebowitz picked the October 31 mediation as the date he and his client could both be in New York and attend the

35

mediation in person. Not a single document shows him suggesting that either of them might not attend.

The court further supported its finding that Mr. Liebowitz lied, in bad faith, about the mediator granting permission for Mr. Usherson to attend mediation telephonically, on its assessment of the witnesses' demeanor and credibility— something that Appellants reference only in passing, to minimize the weight of this credibility assessment. *See* App. Br. at 31. As Appellants themselves concede, the issue of Mr. Liebowitz's veracity turns on credibility—whether Mr. Liebowitz should be believed rather than the mediator, opposing counsel, the significant documentary evidence, and even his own associate. Moreover, the district court's assessment of witnesses' credibility is important and entitled to deference. *United States v. Norman*, 776 F.3d 67, 77 (2d Cir. 2015) (credibility determinations are "squarely within the province of the factfinder"); *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008) (This court "give[s] particularly strong deference to a district court finding" on credibility assessments.).

Other than piecemeal attacks on the district court's findings, relying on nothing more than cherry-picking the record out of context, Appellants offer no argument as to why the district court's thorough analysis of the evidence amounted to an abuse of discretion. Indeed, the district court's finding was well-supported, based on various facts, including:

36

- the district court's order in "no uncertain terms" (SPA5) and the Mediation Office's directive (JA83) that Mr. Usherson attend in person (Mr. Liebowitz even admitted he knew he could not get permission from the mediator, but only the court to deviate from the rules (JA396));

- that the mediator unequivocally and directly contradicted Mr. Liebowitz's claim of permission (SPA30-31);

- that Mr. Liebowitz picked the October 31 mediation date supposedly because it was a day Mr. Usherson could fly to New York (SPA5, JA88);

- that the documentary evidence, sworn declarations, and testimony from witnesses made it clear that neither the mediator nor defense counsel knew Mr. Usherson would not be attending the mediation until he did not show that day (SPA4-5, 29-37; JA67-93, 227, 429, 439, 444-47);

- that there was no evidence Mr. Liebowitz even informed Mr. Usherson about the mediation prior to the date thereof; Mr. Liebowitz even claimed that if the mediator rejected his supposed request the night of October 30, he would have called the elderly Mr. Usherson and had him rush to the airport (SPA31);

- that Mr. Liebowitz's demeanor and testimony rendered him "unworthy of belief" (SPA31-32);

37

- that Mr. Liebowitz's testimony was even contradicted by the sworn statements of his associate, Mr. Freeman (SPA17, 32-33; JA153-54, 206, 337, 376-84, 411-14);

- that Mr. Liebowitz's testimony was internally inconsistent and shifting (SPA33-35; JA355-436); and,

- that Mr. Liebowitz's conduct was part of a broader pattern of omissions and misrepresentations to the court (SPA35-36).

The district court's careful analysis is more than adequate to support its finding that Mr. Liebowitz lied as he repeatedly told the court that the mediator had given permission for Mr. Usherson to appear telephonically and continuously fabricated new stories in an attempt to cover up his lie. *See Enmon*, 675 F.3d at 146 (affirming district court in imposing sanctions based on evidence of "persistent misrepresentations and . . . bad faith") (internal quotation marks omitted). Similarly, the district court was well within its discretion in finding that Mr. Liebowitz was acting in bad faith when he made these misrepresentations, because there is no proper purpose for which Mr. Liebowitz could have repeatedly made these false statements—something Appellants admitted. *See* JA476 (statement by Mr. Freeman, representing Appellants, that if Court were to find that Mr. Liebowitz lied, court could impose sanctions pursuant to its inherent authority).

**B.** **The district court did not abuse its discretion by finding that Mr. Liebowitz brought and maintained the lawsuit in bad faith.**

Second, the district court's finding that Mr. Liebowitz brought and maintained the copyright lawsuit below in bad faith is firmly supported. The Complaint filed by Mr. Liebowitz clearly states, in Paragraph 9, "The Photograph was registered with [the] United States Copyright Office and was given Copyright Registration Number VAu 1-080-046." JA14. But that allegation—without which the Complaint could never have been filed under the law—is undisputedly false, a fact that 1) Mr. Liebowitz either lied about from the outset or failed to investigate, 2) learned early on was false and tried to cover up, and then 3) hid from the court when this issue was raised.

