# 20-2304-cv

## United States Court of Appeals

*for the*

## Second Circuit

ARTHUR USHERSON,

*Plaintiff,*

RICHARD P. LIEBOWITZ, LIEBOWITZ LAW FIRM, PLLC,

*Miscellaneous-Appellants,*

– v. –

BANDSHELL ARTIST MANAGEMENT,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR APPELLANTS

ROBERT J. ANELLO
BRIAN A. JACOBS
KEVIN GROSSINGER
A. DENNIS DILLON
MORVILLO ABRAMOWITZ GRAND IASON
  & ANELLO P.C.
*Attorneys for Appellants*
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY BASING
SANCTIONS ON CLEARLY ERRONEOUS FINDINGS OF FACT .........3

       A.     The District Court Abused Its Discretion By Finding that Mr.
Liebowitz Falsely Asserted in Bad Faith that He Got Permission
for Mr. Usherson to Participate in the Mediation by Telephone .........3

       B.     The District Court Abused its Discretion By Finding that Mr.
Liebowitz Supposedly Brought and Maintained this Case in Bad
Faith By Falsely Alleging that the Photograph was Registered
Prior to the Suit and Not Conducting a Reasonable Investigation......12

II.    THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING
EXCESSIVE MONETARY SANCTIONS ...................................................17

       A.     The Excessive $83,517.49 Sanction...................................................18

       B.     The Punitive $20,000 Sanction ..........................................................22

III.   THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING
OVERBROAD NON-MONETARY SANCTIONS ....................................25

IV.   THE CASE SHOULD BE REASSIGNED TO A DIFFERENT DISTRICT
JUDGE IF REMAND IS REQUIRED........................................................30

CONCLUSION ...................................................................................31

# TABLE OF AUTHORITIES

## Cases

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*,
  140 F.3d 101 (2d Cir. 1998) ....................................................................7

*Beechwood Restorative Care Center v. Leeds*,
  436 F.3d 147 (2d Cir. 2006) ..................................................................15

*Blue v. U.S. Dep't of Army*,
  914 F.2d 525 (4th Cir. 1990) .................................................................20

*Doe v. Menefee*,
  391 F.3d 147 (2d Cir. 2004) ....................................................................7

*Enmon v. Prospect Capital Corp.*,
  675 F.3d 138 (2d Cir. 2012) ..................................................................20

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019)............................................................................16

*Gallop v. Cheney*,
  667 F.3d 226 (2d Cir. 2012) ..................................................................25

*Garber v. Office of Comm'r of Baseball*,
  No. 12-CV-3704 (VEC), 2017 WL 752183 (S.D.N.Y. Feb. 27, 2017) ..............14

*Goldman v. Barrett*,
  825 F. App'x 35 (2d Cir. Sept. 10, 2020)...............................................18

*Goldman v. Barrett*,
  No. 15-CV-9223 (PGG), 2019 WL 4572725 (S.D.N.Y. Sept. 20, 2019) ............18

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017)...........................................................................21

*Gucci Am., Inc. v. Li*,
  768 F.3d 122 (2d Cir. 2014) ..................................................................23

*In re Gravel*,
  601 B.R. 873 (Bankr. D. Vt. 2019) ........................................................23

ii

*In re Martin-Trigona*,
    592 F. Supp. 1566 (D. Conn. 1984) .....................................................26

*In re Martin-Trigona*,
    737 F.2d 1254 (2d Cir. 1984) ...........................................................26

*In re Martin-Trigona*,
    763 F.2d 140 (2d Cir. 1985) .............................................................26

*Luscier v. Risinger Bros. Transfer, Inc.*,
    No. 13-CV-8553 (PKC), 2015 WL 5638063 (S.D.N.Y. Sept. 17, 2015) ...........14

*Mackler Prods., Inc. v. Cohen*,
    146 F.3d 126 (2d Cir. 1998) ................................................... 1, 23, 24

*Mackler Prods., Inc. v. Cohen*,
    225 F.3d 136 (2d Cir. 2000) ................................................ 23, 24, 31

*Malibu Media, LLC v. Doe*,
    No. 18-CV-10956 (JMF), 2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019).............16

*NAACP Spring Valley Branch v. East Ramapo Cent. Sch. Dist.*,
    No. 17-CV-8943 (CS) (JCM), 2020 WL 7706783 (S.D.N.Y. Dec. 29, 2020) ....18

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999) ......................................................... 14, 16

*Shim v. Millennium Grp.*,
    No. 08-CV-4022 (FB) (VVP), 2010 WL 2772493 (E.D.N.Y. June 21, 2010) ....18

*Shim v. Millennium Grp.*,
    No. 08-CV-4022 (VVP), 2010 WL 2772342 (E.D.N.Y. July 12, 2010) .............19

*United States v. Int'l Bhd. of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991) ............................................................15

*United States v. Parse*,
    789 F.3d 83 (2d Cir. 2015) .................................................................7

*Urbont v. Sony Music Entm't*,
    831 F.3d 80 (2d Cir. 2016) ........................................................... 28, 29

*Wolters Kluwer Fin. Servs. v. Scivantage*,
  564 F.3d 110 (2d Cir. 2009) .......................................................... 1, 12, 15, 23, 24

## **<u>Statutes</u>**

17 U.S.C. § 410(c) ....................................................................................29

# **INTRODUCTION**

Appellants Richard Liebowitz and the Liebowitz Law Firm ("LLF"), in their opening brief, comprehensively analyzed the record, demonstrating how the District Court's sanctions order (the "Sanctions Order") must be reversed due to the District Court's clearly erroneous factual findings that fail to withstand the "more exacting" version of the abuse-of-discretion standard applicable here. *See Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009); (Br. 31–48).[1] The opening brief also showed how the District Court's monetary sanctions were excessive and its non-monetary sanctions overbroad, and how the District Court failed to offer Mr. Liebowitz and LLF the procedural protections that this Court requires where, as here, sanctions have a punitive component. *See Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 129–30 (2d Cir. 1998) ("*Mackler I*"); (Br. 48–55).