Appellants try to shift the blame for their errors to Mr. Usherson, stating that "Mr. Usherson believed that the Photograph at issue was part of the 046 Registration." App. Br. at 43. They then try to shift the blame away from Mr. Liebowitz specifically, and to co-Appellant LLF. *Id.* at 44. But their arguments again fall short.

First, the district court's analysis is not inconsistent as Appellants claim. As the court pointed out, even setting aside that Mr. Liebowitz failed to verify that the Photograph had been registered at the time he drafted and filed the Complaint (something Appellants have admitted is their practice), the evidence shows that Mr. Usherson sent Appellants a CD-ROM of the photographs subject to the cited

registration before the Complaint was filed; and after the Complaint was filed, he sent Appellants a second CD-ROM with the photograph at issue, which Appellants then registered (too late). JA300-01, 330-32, 338-41. Mr. Liebowitz throws his co-Appellant under the bus by suggesting that LLF (but not Mr. Liebowitz) was aware that the Photograph was not registered. App. Br. at 44. However, that argument ignores that Mr. Liebowitz was the only attorney of record and the only LLF attorney working on this case. JA1. The district court correctly inferred that Mr. Liebowitz should have been aware that the allegation in Paragraph 9 of the Complaint was incorrect no later than when Mr. Usherson submitted the photograph at issue to Appellants, which they registered in August 2019.

Appellants next argue that the district court should have found that Mr. Liebowitz made a simple mistake, and did not act in bad faith. App. Br. at 45-48. But the district court's careful analysis revealed that Mr. Liebowitz acted in bad faith not only because he did not investigate the registration issue prior to signing and filing the Complaint, but because he lied to the court about the registration being correct when pressed on it and continued to prosecute this case even after he was made aware of this issue at the November 2019 conference. SPA9-10, 19-22, 38-44.[7]

---

[7] As a red herring, Appellants note that the court "*separately* criticized Mr. Liebowitz" for attempting to argue that the defect in this case could have been cured with an amended pleading, *see* App. Br. at 46-47 (emphasis added).

40

The evidence shows that Mr. Liebowitz continued his practice of prosecuting copyright cases without conducting *any* investigation into the merits of the claims, and that he continued to prosecute this case and lied about the Photograph being subject to the registration cited in the Complaint in order to avoid early discovery and for the sole purpose of trying to extract a settlement—something that courts have noted as his go-to litigation tactic. *See Rock*, 2020 WL 468904, at *3-4 (observing Mr. Liebowitz's "notorious" litigation strategy of filing baseless claims to get settlements). Such conduct of pursuing meritless claims simply to extort a settlement is indisputably an improper purpose that supports a finding of bad faith necessary for sanctions. *See In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000) ("[B]ad faith may be inferred where the action is completely without merit."). Therefore, the district court was within its discretion

---

Appellants cite cases that actually "reach[ed] the same conclusion" that such a defect is not curable, but suggest that this is not a settled issue as if this minimizes Appellants' lies and responsibility to investigate facts behind a complaint. *Id.* Mr. Liebowitz was on notice that a Complaint filed without a proper registration is not curable since the Supreme Court's decision in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019), JA251-252; SPA20-21. And, Mr. Liebowitz has failed to conduct the proper investigation in other cases. *See, e.g.*, *Rock*, 2020 WL 468904, at *3-4 (finding Mr. Liebowitz and LLF "fail[ed] to investigate the evidentiary basis for a Complaint" by flouting his "responsibility to ensure that the Photograph was registered before filing the Complaint"). The facts here make it clear that Appellants knew the defect was not curable and were hoping to get a settlement before their duplicity was uncovered.

41

in making its finding that Mr. Liebowitz acted in bad faith in bringing and maintaining the copyright claim below.

**2.     The district court's imposition of monetary sanctions was not an abuse of discretion.**

The district court did not abuse its discretion by ordering Appellants to pay $103,517.49 in sanctions, which they did, and which was comprised of an $83,517.49 sanction for continually misrepresenting that the mediator gave permission for Mr. Usherson to attend the mediation by phone in violation of the court's order, and a separate $20,000 sanction for falsely alleging that the Photograph was registered and failing to reasonably investigate that matter after being put on notice.  SPA49-50.  These sanctions were ordered pursuant to the district court's inherent authority as well as Federal Rule of Civil Procedure 16 and 28 U.S.C. § 1927.  SPA51.