Rather than meet the opening brief's careful analysis with its own, Appellee Bandshell Artist Management ("Bandshell") instead pretends that the opening brief merely skirted the margins of the District Court's findings, accusing Mr. Liebowitz and LLF of "barely touch[ing] the evidence" (Opp. 32), making "piecemeal attacks" on the findings (Opp. 36), urging this Court to "ignore all of the evidence"

---

[1] "Br." refers to Appellants' opening brief; "Opp." refers to Appellee's brief; "JA" refers to the joint appendix; "SPA" refers to the special appendix; and "Docket Entry" refers to a docket entry on the District Court docket in this case.

(Opp. 33), and "cherry-pick[ing]" only "a couple of vague statements" in the record (Opp. 32, 36). Bandshell never details, however, what evidence it believes Mr. Liebowitz and LLF "barely touch," or what aspect of the record it finds to be "cherry-picked." Instead, Bandshell broadly argues that "[a] full review" of the record supposedly supports its position (Opp. 32–33), but does not deliver that "full review," resorting instead to largely general and conclusory assertions of wrongdoing, untethered to the record, without any substantial discussion of the applicable case law or the issues before this Court.

Nothing in Bandshell's brief alters the conclusion that the District Court erred in imposing the Sanctions Order on Mr. Liebowitz, a 2014 law school graduate, and on LLF, Mr. Liebowitz's law firm. Mr. Liebowitz and LLF provide a valuable service—a service the Sanctions Order threatens—to photographers and other artists by helping them vindicate their federally protected copyrights on a low-cost basis, which is made possible by the very high volume of cases that sometimes has resulted in errors like those that happened in this case.

For the reasons set forth below and in the opening brief, this Court should reverse the Sanctions Order or, at a minimum, reduce the excessive monetary sanction, vacate the non-monetary sanctions, and remand the case to a different district judge.

# ARGUMENT

## POINT I

## THE DISTRICT COURT ABUSED ITS DISCRETION BY BASING SANCTIONS ON CLEARLY ERRONEOUS FINDINGS OF FACT

### A. The District Court Abused Its Discretion By Finding that Mr. Liebowitz Falsely Asserted in Bad Faith that He Got Permission for Mr. Usherson to Participate in the Mediation by Telephone

The District Court's erroneous finding that Mr. Liebowitz purportedly falsely stated in bad faith that he obtained permission from the mediator (the "Mediator") for Mr. Usherson to participate in the mediation by phone was based on its unsustainable findings that the Mediator's testimony was credible and that Mr. Liebowitz's was not. The opening brief analyzed each of the reasons the District Court gave for its credibility determinations and showed how those reasons wilt on review. (Br. 32–37.)

Bandshell defends the District Court's credibility determinations by asserting, first, that even raising a question about the Mediator's credibility is somehow "desperate," "distasteful," and "untoward." (Opp. 34.) Challenging the credibility of the District Court's central witness, however, and analyzing whether that testimony provides a sound basis for imposing severe sanctions is not desperate, distasteful, or untoward. If anything, Bandshell's desire to avoid defending the explanations the District Court gave for finding the Mediator

3

credible comes off as "desperate," as Mr. Liebowitz and LLF presented good reason to question each of those rationales. (Br. 32–36.)

First, although the District Court found that the Mediator "lack[ed] . . . any stake in this matter" (SPA-30), the Mediator did have an interest, as his testimony addressed his own past noncompliance with the relevant court and mediation rules and thus put at stake his reputation and future employment. (Br. 32; JA-227, 436–38.) Bandshell fails to respond to this argument that the Mediator was not a neutral witness.

Second, although the District Court found that the Mediator's testimony was "corroborated by Mr. Newberg's testimony" (SPA-30), their testimony was contradictory on a key point: whether the Mediator informed Mr. Newberg of his doubts that Mr. Usherson would be attending the mediation. This contradiction prompted the District Court to ask further questions that the Mediator, tellingly, resisted answering, stating, "I don't want to look backwards" and "I really don't recall." (Br. 33–34; JA-448.) Again, Bandshell fails to respond directly to this contradiction.

Third, although the District Court found that the Mediator's testimony was "corroborated by . . . documentary evidence" (SPA-30), the email exchange the District Court cited—in which Mr. Newberg stated that he "would have assumed Mr. Usherson either flew to NY tonight or is likewise on a very early plane" and

the Mediator responded, "I understand"—hardly corroborates the Mediator's testimony. (Br. 35–36; JA-67–68, 93, 447.) Bandshell does not meaningfully respond to this argument beyond baldly pronouncing that Mr. Liebowitz and LLF's argument "pretend[s] as if emails and declarations do not say what they actually say." (Opp. 35.)

As the opening brief explained, the email exchange could well indicate that Mr. Newberg doubted whether Mr. Usherson would attend (thus his "assum[ption]" about Mr. Usherson's travel plans), and that the Mediator himself knew or suspected that Mr. Usherson would not attend (thus the Mediator's bland "I understand" response). (Br. 35; JA-93.) Mr. Newberg's own declaration corroborates this reading, as Mr. Newberg attests that the Mediator told Mr. Newberg the morning of the mediation that he doubted Mr. Usherson would attend. (Br. 35; JA-69.) The Mediator's testimony provides further corroboration, as he was asked whether he would have said something beyond "I understand" if he had known Mr. Usherson would not attend, and first answered "[p]robably," before retreating and declining to "look[] backward." (Br. 35–36; JA-447.) The Mediator's waffling testimony on such an important matter is hardly beyond critique, and the only "distasteful" conduct here is Bandshell's refusal to meet the opening brief's arguments head-on while resorting instead to conclusory assertions and hollow attacks.