**A.     The $84,517.49 sanction was not an abuse of discretion.**

Appellants complain that the district court abused its discretion by imposing a sanction of $83,517.49 based on Bandshell's attorneys' fees and costs because (1) Bandshell was being represented pro bono, (2) most of the time entries included in the sanctions award related to work performed for the sanctions motion rather than the underlying lawsuit, and (3) the court decided not to issue additional sanctions based on Mr. Liebowitz's failure to attend the mediation, even as it found that Mr. Liebowitz violated multiple court orders through his failure to attend and

42

likely lied about being given permission to not attend. Each of these arguments should be rejected.

First, Appellants' contention that monetary sanctions were improper because Bandshell was represented pro bono can be quickly dismissed. There is ample precedent that where monetary sanctions are appropriate for bad faith conduct, and the opposing party was represented on a pro bono basis, the court may still order reasonable attorney's fees be paid by the offending party. *See Dallas v. Goldberg*, No. 95-cv-9076, 2003 WL 22872325, at *1 (S.D.N.Y. Dec. 5, 2003); *Nat'l Lawyers Guild v. Att'y Gen.*, 94 F.R.D. 616, 618 (S.D.N.Y. 1982). The opposite result would create perverse effects, essentially shielding bad-faith conduct by lawyers from being penalized through monetary sanctions, as long as the other party had pro bono counsel. The representation status of the opposing party has no bearing on whether or not Appellants should be sanctioned for their misconduct. *See Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) (purpose of sanctions "would be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse").

Second, there is no merit to Appellants' argument that the sanctions award should not include fees associated with time related to the sanctions motion. This Court (as Appellants admit) has previously affirmed such an award. *See Enmon*, 675 F.3d at 148 ("[W]e also see no error in the district court's order requiring

Arnold & Itkin to pay for the costs associated with defending the sanctions motion itself."). The district court therefore was supported by precedent, and did not abuse its discretion.

Third, the district court did not abuse its discretion by imposing the monetary sanctions simply because the court decided not to issue additional sanctions based on one of the many grounds available to it. Appellants rely on the Supreme Court's holding in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017). There, the Court stated that in imposing sanctions, the court can shift attorneys' fees incurred as a result of the party's misconduct, but may not impose larger sanctions for punitive purposes. *Id.* at 1186. Appellants interpret this to mean that here, because the court decided not to issue additional sanctions based on Mr. Liebowitz's violations of its orders related to mediation and found that Mr. Liebowitz lied to the court only based on the "preponderance of the evidence" and not by clear and convincing evidence, the attorneys' fees related to the sanctions motion should be cut in half at least. App. Br. at 51.

That argument cuts directly against the guidance in *Goodyear* that "trial courts … need not, and indeed should not, become green-eyeshade accountants (or whatever the contemporary equivalent is)." 137 S. Ct. at 1187 (internal quotation marks omitted).

44

The district court based its monetary award on the evidence defense counsel submitted of the time it spent in connection with the sanctions motion, and that motion was almost entirely victorious. In fact, Appellants are simply trying to use the court's leniency against it—as the district court opinion makes clear, it was actually conservative in its ruling. Furthermore, there is no feasible way to retroactively calculate how much of the time spent in connection with the sanctions motion should be apportioned to specific arguments, especially given that it was Mr. Liebowitz's continued and varied falsehoods that raised the expenses of both sides, and forced the court to call an evidentiary hearing *sua sponte*.

This Court reached a similar conclusion in *Enmon*, affirming the district court's award of the full cost of the sanctions motion, even where part of the motion was denied, because the motion was "well founded" and "the high cost of preparing the sanctions motion is attributable largely to Arnold & Itkin's extraordinary pattern of misrepresentations and unreasonable litigation in this case." 675 F.3d at 148-49. Here, too, the district court was squarely within its discretion in fashioning the monetary sanctions award.

### B. The $20,000 sanction was not an abuse of discretion.

With respect to the $20,000 sanction that the district court imposed related to the copyright registration, Appellants contend that this amounts to an impermissible punitive measure. App. Br. at 53. Appellants assert that the award

45

is punitive in nature because it was ordered to be paid to the district court, the award was based on prior wrongful conduct, and Appellants were given no opportunity to purge. *Id.* at 54. But these arguments completely misread the district court's analysis.