Bandshell next asserts that "Appellants' defense further ignores numerous emails, declarations, filings, and statements in open court supporting the court's opinion," and says that "[t]o focus on a single email or a single line of mediator testimony does nothing to put aside all the other evidence." (Opp. 35.) Bandshell fails, however, to identify a single material email, declaration, filing, or line of testimony that Mr. Liebowitz and LLF "ignored" in the opening brief. Bandshell's failure to identify even one such item belies its contention that the record contains "numerous" such pieces of evidence.

Bandshell next falls back on the bare assertion that the District Court's "assessment of witnesses' credibility is important and entitled to deference." (Opp. 36.) The opening brief, however, explained in detail why the reasons the District Court gave for crediting the Mediator and for discrediting Mr. Liebowitz do not withstand scrutiny—explanations that Bandshell again cannot dispute, and so it ignores. For example, Bandshell fails to acknowledge how the Mediator, during his testimony, refused to stand by his own sworn declaration. In particular, when the District Court asked the Mediator whether he would "stand by [his] declaration" that he had not given Mr. Liebowitz permission to not appear, the Mediator testified, "Not expressly, no." (Br. 36; JA-453.) Not only does Bandshell fail to acknowledge the Mediator's effort to distance himself from his sworn declaration, but apparently finds that declaration so reliable that Bandshell

asserts the District Court "could easily have found by clear and convincing evidence that Mr. Liebowitz lied about being given permission from the mediator to have his associate . . . appear in his stead."  (Opp. 30 n.6.)  Even the District Court was not comfortable making this finding that Bandshell now presses on appeal.  (Br. 18; SPA-30 n.3.)

Bandshell also fails to respond to or even cite a single one of the cases on which the opening brief relied in which this Court overturned comparably flawed credibility determinations.  (Br. 36–37.)  *See Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 111 (2d Cir. 1998); *United States v. Parse*, 789 F.3d 83, 113–18 (2d Cir. 2015); *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004).

Beyond its feeble effort to defend the Mediator's credibility, Bandshell contends that the District Court's bad-faith finding was "well-supported" by "various facts," which Bandshell presents in a list of bullet points.  (Opp. 36–38.)  On inspection, however, Bandshell's bullet points do not resemble "various facts" so much as restatements of either Bandshell's arguments or the District Court's own suspect conclusions, and in several respects they inaccurately or incompletely present the record.  Bandshell's assertion, for example, that the Mediator "unequivocally and directly contradicted Mr. Liebowitz's claim of permission" (Opp. 37) ignores that Mr. Liebowitz's testimony regarding that permission was corroborated by the facts that multiple prior mediations with the same Mediator

successfully had proceeded without the client's in-person attendance (JA-227), the Mediator admitted that he previously had agreed to conduct the mediation by telephone (JA-227), and the Mediator told Mr. Newberg (but later forgot) that he doubted that Mr. Usherson would appear at the mediation in person (JA-69, 448).

Aside from the foregoing arguments, to a significant extent, Bandshell's brief avoids addressing the merits altogether, focusing instead on rhetoric and matters not at issue here.  At the start of its argument, Bandshell inaccurately attempts to poison the well by alleging that since the District Court issued the Sanctions Order, Mr. Liebowitz supposedly "violated the order" and was suspended from practice in the Southern District of New York.[2]  (Opp. 30; *see* Opp. 5, 24, 46 (repeating assertions).)  Events postdating the entry of the Sanctions Order, however, have little to do with the narrow issues presented for review regarding whether the record supports the District Court's factual findings and the ensuing sanctions.

---

[2] Bandshell's suggestion about the number of times that Mr. Liebowitz and LLF have "violated the order" is not accurate.  As set forth in the District Court's order dated November 30, 2020, subsequent to the Sanctions Order, Mr. Liebowitz identified cases in which, for various reasons, he did not initially file the Sanctions Order on ECF.  (Docket Entry 87 at 3–4.)  The District Court did not find that each of these instances "violated" the Sanctions Order, as Bandshell contends, and indeed the District Court modified the Order to remove doubt as to its requirements.  (Docket Entry 87 at 5–6.)  In addition, Mr. Liebowitz's current suspension is temporary, pending final adjudication.  (Docket Entry 87 at 8–10.)

To the extent matters postdating the Sanctions Order are relevant at all, it is equally relevant for Mr. Liebowitz and LLF to highlight how, since the Order issued, Bandshell's counsel apparently has amended his online law firm biography to prominently advertise the fact that, while acting as pro bono counsel in this matter, he obtained sanctions against Mr. Liebowitz, whom he describes as a "notorious attorney" and "troll," in an apparent effort to obtain business from the very sorts of corporate clients who may take advantage of the low-income artists that Mr. Liebowitz represents, and who may find Mr. Liebowitz's practice to be nettlesome. *See Brad R. Newberg*, McGuireWoods, www.mcguirewoods.com/people/n/brad-r-newberg (last visited January 7, 2021).[3]

Bandshell also argues incorrectly that Mr. Liebowitz and LLF's principal brief "skip[s] . . . *entirely*" the District Court's finding that Mr. Liebowitz and LLF violated court orders. (Opp. 30 (emphasis in original).) Not so. Mr. Liebowitz and LLF squarely acknowledged, both to the District Court and to this Court, that they do not challenge the District Court's finding that Mr. Liebowitz violated court orders. (Br. 22 & n.5; SPA-26.) Those violations do not support the sanctions imposed, as even the District Court acknowledged that "Mr. Liebowitz's failures to obey court orders can arguably be explained (though not justified) by his relative

---

[3] The Court may take judicial notice of the contents of this website, whose authenticity is not in question. *See Force v. Facebook, Inc.*, 934 F.3d 53, 60 n.5 (2d Cir. 2019); Fed. R. Evid. 201(b)(2).

inexperience, heavy caseload, and inadequate case management practices." (SPA-37.)