The district court was clear that the order was not based solely on Mr. Liebowitz's past conduct, but on "Mr. Liebowitz's stonewalling of any investigation into the registration at issue once it was raised by opposing counsel." SPA51. Further, with respect to the amount of sanctions, a $20,000 award is not excessive. The district court determined it was "no greater than necessary to provide adequate deterrence." *Id.*

Appellants argue the sanction was punitive because the district court chose not to include a 'purge provision,' allowing Appellants to avoid the sanction by foregoing future misconduct. *See* App. Br. at 54-55. But that argument holds little weight, especially seeing how Appellants have not abided by various requirements imposed by the sanctions order. In fact, the district court has found that Appellants violated the requirements imposed in the sanctions order at least 113 times in the first five months after it was issued. *See* ECF No. 87 at 4. As such, the court has been proven correct in not relying on its nonmonetary sanctions alone to deter Appellants' future misconduct given their history. *See In re Gravel*, 601 B.R. 873, 895-96 (D. Ver. 2019) (sanctions non-punitive where party had long history of

46

misconduct and repeated admonitions, and sanctions were necessary to deter such future violations) (collecting cases).

### 3. The district court's imposition of non-monetary sanctions was not an abuse of discretion.

Similarly, Appellants' arguments fail with respect to the district court's order that Appellants file a copy of the court's opinion and order, and file the official deposit files from the U.S. Copyright Office in any action the Appellants file nationwide within a year. Appellants maintain that these sanctions are an abuse of discretion because their misconduct is not severe enough to warrant nationwide sanctions, and that the requirement to file a deposit copy impermissibly shifts the burden of proof in copyright cases. App. Br. at 56-60.

First, Appellants' conduct warrants nationwide sanctions. Appellants themselves concede that in cases where litigants have engaged in repeated conduct which abused the legal system, nationwide sanctions have been appropriate. App. Br. at 57. Appellants' only argument is to severely minimize the extent of Appellants' pattern of misconduct, which was carefully chronicled by the district court. *See* SPA1-2, 35-38, 43-46, 55-61.

Second, Appellants offer no reason why the nonmonetary sanctions imposed by the district court should *not* be nationwide. There is no dispute that Mr. Liebowitz and LLF file cases across the country, and that numerous courts across the country have already sanctioned them for their misconduct. *See, e.g.*, *id.* Nor

47

is there any requirement that the district court's sanctions must be confined to the Southern District of New York. *See Gallop v. Cheney*, 667 F.3d 226, 230-31 (2d Cir. 2012) (ordering counsel to file copy of sanctions order in any cases filed with any courts within the circuit for one-year period). The district court's jurisdiction over Appellants is certainly not confined to the district, or even to the circuit, in which the court sits. For instance, an attorney in New York who is subject to monetary sanctions may need to obtain those funds from a bank account maintained in a different state (and a party in a case is frequently ordered to take actions throughout the world). And, in cases involving such extensive patterns of abusive litigation tactics, this Court has recognized that sanctions applicable across the federal system are "necessary and proper." *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) ("We regard the restrictions placed upon Martin-Trigona's bringing of new actions in all federal district courts as necessary and proper. The district court is part of the federal judicial system and has an obligation to protect and preserve the sound and orderly administration of justice throughout that system.").

In fact, Appellants challenge the non-monetary sanctions which are nationwide, yet they concede (by not challenging it) that the non-monetary sanctions issued which were *worldwide* were appropriate. The federal docket is full of Appellants bringing copyright actions on behalf of their clients who reside

48

outside the United States, and Appellants raise no issue with the order's requirement that they serve the sanctions order on every one of those clients.

Accordingly, Appellants' arguments that sanctions should be limited to cases filed within the Southern District of New York must be rejected.

Finally, the requirement that Appellants obtain a deposit copy of copyright registrations prior to commencing lawsuits does not shift the burden of proof. Appellants argue that the burden of obtaining a deposit copy should fall on a "defendant who wishes to challenge the validity of a plaintiff's copyright registration." App. Br. at 59. But that is not the law. A plaintiff gets a presumption that a work is copyrightable if *it can show* that it has a valid registration. One cannot simply list a random copyright registration number in a complaint and claim that it is the defendant's fault for being fooled. And, while typically, when an attorney signs a pleading stating that a work was part of a registration, that attorney's word can be taken as true, *see* Fed. R. Civ. P. 11, here, the district court found that Appellants failed to conduct any reasonable investigation in this matter to verify whether the Photograph was registered, even *after* this issue was highlighted to them by opposing counsel and the court and even though they had the CD-ROMs showing that their allegations were false. They, in fact, falsely insisted that the registration was correct to delay the truth and enter into a settlement.