Bandshell further argues that "Appellants cannot seriously challenge the findings of the district court," explaining that the District Court's factual findings were "described in over 54 pages" and in an attached "seven-page appendix." (Opp. 31.) This appeal does not challenge the level of detail in the District Court's opinion; the appeal argues, rather, that the District Court got the details wrong. The sheer length of the Sanctions Order is no more a proxy for its accuracy than the length of Bandshell's brief—also 54 pages—is a proxy for its persuasiveness, and Bandshell's inflammatory 54 pages generally fail to present a cogent response to the opening brief's arguments.

After praising the Sanctions Order for its length, Bandshell asserts that the District Court's factual findings "are overwhelmingly supported by both testimonial and documentary evidence *with absolutely **no** documents backing up Appellants' story*." (Opp. 31 (emphasis in original)). Bandshell's substitution of italics for analysis falls flat, however, as Bandshell ignores the record—which contains both testimonial and documentary evidence favoring Mr. Liebowitz and LLF as catalogued in the opening brief (Br. 31–48)—and more importantly ignores the question on appeal, which is whether the District Court abused its discretion in finding that Mr. Liebowitz lied in bad faith based essentially on the testimony of

one witness, the Mediator, despite the general absence of documents or testimony corroborating the Mediator's account.

Bandshell similarly resorts to textual emphasis rather than analysis when it argues that "Appellants must admit that Mr. Liebowitz's failure to attend the mediation at all and to have Mr. Usherson not appear in person violated court rules and a **direct order by Judge Furman and follow-up directives by the Mediation Office**." (Opp. 34 (bold emphasis in original).) Bandshell's argument misses that the applicable mediation rules expressly provide that individuals who live more than 100 miles from the courthouse (like Mr. Usherson) may request to participate by phone. (Br. 38; JA-144–45 (Rule 9(f)).) The District Court itself did not even rely on the argument Bandshell makes here, that the Mediator's permission would have been invalid. (SPA-27, 29–35.) Mr. Newberg also acknowledged in an October 2019 email to Mr. Liebowitz that the mediation rules "say that everyone must be there in person, although if a party has a particular hardship, they may apply to attend telephonically." (JA-76.)[4]

On the whole, Bandshell's scattershot brief does not seriously grapple with the arguments presented in the opening brief. For all of the reasons in the opening

---

[4] Bandshell also ignores the fact that the Mediator, after learning that Mr. Liebowitz and Mr. Usherson would not be attending the mediation in person, nevertheless allowed the mediation to go forward.

11

brief and above, the District Court abused its discretion when it found that Mr.

Liebowitz lied in bad faith about getting permission from the Mediator for Mr.

Usherson to appear at the mediation by telephone.

**B. The District Court Abused its Discretion By Finding that Mr. Liebowitz Supposedly Brought and Maintained this Case in Bad Faith By Falsely Alleging that the Photograph was Registered Prior to the Suit and Not Conducting a Reasonable Investigation**

As to the next issue—how the District Court abused its discretion by finding

that Mr. Liebowitz brought and maintained the case "in bad faith" by "willfully

disregarding the fact that" the photograph at issue (the "Photograph") was not

within the 046 Registration as alleged in the complaint (Br. 43–48; SPA-38)—

Bandshell argues that Mr. Liebowitz "shift[s] the blame for [his] errors to Mr.

Usherson" and to LLF's other employees. (Opp. 39–40.)

The question, however, is not who is to "blame" for the mistake about the

046 Registration. The question is whether "clear evidence" supports a finding that

Mr. Liebowitz and LLF acted in bad faith by alleging that the Photograph was

contained within the 046 Registration. *Wolters Kluwer*, 564 F.3d at 114. The

Photograph at issue and the photographs in the 046 Registration are enough alike

that Mr. Usherson, the photographer himself, attested to his belief that the

Photograph was within the 046 Registration until he saw the deposit copies in

January 2020. (JA-301–03, 308–13.) This observation does not "shift blame" to

Mr. Usherson, but rather confirms the lack of bad faith on the part of Mr.

Liebowitz and LLF.  Bandshell nowhere squarely addresses the import of Mr.

Usherson's sworn statements, nor does it acknowledge that the Photograph at issue

and those contained in the 046 Registration are similar:  They portray the same

subject matter (Bob Dylan and Leon Redbone), in the same composition (Dylan

standing to Redbone's right in the foreground, a crowd and trees in the

background, all at approximately the same distance), on the same day—apparently

moments apart.  (JA-335.)

Notwithstanding these facts, Bandshell argues that Mr. Liebowitz "lied to

the [District Court] about the registration being correct when pressed on it and

continued to prosecute this case even after he was made aware of this issue at the

November 2019 conference."  (Opp. 40.)  At the November 2019 conference,

however, Bandshell merely suggested that it was "unclear whether the registration

in the complaint actually does cover the photograph" because "after this case was

filed, Mr. Usherson filed a copyright registration."  (JA-252.)  As the opening brief

explained, however, LLF registered additional photographs for Mr. Usherson after

the lawsuit was filed because Mr. Usherson recognized his photographs were

targets for infringement, and continued to believe that the Photograph was part of

the 046 Registration until Bandshell obtained an official deposit copy two months

later.  (Br. 43–44.)  Again, this undisputed evidence does not shift "blame," but

rather confirms the lack of bad faith.