49

Furthermore, Appellants have a history of filing copyright lawsuits without having properly investigated and confirmed that their client actually owns the copyright registration for the work at issue.  SPA42-44.  Accordingly, the district court acted within its proper scope of discretion in requiring Appellants to obtain a file a deposit copy of copyright registrations.  *See In re Martin-Trigona*, 737 F.2d at 1262 ("The district court in the present case thus had the power and the obligation to protect the public and the efficient administration of justice from Martin-Trigona's litigious propensities.").

**4.    In the event this case is remanded for further proceedings, Appellants have not demonstrated that unusual circumstances warrant reassigning this case to a different district judge.**

Finally, if the Court determines that this case should be remanded to the district court for further proceedings, Appellants have not shown that reassigning this case to a different District Judge is warranted.  This Court has stated that "[r]eassignment is justified only in 'unusual circumstances.'"  *L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 118 (2d Cir. 2020) (quoting *Martens v. Thomann*, 273 F.3d 159, 174 (2d Cir. 2001)).  Several factors are considered when such a request is made, including:  "(1) whether the judge is likely to have 'substantial difficulty' putting out of mind 'previously-expressed views or findings determined to be erroneous'; (2) whether reassignment is 'advisable to preserve the appearance of justice'; and (3) whether it would create 'waste and duplication out

50

of proportion to any gain in preserving the appearance of fairness.'" *Id.* (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (per curiam)). Applying these factors here, Appellants' request should be rejected.

First, the evidence does not indicate that Judge Furman, the district judge below, would have substantial difficulty abiding by any rulings issues by this court. The record below shows that Judge Furman undertook to make findings and rulings impartially. As Appellants admit, Judge Furman did not blindly accept every possible ground for sanctioning Mr. Liebowitz and LLF, even when he believed them to be true. *See* App. Br. at 51-52. Similarly, Judge Furman discounted a portion of the attorneys' fees expended by defense counsel to ensure that his sanctions award was fair and appropriate. SPA50; *Gonzalez v. Hasty*, 802 F.3d 212, 225 (2d Cir. 2015) (rejecting request for reassignment where record lacked evidence that district judge "would have difficulty putting aside any of his previous views of the case that are contrary to those of this Court expressed or implied in this opinion").

The second and third factors (ensuring the appearance of justice and avoiding a waste of resources) go hand-in-hand here and weigh against reassigning this case. The simple fact is that Judge Furman is far from the only judge in the Southern District of New York to have sanctioned Mr. Liebowitz. While that

district may have many judges, there would be few left if this Court were to

eliminate the ones who had sanctioned Mr. Liebowitz.  For just some examples:

- Judge Kaplan found Mr. Liebowitz's recusal motion against him to be "baseless" and held that Mr. Liebowitz made "false" statements "under penalty of perjury."  *Sands v. Bauer Media Grp. USA, LLC*, No. 17-CV-9215(LAK), 2019 WL 6324866, at *2-3 (S.D.N.Y. Nov. 26, 2019).  *See also Konangataa v. Am. Broadcastingcompanies, Inc.*, No. 16-CV-7382(LAK), 2017 WL 2684067, at *2 (S.D.N.Y. June 21, 2017) (finding "no reasonable lawyer with any familiarity with the law of copyright" could have made claims Mr. Liebowitz did).

- Judge Cote labeled Mr. Liebowitz a "copyright troll," and denied Mr. Liebowitz's motion to withdraw that term from the record, saying it was "apt." *McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 5312903, at *3 (S.D.N.Y. Oct. 26, 2018).  *See also Sadowski v. Ziff Davis, LLC*, No. 20CV2244(DLC), 2020 WL 3397714, at *4 (S.D.N.Y. June 19, 2020) (Liebowitz "regularly fails to comply with court orders."); *Reynolds v. Hearst Commc'ns, Inc.*, No. 17CV6720(DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018), *reconsideration denied*, No. 17CV6720(DLC), 2018 WL 1602867 (S.D.N.Y. Mar. 29, 2018) ("Mr. Liebowitz also argues that plaintiff has not willfully disobeyed court orders, obstructed discovery, or increased the cost of litigation.  This is demonstrably false.").