13

Bandshell doubles down on its argument, asserting that the "district court correctly inferred that Mr. Liebowitz should have been aware that the allegation . . . was incorrect no later than when Mr. Usherson submitted the photograph at issue to Appellants, which they registered in August 2019." (Opp. 40.) Bandshell does not cite any legal authority, however, for the proposition that Mr. Liebowitz could be deemed "aware" of the contents of a compact disc containing numerous photographs on the day that compact disc arrived at LLF, even though the person who made it, Mr. Usherson, was not aware of the contents. Contrary to Bandshell's claim that such constructive notice can justify sanctions, in fact sanctions require a finding that the sanctioned party "had utterly no basis for [its] subjective belief in the merits of [its] case." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 340–41 (2d Cir. 1999). For this reason, courts have rejected arguments, like Bandshell's, that seek to found sanctions on some lesser showing of knowledge short of actual knowledge. *See Garber v. Office of Comm'r of Baseball*, No. 12-CV-3704 (VEC), 2017 WL 752183, at *4 (S.D.N.Y. Feb. 27, 2017) (Rule 11 sanctions require "actual knowledge that a pleading or argument that he or she is advancing is frivolous" (quotations and internal citations omitted)); *Luscier v. Risinger Bros. Transfer, Inc.*, No. 13-CV-8553 (PKC), 2015 WL 5638063, at *8 (S.D.N.Y. Sept. 17, 2015) ("[p]roof of actual knowledge, and

14

not merely what a reasonable attorney should have known, is necessary" to find bad faith under Rule 11).

Bandshell also suggests that the District Court's finding of bad faith finds support in Mr. Liebowitz's supposed "practice of prosecuting copyright cases without conducting ***any*** investigation into the merits of the claims . . . for the sole purpose of trying to extract a settlement." (Opp. 41 (emphasis in original).) The District Court did not find that Mr. Liebowitz acted with precisely this purpose with the requisite "high degree of specificity." *Wolters Kluwer*, 564 F.3d at 114. Bandshell has no basis to cloud the record by inventing an improper purpose now. *See United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1347 (2d Cir. 1991) (declining to "parse the record" for factual support of proposed alternative ground for sanctions).

Finally, Bandshell contends, in a footnote, that a registration error cannot be cured with an amended complaint, calling this a "settled issue" and thereby suggesting that Mr. Liebowitz's position to the contrary (that he could cure the registration error by amending the complaint) provides further evidence of bad faith. (Opp. 40 n.7.) As an initial matter, an argument made in a footnote is waived. *See Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 154 n.3 (2d Cir. 2006). In any event, as Bandshell's cursory treatment of the issue indicates, Bandshell is wrong on the law. As Mr. Liebowitz acknowledged, the

same District Court held in its prior decision in *Malibu Media, LLC v. Doe*, No. 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019), that, based on *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), where a plaintiff "improperly filed suit before a copyright was registered," the suit "must be dismissed notwithstanding a plaintiff's post-registration amendment." (SPA-39).

The District Court acknowledged in *Malibu Media*, however, that the decision "parts ways with several courts that have held that a post-registration amendment can cure the defect in a complaint filed before a copyright claim was registered within the meaning of Section 411(a)." *Malibu Media*, 2019 WL 1454317, at *3 (citing pre-*Fourth Estate* cases). The opening brief also cited three post-*Fourth Estate* cases recognizing that *Fourth Estate* did not directly answer the question whether post-registration amendment is permissible. (Br. 47 (collecting cases).) Bandshell nowhere addresses any of this post-*Fourth Estate* case law. Mr. Liebowitz and LLF were not "utterly" without legal basis in asserting that an amended complaint could cure the registration error, as is required to justify sanctions. *Schlaifer Nance*, 194 F.3d at 337.

For all of these reasons, the District Court's conclusion that Mr. Liebowitz acted in bad faith with respect to the registration allegation was an abuse of discretion.

**POINT II**

**THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING EXCESSIVE MONETARY SANCTIONS**

Because the District Court made clearly erroneous factual findings, it should not have imposed monetary sanctions. (Br. 48.) Even if some sanction were warranted, however, both the $83,517.49 and the $20,000 components of the District Court's monetary sanction were excessive, and the $20,000 component was imposed without the required procedures. (Br. 48–55.) Again substituting rhetoric for analysis, Bandshell's brief does not seriously engage with the law, the facts, or the arguments.

To start, Bandshell suggests that Mr. Liebowitz and LLF's arguments "amount to a claim that, as a matter of law, large monetary sanctions . . . are *per se* improper." (Opp. 29.) This suggestion mischaracterizes the opening brief's argument. Mr. Liebowitz and LLF's position is that a six-figure award is unwarranted and grossly disproportionate on the facts here, including that: (i) Bandshell's counsel acted pro bono; (ii) counsel ran up an unreasonably high "bill" unwarranted by its client's interest; (iii) a substantial portion of that bill reflected time spent litigating an unsuccessful basis for sanctions; and (iv) the award contained a punitive component that the District Court imposed without the required procedures. (Br. 49–55.)

17

### A. The Excessive $83,517.49 Sanction

In seeking to defend the District Court's outsize award of "fees" notwithstanding that Bandshell's counsel acted pro bono, Bandshell first asserts that there "is ample precedent that where monetary sanctions are appropriate for bad faith conduct, and the opposing party was represented on a pro bono basis, the court may still order reasonable attorney's fees be paid by the offending party." (Opp. 43.)

In support, however, Bandshell principally cites two district court decisions (from 2003 and 1982). Even the District Court acknowledged at least one recent case questioning appropriateness of such an award (SPA-49 (citing *Goldman v. Barrett*, No. 15-CV-9223 (PGG), 2019 WL 4572725, at *7 n.9 (S.D.N.Y. Sept. 20, 2019), *aff'd*, 825 F. App'x 35 (2d Cir. Sept. 10, 2020))), a case Bandshell neither addresses nor cites, and which is hardly the only case raising the same concern, *see NAACP Spring Valley Branch v. East Ramapo Cent. Sch. Dist.*, No. 17-CV-8943 (CS) (JCM), 2020 WL 7706783, at *9 (S.D.N.Y. Dec. 29, 2020) (recommending reduction of fee award where paying client would not have accepted pro bono counsel's excessive bill); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2010 WL 2772493, at *6 (E.D.N.Y. June 21, 2010) ("[T]he court is hard pressed to believe that any reasonable paying client would be willing to pay what [pro bono

counsel] seeks to recover."), *adopted by* 2010 WL 2772342 (E.D.N.Y. July 12, 2010).