- Judge Caproni found Mr. Liebowitz's excuses for violating court orders "disingenuous, distasteful, unpersuasive, and likely perjurious." *Chevrestt*, 2020 WL 2301210, at *2.

- Judge Seibel found Mr. Liebowitz in contempt and ordered him to show cause why he should not be incarcerated for continual violations of court orders and misstatements about his grandfather's death.  *Berger*, 2019 WL 6695047, at *3.

- Judge Schofield sanctioned Mr. Liebowitz because his actions in that case and his history of violating orders in other cases "provide clear evidence of a course of conduct taken in bad faith."  *Wisser*, 2020 WL 1547381, at *6.

- Judge Carter issued a sanction of over $100,000, finding that Mr. Liebowitz's "conduct—of failing to investigate the evidentiary basis for a Complaint, of stonewalling discovery, of misleading the Court, and of making meritless arguments—undoubtedly demonstrates bad faith." *Rock*, 2020 WL 468904, at *4.

- Judge Oetken sanctioned Mr. Liebowitz for almost $100,000 for filing a frivolous motion, and found Mr. Liebowitz's arguments regarding his supposed "genuine belief" as to the facts not credible. *Craig v. UMG Recordings, Inc.*, No. 16-CV-5439, 2019 WL 2992043, at *3 (S.D.N.Y. July 9, 2019).

In addition:

- Judge Woods noted that Mr. Liebowitz and his client made "untrue" statements to the Court and "consistently and undeniably asserted inflated values for" the copyright at issue. *Otto v. Hearst Commc'ns, Inc.*, No. 1:17-CV-04712-GHW, 2020 WL 377479, at *3 (S.D.N.Y. Jan. 23, 2020).

- Judge Nathan ordered Mr. Liebowitz's client post a bond to proceed with the case due to the likelihood that fees and costs would be awarded and Mr. Liebowitz's history of "failure to comply with court orders and for filing misleading documents with the courts." *Rice v. Musee Lingerie, LLC*, No. 18-CV-9130, 2019 WL 2865210, at *3 (S.D.N.Y. July 3, 2019).

- Judge Failla recognized the "notoriety" Mr. Liebowitz gained through his misdeeds. *Polaris Images Corp. v. ENTtech Media Grp. LLC*, No. 19 CIV. 8208 (KPF), 2020 WL 2904865, at *1 (S.D.N.Y. June 3, 2020).

- Judge Cott made a similar statement in *Otto v. Hearst Commc'ns, Inc.,* No. 17CV4712GHWJLC, 2019 WL 1034116, at *12 (S.D.N.Y. Feb. 21, 2019).

As such, reassignment would only waste judicial resources. The newly assigned judge would not only have likely sanctioned or warned Mr. Liebowitz in the past, but would also be forced to come up to speed on the large record which caused the sanctions order. *See Martens*, 273 F.3d at 175 (rejecting request for

53

reassignment where the district judge was intimately familiar with the facts and reassignment "would necessarily engender a good deal of waste and duplication").

Accordingly, Appellants have not shown that this is an exceptional case that should be reassigned to a different district judge in the event this matter is remanded.

## CONCLUSION

For the above reasons, Bandshell respectfully submits that the Court should affirm the ruling of the district court.

Dated: December 18, 2020                    Respectfully submitted,

*/s/ Brad R. Newberg*
Brad R. Newberg (#BN1203)
McGuireWoods LLP
1750 Tysons Blvd.
Tysons Corner, VA 22102
T: 703-712-5061
F: 703-712-5050
bnewberg@mcguirewoods.com

*Counsel for Defendant-Appellee*
*Bandshell Artist Management*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because it contains 12,308 words, excluding the parts of the brief exempted by rule.

2.      This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally-spaced typeface using Microsoft Word, in 14-point size.

*/s/ Brad R. Newberg*
Brad R. Newberg

*Counsel for Defendant-Appellee*
*Bandshell Artist Management*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2020, the foregoing was electronically filed with the Clerk of the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the system.

/s/ Brad R. Newberg
Brad R. Newberg

*Counsel for Defendant-Appellee*
*Bandshell Artist Management*