Bandshell also suggests that pro bono fees should be considered in sanctions awards because the "opposite result would create perverse effects, essentially shielding bad-faith conduct by lawyers." (Opp. 43.) That hypothetical perverse effect, however, pales in comparison to the actual perverse effect that occurred in this case, in which a lawyer acting pro bono, unconstrained by a paying client, ran up a "bill" far beyond what the lawyer himself acknowledged was in his client's interests. (Br. 49–50.) In particular, Bandshell ignores the fact that Bandshell's counsel admitted that the time it spent litigating its sanctions motion against Mr. Liebowitz did not correspond to the "limited exposure to our client," but rather reflected a vague sense of "the importance of this issue beyond this case, to both the bar and the Court." (Br. 50; JA-275.) Fees incurred as a result of Bandshell's inflated sense of the case's "importance," and untethered to its client's interest, should not be used to calculate sanctions.

Using Bandshell's purported fees to measure sanctions is particularly inappropriate where Bandshell's counsel may well have acted not in the pure public interest, as his letter to the Court suggested, but rather to attract as paying clients the very sorts of companies that Mr. Liebowitz and LLF try to stop from taking advantage of artists—a possibility seemingly confirmed by Mr. Newberg's

19

online biography prominently announcing to prospective clients that he obtained sanctions against Mr. Liebowitz. *See supra* at 9.

Second, Bandshell addresses the opening brief's argument that even if pro bono hours can be an appropriate metric for sanctions in some cases, courts should not base sanctions largely on time (especially pro bono time) spent on sanctions motions as opposed to on substantive litigation. (Br. 50–51.) Bandshell meekly asserts that this Court once "affirmed such an award," citing this Court's decision (which the opening brief flagged (Br. 51)) in *Enmon v. Prospect Capital Corp.*, 675 F.3d 138 (2d Cir. 2012). (Opp. 43–44.) *Enmon*, however, did not involve a pro bono pursuit of sanctions, and merely holds that "no error" existed in the award of fees incurred in litigating a sanctions motion. That decision alone does not justify the District Court's decision to do the same for Bandshell. *See Blue v. U.S. Dep't of Army*, 914 F.2d 525, 548 (4th Cir. 1990) ("Litigants should be able to defend themselves from the imposition of sanctions without incurring additional sanctions."). The conduct here does not approach, let alone match, the egregious facts highlighted in *Enmon*, which included a pattern of documented misrepresentations over several years, including an apparent effort to trick a state court into enjoining a federal proceeding and a motion based on a likely false claim of newly discovered evidence. *Enmon*, 675 F.3d at 146–48.

Third, Bandshell defends the District Court's decision to award nearly the full amount of "fees" requested even though the District Court rejected one of the two principal bases for sanctions that Bandshell initially asserted. (Opp. 44.) Bandshell's theory appears to be that because the District Court suggested that it might have granted sanctions on both bases under a lower "preponderance of the evidence" standard of proof, Bandshell is entitled to a compensatory sanction of the full amount requested. (Opp. 44; SPA-30 n.3.) This is wishful thinking. In *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017), the Supreme Court held that misconduct must be the "but-for" cause of the sanctions incurred, and Bandshell's unsuccessful ground for sanctions does not qualify. Bandshell cites *Goodyear Tire*'s dictum that sanctioning courts need not "become green-eyeshade accountants." (Opp. 44.) *Goodyear* nevertheless requires, however, that sanctions awards do "rough justice" in light of factual findings. *Goodyear*, 137 S. Ct. at 1187. Even accepting the District Court's erroneous findings, rough justice would have called for the District Court to slash the compensatory award to approximately 50% of the amount requested given the failure of one of Bandshell's primary arguments. Bandshell, of course, ignores the cases the opening brief cited in which courts applied 50% reductions on similar facts. (Br. 52–53.)

21

For all of these reasons, this Court should vacate and order the reduction of the $83,517.49 sanction.

### B. The Punitive $20,000 Sanction

Comparable defects sink Bandshell's arguments as to the District Court's $20,000 sanction, which the opening brief explained was punitive, not compensatory, and improperly imposed without the protections of criminal procedure. (Br. 53–55.)

One sign of the $20,000 sanction's punitive nature is the fact that the District Court based it on Mr. Liebowitz's past conduct, not a goal of coercing future compliance. Bandshell responds by claiming that the $20,000 sanction "was not based solely on Mr. Liebowitz's past conduct, but on 'Mr. Liebowitz's stonewalling of any investigation into the registration at issue once it was raised by opposing counsel.'" (Opp. 46 (quoting SPA-51).) This sentence makes no sense. Mr. Liebowitz's purported "stonewalling" was, in fact, "past conduct," that is, one of the very things that makes a sanction improperly punitive. (Br. 53.) Bandshell next argues that the District Court in any event determined the sanction was "no greater than necessary to provide adequate deterrence" (Opp. 46 (quoting SPA-51)), but Bandshell does not address the fact that the District Court failed to identify how the $20,000 sanction could possibly have any additional deterrent effect beyond that of the $83,517.49 sanction (SPA-50–51).

22

Another sign of the $20,000 sanction's punitive nature is the absence of a "purge" provision. Bandshell argues that the absence of a "purge" provision is not problematic because Mr. Liebowitz and LLF subsequently purportedly violated the Sanctions Order (Opp. 46), but Bandshell's tendentious interpretation of events postdating the Order hardly brings the Order into compliance with this Court's precedent.

In pressing its argument, Bandshell fails to address any of the binding Second Circuit cases discussed in the opening brief (Br. 53–55)—*Mackler I*, 146 F.3d at 128–31; *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 142 (2d Cir. 2000) ("*Mackler II*"); *Gucci Am., Inc. v. Li*, 768 F.3d 122, 144 (2d Cir. 2014); *Wolters Kluwer*, 564 F.3d at 117—and instead relies on single citation to a decision from the bankruptcy court in the District of Vermont, *In re Gravel*, 601 B.R. 873 (Bankr. D. Vt. 2019). (Opp. 46–47.)

Bandshell neglects to mention, however, that the appeal in *Gravel* is currently pending before this Court, with oral argument scheduled for February 2021, and the appellant similarly asserts that the lower court ran afoul of this Court's *Mackler* decisions. *See In Re: Nicholas Gravel*, Nos. 20-1(L), 20-2(Con), 20-3(Con) (2d Cir.) (No. 20-1 Docket Entries 56 at 30–33, 41–47 (Appellant's Brief), 122 (Scheduling Order)). Bandshell's failure to make any effort to distinguish *Mackler I* or *II*, or to acknowledge that its only supporting authority is

23

on appeal before this Court, only reinforces the argument that the District Court violated this Court's precedent in precisely the ways articulated in the opening brief.

As explained in the opening brief, the $20,000 sanction was impermissibly punitive under this Court's precedent because not only did the $83,517.49 award already compensate Bandshell's counsel's outsize fee request, but the $20,000 addition bore all of the indicia of a punitive sanction: It was payable to the court; the District Court's own characterization shows the amount was intended to reflect prior purported misconduct; and the District Court provided no opportunity to purge. (SPA-50–51.) *See Mackler I*, 146 F.3d at 129; *Mackler II*, 225 F.3d at 142. The amount imposed also was "substantial" with respect to an individual litigant and his three-attorney practice. (JA-497.) *Wolters Kluwer*, 564 F.3d at 117.

Because the $20,000 was demonstrably punitive in nature, Mr. Liebowitz and LLF were entitled to the requisite criminal procedural protections before the District Court imposed this punishment: "notice and the opportunity to be heard, the right to a public trial, assistance of counsel, presumption of innocence, the privilege against self-incrimination, and the requirement of proof beyond a reasonable doubt." *Mackler I*, 146 F.3d at 128, 130. Apart from the flawed notice and opportunity to be heard in the January 8, 2020 hearing, Mr. Liebowitz and LLF received none of these protections. This Court should vacate the $20,000 sanction.

24

# POINT III

## THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING OVERBROAD NON-MONETARY SANCTIONS

The District Court's broad requirements that, for a year, Mr. Liebowitz and

LLF file the Sanctions Order in any new cases nationwide, and that Mr. Liebowitz

and LLF obtain and file official deposit copies of the copyrighted work at issue

with any new infringement cases, are essentially without precedent. (Br. 56–60;

SPA-54.) In defending these novel sanctions, Bandshell suggests that Mr.

Liebowitz and LLF have "concede[d]" that litigants who have abused the court

system may be appropriate targets for nationwide sanctions. (Opp. 47.) Bandshell

declines, however, to discuss the facts underlying the cases it cites, and with good

reason, because both the facts and sanctions involved in those cases are

distinguishable.

In *Gallop v. Cheney*, the first case Bandshell cites (Opp. 48), the plaintiff's

attorney had brought an action accusing federal officials of orchestrating the

September 11 attacks, and after losing an initial appeal, filed a "frivolous and

vexatious motion to disqualify the panel 'and any like-minded colleagues'" from

further considering the case. 667 F.3d 226, 227 (2d Cir. 2012). Even in the face of

that egregious conduct and a finding of bad faith, the analogous sanction imposed

was limited to courts within the Circuit, rather than across the country. *Id*. at 231.

Similarly, in *In re Martin-Trigona*, the other case Bandshell cites (Opp. 48), the plaintiff had filed at least 250 actions, some of which "used legal pleadings to ventilate his contempt and hatred of persons of Jewish heritage," and which in substantial part consisted of lawsuits against the judges of the District of Connecticut, attorneys, and their families, as well as comparable harassing litigation with the "purpose, nature and effect . . . to involve as many persons in as many confounding legal processes as possible." *In re Martin-Trigona*, 737 F.2d 1254, 1259 (2d Cir. 1984); *see also In re Martin-Trigona*, 592 F. Supp. 1566, 1569 (D. Conn. 1984) (noting on remand plaintiff's "well-documented practice of abusing his imagined enemies through legal process"), *aff'd*, 763 F.2d 140 (2d Cir. 1985).

The offensive and personally motivated conduct evident in these cases bears no resemblance to Mr. Liebowitz and LLF's practice, which since Mr. Liebowitz's relatively recent graduation from law school has represented artists in modest-value cases aimed at protecting their work from infringement, and which has seen victories for clients at summary judgment and at trial, not to mention many favorable settlements. (Br. 1, 6, 7 & n.3.) Nor do the precedents Bandshell cites bear any relationship to the present case, in which one of the primary bases for sanctions was Mr. Liebowitz and LLF's registration error. In these circumstances, the nationwide sanctions the District Court imposed are overbroad. (Br. 57.)

Bandshell next asserts that "Appellants challenge the non-monetary sanctions which are nationwide, yet they concede (by not challenging it) that the non-monetary sanctions issued which were *worldwide* were appropriate." (Opp. 48 (emphasis in original).) Elaborating on this bizarre point, Bandshell contends that Mr. Liebowitz and LLF have represented clients "who reside outside the United States," such that the sanction requiring that Mr. Liebowitz and LLF serve the Order on these clients was "worldwide" in effect; by not challenging this particular aspect of the sanction, Bandshell contends, Mr. Liebowitz and LLF have effectively "concede[d]" that "worldwide" sanctions were appropriate. (Opp. 48–49.) This convoluted argument is unpersuasive. The record is silent on where Mr. Liebowitz and LLF's clients reside, the District Court made no related findings, and neither Bandshell, Mr. Liebowitz, nor LLF is in a position to make arguments to this Court on this basis.

Regardless, Bandshell is wrong that Mr. Liebowitz and LLF did not challenge this aspect of the District Court's Order. To the contrary, they sought a stay pending appeal in the District Court and subsequently from this Court, both of which denied a stay. Not having received a stay, Mr. Liebowitz and LLF timely complied by sending the Order to their clients (Br. 27–28 n.6), rendering any challenge to this sanction effectively moot. Bandshell's tortured argument that this sequence of events means that Mr. Liebowitz and LLF have "conceded" the

27

propriety of "worldwide" sanctions only confirms how far Bandshell needs to stretch to justify the District Court's actions.

Finally, as to the argument that the sanctions impermissibly shift from defendants to LLF the burden to obtain and submit deposit files from the U.S. Copyright Office (Br. 57–60), Bandshell argues that Mr. Liebowitz and LLF's description of the burden of proving registration in copyright cases "is not the law." (Opp. 49.) Despite offering this categorical statement, Bandshell cites nothing demonstrating how Mr. Liebowitz and LLF's description of the applicable law—which provides that "the party challenging the validity of the copyright registration has the burden to prove the contrary," *Urbont v. Sony Music Entm't*, 831 F.3d 80, 89 (2d Cir. 2016) (internal quotation marks and alterations omitted)— is incorrect.

Instead, Bandshell suggests that Mr. Liebowitz and LLF's reading of the Copyright Act must be incorrect because the reading would permit a plaintiff's attorney to "simply list a random copyright registration number in a complaint" (Opp. 49), but this argument overstates the issue. As Bandshell itself admits, Rule 11 insures against such behavior, which in any event bears no relationship to what happened here. Mr. Usherson and Mr. Liebowitz both testified, as did Mr. Liebowitz's associate, that they believed the Photograph was contained on the 046 Registration, which in fact contained multiple closely similar photographs, and

neither became aware of the registration error until January 2020. (JA-301–03, 308–13, 330–33, 335, 339–41, 484–85.) Mr. Liebowitz and LLF relied upon that erroneous understanding in drafting the Complaint; they did not cite a "random" copyright registration to "fool[]" the defendant. (Opp. 49.)

Mr. Liebowitz and LLF's error in this case does not justify overriding Congress's statutory scheme. Bandshell attempts to justify contravening congressional intent on the ground that Mr. Liebowitz and LLF "have a history of filing copyright claims" without proper investigation of registration (Opp. 50), but Bandshell cites only the District Court's order (SPA-42–44), which itself cited just a single case for that proposition, *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC), 2020 WL 468904, at *1 (S.D.N.Y. Jan. 29, 2020). Unlike the present case, however, Rock involved the issue of whether a valid registration included previously-published components of the work at issue.

Congress has determined that "the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); (Br. 58; SPA-76). In keeping with this presumption, this Court has held that "[a]lthough the plaintiff bears the burden of proving copyright ownership" through a certificate of registration, once registration is shown, "the party *challenging* the validity of the copyright registration has the burden to prove the contrary." *Urbont*, 831 F.3d at 89 (internal

quotation marks and alterations omitted) (emphasis added).  The District Court's

Order impermissibly shifts that burden, upending Congress's scheme, and should

be vacated.

## POINT IV

### THE CASE SHOULD BE REASSIGNED TO A DIFFERENT DISTRICT JUDGE IF REMAND IS REQUIRED

Mr. Liebowitz and LLF respectfully reiterate their request that, should this

Court determine that remand of any portion of the District Court's Sanctions Order

is necessary, this case be reassigned to a different district judge to preserve the

appearance of justice.  (Br. 60–61.)  Bandshell's argument—that reassignment is

unnecessary essentially because the District Court did not sanction Mr. Liebowitz

and LLF on "every possible ground" and "discounted a portion of" Bandshell's

attorney's fees request (Opp. 50–51)—misses that the District Court did impose

unwarranted nationwide sanctions, freely quoted pejorative language used against

Mr. Liebowitz by other courts, and wrote that "Mr. Liebowitz's shenanigans have

surely consumed enough of this Court's time and resources as it is."  (Br. 60–61;

SPA-1–2, 64.)

Bandshell speculates that reassignment "would create waste and

duplication" because other district judges in the Southern District of New York

have also sanctioned or criticized Mr. Liebowitz (Opp. 50–53), but Bandshell

ignores the "unique nature of sanctions proceedings" which make it especially

difficult for the district court issuing sanctions to remain neutral, and the likely "limited nature" of any remand. *Mackler II*, 225 F.3d at 147. Accordingly, Mr. Liebowitz and LLF have demonstrated the "unusual circumstances" required to justify reassignment. *Id.*

## **CONCLUSION**

This Court should reverse the District Court's order imposing sanctions or, at a minimum, reduce the excessive monetary sanction, vacate the non-monetary sanctions, and remand the case to a different district judge.

Dated:     January 8, 2021
           New York, NY

                              /s/ Robert J. Anello
                              Robert J. Anello
                              Brian A. Jacobs
                              Kevin Grossinger
                              A. Dennis Dillon

                              MORVILLO ABRAMOWITZ GRAND IASON
                                 & ANELLO P.C.
                              565 Fifth Avenue
                              New York, New York 10017
                              Tel: (212) 856-9600
                              Fax: (212) 856-9494
                              ranello@maglaw.com
                              bjacobs@maglaw.com
                              kgrossinger@maglaw.com
                              ddillon@maglaw.com

                              *Counsel to Richard Liebowitz and*
                              *Liebowitz Law Firm, PLLC*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,979 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated:      January 8, 2021
             New York, New York

                          By:   /s/ Kevin Grossinger
                                Kevin Grossinger